BRYAN SCHWARTZ LAW
Bryan J. Schwartz (SBN 209903)
bryan@bryanschwartzlaw.com
William C. Jhaveri-Weeks (SBN 289984)
bill@bryanschwartzlaw.com
1330 Broadway, Suite 1630
Oakland, CA 94612
Telephone: (510) 444-9300
Facsimile: (510) 444-9301

SCHONBRUN DESIMONE SEPLOW
  HARRIS & HOFFMAN LLP
Wilmer J. Harris (SBN 150407)
wharris@sdshhlaw.com
Shayla Myers (SBN 264054)
shaylamyers@sdshhlaw.com
715 Fremont Ave.
S. Pasadena, CA 91030
Telephone: (310) 396-0731
Facsimile: (310) 399-7040
[Additional counsel on following page]
*Attorneys for Individual and Representative
Plaintiffs and the Putative Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Terry P. Boyd, Ethel Joann Parks, Sonia Medina, Linda Zanko, and Victor Galaz individually, on behalf of others similarly situated, and on behalf of the general public,<br><br>     Plaintiffs,<br>  vs.<br><br>Bank of America Corp.; LandSafe, Inc.; LandSafe Appraisal Services, Inc.; and DOES 1-10, inclusive<br><br>     Defendants. | Case No.: 13-CV-00561 DOC (JPRx)<br><br>**NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PARTIAL CLASS ACTION SETTLEMENT**<br><br>Date: May 12, 2014<br>Time: 8:30 a.m.<br>Place: Courtroom 9D, Santa Ana<br>Hon. David O. Carter |

1

2   SCHONBRUN DESIMONE SEPLOW
      HARRIS & HOFFMAN, LLP
3   Benjamin Schonbrun (SBN 118323)
4   bschonbrun@sdshhlaw.com
    Michael D. Seplow (SBN 150183)
5   mseplow@sdshhlaw.com
6   Aidan C. McGlaze (SBN 277270)
    amcglaze@sdshhlaw.com
7   723 Ocean Front Walk
8   Venice, CA 90291
    Telephone: (310) 396-0731
9   Facsimile: (310 399-7040

10
    *Attorneys for Individual and Representative*
11  *Plaintiffs and the Putative Class*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
PARTIAL CLASS ACTION SETTLEMENT; 13-CV-00561 DOC (JPRx)

NOTICE OF MOTION AND MOTION

TO THE COURT AND ALL INTERESTED PARTIES:

**PLEASE TAKE NOTICE** that a hearing will be held on Plaintiffs' Unopposed Motion for Preliminary Approval of Partial Class Action Settlement on May 12, 2014 at 8:30 a.m. in the Courtroom of the Honorable David O. Carter, located at 411 W. Fourth St., Santa Ana, CA 92701. At the hearing, representative Plaintiff Victor Galaz, through his attorneys and on behalf of all other Review Appraisers similarly situated, will and hereby does move the Court to:   preliminarily approve the Settlement Agreement between the Review Appraiser Plaintiffs and Defendants Bank of America Corporation, LandSafe Inc., and LandSafe Appraisal Services, Inc. ("Defendants"); certify, for settlement purposes only, the class of Review Appraisers described herein; name Bryan Schwartz Law and Schonbrun DeSimone Seplow Harris & Hoffman LLP as Class Counsel, Victor Galaz as Class Representative for the Review Appraiser Plaintiffs, and Kurtzman Carson Consultants ("KCC") as the Claims Administrator; authorize the mailing of notice to the Review Appraiser California Class and nationwide Collective Class; and schedule a final approval hearing date.

The Motion is based upon the Unopposed Motion for Preliminary Approval of Partial Class Action Settlement and Memorandum of Points and Authorities in Support Thereof; the Declaration of Bryan J. Schwartz, Esq., in support of the motion, and the exhibits thereto, including the Settlement Agreement and the Proposed Notices to the California and Collective Classes; the Declaration of Victor Galaz in Support of the Motion; all other exhibits and attachments submitted in support of the Motion; any oral argument of counsel; the complete files, records, and pleadings in the above-captioned matter; and such additional matters as the Court may consider. A Proposed Order is submitted herewith.

//

//

//

Dated: April 8, 2014

BRYAN SCHWARTZ LAW

SCHONBRUN DESIMONE SEPLOW
 HARRIS & HOFFMAN, LLP

By: _____ */s/ Bryan J. Schwartz* _____
        BRYAN J. SCHWARTZ

*Attorneys for Individual and Representative
Plaintiffs and the Putative Class*

NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
PARTIAL CLASS ACTION SETTLEMENT; 13-CV-00561 DOC (JPRx)

# TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................................... 1

II.   PROCEDURAL BACKGROUND ............................................................... 2

III.  THE PROPOSED SETTLEMENT TERMS, AND FACTORS IN
      THE PARTIES' DECISION TO SETTLE ................................................... 4

      A.    Proposed Settlement Terms .............................................................. 4

            1.    The Settlement Provides Prompt, Meaningful Relief to the
                  Class and Creates Institutional Reform. ................................... 4

            2.    The Settlement Process Provides Fair Notice and the Scope
                  of the Release is Appropriate ................................................... 5

      B.    Factors in Parties' Decision to Settle .............................................. 7

            1.    Uncertainty of a Trial Outcome, Likelihood of Appeal, and
                  Delay in Payment Absent a Settlement Favor this
                  Resolution .................................................................................. 7

            2.    Willfulness versus Good Faith ................................................... 9

            3.    Interest and Penalties .............................................................. 10

IV.   THE COURT SHOULD PRELIMINARILY APPROVE THE
      SETTLEMENT .......................................................................................... 12

      A.    Class Action Settlements Are Encouraged. ................................... 12

      B.    Plaintiffs Contend that the Settlement Satisfies the FRCP 23
            Requirements. ................................................................................. 12

      C.    The Settlement Is Fair, Adequate and Reasonable. ....................... 13

            1    The Settlement Is Non-Collusive and Was the Product of
                 Extensive Negotiations ............................................................ 14

            2.    The Court Should Weigh the Strength of Plaintiffs' Case
                  Against the Risk, Expense, Complexity and Likely Duration
                  of Further Litigation, and the Risk of Maintaining Class
                  Action Status Through Trial. ................................................... 15

            3.    The Amount Offered in Settlement Weighs Strongly in
                  Favor of Preliminary Approval ................................................ 15

i

4. Given the Extent of Discovery Completed and the Stage of the Proceedings, Plaintiff and Counsel are Well-Situated to Arrive at a Fair Settlement. ...................................................... 18

5. The Considerable Experience and Strongly Supportive Views of Counsel Weigh in Favor of Preliminary Approval. ... 18

6. All Additional Settlement Terms are Fair. ............................... 19

**V.    CONCLUSION** ............................................................................. 25

NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
PARTIAL CLASS ACTION SETTLEMENT; 13-CV-00561 DOC (JPRx)

# TABLE OF AUTHORITIES

**Federal Cases**

*Addison v. Huron Stevedoring Corp.*, 204 F.2d 88 (2d Cir. 1953) ................................ 11

*Alvarez v. IBP, Inc.*, 339 F.3d 894 (9th Cir. 2003) ......................................... 10

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ................................. 22

*Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945) ................................... 11

*Carter v. Anderson Merchandisers, LP*, 2010 WL 144067
  (C.D. Cal. Jan. 7, 2010) ....................................................... 13, 17

*Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885) ........................... 8

*Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156 (2012) ............................ 8

*Churchill Village, LLC. v. General Electric*, 361 F.3d 566 (9th Cir. 2004) .................... 24

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir.1992) ........................ 13

*Clifton D. Mayhew, Inc. v. Wirtz*, 413 F.2d 658 (4th Cir. 1969) .................... 11

*Criswell v. Western Airlines, Inc.*, 709 F.2d 544 (9th Cir. 1983) ................... 10

*Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2013) ..................................... 24

*Ford v. Alfaro*, 785 F.2d 835 (9th Cir. 1986) ...................................... 10

*Franklin v. Kaypro Corp.*, 884 F.2d 1222 (9th Cir. 1989) ............................... 12

*Gautreaux v. Pierce*, 690 F.2d 616 (7th Cir. 1982) ................................ 12

*Gelof v. Papineau*, 648 F. Supp. 912 (D. Del. 1986) ..................................... 10

*Glass v. UBS Financial Services, Inc.*, 2007 WL 221862
  (N.D. Cal. Jan. 26, 2007) ...................................................... 20, 22

*In re Beef Industry Antitrust Litigation*, 607 F. 2d 167 (5th Cir. 1979)........................... 13

*In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935
  (9th Cir. 2011) ............................................................ 23

*In re Farmers Insurance Exchange*, 481 F.3d 1119 (9th Cir. 2007) ............................. 8

*In re Omnivision Technologies, Inc.*, 2007 WL 4293467 (N.D. Cal. 2007) .................. 23

iii

*In re Wells Fargo Home Mortgage Overtime Pay Litigation*, 571 F.3d 953
   (9th Cir. 2009) .................................................................................... 9

*J.F. Fitzgerald Construction Co. v. Pedersen*, 324 U.S. 720 (1945) ............................. 11

*Jamison v. Butcher & Sherrerd*, 68 F.R.D. 479 (E.D. Pa. 1975) ..................................... 13

*Kakani v. Oracle Corp.*, 2007 WL 1793774 (N.D. Cal. June 19, 2007) ........................ 19

*La Parne v. Monex Deposit Co.,* 2010 WL 4916606 (C.D. Cal. Nov. 29, 2010) ........... 19

*Landaas v. Canister Co.*, 188 F.2d 768 (3d Cir. 1951) ..................................................... 11

*Lusby v. Gamestop Inc.*, 2013 WL 1210283 (N.D. Cal. Mar. 25, 2013) ........................ 18

*Ma v. Covidien Holding, Inc.*, 2014 WL 360196 (C.D. Cal. Jan. 31, 2014)............. 13, 17

*Martin v. Applied Data Sys.*, 972 F.2d 1340 (9th Cir. 1992) ........................................... 11

*McKenzie v. Federal Express Corp.*, 2012 WL 2930201 (C.D. Cal. July 2, 2012) ........ 13

*Mojica v. Compass Group*, 13-cv-1754 (C.D. Cal.) ........................................................ 17

*Officers for Justice v. Civil Service Commission*, 688 F.2d 615 (9th Cir. 1982)............. 13

*O'Sullivan v. AMN Services, Inc.*, 12-cv-2125 (N.D. Cal.) ............................................ 17

*Pineda v. Bank of Am., N.A.*, 50 Cal.4th 1389 (2010)...................................................... 11

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ............................... 16

*Roy v. County of Lexington, S.C.*, 141 F.3d 533 (4th Cir. 1998) .................................... 16

*Rutti v. Lojack Corp.*, 2012 WL 3151077 (C.D. Cal. July 31, 2012) ............................. 20

*Santillan v. Henao*, 822 F. Supp. 2d 284 (E.D.N.Y. 2011)............................................. 11

*Satchell v. Federal Express Corp.*, 2007 WL 1114010 (N.D. Cal. Apr.13, 2007) ......... 14

*Singer v. American Airlines Federal Credit Union*, 2006 WL 3093759
   (N.D. Cal. Oct. 30, 2006) ................................................................. 23

*Staton v. Boeing*, 327 F.3d 938 (9th Cir. 2003) ....................................................... 20, 22

*Tijero v. Aaron Bros., Inc.*, 2013 WL 60464 (N.D. Cal. Jan. 2, 2013) .......................... 18

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) ................... 20

iv

*Villacres v. ABM Industries Inc.*, 384 F. App'x 626 (9th Cir. 2010) ............................... 10

*Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009) ......................... 9

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002) ......................... 23

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) .................................... 9

*Wallace v. Countrywide Home Loans Inc.*, 2013 WL 1944458
     (C.D. Cal. Apr. 29, 2013) ........................................................ 16

*White v. NFL*, 41 F.3d 402 (8th Cir. 1994) ...................................................... 24


**State Cases**

*Bell v. Farmers Ins. Exch.*, 135 Cal.App.4th 1138 (2006) ............................... 10

*Gentry v. Superior Court*, 42 Cal.4th 443 (2007) ........................................... 22

*Skyline Homes Inc. v. Department of Industrial Relations* (1985)
     165 Cal. App. 3d 239 .......................................................... 16


**Statutes, Regulations, Rules and Other Authority**

29 C.F.R. § 778.114.............................................................................. 16

29 U.S.C. § 255(a) ............................................................................. 10

California Business & Professions Code § 17200 ............................... 2, 11

California Labor Code § 203.......................................................... 10, 11, 12

California Labor Code § 226 *et seq.*................................................. 10, 11

California Labor Code § 2698 *et seq.* ("PAGA") .........................................*passim*

Conte & Newberg, *Newberg on Class Actions* § 11.25 (4th ed. 2002) .......................... 12

Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") .................................*passim*

Federal Rule of Civil Procedure 23 ....................................................... 12, 23

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

This is a wage and hour class and collective action brought under California and federal law by residential real estate appraisers employed by Defendants. These employees either produce or review appraisal reports that provide estimated values of residential properties in connection with loans and other financial products sold by subsidiaries of Defendant Bank of America Corp. ("BofA"). Plaintiffs allege that Defendants misclassified them as exempt from overtime requirements and other wage protections. Defendants maintain the classification was proper. No Ninth Circuit jurisprudence addresses real estate appraiser and review appraiser classification.

In this unopposed Motion, Plaintiff Galaz (who alone among the named Plaintiffs represents the Review Appraisers) seeks preliminary approval of the settlement of the Review Appraisers' claims. The Parties have not agreed to settle the claims of Staff Appraisers, and are continuing to litigate those claims.

The Parties arrived at the Settlement after full-day mediations with David Rotman and Mark Rudy, respectively, who are two of the state's top wage/hour class action mediators. The parties conducted months of arm's-length bilateral negotiations in addition to the mediation sessions.

The Settlement includes a payment of $5,800,000, all of which will be distributed and none of which reverts to Defendants, if the settlement is finally approved, plus the employers' share of payroll taxes on the portion of the settlement payments considered wages. The Settlement also includes a reclassification of the Review Appraiser position to non-exempt, expected to have significant financial benefit for all Review Appraisers going forward. The Settlement pays on average more than $10,200 each to approximately 370 Review Appraisers who worked for Defendants since 2009 (in California) or 2010 (nationwide).

The Settlement readily satisfies the standard for preliminary approval, fairly and appropriately resolving the claims of the Settlement Class in a manner that provides very substantial financial relief and policy changes at Defendants. The eventual final

1

fairness hearing will provide the Court with another opportunity to review the Settlement, with the benefit of class members' responses and insight on the rates of participation compared with objections. Accordingly, the Parties respectfully request that the Court: (1) grant preliminary approval of the Settlement and authorize the Parties to give the Settlement Class notice of the Proposed Settlement in the form of the proposed Notices submitted herewith; (2) approve Plaintiff Victor Galaz and undersigned counsel, Bryan Schwartz Law and Schonbrun DeSimone Seplow Harris & Hoffman, as class representatives; and (3) schedule a final approval hearing date.

## II.    PROCEDURAL BACKGROUND

On April 9, 2013, Plaintiff Terry Boyd commenced this class and collective action alleging various California and federal statutory wage violations plus unfair competition in violation of California Business and Professions Code § 17200 *et seq*. On May 16, 2013, Plaintiffs filed a First Amended Complaint, adding three Representative Plaintiffs and another Labor Code violation. *See* ECF No. 13. On June 6, 2013, Defendants filed an Answer to the First Amended Complaint. *See* ECF No. 21.

On June 26, 2013, Plaintiffs filed the Second Amended Complaint ("SAC"), the current complaint, adding Representative Plaintiff Victor Galaz specifically to represent Review Appraisers, and adding a seventh cause of action for Civil Penalties under the Labor Code Private Attorneys General Act of 2004 ("PAGA"), Cal. Lab. Code § 2698 *et seq*. *See* ECF No. 42. Defendants answered on July 10, 2013. *See* ECF No. 46.

The SAC defines the Collective Class as: "All persons who are or have been employed by Defendants as Appraisers, including employees with the job title 'Staff Appraiser' or 'Residential Appraiser' and any other employee performing the same or similar duties for Defendants and Review Appraisers ('Review Appraiser,' 'Senior Review Appraiser;' or positions consisting of similar job duties) within the United States at any time from three years prior to the filing of this Complaint to the final disposition of this case." *See* SAC (ECF No. 42) ¶ 20.

The SAC defines the California Class similarly, but with a four-year statute of limitations. *Id.* ¶ 36. The SAC also defines two sub-classes for the California penalty claims, based on the different statutes of limitations for those claims. *Id.* ¶¶ 37, 38.

On July 9, 2013, Plaintiffs filed a Motion for Conditional Certification under 29 U.S.C. § 216(b) and Partial Summary Judgment Motion. *See* ECF No. 44.

In October 2013, Plaintiffs deposed Defendants' FRCP 30(b)(6) witness, K. Scott Nicholson, and Defendants deposed Class Representatives Terry Boyd (a staff appraiser) and Galaz. *See* Declaration of Bryan J. Schwartz, Esq., dated April 8, 2014 and submitted herewith ("Schwartz Decl.") ¶ 11.

In November 2013, after Plaintiffs' 216(b) Motion had been taken under submission but before an Order issued, Plaintiffs and Defendants agreed to mediate with Mr. Rotman. *See* Schwartz Decl. ¶ 3. On November 27, 2013, Plaintiffs informed the Court the mediation had failed, requesting the Court to issue its Order on Plaintiffs' pending Motion. *See* ECF No. 105 (Notice that ADR Efforts Have Failed). The Parties continued communicating regarding settlement, however. Schwartz Decl. ¶ 3.

On December 11, 2013, the Court issued an Order Granting Plaintiffs' Motion for Conditional Certification under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and denying without prejudice Plaintiffs' Motion for Partial Summary Judgment as premature. *See* ECF No. 109. On December 27, 2013, the Court approved a Notice to be sent to potential Collective Class members under FLSA § 216(b). The Parties also agreed to mediate again, this time with Mr. Rudy. Schwartz Decl. ¶ 3.

On January 13, 2014, Plaintiffs moved for Class Certification of the proposed California Class. *See* ECF No. 118.

On January 29, 2014, Mr. Rudy mediated the case. *See* Schwartz Decl. ¶ 3. Although the Parties did not settle, Mr. Rudy continued assisting in arm's-length negotiations. Finally, on February 25, 2014, the Parties finalized a Memorandum of Understanding to settle the Review Appraisers' claims only. *Id.* On April 1, 2014, after weeks of additional negotiations, the Parties finalized the instant Settlement. *Id.*

Because the Parties have not agreed to settle the claims of Staff Appraisers, the Court-approved FLSA § 216(b) Notice was mailed to eligible Staff Appraisers nationwide on March 5, 2014. *See* Schwartz Decl. ¶ 15. Plaintiffs' pending motion for Class Certification (now on behalf of Staff Appraisers only, and not Review Appraisers) is scheduled to be heard on May 19, 2014.

## III.   THE PROPOSED SETTLEMENT TERMS, AND FACTORS IN THE PARTIES' DECISION TO SETTLE

### A.   Proposed Settlement Terms

#### 1.   The Settlement Provides Prompt, Meaningful Relief to the Class and Creates Institutional Reform.

The proposed settlement calls for Defendants' common fund payment of $5,800,000, none of which will revert to them, unless the settlement fails all together. *See* Schwartz Decl. Exhibit 1 (Settlement Agreement) (hereinafter "Exh. 1") ¶ 46. In particular, unless more than 5% of the California Settlement Class Members opt out (giving Defendants a right to void the deal), Defendants will fund the settlement plus the employers' share of payroll taxes (tens of thousands of dollars) within fifteen days of final Court approval and judgment. *Id.* ¶¶ 46, 92, 93.

From the $5,800,000 common fund, the settlement calls for:

- the deduction of one-third of the Settlement Amount as attorneys' fees ($1,933,333.33) (Exh. 1 § 49; Schwartz Decl. ¶ 17);

- reimbursement of actual litigation costs, estimated to be not more than $30,000 (Exh. 1 ¶ 49; Schwartz Decl. ¶ 16);

- an enhancement payment to Mr. Galaz of $15,000 (Exh. 1 ¶ 50);

- a payment of $18,750 to the California Labor Workforce Development Agency ("LWDA") for the PAGA claims (Exh. 1 ¶ 51); and

- claims administrator charges for printing and mailing the Notice of Settlement, processing opt-in forms, calculating payment amounts, and issuing and mailing settlement checks, along with related necessary tasks – to total not more than $20,000. *See* Exh. 1 ¶ 48.

4

The remaining amount – which Plaintiffs' counsel estimates to be approximately $3,783,000 ("Net Settlement Amount") – will provide on average over $10,200 each to the approximately 370 class members who either do not opt out of the case (if they are in California) or who opt-into the settlement (if they are outside California). *See id.* ¶¶ 46-58. As for the distribution among the Settlement Class, it will be done fairly, with Settlement Class Members allocated a share of the Net Settlement Amount based on the number of workweeks that they worked for Defendants during the relevant Class periods. *Id.* ¶¶ 5, 53. In addition, because California Settlement Class members have claims for meal/rest period violations, PAGA penalties, waiting time violations, and wage statement violations, they will receive 1.5 times as large a pro rata share per workweek as Non-California Settlement Class Members. *Id.* ¶ 5; Schwartz Decl. ¶ 5.

The Review Appraiser position will be reclassified in 2014 as a result of the settlement (*see* Exh. 1 ¶ 60), so that all Review Appraisers will begin to be compensated for their overtime, missed meal/rest periods (in California), and begin to receive wage statements with additional itemizations in recognition of their non-exempt status, specifically, hours worked per pay period and overtime hours per pay period. As discussed in the declaration of Plaintiffs' counsel, the change is anticipated to result in extensive financial benefit to Review Appraisers in the future, likely millions of dollars over the course of several years, assuming Review Appraisers continue to work overtime and through breaks as they have done until now. *See* Schwartz Decl. ¶ 14.

### 2. The Settlement Process Provides Fair Notice and the Scope of the Release is Appropriate.

The agreed-upon Class Notices (Exhibits A-1 and A-2 to the Settlement Agreement) explain the purpose of the Class Notice, and describe the litigation, the terms of the Settlement, and each Class Member's options with regard to participating in the Settlement, depending on whether the Class Member was a California Review Appraiser or a Non-California Review Appraiser. Exh. 1 at Ex. A-1. The Class Notices provide information regarding the consequences of doing nothing, the final approval hearing, and how Class Members can obtain additional information or opt out. *Id.*

5

California Settlement Class Members may elect to opt out of the Settlement Class and thus exclude themselves from the litigation, the Settlement, and the Settlement Class by the claims period deadline. Exh. 1 at Ex. A-1 at 2 ("Your Options and Legal Rights in this Settlement"). California Settlement Class Members who do not timely opt out of the Settlement Class will be members of the Settlement Class on California claims, and receive settlement payments by mail. The back of the check will state that by depositing the check, the payee agrees to release all relevant wage and hour claims at issue in this suit. The Notice explains that even if California Class Members do not cash the check, they will be subject to the judgment and its associated release of California claims (but not FLSA claims) unless they affirmatively opt out of the suit. *Id.*; *see also id.* §§ 15-16. Class Members who do affirmatively opt out will not receive a settlement payment, but also will not be subject to any release of claims, and will be deemed never to have participated in the litigation or this Settlement. *Id.* In addition, as explained in more detail in the Class Notice, California Class Members who do not opt out will have an opportunity to object to the Settlement. *Id.* §§ 20-21.

Non-California Settlement Class Members who wish to participate in the Settlement must timely submit an Opt-In Form. The Notice to Non-California Settlement Class Members explains the consequences of submitting the form – they will receive a payment and will release their wage and hour claims; as well as the consequences of not submitting the form – they will not receive a payment and will not release their claims. *Id.* at Ex. A-2 §§ 11-16; Ex. B (Opt-In Form).

When the judgment becomes final, the Class Representative and each of the Settlement Class Members, including all California Settlement Class Members who do not opt out and all Non-California Settlement Class Members who opt in, will release all wage and hour claims that relate to the claims asserted in the lawsuit – except for the FLSA claims of any California Settlement Class Members who do not deposit their Settlement payments. Exh. 1 ¶¶ 83-88. Only the named Review Appraiser Plaintiff, Mr. Galaz, is required to execute a general release of all claims. *See* Exh. 1 ¶¶ 89-90.

NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
PARTIAL CLASS ACTION SETTLEMENT; 13-CV-00561 DOC (JPRx)

### B.     Factors in Parties' Decision to Settle

Factual and legal factors the Parties considered in electing to settle include:

#### 1.     The Uncertainty of a Trial Outcome, Likelihood of Appeal, and Delay in Payment Absent a Settlement Favor this Resolution.

The uncertainty of a trial provides a strong incentive for both Parties to settle. Full relief on Plaintiffs' claims, including all penalties available under California law, would result in a greater recovery for Plaintiffs; likewise, if Defendants were able to prevail on liability at trial, Plaintiffs would recover nothing in this case.

Plaintiffs contend that Defendants will be unable to meet their burden of establishing that Review Appraisers fell into any applicable overtime exemption, under either Federal or California law. With respect to the administrative exemption, Plaintiffs argue that Review Appraisers review appraisal reports, day in and day out, meeting production quotas for the number of reviews they complete, and ensuring that the reports are complete and meet the Company's detailed appraisal report guidelines. First Declaration of Victor Galaz (ECF No. 44-5) ("First Galaz Decl.") ¶¶ 5-10, 15-17. Review Appraisers are compensated based on production. *Id.* ¶ 10. They do not have any supervisory responsibilities – no one reports to them. *Id.* ¶ 17. They do not advise management or make policy decisions for the Company, nor have authority to bind the Company. *Id.* ¶¶ 5, 8. Thus, under either California or Federal law, Plaintiffs believe they do not fall under the administrative exemption. *See* Pls.' Mot. for Class Cert. (ECF No. 118) at 14-18 (discussing merits standard for administrative exemption).

With respect to the professional exemption, no degree higher than a high school diploma is required to become a Review Appraiser. First Galaz Decl. ¶ 19. Although Review Appraisers must obtain an appraisal license from the state, the requirements for the license are primarily on-the-job apprenticeship, which weighs against applicability of the professional exemption, Plaintiff asserts. *See* Pls.' Mot. for Class Cert. (ECF No. 118) at 19 (discussing merits standard for professional exemption); Pls.' Mot. for Cond'l Cert. & Partial Summ. J. (ECF No. 44) at 21-24 (same).

On the other hand, Defendants have argued, in opposing Plaintiffs' partial summary judgment motion, that the licensing requirements to which appraisers are subject brings them under the professional exemption. *See* Defs.' Opp'n to Mot. for Partial Summ. J. (ECF No. 57) at 11-14. The administrative and professional exemptions take into account whether the employee exercises independent judgment and discretion with respect to matters of significance to the business, and Defendants argue that home valuations readily meet this test. *Id.* Defendants further argue that the requirement that appraisers be independent from homeowners or employees in the loan underwriting department – or anyone else with an interest in manipulating the value of an appraisal – weighs in favor of the applicability of the exemptions. *Id.* Review Appraisers, Defendants can be expected to argue, have the authority to "fail" reports or instruct Staff Appraisers to perform additional work, supporting the notion that they are administratively exempt. *See, e.g.*, Decl. of Terry P. Boyd in Supp. of Pls.' Mot. for Cond'l Cert. (ECF No. 44-2) ¶ 10.

There is no Ninth Circuit authority on point regarding Review Appraisers' classification, creating uncertainty for both sides. Misclassification cases always present a significant risk of losing on the merits after extensive litigation, as in *In re Farmers Insurance Exchange*, 481 F.3d 1119, 1132 (9th Cir. 2007). *See also Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156 (2012).

Defendants also point to the fact that some Review Appraisers signed arbitration agreements, and that some Review Appraisers have left the Company and have signed severance agreements requiring them to pursue unwaivable wage claims on an individual basis only. Defs.' Opp'n to Cond'l Cert. Mot. (ECF No. 56) at 21 (arbitration agreements); Defs.' Evid. Objs. to Pls.' Class Cert. Mot. (ECF No. 161) at 1-2 (severance agreements). Settling now would eliminate the risk that Defendants could succeed in eliminating certain members of the Class prior to trial, based upon these arbitration and severance agreements.

NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PARTIAL CLASS ACTION SETTLEMENT; 13-CV-00561 DOC (JPRx)

Moreover, all misclassification cases carry the risk of denied certification or decertification, highlighted by such cases as *In re Wells Fargo Home Mortgage Overtime Pay Litigation*, 571 F.3d 953 (9th Cir. 2009), and *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009). Defendants may always argue regarding individualized issues to defeat certification, as in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). In opposing class certification or seeking to de-certify, Defendants would argue (as they have done with respect to Staff Appraisers in opposing the Class Certification Motion) as to alleged: differences in the way Appraisers carried out their duties, even if they were instructed to follow the same guidelines and requirements in completing the same forms; reasons that class action treatment is not desirable, including the potentially significant size of each class member's claim; differences in the damages each claimant suffered from Defendants' failure to pay overtime or authorize meal and rest periods; and that a Class trial is not manageable, maintaining that Defendants are entitled to cross-examine each Class Member to challenge his or her credibility concerning the amount of hours he or she reports having worked. *See* Defs.' Opp'n to Class Cert. (ECF No. 159). If Plaintiffs were to lose class certification, or if the FLSA collective action were to become decertified, many of those eligible to recover under this settlement would be left without compensation.

Regardless of which side prevailed, trial would result in a significant expenditure of resources to both sides. Trial would not be complete until, at the earliest, the end of 2014, and would almost certainly be followed by an appeal. Even if Plaintiffs prevailed at trial and on appeal, the Class would not recover for years, whereas under the Settlement, the Class will receive payment within months – just over a year after the lawsuit was filed.

### 2.    Willfulness versus Good Faith

Plaintiffs have not yet established that Defendants' violation of the labor laws was "willful" under the FLSA, although Plaintiffs believe that they would be able to do

9

so. *See Alvarez v. IBP, Inc.*, 339 F.3d 894, 910 (9th Cir. 2003) (standard for willfulness). Defendants can also be expected to assert a "good faith" defense to Plaintiffs' claims under §§ 203 and 226 of the California Labor Code, in light of the lack of regulatory authority or jurisprudence directly on point regarding review appraisers' classification (*i.e.*, no knowing and intentional failure to comply, under §226(e)). *See also generally Villacres v. ABM Indus. Inc.*, 384 F. App'x 626 (9th Cir. 2010) ("actual injury" requirement for wage statement penalties). If Plaintiffs proceeded to trial and were unable to establish willfulness, the statute of limitations under the FLSA would be reduced to two years, resulting in a significantly shorter class period than applies under the Settlement Agreement. *See* 29 U.S.C. § 255(a). In addition, if Defendants were successful in a good faith defense, such would bar Plaintiffs' claims under Labor Code §§ 203 and 226.

### 3.      Interest and Penalties

The Parties agree that two thirds of the settlement payment is related to interest and penalties (Exh. 1 ¶ 54). This estimate is reasonable, because PAGA claims and other penalty claims asserted are a significant proportion of the estimated damages exposure, and because interest rates can be as high as 10 percent, and would have begun to accrue as early as April 2009. *See Bell v. Farmers Ins. Exch.*, 135 Cal.App.4th 1138, 1150 (2006) ("[T]rial court properly applied the 10 percent prejudgment interest rate provided by Civil Code section 3289 to the accrual of unpaid wages. The enactment of Labor Code section 218.6 confirmed the propriety of this rate, which was supported by persuasive authority prior to its enactment."); *Gelof v. Papineau*, 648 F. Supp. 912, 929 (D. Del. 1986), *aff'd in relev. part, vacated on other grounds*, 829 F.2d 452, 456 (3d Cir. 1987) (forum state's statutory rate of interest governs); *Criswell v. Western Airlines, Inc.*, 709 F.2d 544, 556-57 (9th Cir. 1983) (awarding California's statutory rate of 7 percent).

Yet, though prejudgment interest is ordinarily awarded after a successful judgment in a FLSA case (*Ford v. Alfaro*, 785 F.2d 835, 842 (9th Cir. 1986)), the Ninth

Circuit has also permitted only partial prejudgment interest. *See Martin v. Applied Data Sys.*, 972 F.2d 1340 (9th Cir. 1992). Prejudgment interest is not awarded in addition to liquidated damages for violations of FLSA, and defendants have long argued that a court is permitted to deny both interest and liquidated damages. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 715 (1945); *J.F. Fitzgerald Const. Co. v. Pedersen*, 324 U.S. 720 (1945); *Clifton D. Mayhew, Inc. v. Wirtz*, 413 F.2d 658 (4th Cir. 1969); *Addison v. Huron Stevedoring Corp.*, 204 F.2d 88 (2d Cir. 1953); *Landaas v. Canister Co.*, 188 F.2d 768 (3d Cir. 1951); *Santillan v. Henao*, 822 F. Supp. 2d 284 (E.D.N.Y. 2011). As discussed *supra*, Defendants would undoubtedly argue a good faith defense that could challenge Plaintiff and the class members' ability to recover any penalties.

The statute of limitations for claiming penalties under Cal. Lab. § 226(a) is one year. *See Pineda v. Bank of Am., N.A.*, 50 Cal.4th 1389, 1398 (2010). Moreover, because the maximum number of possible pay periods was twenty (equaling a maximum penalty of $1950 for each employee, under Cal. Lab. § 226(a)), the total penalty for failure to provide accurate itemized wage statements is relatively limited.

Given the litigation risks, and the limited recovery possible in any event, and the fact that the settlement provides significant compensation to each Class Member for penalties (estimated to be one-third of the settlement), the parties feel this § 226 penalty is adequately factored into the payments each Class Member will receive.

In the same vein, under Cal. Lab. § 203, where the employees suffered unpaid wages to which they were entitled (as discussed *supra*), they can receive up to 30 days' additional wages as a penalty for late payment. Cal. Lab. § 203(b) specifically ties the statute of limitations for § 203 penalties to the underlying violations (instead of the usual one year penalty statute), but, though wage violations can result in four years' recovery under Cal. Lab. § 17200, waiting time penalty recover is limited to three years. *See Pineda*, 50 Cal. 4th at 1398. The entitlement to waiting time penalties is further limited, as with the § 226(a) penalties, by Defendants' claimed good-faith

11

defense, since the § 203 waiting time penalties are only for willful violations, and, Defendants argue, subject to individualized considerations.

In light of the foregoing, the Court should view favorably that the settlement agreement provides significant penalty compensation.

## IV.   THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

The Settlement is fair, adequate and reasonable, justifying this Court's preliminary approval. Plaintiffs submit that it is appropriate for the Court to certify the proposed Settlement Class under Federal Rule of Civil Procedure 23, for purposes of giving effect to and implementing the Settlement.

### A.   Class Action Settlements Are Encouraged.

Federal law strongly encourages settlements in the context of class actions. *See, e.g.*, *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("[O]verriding public interest in settling and quieting litigation" is "particularly true in class action suits.") (quotations omitted).  Both sides believe that their best interests are served by entering into the Settlement Agreement, rather than proceeding to trial on the Review Appraisers' claims. The Court should grant preliminary approval because this settlement falls within the range of reasonableness for possible final approval. *See Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982); Conte & Newberg, *Newberg on Class Actions* § 11.25 (4th ed. 2002).

### B.   Plaintiffs Contend that the Settlement Satisfies the FRCP 23 Requirements.

The Court has conditionally certified an FLSA collective action class. ECF No. 109. For the reasons stated in their Motion for Class Certification, Plaintiffs believe that the Review Appraisers easily meet the requirements for Class Certification under Rule 23. *See* ECF No. 118. The questions of law and fact regarding the applicability of the administrative and professional exemptions present questions common to the Class that predominate, and Galaz is typical of the Review Appraisers, and will adequately protect the Class's interests. Pls.' Mot. for Class Cert. (ECF No. 118) at 11-25.

12

NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PARTIAL CLASS ACTION SETTLEMENT; 13-CV-00561 DOC (JPRx)

### C.    The Settlement Is Fair, Adequate and Reasonable.

In deciding whether to approve a proposed class action settlement, the Court must determine whether a proposed settlement is "fair, adequate and reasonable." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Ma v. Covidien Holding, Inc.*, 2014 WL 360196, at *3 (C.D. Cal. Jan. 31, 2014) (Carter, J.); *see also* Fed. R. Civ. P. 23(e)(1)(C). Courts act within their discretion in approving settlements that are fair, are not collusive, and take into account "all the normal perils of litigation as well as the additional uncertainties inherent in complex class actions." *In re Beef Indus. Antitrust Litig.*, 607 F. 2d 167, 179 (5th Cir. 1979). The trial court considers relevant factors, such as "the strength of Plaintiffs' case, the risk, expense, complexity and likely duration of further litigation, the risk of maintaining class action status through trial, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir.1992); *Carter v. Anderson Merchandisers, LP*, 2010 WL 144067 (C.D. Cal. Jan. 7, 2010) (Philips, J.).[1] Where a settlement is reached on terms agreeable to all parties, a court should disapprove of the settlement "only with considerable circumspection." *Jamison v. Butcher & Sherrerd*, 68 F.R.D. 479, 481 (E.D. Pa. 1975). Here, the factors weigh heavily in favor of granting preliminary approval and authorizing distribution of Notice.

---

[1] This matter does not involve a governmental participant other than the LWDA, *see McKenzie v. Fed. Exp. Corp.*, 2012 WL 2930201 (C.D. Cal. July 2, 2012) (Feess, J.) (compliance with LWDA notice requirement and payment of 75% of PAGA penalties favors approval of settlement). The reaction of the class members to the settlement will be better gauged at final approval. *See infra* for a discussion of the other factors.

NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
PARTIAL CLASS ACTION SETTLEMENT; 13-CV-00561 DOC (JPRx)

### 1. The Settlement Is Non-Collusive and Was the Product of Extensive Negotiations.

The proposed Settlement was the product of arm's-length, hard-fought, non-collusive negotiations, including two full-day mediations with highly experienced class action mediators and months of additional negotiations. Schwartz Decl. ¶ 3; *see also Satchell v. Fed. Exp. Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr.13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). After the first mediation failed to resolve the case, Plaintiffs prevailed on their motion for conditional certification and filed their motion for class certification of a California class. The Court denied Plaintiffs' motion for partial summary judgment without prejudice as premature, but by briefing the merits of several of the overtime exemptions at issue, the Parties gained an understanding of their respective positions and the facts and law that would be presented to the Court if the case were not to settle. *See* Schwartz Decl. ¶ 12.

The fact that the Parties are continuing to litigate the claims of Staff Appraisers also confirms that no collusion is occurring. Plaintiffs' counsel determined that settling the claims of Review Appraisers, while continuing to litigate the claims of Staff Appraisers, was in the best interests of both groups. *See* Schwartz Decl. ¶ 15. Defendants might have argued that Review Appraisers are more likely to fall within the administrative exemption than Staff Appraisers because Review Appraisers arguably occupy a higher position in Defendants' organization, in the sense that they review the work of Staff Appraisers. *Id.* Plaintiffs' Counsel believes that the non-reversionary Settlement amount of $5.8 million for the several hundred Review Appraisers, plus the full employer's share of payroll taxes, is an excellent result for that group, when coupled with the reclassification of the position. Plaintiffs' Counsel's unwillingness to recommend a Settlement that counsel believes is not in the best interests of the Staff Appraisers manifests the non-collusive nature of this deal. *Id.*

Plaintiff Galaz and the putative Class Members are and have been represented by experienced counsel, who have had numerous wage and hour class action settlements

14

NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
PARTIAL CLASS ACTION SETTLEMENT; 13-CV-00561 DOC (JPRx)

approved by federal and state courts and who have repeatedly been approved as Class Counsel. *Id.* ¶ 20; *see also* Declaration of Wilmer J. Harris submitted in support of Plaintiffs' Motion for Class Certification (ECF No. 120) ¶¶ 4, 8, 13. Counsel fought for terms most advantageous to the entire class for the 12 months since this case was filed. *Id.* ¶ 14. Among other advantageous terms, Counsel insisted on a major company reform, making Review Appraisers non-exempt, and ensured that: the settlement payment is non-reversionary (*i.e.*, maximizing the payments to all participating Class Members); Defendants will pay the employer's share of payroll taxes; and all payments will be paid promptly, in a single installment (within fifteen days of final judgment, as that term is defined in the Settlement Agreement). *Id.* ¶¶ 6-9. Plaintiffs' counsel insisted on a release tailored to the nature of the claims at issue (*see* Exh. 1 ¶¶ 83-88), and an equitable distribution that fairly compensates California and non-California class members according to their length of service and whether they worked in California (*i.e.*, possessed additional claims) (*id.* ¶ 5).

>   **2.     The Court Should Weigh the Strength of Plaintiffs' Case Against the Risk, Expense, Complexity and Likely Duration of Further Litigation, and the Risk of Maintaining Class Action Status Through Trial.**

As discussed in Section III.B, *supra*, Plaintiff believes the case has significant strengths, but that there are also considerable risks to further litigation and to maintaining class action status.

>   **3.     The Amount Offered in Settlement Weighs Strongly in Favor of Preliminary Approval.**

The Settlement will provide Class Members with significant up-front cash payments, and the long-term benefit for all current and future Review Appraisers of reclassification as non-exempt. If all eligible Review Appraisers participate in the suit, the average payment per Class member will be over $10,200. *See* Schwartz Decl. ¶¶ 4, 17. For those who actively worked in all workweeks in the Class Period, the payment will be significantly higher. Because the Settlement is non-reversionary, to the extent that some eligible California Class Members opt out or decline to deposit their checks,

or that some eligible Non-California Class Members do not submit an Opt-In Form, participating Class Members will receive a second payment, of their *pro rata* share of the unclaimed amount (provided that the unclaimed amount is at least $50,000; if it is less than $50,000, the Parties have agreed that the unclaimed amount will be distributed to a *cy pres* recipient, as discussed below). The payments are reasonably and simply based on the number of workweeks the Settlement Class Members were actively working for Defendants during the Class Periods. As noted, Defendants will pay their share of the payroll tax. Moreover, the Settlement also includes a significant injunctive relief component, as Defendants have agreed to reclassify Review Appraisers as non-exempt by the end of 2014, which will yield extensive financial benefits for many class members and future Review Appraisers. *Id.* ¶ 60; Schwartz Decl. ¶ 14.

The settlement monetary relief compares favorably with the estimated full relief for Plaintiff and the Review Appraiser class members' claims. As explained in further detail in Counsel's appended declaration, the estimated value of the claims is approximately $16 million, before penalties and interest. *See* Schwartz Decl. ¶ 4.[2] *Cf. Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 955 (9th Cir. 2009) (court may calculate settlement reasonableness without considering penalties). The $5.8 million recovered is

---

[2] The estimated value includes a discount for only non-California employees of 25% to account for Defendants' argument that the "fluctuating workweek" doctrine would limit Plaintiffs' overtime rate to 0.5 times their regular rate, rather than 1.5 times. *See* Schwartz Decl. ¶ 4. Although recent decisions have rejected the fluctuating workweek argument in FLSA misclassification cases (*e.g.*, *Wallace v. Countrywide Home Loans Inc.*, 2013 WL 1944458 (C.D. Cal. Apr. 29, 2013) (Staton, J.)), some courts have accepted it, based on interpretation of 29 C.F.R. § 778.114. *See, e.g.*, *Roy v. Cnty. of Lexington, S.C.*, 141 F.3d 533, 547 (4th Cir. 1998). The fluctuating workweek does not apply under California law. *See Skyline Homes Inc. v. Dep't of Indus. Rels.* (1985) 165 Cal.App.3d 239, 247-48 (disapproved on other grounds in *Tidewater Marine W., Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 572-73).

thus arguably 36% of the total exposure in the case – a strong result, warranting this Court's approval. Compare this result to this Court's recent preliminary approval grant in *Ma*, 2014 WL 360196, at *5, in which the Court found that a settlement providing "9.1% of the total value of the action [was] 'within the range of reasonableness.'" *Id.* That settlement provided approximately $2,500/person ($2.5 million divided among 974 class members), before fees, costs and enhancements were subtracted. *Id.* at **2, 5.

Indeed, the Central District of California and other courts have lately approved numerous settlements in wage/hour class actions providing far less relief to class members. On March 14, 2014, Judge Dale Fischer of this Court granted preliminary approval to a $5 million settlement for 22,000 Compass Group food service employees (at Bon Appetit bakery), with a net settlement fund of $3,175,834, and with only a 25% guaranteed pay-out to claimants ($793,958.50 guaranteed for 1.6 million workweeks). *See Mojica v. Compass Group*, 13-cv-1754 (ECF No. 38) (C.D. Cal.) (Fisher, J.) (preliminary approval order submitted herewith for the Court's convenience as Exhibit 2 to the Schwartz Decl.). If *all* settlement class members participate, the result will be $144.36 payments to each wage/hour class action member. *Id.*

In the Northern District of California, the Court in February 2014 granted final approval to a settlement for $3 million for a class of 11,685 people – though the total exposure estimated for the case was $108 million, before penalties and interest. *See O'Sullivan v. AMN Services, Inc.*, 12-cv-2125 (ECF No. 92) (Spero, M.J.) (final approval order submitted herewith for the Court's convenience as Exhibit 3 to the Schwartz Decl.). The average payment to claimants is $478.12 ($14.46/workweek). *Id.*

In a comparable case to this one, Judge Virginia Phillips of this Court approved a $3.625 million settlement ($2.617 million net settlement) for 313 FLSA class members and 174 California class members in a wage and hour class action alleging misclassification – yielding $5,374/per person on average – where the reclassification occurred notwithstanding the case. *See Carter*, 2010 WL 144067 (Phillips, J.).

17

On the other hand, settlements that have been disapproved are dramatically different from this one. In *Tijero v. Aaron Bros., Inc.*, 2013 WL 60464 (N.D. Cal. Jan. 2, 2013), the Northern District of California rejected an $800,000 settlement for 6,500 class members which would have yielded a net payout of $1.54/workweek – less than $100/each for class members who worked an entire year. In *Lusby v. Gamestop Inc.*, 2013 WL 1210283 (N.D. Cal. Mar. 25, 2013), the settlement would have been $750,000 for 13,872 people – paying $0.26/shift, after fees/costs, etc. were deducted. The Court rejected the settlement, noting, "This *de minimus* amount is hardly the 'substantial monetary benefit' reported by class counsel." *Id.* at *13.

### 4. Given the Extent of Discovery Completed and the Stage of the Proceedings, Plaintiff and Counsel are Well-Situated to Arrive at a Fair Settlement.

The Parties took Plaintiff's deposition and the deposition of the FRCP 30(b)(6) witness for the Defendants, exchanged over 10,000 pages of relevant discovery, briefed conditional and class certification and summary judgment motions, mediated with two top mediators, and negotiated for months. Schwartz Decl. ¶¶ 3, 11. Plaintiffs' first mediation statement, alone, encompassed a 58-page brief plus hundreds of pages of exhibits. *Id.* ¶ 11. The Parties are well-informed and prepared to reach this settlement.

### 5. The Considerable Experience and Strongly Supportive Views of Counsel Weigh in Favor of Preliminary Approval.

Counsel for Plaintiff have represented thousands of employees in wage/hour class actions like this one, and have had settlements approved repeatedly by District Courts in the Ninth Circuit and other courts. Schwartz Decl. ¶ 20; ECF No. 120 ¶¶ 4, 8, 13. Undersigned counsel have led the State Bar's Advanced Wage and Hour Seminar, the California Employment Lawyers Association Wage and Hour Conference, and have published and spoken at numerous conferences regarding wage and hour class action settlements. Schwartz Decl. ¶ 20. In the view of counsel, this settlement is an exceptional result, both in terms of the monetary relief for class members, the

18

reclassification of the Review Appraiser position, and the timing – approximately one year after suit was filed. *Id.* ¶ 2. The Court should preliminarily approve the settlement.

### 6. All Additional Settlement Terms are Fair.

The Settlement avoids the pitfalls of other, unsuccessful settlements. Unlike in *Kakani v. Oracle Corp.*, 2007 WL 1793774 (N.D. Cal. June 19, 2007), no funds can revert to Defendants, if the settlement becomes final. *See* Exh. 1 ¶ 93. *See La Parne v. Monex Deposit Co.,* 2010 WL 4916606 (C.D. Cal. Nov. 29, 2010) (Carter, J.) (favoring non-reversionary settlement under similar circumstances). All workers' existing claims are only extinguished when they receive settlement offers, and class/collective action notices are provided to all settlement class members, respectively. Exh. 1 ¶¶ 62-68; 83-88. The detailed and relevant release in the instant case does not implicate the concerns related to the sweeping release in *Kakani*. Exh. 1 ¶¶ 83-88. The Review Appraiser position is represented adequately by the representative Plaintiff. *Id.* ¶ 41(b). Other than the named Plaintiff, the Settlement Class Members are waiving only their wage and hour claims. *Id.* ¶¶ 83-88. In addition, Class Members do not waive their FLSA claims unless they affirmatively opt into the suit and/or cash their Settlement check. *Id.*; *cf. Kakani*, 2007 WL 1793774. Plaintiffs' Counsel solicted bids and selected reputable claims administrator KCC, which made the most competitive bid. Schwartz Decl. ¶ 24.

In addition to the already-discussed substantial monetary recovery envisioned under the settlement and the significant benefit of the reclassification, settlement terms relating to the larger payment to California class members, the enhancement to the Class Representative, attorneys' fees, and *cy pres* designee are fair and appropriate.

### a. The larger allocation to California class members is fair.

Because the participating California Settlement Class Members possess, and will be required to waive, a broader range of claims, including meal- and rest-break claims, waiting time penalties, itemized wage statement penalties, and PAGA penalties, their *pro rata* settlement shares will be 1.5 times the size of the shares of Non-California Settlement Class Members. *Id.* ¶ 5. This is equitable, because the value of these

19

potential California claims is significant, and providing all Settlement Class members with equal *pro rata* treatment would fail to account for the valuable claims being waived by California Class Members. Schwartz Decl. ¶ 5.

**b.**     **Mr. Galaz's proposed enhancement payment is fair.**

The Class Representative's enhancement payment of $15,000 is justified under the case law and the facts of this case. *See, e.g.*, *Staton v. Boeing,* 327 F.3d 938, 977 (9th Cir. 2003) (recognizing that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable); *Glass v. UBS Fin. Servs.*, Inc., 2007 WL 221862, at \*16 (N.D. Cal. Jan. 26, 2007) (approving payments of $25,000 to each named plaintiff); *Van Vranken v. Atlantic Richfield Co.,* 901 F. Supp. 294, 299 (N.D. Cal. 1995) (awarding $50,000 to a lead plaintiff). In *Van Vranken*, the court articulated the following relevant factors to assess the appropriateness of a Class Representative's enhancement: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representatives; 3) the amount of time and effort spent by the class representatives; 4) the duration of the litigation, and; 5) the personal benefit (or lack thereof) enjoyed by the class representatives as a result of the litigation. 901 F. Supp. at 299. These factors all support the requested enhancement here.

First, Plaintiff Victor Galaz risked his reputation as a result of bringing this case and serving as the sole Review Appraiser Class Representative. *See* Galaz Decl. ¶ 7. As Galaz testifies, the Appraiser community is tightly knit, and by placing himself in the spotlight to advance the interests of the class, he has taken the risk that future employers will not hire him, or that BofA and other large mortgage sellers will decline to place him on their "fee appraisal panels," making it difficult for him to find work. *Id.*

Second, Mr. Galaz has experienced "notoriety" because of his prominent role as the sole Review Appraiser named Plaintiff in the case. The risk of blackballing in the appraisal industry weighs in favor of a significant service award under this factor. Galaz Decl. ¶ 7, 9. *See Rutti v. Lojack Corp.*, 2012 WL 3151077, at \*5 (C.D. Cal. July 31,

20

2012) (Carter, J.) (citing research, noting the "strong disincentives for employees to participate in a class action against their current or former employer, particularly when the suit requires an affirmative opt-in, as does the FLSA"). His participation has caused him sleepless nights, stress, fear, and anxiety. *Id.* ¶¶ 6-8. In addition, Mr. Galaz has made financial sacrifices to appear at his deposition and deposition preparation sessions, which cost him approximately $1400 in lost wages. *Id.* ¶ 5. Mr. Galaz was the only Review Appraiser to step forward as a named Plaintiff in this case.

Third, Mr. Galaz estimates that he has spent over 75 hours of time on this case, including the time required to: research his rights; speak extensively with Plaintiffs' counsel on the telephone over the course of nearly a year in order to assist them with their understanding of the facts in this case – particularly, the job duties and manner of compensation of Review Appraisers and the qualifications necessary to work as a Review Appraiser for BofA; discuss with Plaintiffs' Counsel the Requests for Production of Documents that were served on him by Defendants, search for electronic and hard copy documents called for by those requests and provide those documents to Plaintiffs' Counsel; attend multiple in-person preparation sessions with Plaintiffs' Counsel over the course of several days in advance of his deposition; spend a full day being deposed by BofA's attorneys; and review and correct the transcript of his deposition. *See* Galaz Decl. ¶ 4. Because Mr. Galaz was the only Review Appraiser who served as a Representative Plaintiff, it is possible that not one Review Appraiser would have recovered anything if it were not for his efforts.

Fourth, Galaz has been involved in this litigation since early June 2013. *Id.* ¶ 4. Since then, this case has occupied Plaintiff's life and thoughts. *Id.* Without the potential for meaningful compensation, Class Representatives will be deterred from undertaking such a concerted effort in other cases. *See* Schwartz Decl. ¶ 18.

Fifth, the personal benefit that Galaz would receive if he were not allocated a service payment would not compensate him for the foregoing personal costs he has paid in order to benefit the class. Mr. Galaz's active workweeks (from April 2009 to July

NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
PARTIAL CLASS ACTION SETTLEMENT; 13-CV-00561 DOC (JPRx)

2010) will be significantly smaller than for Review Appraisers who worked for a larger portion of the Settlement Class Period. In addition, Mr. Galaz, as a former employee, will not personally reap the benefit of the Settlement's injunctive relief (reclassification of Review Appraiser position), although current and future BofA Review Appraisers will enjoy that benefit as a result of Mr. Galaz's willingness to prosecute this case.

In addition, Galaz is executing a much broader waiver of claims than other Class Members, warranting additional compensation.

For the foregoing reasons, all of which weigh heavily in favor of granting the requested enhancement to Mr. Galaz, undersigned counsel believes that $15,000 is the minimum in a case of this nature which would viably promote the public policy interest in encouraging those with wage claims to assert them despite the fears associated with doing so. Schwartz Decl. ¶ 18; *Gentry v. Super. Court*, 42 Cal.4th 443, 459-61 (2007).

### c.      Attorneys' Fees of One Third of the Common Fund Are Justified.

Defendants have agreed not to oppose any requests for attorneys' fees of one-third of the total Settlement Amount of $5,800,000. Exh. 1 ¶ 49. The U.S. Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund … is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Central R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885) (recognizing common fund doctrines); *Staton*, 327 F.3d at 967 (same). The Ninth Circuit's benchmark for fees in this context is 25 percent of the gross settlement amount. *Glass*, 2007 WL 221862, at *14. Here, Plaintiffs' counsel's request for an upward departure to 33.3 percent (one-third) of the common fund ($1,933,333.33) is justified because a significant result of this Settlement is that Defendants have changed their pay practices and reclassified Review Appraisers as non-exempt from California and Federal overtime laws. *See* Exh. 1 ¶ 60. This injunctive relief component of the settlement is not accounted for in the $5,800,000 settlement, and the financial benefits to current and future Review Appraisers will accrue continually in the future, estimated to be worth millions of dollars. Schwartz

Decl. ¶ 14. Courts consider not only the results achieved and the skill and quality of work – which Plaintiffs submit are high on all counts – but also the risk of litigation and the contingent nature of the fee and the financial burden carried by the Plaintiffs. *See, e.g.*, *In re Omnivision Techs., Inc.*, 2007 WL 4293467, at *9 (N.D. Cal. 2007) (citing in *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002)). The choice of "the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d 1048.

Compensation merely at the benchmark would undercompensate counsel, in light of the projected monetary value of the reforms not accounted for in the $5.8 million common fund. Awarding an upward departure from the benchmark of 25 percent in a common fund case is particularly appropriate when the benefits to the class are not limited to the fund itself. *See In re Bluetooth Headset Prod. Liability Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). "Non-monetary benefits" to the Class, such as causing the defendant "to change its personnel classification practices," are "a relevant circumstance" in the fee analysis. *Vizcaino*, 290 F.3d at 1049; *see also Singer v. Am. Airlines Fed'l Credit Union*, 2006 WL 3093759 (N.D. Cal. Oct. 30, 2006) (injunctive relief for class helps justify fees and plaintiffs' enhancements); *Vizcaino*, 290 F.3d at 1048 ("exceptional results" in "absence of supporting precedents" – as here, regarding appraiser misclassification – is relevant to fee determination).

Plaintiffs' Counsel have expended hundreds of hours litigating this matter, with a risk of no recovery. *See* Schwartz Decl. ¶ 17. With their fee petition, Plaintiffs' Counsel will provide the Court with a detailed breakdown of their hours worked and fees incurred for a lodestar cross-check. Plaintiffs' counsel should not be penalized by use of a straight lodestar in their fees for facilitating an early settlement of a portion of the Class. *See Vizcaino*, 290 F.3d at 1050 n.5 ("We do not mean to imply that class counsel should necessarily receive a lesser fee for settling a case quickly; in many instances, it may be a relevant circumstance that counsel achieved a timely result for class members in need of immediate relief."). In light of *In re Bluetooth Headset*, 654 F.3d at 943,

947-50, Plaintiffs will make their fee petition public more than 15 days in advance of the final approval hearing. *See* [Proposed] Order Granting Preliminary Approval, submitted herewith.

### d. The Notice to the Class Is Sufficient.

The proposed Class Notices to the California and Non-California Settlement Classes, and the proposed method of distribution, are appropriate. *See* Fed. R. Civ. P. 23(c)(2)(B); *Churchill Village, LLC. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *White v. NFL*, 41 F.3d 402, 408 (8th Cir. 1994), *abrogated on other grounds*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 618-20 (1997). The proposed form of notice will be sent via first-class mail and email to the last known mailing address and email address of each Class Member and prior to mailing the Class Notices, the Claims Administrator will consult the U.S. Postal Service's National Change of Address Database (or similar customarily used search method) to review the accuracy of and, if possible, update a Class Member's mailing address. Exh. 1 ¶ 65. The Class Notices (Exh. 1 at Exs. A-1, A-2) provide case and settlement details and the specific options available to Class Members so they can make an informed decision about whether to opt out, submit an Opt-In Form, object, or take no action. A reminder mailing will be sent by the Administrator to all Non-California Settlement Class Members who have not filed an Opt-In Form within 30 days of the mailing of the Notice. *See* Exh. 1 ¶ 68. Class Members will have an ample 60 days to respond to the Notice. *Id.* ¶ 67, 69.

### e. The Requested *Cy Pres* Beneficiary Is Appropriate

Under *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2013), "to avoid the many nascent dangers to the fairness of the distribution process," the Ninth Circuit requires "that there be a driving nexus between the plaintiff class and the *cy pres* beneficiaries." *Id.* (internal quotations omitted). Here, there is. This is a workers' rights suit seeking to enforce the wage laws in California, among other claims, to benefit workers such as appraisers. The Legal Aid Society–Employment Law Center

24

(www.las-elc.org) is likely familiar to the Court as the leading provider of direct legal services in employment law for low-wage workers in California.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs submit that the settlement is fair, adequate and reasonable. Plaintiffs and their counsel believe that the settlement is in the best interests of the Plaintiffs and the Class. Under the applicable class and collective action standards, Plaintiffs request that the Court grant this unopposed motion and: preliminarily approve the Settlement Agreement; certify, for settlement purposes only, the class of Review Appraisers described herein; name Bryan Schwartz Law and Schonbrun DeSimone Seplow Harris & Hoffman LLP as Class Counsel, Victor Galaz as Class Representative, and KCC as Claims Administrator; authorize the mailing of Notice to the Settlement Class; and schedule a final approval hearing date.


DATED: April 8, 2014                          BRYAN SCHWARTZ LAW
                                              SCHONBRUN DESIMONE SEPLOW
                                                HARRIS & HOFFMAN, LLP

                                              By:   /s/ *Bryan J. Schwartz*
                                              Bryan J. Schwartz (SBN 209903)
                                              Attorneys for Plaintiffs

NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
PARTIAL CLASS ACTION SETTLEMENT; 13-CV-00561 DOC (JPRx)