1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BRYAN SCHWARTZ LAW
Bryan J. Schwartz (SBN 209903)
bryan@bryanschwartzlaw.com
William C. Jhaveri-Weeks (SBN 289984)
bill@bryanschwartzlaw.com
1330 Broadway, Suite 1630
Oakland, CA 94612
Telephone: (510) 444-9300
Facsimile: (510) 444-9301

SCHONBRUN DESIMONE SEPLOW
  HARRIS & HOFFMAN LLP
Wilmer J. Harris (SBN 150407)
wharris@sdshhlaw.com
715 Fremont Ave.
S. Pasadena, CA 91030
Telephone: (310) 396-0731
Facsimile: (310 399-7040
[Additional counsel on following page]
*Attorneys for Individual and Representative*
*Plaintiffs and the Putative Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Terry P. Boyd, Ethel Joann Parks, Sonia Medina, Linda Zanko, and Victor Galaz individually, on behalf of others similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>vs.<br><br>Bank of America Corp.; LandSafe, Inc.; LandSafe Appraisal Services, Inc.; and DOES 1-10, inclusive<br><br>Defendants. | Case No.: 13-CV-00561 DOC (JPRx)<br><br>**DECLARATION OF BRYAN J. SCHWARTZ, ESQ., IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PARTIAL CLASS ACTION SETTLEMENT**<br><br>Date:      May 12, 2014<br>Time:      8:30 a.m.<br>Place:     Courtroom 9D, Santa Ana<br>Hon. David O. Carter |

SCHWARTZ DECL. IN SUPP. OF PLAINTIFFS' MOTION FOR PARTIAL CLASS ACTION
SETTLEMENT, 13-CV-00561 DOC (JPRx)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SCHONBRUN DESIMONE SEPLOW
 HARRIS & HOFFMAN, LLP
Benjamin Schonbrun (SBN 118323)
bschonbrun@sdshhlaw.com
Michael D. Seplow (SBN 150183)
mseplow@sdshhlaw.com
723 Ocean Front Walk
Venice, CA 90291
Telephone: (310) 396-0731
Facsimile: (310 399-7040

*Attorneys for Individual and Representative*
*Plaintiffs and the Putative Class*


* * * * * * * * * * * * * * * * * *



Bryan J. Schwartz, Esq., declares as follows:

      1.     I am Counsel of record for Plaintiffs in the above-captioned matter. I am over 18 years of age, and I am competent to testify, and would so testify if called upon to do so, to the following matters on the basis of my personal knowledge, except as to those matters which are stated as upon information and belief, which are matters of which I am informed and which I believe to be true. I submit this declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Partial Class Action Settlement.

      2.     Speaking for all Plaintiffs' counsel, I recommend approval of the Settlement Agreement, a true and correct copy of which is attached hereto as Exhibit 1, and consider it a favorable result for the Review Appraiser Plaintiffs. Plaintiffs' counsel strongly believe that the Settlement is fair and appropriate, is in the best interests of the Settlement Class, and will result in significant financial benefit to the participating class members.

SCHWARTZ DECL. IN SUPP. OF PLAINTIFFS' MOTION FOR PARTIAL CLASS ACTION
SETTLEMENT, 13-CV-00561 DOC (JPRx)

3.     The Settlement is the result of good-faith and aggressively contested negotiations between Plaintiffs and Defendants through their respective attorneys. While Plaintiffs' Motion for Conditional Certification under the FLSA was pending, the Parties attended a mediation session with mediator David Rotman in November 2013. The Parties did not reach resolution.  However, they maintained lines of communication regarding settlement. After Plaintiffs prevailed on their motion and the Court approved Notice to be sent to the FLSA nationwide Class, Plaintiffs moved for Class certification of a California class. The Parties then agreed to undergo a second mediation session with mediator Mark Rudy on January 29, 2014. Based on my many years of practice in the California Employment Bar, Messrs. Rotman and Rudy are two of the most experienced and highly respected employment law mediators in California. The second mediation also did not result in settlement, but Mr. Rudy continued to assist the Parties in arm's-length negotiations. Finally, on February 25, 2014, the Parties finalized a Memorandum of Understanding agreeing to settle the claims of Review Appraisers only. After additional negotiations regarding the settlement language and terms, on April 1, 2014, the Parties finalized the Settlement Agreement for which preliminary approval is presently being sought.

4.     The Settlement Agreement, after all fees and costs are taken out, will provide substantial compensation (over $10,200 on average) to the approximately 370 class members. This calculation is explained in Paragraph 17 below. The Settlement Amount of $5,800,000 is 36% of what I view to be the reasonable full relief that the Review Appraisers could expect to recover if they were successful at trial, which is approximately $16 million, before interest and penalties. This calculation is based upon the following assumptions:

- Full participation of all eligible Review Appraisers, based on information provided by Defendants in aid of mediation;

- Plaintiffs successfully establish willfulness, such that longer 3-year FLSA statute of limitations and 4-year California statute of limitations apply.

2

- Plaintiffs prove 10 hours of overtime worked and three missed meal periods and three days of missed rest periods every week for 47 out of 52 workweeks per year for California Review Appraisers.

- Plaintiffs prove 10 hours of overtime worked every week for 40 out of 52 workweeks per year for Non-California Review Appraisers (I assume a lower number of overtime workweeks for non-California employees because federal law provides for overtime only after employees exceed 40 hours per week, making it less likely that overtime would be earned in partial workweeks (*e.g.*, when days off and holidays are taken), whereas California law provides overtime for hours in excess of 8 per day).

- Assumption does not include interest or penalties (under PAGA, for waiting time or itemized wage statement violations, or for FLSA liquidated damages).

- Assumption includes a 25% discount only on claims of Non-California Review Appraisers to allow for possibility that Court would accept Defendants' Fluctuating Work-Week argument.

5.     Because the participating California Settlement Class Members possess, and under the Settlement Agreement will be required to waive, a broader range of claims, including meal- and rest-break claims, waiting time penalties, itemized wage statement penalties, and PAGA penalties, their *pro rata* settlement shares will be 1.5 times the size of the shares of Non-California Settlement Class Members. In my experience and opinion, this adjustment of the pro rata shares of California Class members is equitable and necessary, because the value of these potential California claims is significant, and providing all Settlement Class members with equal *pro rata* treatment would fail to account for the valuable claims being waived by California Class Members.

Plaintiffs' Counsel's opinion of the fairness of the settlement was shaped by, among other factors, the following (paragraphs 6-9):

6.     The Settlement involves no reversion to Defendants.

7.     The Settlement requires Defendants to pay their own payroll tax share.

3

SCHWARTZ DECL. IN SUPP. OF PLAINTIFFS' MOTION FOR PARTIAL CLASS ACTION
SETTLEMENT, 13-CV-00561 DOC (JPRx)

8.     Even if the Review Appraiser Plaintiffs obtained a favorable judgment in this Court, that judgment could be tied up for years on appeal and could be reversed. Whether real estate appraisers are exempt from overtime laws presents a question on which the Ninth Circuit could potentially disagree with this Court's decision, resulting in additional years of litigation. There is significant value in reaching a settlement now, guaranteeing a significant payment to Class Members in the very near term.

9.     I also weighed the high expenses of class litigation and the ever-present uncertainty associated with continued litigation.

10.     I am informed and believe my client Victor Galaz worked for BofA as a Review Appraiser during the relevant period.

11.     The Parties engaged in document discovery, exchanging over 10,000 pages of relevant materials, and Plaintiffs took the deposition of Defendants' FRCP 30(b)(6) witness, K. Scott Nicholson, on October 22, 2013. Defendants took the deposition of named Plaintiff Victor Galaz (a review appraiser) on October 30, 2013. Plaintiffs' first mediation statement, alone, encompassed a 58-page brief and hundreds of pages of exhibits.

12.     After the November 2013 mediation with Mr. Rotman failed to resolve the case, the Parties were spurred to continue discussing settlement, after the Court granted Plaintiffs' Motion for Conditional Certification denied without prejudice Plaintiffs' Motion for Partial Summary Judgment as premature, and approved the FLSA § 216(b) notice. The briefing of the merits of several of the overtime exemptions at issue gave the Parties a thorough understanding of their relevant positions and the facts and law that would be presented to the Court if this portion of the case were not to settle.

13.     Initially in aid of the mediation, and then upon this Court's grant of Conditional Certification, Defendants produced to Plaintiffs detailed information regarding the potential class members, enabling Plaintiffs to formulate a calculation of their damages claim.

SCHWARTZ DECL. IN SUPP. OF PLAINTIFFS' MOTION FOR PARTIAL CLASS ACTION SETTLEMENT, 13-CV-00561 DOC (JPRx)

14.     In negotiating a settlement of the claims of Review Appraisers, my co-counsel and I pushed very hard for the most advantageous terms for the class and collective class members. In addition to the sizeable average claim per participating review appraiser, the Settlement Agreement provides that BofA will reclassify its Review Appraiser position as non-exempt under both California and Federal law. Going forward, assuming a regular rate of pay of $75,000 for Review Appraisers, and assuming that they work 10 hours of overtime per week, this would provide each Review Appraiser with over $20,000 per year, not including premiums for missed meal and rest periods. The actual amount may be much higher if BofA Review Appraisers continue to work the number of overtime hours that the declarants in this case worked. *See, e.g.*, Declaration of Review Appraiser Victor Galaz (ECF No.44-5) ¶¶ 13, 14 (regularly worked 30-40 hours of overtime per week; rarely took breaks), Krys McCook (ECF No. 63-3) ¶¶ 13, 14 (regularly worked 25 hours of overtime per week; often worked straight to dinner without breaks), and Colin Keller (ECF No. 63-2) ¶¶ 13, 15 (regularly worked 30-40 hours of overtime per week; rarely took breaks). If approximately 85 currently-employed Review Appraisers earn just an extra $20,000 a year each, a single year of reclassification would result in $1.7 million additional compensation for the class members – *i.e.*, an $8.5 million benefit to the Review Appraisers, conservatively, over five years.

15.     Plaintiffs' counsel believe that settling the claims of Review Appraisers, while continuing to litigate the claims of Staff Appraisers, is in the best interests of both groups. Our opinion was shaped in part by our information and belief that Review Appraisers now work fewer hours of overtime and have, on the whole, smaller claims. Review Appraisers also arguably occupy a higher position in Defendants' organization, in the sense that they review the work of Staff Appraisers and have the authority to "fail" reports or instruct Staff Appraisers to perform additional work. The Settlement amount of $5.8 million for the several hundred Review Appraisers is an excellent result for that group. Because the Parties have not agreed to settle the claims of Staff

Appraisers, the Court-approved FLSA § 216(b) Notice was mailed to Staff Appraisers nationwide on March 5, 2014.

16.     Plaintiffs seek reimbursement of litigation costs estimated to be $30,000 – Plaintiffs' share of mediation costs alone were approximately $14,250. Plaintiffs' Counsel will submit the exact litigation costs with their Fee Petition.

17.     Plaintiffs' Counsel will seek $1,933,333.33 in attorneys' fees (one-third of the common fund). In our Fee Petition, Plaintiffs' Counsel will provide the Court with a detailed breakdown of the hours Plaintiffs' Counsel spent and the rates billed, so that the Court may perform a lodestar cross-check. After subtracting the requested attorneys' fees and costs, the PAGA payment to the Labor Workforce and Development Agency, the requested Class Representative enhancement payment, and the Claims Administrator's anticipated fees (capped at $20,000), the remaining estimated Net Settlement Fund to be paid to Settlement Class Members will be approximately $3,783,000. Divided by 370, the estimated allocation per class member is over $10,200.

18.     Undersigned counsel believes $15,000 is the minimum adequate service payment to named Plaintiff Victor Galaz for stepping forward in this matter and working extensively with Plaintiffs' counsel to seek to vindicate the Class's rights. Any less would not viably promote the public policy interest in encouraging those with wage/hour claims to assert them notwithstanding the fears associated with doing so.

19.     In addition to the non-reversionary deal and Defendants bearing their own share of payroll taxes, Plaintiff's counsel insisted that payment be made quickly into a Qualified Settlement Fund to ensure swift disbursement to the class following final approval. In light of these factors and the significant payments to class members, Counsel firmly believe that the Settlement is a fair, advantageous outcome for the Settlement Class.

20.     As I described in my declaration in support of Plaintiffs' Motion for Class Certification (ECF No. 119) I have extensive experience and am qualified to act as Class Counsel, having done so successfully in many similar actions. I do not have any

6

conflicts with the class. I have the financial ability to represent this class through the litigation. Some of my qualifications are as follows:

a) Having previously worked with the plaintiffs'-side employment firms of Passman & Kaplan and Nichols Kaster, and having run my own firm for approximately 5 years, I am experienced in representing clients before numerous U.S. District Courts, the Ninth Circuit, the Federal Circuit, state courts of California, and a host of administrative agencies.

b) I am an experienced wage-and-hour class action litigator and zealous plaintiffs' advocate, with extensive experience litigating employment class actions. I have recently been approved as class counsel, in separate wage/hour actions against corporations, by Judges Saundra Brown Armstrong, Susan Illston, Jeffrey White, Edward Chen, and Claudia Wilken of the United States District Court for the Northern District of California, and was previously approved by Judges Philip Gutierrez and Virginia Phillips of the Central District of California. I was also recently approved as class counsel in wage/hour class actions by the complex divisions of the Superior Court of California in Orange and San Francisco Counties.

c) Some of the cases in which my firm has been approved as Class Counsel include: *Adlao, et al., v. JPMorgan Chase, et al.*, 10-cv-04508-SBA (N.D. Cal.) (a wage/hour class action alleging misclassification of appraisers, like this one); *Wright et al. v. Adventures Rolling Cross Country, et al.*, 12-cv-982-EMC (N.D. Cal.); *Martinez, et al., v. Incom Mechanical, et al.*, 11-cv-01392-SI  (N.D. Cal.); *Pearson, et al. v. Samsonite Company Stores, Inc., et al.*, 09-cv-1263- JSW (N.D. Cal.); *Quiles, et al. v. Koji's Japan Inc., et al.*, Civ. No. 30-2010-00425532-CU-OE-CXC (Orange County Superior Court); *Azadi, et al. v. Carey Limousine, et al.*, Case No.

7

CGC-12-527396 (San Francisco Superior Court); *Garcia, et al. v. Landmark Hospitality, et al.*, Case No. CGC-13-532871 (San Francisco Superior Court). In my work for other firms, I was also approved as Class Counsel in *Zinman v. Wal-Mart*, 09-cv-02045-CW (N.D. Cal.); *Stanfield, et al. v. First NLC Financial Services, LLC*, C 06-3892 (N.D. Cal.); *Rivera, et al. v. Solstice Capital Group*, No. CV 07-1852 PSG (VBKx) (C.D. Cal.); *Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 574 (C.D. Cal. 2008); and *Carter v. Anderson Merchandisers*, 2008 WL 4948489, *8 (C.D. Cal. Nov. 18, 2008).

d)  Among other professional qualifications, I am a 2000 graduate of UC Berkeley's Boalt Hall School of Law, a former law clerk of Hon. Franklin Van Antwerpen (now a senior member of the U.S. Court of Appeals for the Third Circuit), an advisor to and former member of the Executive Committee of the Labor & Employment Law Section of the State Bar of California, a member of the Executive Board of the California Employment Lawyers Association (CELA), and the President of the Foundation for Advocacy Inclusion and Resources (FAIR – a non-profit established by CELA leaders to increase diversity in the profession). I was recently elected to become Chair of the State Bar's 7000-member Labor & Employment Law Section soon.

e)  I appeared before the California Supreme Court as the author of the CELA and Consumer Attorneys of California brief in *Brinker Restaurant Corp. v. Superior Court (Hohnbaum)* (2012) 53 Cal.4th 1004, and CELA's briefs in *Kirby v. Immoos Fire Protection* (2012) 53 Cal.4th 1244, and *Duran v. US Bank, NA* (2012) 137 Cal.Rptr.3d 391 (review

SCHWARTZ DECL. IN SUPP. OF PLAINTIFFS' MOTION FOR PARTIAL CLASS ACTION SETTLEMENT, 13-CV-00561 DOC (JPRx)

granted May 16, 2012), each a wage/hour matter which affects/will affect millions of workers statewide.

f)   I regularly speak and publish articles about employment law topics in professional journals, on the radio, and at law schools, conferences, trainings for new lawyers, and in webinars, having done so on dozens of recent occasions.

g)   As to my nationwide speaking engagements at conferences and seminars (which I often chair, co-chair, or moderate) on a variety of employment law subjects, I have had a special focus on wage and hour class actions under California law. I chaired the State Bar of California's Second Annual Advanced Wage and Hour Seminar in Los Angeles in July 2012 (an annual event I co-chaired and helped start in 2011, and which I helped plan again in 2013 and am assisting to plan in 2014), and chaired the State Bar Labor & Employment Law Section's Annual meeting in Orange County in November 2012. I am helping to plan CELA's Annual Wage and Hour Seminar in 2014. In 2012, I spoke on a panel at CELA's Annual Conference entitled, "The Future of Wage and Hour Class Actions." In 2014, I spoke on and moderated a panel on class action settlement issues for the Impact Fund annual conference in Oakland, California, and am speaking on Emerging Issues in Wage/Hour Class Action Litigation at the CELA Wage/Hour Seminar this year.

h)   Among numerous recent articles I have published, in the current (April 2014) edition of *Plaintiff* magazine, I authored a story entitled, "Class Action Settlement Principles to Take With You into Mediation." I also co-wrote an article for *Plainitff* magazine in 2010 called, "How to Win Court Approval for Your Class-Action Settlement." I wrote the cover story of

9

*Plaintiff* magazine's September 2012 edition, entitled, "Wage-and-hour

class actions: The sky is falling (or is it?) After *Brinker* and *Duran*, what

lies ahead?" The article was reprinted on the cover of the October 2012

edition of *Advocate*, the Journal of Consumer Attorneys Associations for

Southern California.

21.     Upon information and belief, my co-counsel Schonbrun DeSimone Seplow Harris & Hoffman, LLP is also well-qualified to serve as Class Counsel. The firm has extensive experience prosecuting large-scale employment class action cases, as further described in the Declaration of Wilmer J. Harris, Esq., submitted in support of Plaintiffs' motion for Class Certification (ECF No. 120).

22.     Attached hereto as Exhibit 2 is a true and correct copy of the Court's preliminary approval order in *Mojica v. Compass Group*, 13-cv-1754 (Fisher, J) (Mar. 14, 2014).

23.     Attached hereto as Exhibit 3 is a true and correct copy of the Court's final approval motion in *O'Sullivan v. AMN Services, Inc.*, 12-cv-2125 (Spero, M.J.).

24.     My firm solicited bids from three reputable Claims Administrators. Kurtzman Carson Consultants ("KCC") provided what I viewed to be the most competitive bid, with its fees capped at $20,000, and is a capable and reputable Claims Administrator in my prior experience.

25.     I conferred with opposing counsel, and opposing counsel does not oppose this motion.


I declare under penalty of perjury that the foregoing is true and correct.


April 8, 2014
Oakland, California                      /s/ Bryan J. Schwartz
                                         Bryan Schwartz

10

SCHWARTZ DECL. IN SUPP. OF PLAINTIFFS' MOTION FOR PARTIAL CLASS ACTION
SETTLEMENT, 13-CV-00561 DOC (JPRx)