O

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| **TERRY P. BOYD, ET AL.,**<br><br>        **Plaintiffs,**<br><br><br>    **vs.**<br><br>**BANK OF AMERICA CORP., ET AL.,**<br>        **Defendants.** | **Case No.: SACV 13-0561-DOC (JPRx)**<br><br><br>**ORDER GRANTING FINAL APPROVAL OF PARTIAL CLASS ACTION SETTLEMENT AND APPROVAL OF ATTORNEYS' FEES AND COSTS [253] [259]** |

Before this Court is Plaintiff Victor Galaz, on behalf of the California Review Appraiser Class and the Federal Fair Labor Standards Act ("FLSA") Opt-in Review Appraiser Class (collectively, "Settling Plaintiffs"), and his motion for an order granting final approval of the partial class action settlement ("Settlement") reached with Bank of America Corporation, LandSafe Inc., and LandSafe Appraisal Services, Inc. ("Defendants") in the above-captioned case ("Approval Motion") (Dkt. 259) and motion for attorneys' fees and costs ("Fees Motion")

(Dkt. 253).  Oral arguments were heard on November 17, 2014. After considering all relevant written submissions and oral argument, and for the reasons set forth below, the Court GRANTS the Approval Motion and GRANTS the Fees Motion in full.

## I.    BACKGROUND

### A.   Factual History

Plaintiff Terry Boyd filed this class and collective action on April 9, 2013, alleging overtime violations under the FLSA, 29 U.S.C. § 207; overtime violations under California Labor Code §§ 510, 1194, 1198, and California Industrial Welfare Commission Wage Order 4 (the "Wage Order"); itemized wage statement violations under California Labor Code § 226; meal and rest period violations under California Labor Code §§ 512 and 226.7, and the Wage Order; and violations of California Business and Professions Code § 17200 *et seq*. On May 16, 2013, Plaintiffs filed a First Amended Complaint, adding there Representative Plaintiffs and claim for Waiting Time Penalties under California Labor Code § 203. Dkt. 13. On June 6, 2013, Defendants filed an Answer to the First Amended Complaint. Dkt. 21. On June 26, 2013, Plaintiffs filed the Second Amended Complaint ("SAC"), which is the operative complaint, adding Representative Plaintiff Victor Galaz specifically to represent Review Appraisers, and adding a seventh cause of action for Civil Penalties under the Labor Code Private Attorneys General Act of 2004 ("PAGA"), Cal Lab. Code § 2698. Dkt 42.

The SAC asserted causes of action on behalf of two putative classes, (1) individuals that had worked for Defendants during the relevant time period as "Residential Appraisers and other similar positions" ("Residential Appraisers"), and (2) individuals that had worked for Defendants during the relevant time period as "Review Appraisers and other similar positions" ("Review Appraisers").  SAC ¶ 1, 20. Plaintiffs alleged Defendants maintained a uniform policy misclassifying hundreds of California-based real estate appraisers as exempt. *Id.* ¶ 24. As a result, Plaintiffs maintain, these employees were not paid overtime for long hours and were not provided meal and rest periods, in violation of the California labor code. *Id.* ¶ 2.

The SAC defines the Collective Class as: "All persons who are or have been employed by Defendants as Appraisers, including employees with the job title 'Staff Appraiser' or

'Residential Appraiser' and any other employee performing the same or similar duties for Defendants and Review Appraisers ('Review Appraiser,' 'Senior Review Appraiser;' or positions consisting of similar job duties) within the United States at any time from three years prior to the filing of this Complaint to the final disposition of this case." *Id.* ¶ 20. The SAC defines the California Class similarly, but with a four-year statute of limitations. Id. ¶ 36. The SAC also defines two sub-classes for the California penalty claims, based on the different statutes of limitations for those claims. *Id.* ¶¶ 37, 38.

In November 2013, after some discovery and after Plaintiffs' FLSA § 216(b) Motion had been taken under submission but before an Order issued, Plaintiffs and Defendants agreed to mediate their claims. After an initial failure to reach resolution, Parties sought to mediate again before a different skilled mediator. On February 25, 2014, the mediation yielded a Memorandum of Understanding to settle the Review Appraisers' claims only. On April 1, 2014 the Parties finalized the Settlement.

Because the Parties did not agree to settle the claims of Staff Appraisers, the Court-approved FLSA § 216(b) Notice was mailed to eligible Staff Appraisers nationwide on March 5, 2014. The Court also granted Plaintiffs' motion for Class Certification (now on behalf of California Staff Appraisers only, and not California Review Appraisers), on June 27, 2014 (Dkt. 232).

On June 26, 2014, the Court granted Plaintiffs' Unopposed Motion for Preliminary Approval of Partial Class Action Settlement (Dkt. 229). The Court also granted, for settlement purposes only, Class Certification to the California Review Appraisers. *Id.* at 1.

### B.   Terms of the Settlement

The Settlement includes a payment of $5,800,000, all of which will be distributed and none of which reverts to Defendants, plus the employers' share of payroll taxes on the portion of the settlement payments considered wages. Pl.'s Unopposed Mot. Prelim. Approval Partial Class Action Settlem. (Dkt. 166) at 4. The Settlement also includes a reclassification of the Review Appraiser position to non-exempt, which Plaintiffs expect to have significant financial benefits for all Review Appraisers going forward. *Id.* at 5, Decl. of Bryan Schwartz in Support

of Pls' Unopp. Mot. for Preliminary Approval of Partial Class Action Settlement ("Schwartz Decl. I") (Dkt. 167). The Settlement pays on average more than $10,200 each to approximately 370 Review Appraisers who worked for Defendants since 2009 (in California) or 2010 (nationwide). *Id.* at 15, Schwartz Decl. I ¶¶ 4, 17.

From the $5,800,000 common fund, Plaintiff is seeking:

- the deduction of one-third of the Settlement Amount as attorneys' fees ($1,933,333.33);
- reimbursement of actual litigation costs of $30,000;
- an enhancement payment to Mr. Galaz of $15,000.;
- a payment of $18,750 to the California Labor Workforce Development Agency ("LWDA") for the PAGA claims;
- claims administrator charges for printing and mailing the Notice of Settlement, processing opt-in forms, calculating payment amounts, and issuing and mailing settlement checks, along with related necessary tasks – to total not more than $20,000.

Schwarz Decl. In Supp. Of Pls' Mot. for Approval of Att'ys Fees and Costs (Schwarz Decl. II) Exh. 1 (Settlement Agreement) ¶¶ 16-17, 48-51.

The remaining amount of the fund will be distributed to class members, with Settlement Class Members allocated a share of the Net Settlement Amount based on the number of workweeks that they worked for Defendants during the relevant Class periods. *Id.* at 5, 53. California Settlement Class members have claims for meal/rest period violations, PAGA penalties, waiting time violations, and wage statement violations, so they will receive 1.5 times as large a pro rata share per workweek as Non-California Settlement Class Members. *Id.* ¶ 5, Schwartz Decl. I ¶ 5.

This Settlement is non-reversionary. As such, if some eligible California Class Members had opted-out or decline to deposit their checks, or eligible Non-California Class Members do not submit an Opt-In form, participating Class Members will receive a second payment of their *pro rata* share of the unclaimed amount. Settlement Agreement ¶ 57. If the unclaimed amount

is under $50,000, however, the Parties have agreed that this amount will be distributed to a *cy pres* recipient, the Legal Aid Society – Employment Law Center. *Id.*

The Review Appraiser position will be reclassified in 2014 – as a result of this settlement – as nonexempt. Settlement Agreement ¶ 60. Due to this reclassification, going forward all Review Appraisers will be compensated for their overtime, missed meal/rest period (in California), and will receive wage statements with additional itemization in recognition of their non-exempt status, specifically, hours worked per pay period and overtime hours per pay period. *Id.*

### C.   Notice to Class Members

Consistent with the Court's order, the Parties retained claims administration firm KCC to execute the notice and claims administration procedures. Dkt. 229 ¶ 9; Approval Mot., Decl. of Stefanie Gardella ("Gardella Decl.") ¶ 3. The California and non-California Settlement Notices described the litigation, terms of the Settlement, and each Class Member's option with regard to the proposed settlement. *Id.* Exs. A, B. Each notice included the minimum Settlement amount that the recipient would receive if he or she opted into the case. *Id.*

On August 1, 2014, KCC mailed the Notice Package. *Id.* ¶¶ 7-9. The Package included a Settlement Notice and, for the non-California Appraisers, and Opt-in and Claim Form. *Id.* The Notice informed each recipient of the work week total, based upon Defendants' employment records, used to calculate the recipient's minimum settlement payment amount, and steps to take if they believed the total was inaccurate. *Id.* After efforts by KCC to obtain accurate address information for class members, all but two were contacted. *Id.* ¶¶ 13-14. In September 2014, KCC made telephone calls to all those who had not opted into the Settlement to ensure that they had received the Notice Package. *Id.* ¶ 17. Approximately two weeks before the October 6, 2014 deadline, KCC sent a final reminder letter, drafted by Plaintiffs' Counsel, to each Class Member who had not yet opted into the Settlement. *Id.* ¶ 16.

More than 95% of the Review Appraisers covered by the deal have chosen to accept it, and none have objected or affirmatively opted-out. Decl. of Bryan Schwartz in support of Approval Mot. (Schwarz Decl. III) ¶ 3; Gardella Decl. ¶¶ 18-20. Of the 308 Non-California

1  Class Member, 291 affirmatively submitted opt-in forms. Schwartz Decl. III ¶ 3; Gardella Decl.
2  ¶¶ 4, 20.

3      **II.**    **LEGAL STANDARD**

4      "The claims, issues, or defenses of a certified class may be settled, voluntarily
5  dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e).  Court
6  approval involves a two-step process: (1) preliminary approval of the settlement; and (2)
7  following a notice period to the class, final approval of the settlement at a fairness hearing.  *See*
8  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).  The
9  Court may issue final approval of a class settlement "only after a hearing and on finding that it
10  is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *In re Bluetooth Headset prods.*
11  *Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

12      Rule 23(e)'s primary concern is "the protection of those class members, including the
13  named plaintiffs, whose rights may not have been given due regard by the negotiating parties."
14  *Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of San Francisco*, 688 F.2d
15  615, 624 (9th Cir. 1982).  To determine if a settlement is fair, some or all of the following
16  factors should be considered: (1) the strength of Plaintiffs' case; (2) the risk, expense,
17  complexity, and duration of further litigation; (3) the risk of maintaining class certification; (4)
18  the amount of settlement; (5) the amount of investigation and discovery that preceded the
19  settlement; (6) the experience and views of counsel; and (7) the reaction of class members to
20  the proposed settlement.  *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir.
21  1998); *Staton v. Boeing*, 327 F.3d 938, 959 (9th Cir. 2003).

22      The relative degree of importance attached to any particular factor depends on the nature
23  of the claims advanced, the types of relief sought, and the unique facts and circumstances of
24  each case.  *Officers for Justice v. Civil Service Comm'n of City and County of San Francisco*,
25  688 F.2d 615, 625 (9th Cir. 1982).  "This list is not exhaustive, and different factors may
26  predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370,
27  1376 (9th Cir. 1993).  In addition to these factors, the Court may consider the procedure by
28  which the parties arrived at the settlement to determine whether the settlement is truly the

product of arm's length bargaining, rather than the product of collusion or fraud. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).

The Court's role in evaluating the proposed settlement "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (quoting *Officers for Justice*, 688 F.2d at 625). In evaluating a settlement agreement, it is not the Court's role to second-guess the agreement's terms. *Officers for Justice*, 688 F.2d at 625. "Rule 23(e) wisely requires court approval of the terms of any settlement of a class action, but the power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed. *Evans v. Jeff D.*, 475 U.S. 717, 726 (1986); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("Neither the district court not this court ha[s] the ability to delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety."). In general, however, there is a strong judicial policy favoring class settlements. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). The ultimate decision to approve a class action settlement rests in the district court's sound discretion. *Id.*

### III. ANALYSIS

#### A. Settlement Approval

##### 1. Strength of Plaintiffs' Case

Plaintiffs maintained that Defendants would be unable to meet their burden of establishing that Review Appraisers fell into any applicable overtime exemption, under either Federal or California law, and presented a strong case. Approval Mot. at 10. On the other hand, Defendants have made cogent arguments that licensing requirements bring the appraisers under the professional exemption. *Id.* The administrative and professional exemptions take into account whether the employee exercise independent judgment and discretion with respect to matters of significance to the business, and Defendants argue that home valuations meet this

test. *Id.* The Ninth Circuit has not weighed in on the subject of real estate appraiser classification, yet has found that other types of appraisers exempt as a matter of law. *See, e.g.*, *In re Farmers Ins. Exch.*, 481 F.3d 1119, 1129-30 (9th Cir. 2007). As such, significant uncertainties and risks exist, making settlement advantageous at this juncture.

### 2. Risk, Expense, Complexity and Duration of Further Litigation

This litigation has been pending for a year and a half. In addition to the murky legal issues, Class Counsel maintains settlement at this point would avoid the delay of several years of trial and appeal. Approval Mot. at 13. Trial would present significant risks for the Plaintiffs, given the lack of direct Ninth Circuit authority, and class certification issues, discussed below. *Id.* This settlement appears to be an expeditious way to resolve this litigation and provide class members a disbursement in a timely manner.

### 3. Risk of Maintaining Class Certification

For settlement purposes only, the Court granted class certification to the proposed class of California Review Appraisers on June 23, 2014 (Dkt. 229). If the action proceeded, Plaintiffs would be exposed to the risks of decertification common to misclassification cases. Approval Mot. at 13. In addition, certain class members signed arbitration or severance agreements that Defendant could attempt to enforce, potentially reducing the size of the class. *Id.* It is not clear that the Plaintiff could have maintained its class status through trial. The Settlement protects the class from these additional risks.

### 4. Amount of Settlement

The current Settlement provides $5,800,000 to the class, and amounts to 36% of full possible relief. Dkt. 259 at 11. The average recovery per Class Member participating is ample, $10,840, with an impressive $30,000 going to Class Members who worked for the full Class Period. Decl. of Bryan Schwartz in Support of Approval Mot. (Schwarz Decl. III) ¶ 4. This amount is greater than the settlement amounts in similar wage and hour class action in this Circuit. *See  O'Sullivan v. AMN Servs., Inc.,* 12-cv-2125 (N.D. Cal. Feb. 7, 2014) (final approval for a $3 million settlement for a  class of 11,685 people, averaging $478 per person), *Carter v. Anderson Merchandisers, LP*, 2010 WL 144067 (C.D. Cal. Jan. 7, 2010) (approving

$3.625 million settlement ($2.617 million net) for 313 FLSA class members and 174 California class members in a wage and hour class action alleging misclassification, an average of $5,374/per person); *Ma v. Covidien Holding, Inc.*,  2014 WL 360196, at *5 (C.D. Cal. Jan. 31, 2014) (finding that settlement providing "9.1% of the total value of the action [was] 'within the range of  reasonableness,'" where settlement provided approximately $2,500/person for 974 class members, before fees, costs and enhancements were subtracted). The Court is satisfied that this amount is more than fair. *See Hanlon*, 150 F.3d at 1027 ("Of course it is possible . . . that a settlement could have been better.  But this possibility does not mean that [the] settlement presented [is] not fair, reasonable or adequate. . . . The question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."). The percentage of the maximum recovery seems appropriate given the risk associated with "bringing questions of first impression in a complicated area of employment law." *Elliott v. Rolling Frito-Lay Sales, LP*, No. SACV 11-01730 DOC, 2014 WL 2761316, at *7 (C.D. Cal. June 12, 2014).

### 5.    Extent of Investigation and Discovery

After litigating for a year and a half, the parties had sufficient information to assess the risks and benefits of settlement versus continued litigation. Class Counsel defended Class Representatives' depositions and took the deposition of the 30(b)(6) witness for the defendants; additionally, the Parties have exchanged over 10,000 pages of relevant discovery. Schwartz Decl. III ¶ 6. Additionally, parties prepared extensive briefing on class certification and summary judgment, and mediated with two top mediators. *Id*. This is a matter where both parties were aware of the potentially treacherous road ahead, and wisely chose an alternate course.

### 6.    Experience and Views of Counsel

Counsel on both sides are experienced in litigation. Schwartz Decl. II ¶ 18; Decl. of Wilmer J. Harris, Esq. in Support of Mot. for Attorney's Fees & Costs (Dkt. 255) ¶¶ 4-22. Class Counsel has significant experience in both wage and hour claims and the procedures for class and collective actions. *Id.* During settlement, parties availed themselves of two

distinguished employment mediators. Schwartz Decl. ¶ 7 "[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight." *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) *aff'd,* 661 F.2d 939 (9th Cir. 1981).

### 7.    Reaction of the Class Members to the Proposed Settlements

On August 1, 2014, the claims administrator KCC mailed the Notice package, consisting of the Settlement Notice, and, for non-California Review Appraisers, an Opt-in and Claim form. The Settlement Notices described the litigation, terms of Settlement, and each class member's options with regards to the proposed Settlement. Gardella Decl. Exs. A, B. KCC diligently searched for valid addresses for all class members and placed telephone calls to ensure all class members received notice. *Id.* ¶ 5, 11-12, 17.  The deadline to respond was October 6, 2014.

Class members have been overwhelmingly supportive of the proposed settlement. More than 95% of the Review Appraisers covered by the deal chose to accept it, and none objected or affirmatively opted-out. Schwartz Decl. ¶ 3; Gardella Decl. ¶¶ 18-20. Of the 308 Non-California Class Member, 291 affirmatively submitted opt-in forms. Schwartz Decl. ¶ 3; Gardella Decl. ¶¶ 4, 20. This is a remarkable result considering the myriad reasons class members may have to elect not to opt in. *See Rutti v. Lojack Corp.*, 2012 WL 2151077, at * 5-6 (C.D. Cal. July 31, 2012). All disputes from class members regarding calculation of their work-week totals were resolved positively. Dkt. 259 at 8. The Court finds that this factor weighs in favor of the Settlement.

### 8.    Objections or Exclusions

As mentioned above, no class members actively objected to the settlement, and none affirmatively opted-out. An absence of any opposition to the proposed settlement reflects very positively on its fairness. *Hanlon*, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 837 (9th Cir. 1976).

### 9.   Conclusion

In weighing the factors listed above, the Court finds that the settlement is fair, adequate, and reasonable.  *See* Fed. R. Civ. P. 23(e)(2).  The Court finds no evidence suggesting that the settlement is the product of fraud or overreaching by, or collusion between, the negotiating parties.  *See Rodriguez*, 563 F.3d at 965.

### B.   Class Representative's Requested Enhancement Payment

At its discretion, the Court may award incentive or service awards to named plaintiffs to compensate them for work done on behalf of the class and in consideration of the risk undertaken in bringing the action. *Rodriguez,* 563 F.3d at 958–59; *Staton ,* 327 F.3d at 977 (recognizing that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable); *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *16 (N.D. Cal. Jan. 26, 2007) (approving payments of $25,000 to each named plaintiff); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (awarding $50,000 to a lead plaintiff).

In *Van Vranken*, the court articulated the following relevant factors to assess the appropriateness of a Class Representative's enhancement: (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representatives; (3) the amount of time and effort spent by the class representatives; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representatives as a result of the litigation. 901 F. Supp. at 299.

Plaintiffs seek an enhancement payment of $15,000 for the Class Representative Victor Galaz.  Regarding the first factor, Plaintiff Galaz asserts that he risked his reputation as a result of bringing this case and serving as the sole Review Appraiser Class Representative. *See* Decl. of Victor Galaz in Supp. of Mot. for Prelim. Approval (Galaz Decl.) (Dkt. 168) ¶ 7. Mr. Galaz believes he put his career at risk, as future employers may not hire him, or large mortgage sellers will not place him on "fee appraisal panels," making it more difficult to find work. *Id.* Next, Mr. Galaz claims he is entitled to an award because he was subject to increased "notoriety" due to his prominent role as the sole Review Appraiser name in the case. Mr. Galaz

explains that he risks black-balling in the industry and has suffered emotional costs as a result of serving in this role. *Id.* ¶¶ 6-8. Mr. Galaz states he has also expended over 75 hours of time on this case. While this time is not overwhelming, it is a significant contribution. Further, Mr. Galaz has been involved in the litigation since early June 2013. *Id.* ¶ 4. Finally, due to his workweeks, without the enhancement, Mr. Galaz would recover less than many other Class Members. Schwartz Decl. III ¶ 10.

Having reviewed the declarations submitted in support of this request, the Court finds that incentive awards of $15,000 to Mr. Galaz is reasonable in light of the time and effort he expended for the benefit of the class and the risks associated with representing the class. Further, the incentive award is particularly deserved in this employment dispute, where Plaintiff undertook a significant "reputational risk" in bringing this action against their former employer. *See Rodriguez*, 563 F.3d at 958–59.

### C.   Claims Administration

Class Counsel is seeking up to $20,000 to cover the costs of claims administration. The Court deems this amount reasonable given the services provided by the claim administrator, KCC (mailing the notice, calling class members, receiving claims, resolving disputed claims). Gardella Decl. ¶ 24. The Court therefore approves this payment.

### D.   California Labor and Workforce Development Agency

The Court finds that payment to the California Labor and Workforce Development Agency of $18,750 as its share of the settlement of civil penalties in this case is fair, reasonable, and appropriate.

### E.   *Cy Pres* Beneficiary

"A cy pres award must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members and must not benefit a group too remote from the plaintiff class." *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (citations omitted). Here, the Legal Aid Society-Employment Law Center is an appropriate *cy pres* beneficiary. The Legal Aid Society-Employment Law Center provides direct legal services in employment law for low-wage workers in California. Dkt. 166 at 24. This is a workers' rights suit seeking to

enforce the wage laws in California, among other claims, to the benefit of workers such as appraisers.  Thus, the Court finds the relevant nexus between the underlying statutes and the interests of silent class members. The group is not too remote from the Plaintiff class.

### F.    Attorney's Fees and Costs

Class Counsel seeks to recover litigation costs of $30,000 and fees of $1,933,333 (one third of the total settlement). Fees Mot. at 1. Defendants have not objected to the fees sought. Parties have agreed that in the event the Court awards less than the requested fees and costs, the rest of the settlement agreement will remain in effect, and the remaining amount will be redistributed to the Class Claimants on a pro rata basis. Settlement Agreement ¶ 49.

"[A] private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.,* 557 F.2d 759, 769 (9th Cir.1977). "This rule, known as the 'common fund doctrine,' is designed to prevent unjust enrichment by distributing the costs of litigation among those who benefit from the efforts of the litigants and their counsel." *In re Omnivision Technologies, Inc.,* 559 F.Supp.2d 1036, 1046 (N.D. Cal. 2008) (quoting *Paul, Johnson, Alston, & Hunt v. Graulty,* 886 F.2d 268, 271 (9th Cir.1989)). District courts have the discretion to calculate fees by either calculating a lodestar or awarding a percentage of the common fund. *See, e.g., Chemical Bank v. City of Seattle (In re Washington Pub. Power Supply Sys. Sec. Litig.),* 19 F.3d 1291, 1296 (9th Cir.1994).

In common fund cases, the "benchmark" percentage award is 25 percent of the recovery obtained, with 20 to 30 percent as the usual range. *See, e.g., Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002). When departing from the "benchmark," court must provide "adequate explanation in the record of any 'special circumstances' justifying a departure." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) (quoting *Six (6) Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir.1990). The ultimate amount must be supported by findings that take into account all of the circumstances of the case, including the result achieved, the risk involved in the litigation, the skill required and

quality of work by counsel, the contingent nature of the fee, awards made in similar cases, and the lodestar crosscheck. *Vizcaino* at 1048–50.

 Especially in a class action, "the district court must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper." *Zucker v. Occidental Petroleum Corp.,* 192 F.3d 1323, 1328–29 (9th Cir.1999); *accord Staton,* 327 F.3d at 963–64.

There are significant benefits to the percentage approach, including consistency with contingency fee calculations in the private market, aligning the lawyers' interests with achieving the highest award for the class members, and reducing the burden on the courts that a complex lodestar calculation requires. *See In re Activision Sec. Litig.,* 723 F.Supp. 1373, 1374-77 (N.D.Cal.1989).

### 1.    Benchmark

Plaintiffs are seeking an attorneys' fee award above that of the "usual range." *Vizcaino*, 290 F.3d at 1047. Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case. *Id.* at 1048. The Court finds that an award higher than the benchmark is well supported by Class Counsel's work on this matter and the exceptional result obtained for the Class, both in the monetary and non-monetary relief. Class Counsel will be awarded its requested fees in the amount one third of the total settlement, for a total of $1,933,333.33.

Result Achieved and Risk in Litigation

Class Counsel argues it has achieved an exceptional result for the class members. An average class member will receive $10,840. The amount is 36% of the full possible relief, very respectable considering the risks in endeavoring into an uncharted area of the law. Plaintiffs faced a significant risk by raising an issue, the classification of real estate appraisers, not yet addressed by the Ninth Circuit. The class also faced potential challenges to certification due to arbitration and severance agreements signed by a significant number of class members. However, although impressive, this issue *alone* does not justify a departure from the benchmark of over 8%. *Vizcaino*, 290 F.3d at 1050 (awarding 28% for an "exceptional result").

1    The Settlement has received broad-based support from the Class, evidenced by the high

2    opt-in rate, and lack of any objections or affirmative opt-outs. *In re Heritage Bond Litig.*, No.

3    02-ML-1475 DT, 2005 WL 1594403, at *22 (C.D. Cal. June 10, 2005)  ("The existence or

4    absence of objectors to the requested attorneys' fee [as disclosed in the Class Notice] is a factor

5    is determining the appropriate fee award."). Class members appear truly satisfied with the relief

6    afforded to them under the terms of the settlement, including the attorneys' fees. The lack of

7    any opposition, and the very high opt-in rate of 95%, weighs in favor of an upward

8    modification of the benchmark rate.

9        The Court also finds the non-monetary relief obtained for the class members to create a

10   "special circumstance" justifying greater relief. Under the terms of the Settlement, the benefits

11   to the class are not limited to monetary relief.  Class members will receive significant, ongoing

12   benefits due to their reclassification as nonexempt. Settlement Agreement ¶ 60. *Laguna v.*

13   *Coverall N. Am., Inc.*, 753 F.3d 918, 923 (9th Cir. 2014) (district court acted within its proper

14   discretion when it found that the settlement contains significant benefits for Plaintiffs beyond

15   the cash recovery). Here, the Class Counsel rightly argues that they brought a lawsuit that

16   resulted in Defendants changing their classification of Review Appraisers nationwide, and that

17   this benefit will continue to benefit Class Members and other employees of Defendants in the

18   future. Although these benefits are difficult to monetize, Class Counsel estimates these Class

19   Members will likely see over $8.5 million in benefits over the next five years due to this

20   reclassification. Schwartz Decl. I ¶ 14. This makes the total constructive value of the settlement

21   over $14 million. Class Counsel argues taking even a small percentage of that amount into

22   consideration, Class Counsel's requested fee award is less than the Ninth Circuit's 25 percent

23   benchmark. Fees Mot. at 11. Taking this factor into account, the Court finds the results in this

24   case to be exceptional, weighing strongly in favor of the one third fee award.

25   <u>Skill and Work of Counsel</u>

26       Class Counsel are skilled in the areas of class actions and employment. Schwartz Decl.

27   ¶¶ 18-21; Harris Decl. ¶¶ 4-17. This experience was demonstrated through Counsel's merits

28   briefing, subsequent management of complex litigation with numerous plaintiffs, and obtaining

a favorable settlement. Counsel spent over 3,000 hours litigating the case. Schwartz Decl. III ¶ 10. It investigated and filed the Complaint; drafted and filed declarations for numerous employees; filed and won a motion for conditional certification; exchanged over 10,000 pages of discovery; took the deposition of Defendants' Rule 30(b)(6) witness; defended the depositions of two named Plaintiffs (Boyd and Galaz); engaged in two mediations, each of which required significant briefing; and filed a motion for class certification. Successful settlement of this action was not a foregone conclusion, and Class Counsel's skills and diligent work enabled a very beneficial result for class members. Counsel litigated effectively, and their experience was essential for obtaining the result. *In re Heritage Bond Litig.*, 2005 WL 1594403, at *19 ("prosecution and management of a complex national class action requires unique legal skills and abilities" weighing in favor of an increased fee). The legal issues in this matter were challenging and presented significant risks, and Counsel represented in oral argument that their work on this case precluded them from addressing other matters. *Id*; *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) (noting that counsel had to forgo significant other work). The skill and work of counsel merits an upward adjustment from the benchmark.

<u>Risk of Non-Payment Assumed by Counsel</u>

Class Counsel spent over a year and a half, and over 3,000 hours litigating this case on a purely contingency basis. Fees Motion at 10, Schwartz Decl. II ¶ 10, Decl. of Wilmer Harris in Support of Fees Motion ("Harris Decl.") Ex. A. "Courts consistently recognize that the risk of non-payment or reimbursement of expenses is a factor in determining the appropriateness of counsel's fee award." *In re Heritage Bond Litig.*, 2005 WL 1594403, at *21. Both of the firms representing the Class are small firms with fewer than fifteen attorneys. Firms of this size face even greater risks in litigating large class actions with no guarantee of payment. The Court finds that the considerable risk in this case due to the uncertain legal terrain, coupled with Counsel's contingency fee arrangement, weigh in favor of an increase from the benchmark rate.

<u>Similar Cases Support an Award of this Magnitude</u>

Decisions in analogous wage and hour suits have found awards of one third of the common fund appropriate.  *See, e.g., Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM SHX, 2008 WL 8150856, at *16 (C.D. Cal. July 21, 2008) (modifying a request for 38% of the common fund downward to 34% of the $8,500,000 common fund); *Elliott v. Rolling Frito-Lay Sales, LP*, No. SACV 11-01730 DOC, 2014 WL 2761316, at *10 (C.D. Cal. June 12, 2014) (although the case was resolved early in litigation, the Court found that a 30 percent was a reasonable fee award considering counsel's willingness to accept difficult legal challenges and the risk of nonpayment); *Stuart v. Radioshack Corp.*, No. C-07-4499 EMC, 2010 WL 3155645, at *6 (N.D. Cal. Aug. 9, 2010) (award of one third the settlement amount); *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 450 (E.D. Cal. 2013) (collecting cases). As such, while by no means typical, an award of one third is within the range of percentages which courts have considered reasonable in other class action lawsuits.

### 2.    Lodestar Crosscheck

In order to ensure that attorneys' fees are reasonable, courts can cross-check the benchmark amount by applying the lodestar analysis. *See Vizcaino*, 290 F.3d at 1050. "[The lodestar] figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941. "The lodestar calculation serves as a point of comparison by which to assess the reasonableness of a percentage award. As a result, the lodestar can be approximate and still serve its purpose." *Fernandez*, 2008 WL 8150856, at *14.

The court must first establish whether the hourly rates sought by counsel are reasonable. "The district court must determine a reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting fees." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) *opinion amended on denial of reh'g*, 808 F.2d 1373 (9th Cir. 1987). The court has reviewed the lodestar rates sought by Class Counsel and supporting declarations,

and determined that they are reasonable for employment attorneys in the same geographic

markets as Plaintiffs' counsel for attorneys of their experience level. Borgen Decl.; Desai Decl.

Next, the Court turns to the number of hours devoted to the case. The court finds that the

amount of the work that Class Counsel put into this case was necessary, given that the lawsuit

was filed over one and half years ago, and taking into account the aggressive nature of the

litigation. Schwartz Decl. II ¶ 15. Parties have provided sufficient evidence to support their

hours worked. Schwartz Decl. II ¶ 10, Exh. 5; Harris Decl. Exh. A.

The Court must take into account, however, that this case was filed on behalf of two

groups (the Staff Appraisers and Review Appraisers), only one of which is settling. To prevent

duplicative recovery, and ensure a fair recovery to the Review Class members (who should not

bear additional costs of work done to benefit the Staff Appraisers), the Court finds it

appropriate to consider in its lodestar only 50% of the work performed for the benefit of both

Staff Appraisers and Review appraisers. This lodestar is estimated at $748,924.38. Schwartz

Decl. II ¶ 14 & Ex. 5; Harris Decl. Ex. A. This constitutes a multiplier of 2.58 (versus 1.42, had

the Court considered the total time spent for the benefit of both classes.) This is a high lodestar

payment, but not out of the range of fees awarded for class action settlements. *See Vizcaino*,

290 F.3d at 1051 n. 6 (finding multiples ranging from one to four are frequently applied in

common fund cases).

### 3.    Costs

With respect to the litigation expenses, counsel requests costs in the amount of $30,000.

*See* Harris Decl. Ex. B; Schwartz Decl. II ¶ 16; Declaration of Erica Posey (Dkt. 274). The

Court has reviewed the declarations and supporting documentation and has determined that the

costs are reasonable, considering this litigation has been underway over a year and a half.

### 4.    Conclusion

All of these factors considered, the Court finds that there are unusual circumstances to

justify diverging from the benchmark rate of 25%. The Court determines that an award of one

third of the Settlement fund in attorneys' fees is appropriate considering the exceptional terms

of the Settlement, in both the monetary and non-monetary relief; the overwhelming support of the class for the settlement; and the considerable risks in litigation.

## IV.    DISPOSITION

For the reasons stated above, the Court hereby grants final approval of the Settlement based upon the terms set forth in the Preliminary Approval Order and the Settlement Agreement filed by the parties.  The Settlement appears to be fair, adequate, and reasonable to the Review Appraiser California and Collective Classes (the "Settlement Class").

1.  The Court finds that this Settlement satisfies the requirements for class action settlement under Rule 23 and further finds that the Settlement Class has at all times been adequately represented by the Named Plaintiff and Class Counsel.

2.  The Notice approved by the Court was provided by First Class direct mail to the last-known address of each of the individuals identified as Class Members, after first processing such addresses through the U.S. Postal Service change-of-address database, as stated in the declaration of the Claims Administrator. In addition, follow-up efforts were made to send the Notice to those individuals whose original notices were returned as undeliverable. Efforts were also made to contact Settlement Class Members by telephone and e-mail. The Notice adequately described all of the relevant and necessary parts of the proposed Settlement Agreement, the request for an enhancement payment to the Class Representative, and Class Counsel's request for an award of attorneys' fees and costs.

3.  The Court finds that the Notice given to the Settlement Class fully complied with Rule 23, was the best notice practicable, satisfied all constitutional due process concerns, and provides the Court with jurisdiction over the Class Members.

4.  The Court has concluded that the Settlement, as set forth in the Settlement Agreement executed by the Parties, is fair, reasonable, and adequate under state and federal laws, including the Fair Labor Standards Act 29 U.S.C. § 201 et seq. For the reasons stated above, the Court finds the $5,800,000 Settlement Fund established pursuant to the Settlement Agreement is reasonable and adequate.

5.  The Settlement is HEREBY APPROVED in its entirety and the releases encompassed therein are effectuated.

6.  The Settlement Fund shall be dispersed in accordance with the Settlement Agreement as detailed in the Motion for Preliminary Approval of Class Action Settlement, granted on June 23, 2014.

7.  For the reasons set forth above, Representative Plaintiff Victor Galaz is hereby awarded $15,000.

8.  For the reasons set forth above, Plaintiffs' application for Attorneys' fees in the amount of $1,933,333, amounting to one third of the Settlement fund, is granted.

9.  For the reasons set forth above, Plaintiffs' application for reimbursement of litigation costs in the amount of $30,000 is approved.

10. For the reasons set forth above, the Court approves the *cy pres* recipient identified in the Settlement: Legal Aid Society-Employment Law Center.

11. The Court finds and determines that payment to the California Labor and Workforce Development Agency of $18,750 as its share of the settlement of civil penalties in this case is fair, reasonable, and appropriate. The Court hereby gives final approval to and orders that the payment of that amount be paid out of the Settlement Fund in accordance with the Settlement Agreement.

12. Neither this Order nor the Settlement Agreement constitutes an admission or concession by any of the released parties of any fault, omission, liability or wrongdoing. This order is not a finding of the validity or invalidity of any claims in this action or a determination of any wrongdoing by the Defendants. The final approval of the Settlement Agreement does not constitute any opinion, position, or determination of this Court, one way or the other, as to the merits of the claims and defenses of Plaintiffs, Defendants, or the Class Members.

13. The Court hereby enters Judgment approving the terms of the Settlement. This document shall constitute a final judgment with respect to the Claims of the Settlement Class for purposes of Rule 58 of the Federal Rules of Civil Procedure.

14. The claims of the Settlement Class Members are hereby DISMISSED WITH PREJUDICE, with each party to bear his, her, or its own costs, except as set forth herein, and with this Court retaining exclusive jurisdiction to enforce the Settlement Agreement, including jurisdiction regarding over the disbursement of the Settlement.

DATED:  November 18, 2014

_David O. Carter_

_____
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE