BRYAN SCHWARTZ LAW
Bryan J. Schwartz (SBN 209903)
bryan@bryanschwartzlaw.com
Rachel M. Terp (SBN 290666)
rachel@bryanschwartzlaw.com
Eduard R. Meleshinsky (SBN 300547)
eduard@bryanschwartzlaw.com
1330 Broadway, Suite 1630
Oakland, CA 94612
Telephone: (510) 444-9300
Facsimile: (510) 444-9301

SCHONBRUN DESIMONE SEPLOW
  HARRIS & HOFFMAN LLP
Wilmer J. Harris (SBN 150407)
wharris@sdshhlaw.com
Isabel Daniels (SBN 270887)
idaniels@sdshhlaw.com
715 Fremont Ave.
S. Pasadena, CA 91030
Telephone: (310) 396-0731
Facsimile: (310) 399-7040
[Additional counsel on following page]
*Attorneys for Individual and Representative
Plaintiffs and the Putative Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Terry P. Boyd, Ethel Joann Parks, Sonia Medina, and Linda Zanko individually, on behalf of others similarly situated, and on behalf of the general public,<br><br>                    Plaintiffs,<br><br>   vs.<br><br>Bank of America Corp.; LandSafe, Inc.; LandSafe Appraisal Services, Inc.; and DOES 1-10, inclusive<br><br>                   Defendants. | Case No.: 13-CV-00561 DOC (JPRx)<br><br>**NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:     September 21, 2015<br>Time:     8:30 a.m.<br>Place:    Courtroom 9D, Santa Ana<br>Hon. David O. Carter |

SCHONBRUN DESIMONE SEPLOW
  HARRIS & HOFFMAN, LLP
Benjamin Schonbrun (SBN 118323)
bschonbrun@sdshhlaw.com
Michael D. Seplow (SBN 150183)
mseplow@sdshhlaw.com
Aidan C. McGlaze (SBN 277270)
amcglaze@sdshhlaw.com
Raya Marinova (SBN 286990)
raya.sdshh@gmail.com
723 Ocean Front Walk
Venice, CA 90291
Telephone: (310) 396-0731
Facsimile: (310) 399-7040

*Attorneys for Individual and Representative*
*Plaintiffs and the Putative Class*

NOTICE OF MOTION AND MOTION TO THE COURT AND ALL INTERESTED PARTIES:

**PLEASE TAKE NOTICE** that a hearing will be held on Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement on September 21, 2015 at 8:30 a.m. in the Courtroom of the Honorable David O. Carter, located at 411 W. Fourth St., Santa Ana, CA 92701. At the hearing, representative Plaintiffs Terry Boyd, Ethel Joann Parks, Sonia Medina, and Linda Zanko, through their attorneys and on behalf of all other Staff Appraisers similarly situated, will and hereby do move the Court to: preliminarily approve the $36 million Settlement between the Staff Appraiser Plaintiffs and Defendants Bank of America Corporation, LandSafe Inc., and LandSafe Appraisal Services, Inc. ("Defendants"); name Kurtzman Carson Consultants ("KCC") as the Claims Administrator; authorize the mailing of notices to the Staff Appraiser California Class and nationwide Collective Class; and schedule a final approval hearing date.

The Motion is based upon the Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum of Points and Authorities in Support Thereof; the Declarations of Bryan J. Schwartz, Esq. and Michael D. Seplow, Esq., in support of the motion, and the exhibits thereto, including the Settlement Agreement and the Proposed Class Notice; the Declarations of Terry P. Boyd, Ethel Joann Parks, Sonia Medina, and Linda Zanko in Support of the Motion; all other exhibits and attachments submitted in support of the Motion; any oral argument of counsel; the complete files, records, and pleadings in the above-captioned matter; and such additional matters as the Court may consider. A Proposed Order is submitted herewith.

Dated: August 24, 2015             BRYAN SCHWARTZ LAW

                                         SCHONBRUN DESIMONE SEPLOW
                                           HARRIS & HOFFMAN, LLP

By: _____*/s/ Bryan J. Schwartz*_____
                     BRYAN J. SCHWARTZ
*Attorneys for Individual and Representative Plaintiffs and the Putative Class*

1

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................ 1

II.   THE PARTIES LITIGATED EXTENSIVELY BEFORE SETTLING .. 2

III.  THE PROPOSED SETTLEMENT IS AN EXCEPTIONAL RESULT ... 4

      A.   Proposed Settlement Terms .................................................... 4

           1.   The Settlement Provides Prompt, Meaningful Relief to the
                Class............................................………………………4

           2.   The Settlement Process Provides Fair Notice and the Scope of
                the Release is Appropriate. ........................................... 6

      B.   Factors In The Decision To Settle Include Uncertainty On Liability,
           Maintaining Class Certification, And Appeal-Oriented Delays. ........... 7

           1.   Litigation Concerning Exemption Defenses Always Presents
                Uncertainty ................................................................... 7

           2.   Plaintiffs May Have Lost Their Meal and Rest Period Claims, or
                Had their Class Decertified……………………………....7

           3.   Defendants May Have Succeeded in their Good Faith Defense .. 8

           4.   Plaintiffs May Have Recovered Less in Interest and Penalties ... 9

           5.   Without a Settlement, Recovery Would Have Been Long
                Delayed……………………………………………………9

IV.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL ……. 10

      A.   Class Action Settlements Are Encouraged. ......................................... 10

      B.   The Settlement Is Fair, Adequate and Reasonable. ........................... 10

           1.   The Settlement Is Non-Collusive and Was the Product of
                Extensive Negotiations ................................................. 11

           2.   The Court Should Weigh the Strength of Plaintiffs' Case
                Against the Risk, Expense, Complexity and Likely Duration of
                Further Litigation, and the Risk of Maintaining Class Action
                Status Through Trial. .................................................... 12

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

3.     The Amount Offered in Settlement Weighs Strongly in Favor of Preliminary Approval. ..............................................................12

4.     Given the Extent of Discovery Completed and the Late Stage of the Proceedings, Plaintiffs and Counsel are Well-Situated to Arrive at a Fair Settlement.........................................................14

5.     The Considerable Experience and Strongly Supportive Views of Counsel Weigh in Favor of Preliminary Approval. ..................15

6.     All Additional Settlement Terms are Fair. ...............................15

C.     The Notice to the Class Is Sufficient.................……………...…..25

**V.     CONCLUSION............................................................................................25**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Federal Cases**

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ............................................................ 21

*Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745 (D.N.J. Apr. 8, 2011) .............. 17

*Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945) ................................................... 9

*Brotherton v. Cleveland*, 141 F. Supp. 2d 907 (S.D. Ohio 2001) ................................... 19

*Bucklin v. Zurich Am. Ins. Co.*, 2015 U.S. App. LEXIS 12497 (9th Cir. July 20, 2015)...7

*Carter v. Anderson Merchandisers, LP*, 2010 WL 144067
    (C.D. Cal. Jan. 7, 2010) ............................................................................................. 13

*Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156 (2012) ................................ 7

*Churchill Village, LLC. v. General Electric*, 361 F.3d 566 (9th Cir. 2004) ................... 24

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) .................................. 11

*Craft v. County of San Bernardino*, 624 F.Supp.2d 1113 (C.D. Cal. 2008) ................... 22

*Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529 (2d Cir. 2009) ............................. 7, 21

*Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2013) ..................................................... 24

*Dent v. ITC Serv. Grp., Inc.*, 2013 WL 5437331 (D. Nev. Sept. 27, 2013) .................... 19

*Di Giacomo v. Plains All American Pipeline*, 2001 WL 34633373 (S.D. Tex. Dec. 19,
    2001) ........................................................................................................................... 21

*Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240 (S.D. Ohio
    1991) ........................................................................................................................... 19

*Fernandez v. Victoria's Secret Stores, LLC*, 2008 WL 8150856 (C.D. Cal. July 21,
    2008) ..................................................................................................................... 21, 22

*Fleming v. Covidien Inc.*, 2011 WL 7563047 (C.D. Cal. Aug. 12, 2011) ........................ 9

*Ford v. Alfaro*, 785 F.2d 835 (9th Cir. 1986) ................................................................... 9

*Franklin v. Kaypro Corp.*, 884 F.2d 1222 (9th Cir. 1989) ............................................. 10

*Gautreaux v. Pierce*, 690 F.2d 616 (7th Cir. 1982) ........................................................ 10

*Glass v. UBS Financial Services, Inc.*, 2007 WL 221862
(N.D. Cal. Jan. 26, 2007) ................................................................ 16, 22

*In re Bank of Am. Wage & Hour Empl. Litig.*, 2013 U.S. Dist. LEXIS 180056 (D. Kan.
Dec. 18, 2013) ........................................................................... 20

*In re Beef Industry Antitrust Litigation*, 607 F. 2d 167 (5th Cir. 1979)........................... 10

*In re Beverly Hills Fire Litigation*, 639 F.Supp. 915 (E.D. Ky.1986) ............................ 22

*In re Boston and Maine Corp. v. Sheehan, Phinney, Bass & Green, P.A.*, 778 F.2d 890
(1st Cir.1985).............................................................................. 22

*In re Charter Communications, Inc., Securities Litigation*, 2005 WL 4045741 (E.D. Mo.
June 30, 2005) ............................................................................ 22

*In re Combustion, Inc.*, 968 F. Supp. 1116 (W. D. La. 1997)......................................... 21

*In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990)
........................................................................................... 19

*In re Farmers Insurance Exchange*, 481 F.3d 1119 (9th Cir. 2007) ................................. 7

*In Re IDB Communication Group, Inc., Sec. Litig.*, No. 94-3618 (C.D. Cal. Jan. 17,
1997)..................................................................................... 22

*In Re Melridge, Inc., Sec. Litig.*, No. 87-1426 (D. Or. Mar. 19, 1992, Nov. 1, 1993, Apr.
15, 1996)................................................................................. 21

*In re Merry–Go–Round Enterprise, Inc.*, 244 B.R. 327 (Bankr. D. Md. 2000) .............. 21

*In re Novartis Wage and Hour Litig.*, 611 F.3d 141 (2d Cir. 2010)…………………7, 19

*In re Omnivision Technologies, Inc.*, 2007 WL 4293467 (N.D. Cal. 2007) ................... 23

*In re Revco Sec. Litig.*, 1992 WL 118800 (N.D. Ohio May 6, 1992) ............................. 18

*In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706 (E.D. Pa. 2001) ........................... 22

*In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570 (S.D.N.Y. 2008).................................. 22

*In re Wells Fargo Home Mortgage Overtime Pay Litigation*, 571 F.3d 953
(9th Cir. 2009) ........................................................................... 8

*Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161 (9th Cir. 2014) cert. denied, 135 S. Ct. 2835
(2015) ...................................................................................... 8

*Kakani v. Oracle Corp.*, 2007 WL 1793774 (N.D. Cal. June 19, 2007) ........................ 15

*La Parne v. Monex Deposit Co.,* 2010 WL 4916606 (C.D. Cal. Nov. 29, 2010) ........... 15

*Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918 (9th Cir. 2014)................................. 12, 23

*Lee v. JPMorgan Chase*, 13-cv-0511 (C.D. Cal. Apr. 28, 2015).................................... 21

*Lusby v. Gamestop Inc.*, 2013 WL 1210283 (N.D. Cal. Mar. 25, 2013) ........................ 14

*Lutz v. Huntington Bancshares*, 2014 WL 2890170 (S.D. Ohio June 25, 2014)………...8

*Van Ba Ma v. Covidien Holding, Inc.*, 2014 WL 360196 (C.D. Cal. Jan. 31, 2014)..10, 13

*Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................... 21

*Martin v. Applied Data Sys.*, 972 F.2d 1340 (9th Cir. 1992) ............................................ 9

*McKeen-Chaplin v. Provident Savings Bank, FSB*, 12-cv-03035 (E.D. Cal. Aug. 12, 2015) …………………………………………………………………………..8

*McKenzie v. Federal Express Corp.*, 2012 WL 2930201 (C.D. Cal. July 2, 2012) ........ 11

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 1:05-06583 (N.D. Ill.)..... 19

*Mojica v. Compass Group*, 13-cv-1754 (C.D. Cal.) .................................................. 13

*Officers for Justice v. Civil Service Commission*, 688 F.2d 615 (9th Cir. 1982)............. 10

*O'Sullivan v. AMN Services, Inc.*, 12-cv-2125 (N.D. Cal.) ...................................... 13, 23

*Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389 (2010)......................................................... 9

*Reber v. AIMCO/Bethesda Holdings, Inc.*, 2008 WL 4384147 (C.D. Cal. Aug. 25, 2008) (Carter, J.)…………………………………………………………………………..8

*RJR Nabisco, Inc. Sec. Litig.*, 1992 WL 210138 (S.D.N.Y. Aug. 24, 1992) .................. 22

*Rieve v. Coventry Healthcare Inc.*,11-cv-1032 (C.D. Cal.) ................................. 12, 13, 21

*Roberts v. Texaco, Inc.*, 979 F. Supp. 185 (S.D.N.Y. 1997)...................................... 19, 22

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ............................... 13

*Ross v. U.S. Bank Nat. Ass'n*, 2010 WL 3833922 (N.D. Cal. Sept. 29, 2010)…………17

*Rutti v. Lojack Corp.*, 2012 WL 3151077 (C.D. Cal. July 31, 2012) ............................. 17

*Satchell v. Federal Express Corp.*, 2007 WL 1114010 (N.D. Cal. Apr.13, 2007).... 11, 19

*Singer v. American Airlines Federal Credit Union*, 2006 WL 3093759 (N.D. Cal. Oct. 30, 2006) ............................................................................ 23

*Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990)............... 22

*Staton v. Boeing*, 327 F.3d 938 (9th Cir. 2003) ............................................................... 16

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) ............. 16. 18

*Velez v. Novartis Pharm. Corp.*, 2010 U.S. Dist. LEXIS 125945 (S.D.N.Y. Nov. 30, 2010).......................................................................................................................... 19

*Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009) ......................... 8

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) .............................. 21, 22, 23

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ................................................. 8

*White v. NFL*, 41 F.3d 402 (8th Cir. 1994) ...................................................................... 24

*Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669 (S.D. Iowa 2009)...................... 20

## State Cases

*Bell v. Farmers Ins. Exch.*, 135 Cal. App. 4th 1138 (2006) ............................................. 9

*Gentry v. Superior Court*, 42 Cal. 4th 443 (2007) ......................................................... 19

*Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389 (2010)...................................................... 9

## Statutes, Regulations, Rules and Other Authority

28 U.S.C. § 1292(b)………………………………………………………………………1

29 U.S.C. § 255(a) ........................................................................................................... 8

California Business & Professions Code § 17200 ........................................................... 2

California Labor Code § 203 ........................................................................................ 8, 9

California Labor Code § 226 *et seq.*........................................................................... 8, 9

California Labor Code § 2698 *et seq.* ("PAGA") ................................................ 2, 5, 9, 11

Conte & Newberg, *Newberg on Class Actions* § 11.25 (4th ed. 2002) ......................... 10

Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") .................................*passim*

Federal Rule of Civil Procedure 23 ..................................................................................... 1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

The Court is very familiar with this wage and hour, misclassification case involving residential real estate staff appraisers at Bank of America Corporation's (BofA's) appraisal subsidiary, Landsafe. With this motion, Plaintiffs seek preliminary approval of the parties' non-reversionary, $36 million settlement for 365 class members.

The Court decided in Plaintiffs' favor on hotly-contested motions for Fair Labor Standards Act (FLSA) conditional certification, Rule 23 class certification of the California Labor Code claims, and ultimately, partial summary judgment. The parties completed fact discovery and initiated expert exchanges, and had briefed a final round of motions, by Defendants, seeking to certify the matter for interlocutory appeal under 28 U.S.C. §1292(b) and to decertify the meal and rest period class. Plaintiffs' trial plan, also contested by Defendants, was pending Court approval. The matter was on the brink of trial – set for August 31, 2015 – when the parties had their third full day of mediation over three years, attempting to resolve the case with a top wage-hour class action mediator, Mark Rudy. This time, finally, the parties succeeded in resolving the case.

The $36 million deal provides an average *gross recovery of nearly $100,000 each* to 365 class members. This enormous payday for the class comes despite the lack of prior jurisprudence on real estate staff appraiser exempt classification, recent opinions finding other mortgage lender jobs to be exempt, and BofA's pending motion seeking Ninth Circuit review. The Settlement also includes a commitment to reclassify Landsafe's appraisers, if BofA were to continue to employ in-house Staff Appraisers.

As with the Review Appraiser settlement the Court previously approved in this matter, the $36,000,000 settlement payment will *all* be distributed and none will revert to Defendants, if the Settlement is finally approved. This common fund amount does not even include the employers' share of payroll taxes on the portion of the settlement payments considered wages – a significant additional sum Defendants will pay. Making Staff Appraisers non-exempt would also result in millions of dollars more to current employee class members, who are already collecting an average net of nearly $65,000.

1

The Settlement readily satisfies the standard for preliminary approval, fairly and appropriately resolving the claims of the class in a manner that provides substantial financial relief and policy changes. The eventual final fairness hearing will provide the Court with another opportunity to review the Settlement, focusing on the enhancements and attorneys' fees and costs requested, with the benefit of class members' responses and insight on the rates of participation compared with objections. Accordingly, the parties respectfully request that the Court: (1) grant preliminary approval of the Settlement and authorize the parties to send the proposed Class Notice, (2) name KCC as the settlement administration firm, and (3) schedule a final approval hearing.

## II.     THE PARTIES LITIGATED EXTENSIVELY BEFORE SETTLING.

On April 9, 2013, Plaintiff Terry Boyd commenced this class and collective action alleging various California and federal statutory wage violations plus unfair competition in violation of California Business and Professions Code § 17200 *et seq*. On May 16, 2013, Plaintiffs filed a First Amended Complaint, adding three Representative Plaintiffs and another Labor Code violation. *See* ECF No. 13. On June 6, 2013, Defendants filed an Answer to the First Amended Complaint. *See* ECF No. 21.

On June 26, 2013, Plaintiffs filed the Second Amended Complaint ("SAC"), the current complaint, adding a seventh cause of action for Civil Penalties under the Labor Code Private Attorneys General Act of 2004 ("PAGA"), Cal. Lab. Code § 2698 *et seq*. *See* ECF No. 42. Defendants answered on July 10, 2013. *See* ECF No. 46.

The SAC defines the Collective Class as: "All persons who are or have been employed by Defendants as Appraisers, including employees with the job title 'Staff Appraiser' or 'Residential Appraiser' and any other employee performing the same or similar duties for Defendants and Review Appraisers ('Review Appraiser,' 'Senior Review Appraiser;' or positions consisting of similar job duties) within the United States at any time from three years prior to the filing of this Complaint to the final disposition of this case." *See* SAC (ECF No. 42) ¶ 20.

The SAC defines the California Class similarly, but with a four-year statute of limitations. *Id.* ¶ 36. The SAC also defines two sub-classes for the California penalty claims, based on the different statutes of limitations for those claims. *Id.* ¶¶ 37, 38.

On July 9, 2013, Plaintiffs filed a Motion for Conditional Certification under the FLSA, 29 U.S.C. § 216(b) and Partial Summary Judgment Motion. *See* ECF No. 44.

In October 2013, Plaintiffs deposed Defendants' FRCP 30(b)(6) witness, K. Scott Nicholson, and Defendants deposed Class Representative Terry Boyd. *See* Declaration of Bryan J. Schwartz, Esq., submitted herewith ("Schwartz Decl.") ¶ 11. Thereafter, Plaintiffs deposed Landsafe's Senior VP of Evaluations Production, Tracy Sanderson, and Defendants' additional FRCP 30(b)(6) witness, Christopher Dragan. Defendants deposed Class Representatives Ethel Joann Parks, Sonia Medina, and Linda Zanko, in addition to eight class members. The parties also exchanged three sets of discovery requests – Defendants produced over 200,000 pages of documents. Schwartz Decl. ¶ 13.

In November 2013, the parties mediated with renowned mediator David Rotman. *See* Schwartz Decl. ¶ 3. On November 27, 2013, Plaintiffs informed the Court the mediation had failed, requesting the Court to issue its Order on Plaintiffs' pending §216(b) motion. *See* ECF No. 105 (Notice that ADR Efforts Have Failed). The Parties continued communicating regarding settlement, however. Schwartz Decl. ¶ 3.

On December 11, 2013, the Court issued an Order Granting Plaintiffs' Motion for Conditional Certification, denying without prejudice Plaintiffs' Motion for Partial Summary Judgment. *See* ECF No. 109. On December 27, 2013, the Court approved a Notice to be sent to potential Collective Class members under §216(b). The parties also agreed to mediate again, this time with Mr. Rudy. Schwartz Decl. ¶ 3.

On January 13, 2014, Plaintiffs moved for Class Certification of the proposed California Class. *See* ECF No. 118.

On January 29, 2014, Mr. Rudy mediated the case. *See* Schwartz Decl. ¶ 3. Although the Parties again did not settle, Mr. Rudy continued assisting in arm's-length negotiations. *Id.* On February 25, 2014, the parties finalized a Memorandum of

Understanding to settle the Review Appraisers' claims only. *Id.* at ¶ 4. On November 18, 2014, the Court ordered final approval of the settlement of the Review Appraisers' claims. ECF No. 276. In the interim, the Court granted Plaintiffs' Motion for Class Certification as to Staff Appraisers, on June 27, 2014. ECF No. 232.

On May 6, 2015, after the matter had been fully briefed and argued, the Court granted Plaintiffs' Motion for Partial Summary Judgment and denied Defendants' cross-Motion for Summary Judgment as to Staff Appraisers. On June 15, 2015, Defendants filed a Motion to Decertify the California Meal and Rest Period Class and a Motion to Certify an Interlocutory Appeal under Section 1292(b). Plaintiffs filed their Oppositions on July 13, 2015. The parties also exchanged Rule 26 expert disclosures and detailed reports at that time. *See* Schwartz Decl. ¶ 5.

On July 17, 2015, Mr. Rudy mediated the case again. *Id.* Late in the day, the parties finalized a Memorandum of Understanding settling the Staff Appraisers' claims. *Id.* The parties continued negotiating the complete settlement agreement until August 14, 2015. Settlement, Exhibit 1 to the Schwartz Decl.

As part of the settlement, the Parties agreed to take off calendar the 1292(b) and decertification motions and continue the trial, which was scheduled to begin August 31, 2015. ECF No. 351 (Notice of Settlement).

## III.   THE PROPOSED SETTLEMENT IS AN EXCEPTIONAL RESULT.

### A.   Proposed Settlement Terms

#### 1.   The Settlement Provides Prompt, Meaningful Relief to the Class.

The proposed settlement calls for Defendants' common fund payment of $36,000,000, *none* of which will revert to them, unless the settlement fails all together. *See* Exh. 1 ¶ 57. In particular, unless more than 5% of the Settlement Class Members affirmatively opt out and/or withdraw from the class (giving Defendants a right to void the deal), Defendants will fund the settlement plus the employers' share of payroll taxes (at least hundreds of thousands of dollars) within 15 days of final Court approval and judgment. *Id.* ¶¶ 58, 75, 84, 87.

From the $36,000,000 common fund, the settlement calls for:

4

- the deduction of one-third of the Settlement Amount as attorneys' fees ($12,000,000), subject to court approval (Exh. 1 ¶ 60; Schwartz Decl. ¶ 17);

- reimbursement of actual litigation costs, estimated to be not more than $200,000, subject to court approval (Exh. 1 ¶ 60; Declaration of Michael D. Seplow, Esq. ("Seplow Decl.") ¶ 13);

- an enhancement payment of $25,000 to each of the named plaintiffs, totaling $100,000, subject to court approval (Exh. 1 ¶ 61);

- an enhancement payment of $2,000 to each class member deponent, totaling $16,000, subject to court approval (Exh. 1, ¶ 61);

- an enhancement payment of $1,000 to each class member that responded to discovery requests, totaling $35,000, subject court approval (Exh. 1, ¶ 61);

- a payment of $75,000 to California's Labor Workforce Development Agency ("LWDA") for the PAGA claims (Exh. 1 ¶ 62); and

- claims administrator charges to total not more than $18,000. *See* Exh. 1 ¶ 59.

The remaining amount – approximately $23,556,000 ("Net Settlement Amount") – will provide an average net payment of $64,537 each to the 365 class members, assuming they do not opt out of the case, for California class members, and do not withdraw their FLSA consent forms for non-California class members. *See id.* ¶¶ 57-69. Distribution among the Settlement Class will be done fairly, with Settlement Class Members allocated a share of the Net Settlement Amount based on the actual number of appraisals that they completed for Defendants during the relevant Class periods and their payroll records, and factoring in if they signed a prior release of claims. *Id.* ¶ 64. In addition, the settlement allocation formula will discount by 50% the damages associated with the meal and rest break claims and California penalty claims in addition to the FLSA liquidated damages, to account for litigation risk regarding these claims. *Id.* ¶ 64(b); Seplow Decl. ¶ 9.

If Defendants were to continue to employ in-house Staff Appraisers (BofA has announced its intention to sell the company to CoreLogic), they would take steps to reclassify the Staff Appraiser position (*see* Exh. 1 ¶ 72), so that all Staff Appraisers will

begin to be compensated for their overtime, missed meal/rest periods (in California), and begin to receive itemized wage statements consistent with classification as non-exempt employees. *See* Schwartz Decl. ¶ 16.

### 2. The Settlement Process Provides Fair Notice and the Scope of the Release is Appropriate.

The agreed-upon Class Notice (Exhibit A to the Settlement Agreement) explains the purpose of the Class Notice, and describes the litigation, the terms of the Settlement, and each Class Member's options with regard to participating in the Settlement. Exh. 1 at Exh. A. The Class Notice provides information regarding the consequences of doing nothing, the final approval hearing, and how Class Members can obtain additional information, object, or opt out. *Id.*

Both California and Non-California Class Members may elect to opt out of the Class and thus exclude themselves from the litigation and the Settlement by the deadline. Exh. 1 at Exh. A ("Your Options and Legal Rights in This Settlement"). Class Members who do not timely opt out of the Settlement Class will receive settlement payments by mail. The back of the check will state that by depositing the check, the payee agrees to release all relevant wage and hour claims at issue in this suit. The Notice explains that even if Class Members do not cash the check, they will be subject to the judgment and its associated release of claims unless they timely opt out of the suit. *Id.*; *see also id.* §§ 15-16. Class Members who do affirmatively opt out will not receive a settlement payment, but also will not be subject to any release of claims, and will be deemed never to have participated in the litigation or this Settlement. *Id.* In addition, as explained in more detail in the Class Notice, Class Members who do not opt out will have an opportunity to object to the Settlement. *Id.* §§ 20-21.

When the judgment becomes final, the Class Representatives and each of the Class Members who has not excluded him or herself will release all wage and hour claims that relate to the claims asserted in the lawsuit. Exh. 1 ¶¶ 90-95. Only the named Staff Appraiser Plaintiffs will execute a general release. *See* Exh. 1 ¶¶ 96-97.

### B. Factors in the Decision to Settle Include Uncertainty on Liability, Maintaining Class Certification, and Appeal-Oriented Delays.

The uncertain outcome, likelihood of appeal, and delay in payment absent a settlement favor this resolution. Factors the parties considered in settling include:

### 1. Litigation Concerning Exemption Defenses Always Presents Uncertainty.

Plaintiffs assert, and the Court held in its May 6, 2015 Order, that Staff Appraisers do not satisfy the administrative, professional, and highly-compensated employee overtime exemptions under federal or California law. However, Defendants sought immediate Ninth Circuit review in their petition under 28 U.S.C. §1292(b) – there being no existing Ninth Circuit authority regarding real estate appraisers' classification – creating uncertainty for both sides. Though some courts have held that mortgage industry workers in similar job classifications are non-exempt production workers (*e.g., Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529 (2d Cir. 2009) (finding underwriters non-exempt)), others have disagreed. *See, e.g.*, *Lutz v. Huntington Bancshares*, 2014 WL 2890170, at *8 (S.D. Ohio June 25, 2014) (underwriters are exempt administrative employees); *McKeen-Chaplin v. Provident Savings Bank, FSB,* 12-cv-03035 (E.D. Cal. Aug. 12, 2015) (same). Misclassification cases always present a significant risk of losing on the merits, even after extensive litigation, as in *In re Farmers Insurance Exchange*, 481 F.3d 1119, 1132 (9th Cir. 2007) (reversing a $52.5 million plaintiffs' verdict, finding claims adjusters exempt); *Bucklin v. Zurich Am. Ins. Co.,* 2015 U.S. App. LEXIS 12497 (9th Cir. July 20, 2015) (claims adjusters exempt under administrative exemption, despite "routine" and clerical aspects of their position). *See also Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156 (2012) (abrogating *In re Novartis Wage and Hour Litig.,* 611 F.3d 141 (2d Cir. 2010)). In *Novartis,* after winning at the Second Circuit, plaintiffs settled for $99 million – and were granted final approval *less than a month* before the *Christopher* decision, which would have left them empty-handed. Schwartz Decl. ¶ 10; Exhibit 2 to Schwartz Decl.

### 2. Plaintiffs May Have Lost Their Meal and Rest Period Claims, or Had their Class Decertified.

7

Defendants planned to challenge the June 2014 certification decision on appeal, and were in the midst of seeking partial decertification concerning meal and rest breaks. Decertification was a real risk, after cases like *In re Wells Fargo Home Mortgage Overtime Pay Litigation*, 571 F.3d 953 (9th Cir. 2009) and *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009). The Court had expressed some reluctance to proceed with meal and rest period claims for the Staff Appraisers, since their schedules were not tightly controlled, and they worked from home and in the field. Defendants would have sought to cross-examine each Class Member to challenge his or her credibility at least regarding breaks missed. *See* Defs.' Mot. to Decertify (ECF No. 314); *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1167 (9th Cir. 2014) *cert. denied*, 135 S. Ct. 2835 (2015) (statistical sampling and representative testimony may not solely determine damages); *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). If Plaintiffs' meal and rest period claims failed or were decertified, all or many of those eligible to recover under this settlement would have lost significant compensation.

### 3. Defendants May Have Succeeded in their Good Faith Defense.

Plaintiffs had not yet established that Defendants' violation of the labor laws was "willful" under the FLSA, and Defendants also asserted a "good faith" defense to Plaintiffs' claims under §§ 203 and 226 of the California Labor Code. Defendants alleged that a lack of regulatory authority or jurisprudence directly on point regarding staff appraisers' classification supported their good-faith defense, citing, *e.g.,* this Court's opinion in *Reber v. AIMCO/Bethesda Holdings, Inc.*, 2008 WL 4384147 (C.D. Cal. Aug. 25, 2008) (Carter, J.) (granting summary judgment for defendant on waiting time and itemized wage statement penalties where a "good faith dispute" existed as to whether the plaintiffs were exempt). *See* ECF No. 307 at 60 (regarding willfulness, "[t]he evidence is not overwhelmingly in Plaintiffs' favor, by any means."). If Plaintiffs proceeded to trial and were unable to establish willfulness, the statute of limitations under the FLSA would be reduced to two years, resulting in a significantly shorter liability period than under Settlement. *See* 29 U.S.C. § 255(a). A successful good faith defense would also have barred Plaintiffs' claims under Labor Code §§ 203 and 226.

### 4. Plaintiffs May Have Recovered Less in Interest and Penalties.

The Parties agree that two thirds of the settlement payment is related to interest and penalties (Exh. 1 ¶ 65). This estimate is reasonable, because California and federal penalty claims asserted are a significant proportion of the estimated damages exposure, and because California's statutory pre-judgment interest rate is 10 percent, and would have begun to accrue as early as April 2009. *See Bell v. Farmers Ins. Exch.*, 135 Cal. App.4th 1138, 1150 (2006) (10% prejudgment interest rate provided by Civil Code section 3289 applied to the accrual of unpaid wages, citing Labor Code §218.6).

Yet, liquidated damages and pre-judgment interest are not *both* awarded after a successful judgment in a FLSA case (*Ford v. Alfaro*, 785 F.2d 835, 842 (9th Cir. 1986)), and the Ninth Circuit has also permitted only partial pre-judgment interest. *See Martin v. Applied Data Sys.*, 972 F.2d 1340 (9th Cir. 1992). Defendants asserting a good faith defense have long argued that a court is permitted to deny both interest and liquidated damages. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 715 (1945).

California penalty recoveries are limited by shorter statutes of limitations and capped recoveries. *See Pineda v. Bank of Am., N.A.*, 50 Cal.4th 1389, 1398 (2010) (one year under Cal. Lab. §226 and up to three years under Cal. Lab. §203); Cal. Lab. § 226(e)(1) ($4,000 maximum recovery). Moreover, Defendants would have argued for decertification of penalty claims based upon individualized willfulness considerations.

PAGA claims have been allocated a discounted value of $100,000 to account for the Court's discretion to reduce such penalties drastically, under Cal. Lab. § 2699(e)(2). *See, e.g., Fleming v. Covidien Inc.*, 2011 WL 7563047, at *4 (C.D. Cal. Aug. 12, 2011) (Klausner, J.) (reducing PAGA penalties by 82%).

In light of the foregoing, the Court should view favorably that the settlement agreement provides significant penalty and interest compensation.

### 5. Without a Settlement, Recovery Would Have Been Long Delayed.

The uncertain outcome of trial and appeals provides a strong incentive for both parties to settle. Full relief on Plaintiffs' claims, including all penalties would result in a greater recovery. However, if Defendants were to prevail on appeal regarding their affirmative defenses, or to prevail on liability at trial for the meal and rest break claims,

or succeed in cross-examining class members on damages, then Plaintiffs' victory could have been stripped, or greatly diminished.

Even if Plaintiffs were to prevail at trial and class members' participation in individualized damages hearings were high, the result would almost certainly be followed by post-judgment appeals, even if the Court denied Defendants' pre-trial §1292(b) motion. Absent a settlement, the Class would not recover for years longer, whereas under the Settlement the Class will receive large recoveries within months.

Indeed, under the Settlement, Defendants will make all payments promptly, in a single installment (within 15 days of final judgment). Exh. 1 ¶¶ 15, 84. Furthermore, the Settlement provides that payments will be mailed to class members without requiring class members to undergo a claims process, maximizing the likelihood of 100% class member recovery. *Id.* ¶ 87.

## IV.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL.

### A. Class Action Settlements Are Encouraged.

Federal law strongly encourages settlements in the context of class actions. *See, e.g.*, *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("overriding public interest in settling and quieting litigation" is "particularly true in class action suits"). This settlement falls within the range of reasonableness, warranting preliminary approval. *See Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982); Conte & Newberg, *Newberg on Class Actions* § 11.25 (4th ed. 2002).

### B. The Settlement Is Fair, Adequate and Reasonable.

In deciding whether to approve a proposed class action settlement, the Court must determine whether a proposed settlement is "fair, adequate and reasonable." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Ma v. Covidien Holding, Inc.*, 2014 WL 360196, at *3 (C.D. Cal. Jan. 31, 2014) (Carter, J.); *see also* Fed. R. Civ. P. 23(e)(1)(C). Courts act within their discretion in approving settlements that are fair, are not collusive, and take into account "all the normal perils of litigation as well as the additional uncertainties inherent in complex class actions." *In re Beef Indus. Antitrust Litig.*, 607 F. 2d 167, 179 (5th Cir. 1979). The trial court

considers relevant factors, such as "the strength of Plaintiffs' case, the risk, expense, complexity and likely duration of further litigation, the risk of maintaining class action status through trial, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement."[1] *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir.1992). Here, these factors weigh heavily in favor of granting preliminary approval.

## 1. The Settlement Is Non-Collusive and Was the Product of Extensive Negotiations.

The proposed Settlement was the product of arm's-length, hard-fought, non-collusive negotiations, including three full-day mediations with highly experienced class action mediators during years of negotiations. Schwartz Decl. ¶¶ 3-5; *see also Satchell v. Fed. Exp. Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr.13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."). Plaintiffs did not resolve the Staff Appraisers' claims when the Review Appraisers' claims settled – Plaintiffs continued to fight to vindicate their rights. They battled numerous contested motions, including conditional and class certification, summary judgment, and briefed decertification and a request for interlocutory Ninth Circuit review. Either one of the latter could have upended Plaintiffs' victories to date. Only when they could secure the most advantageous possible terms, Plaintiffs settled the Staff Appraisers' claims. *See* Schwartz Decl. ¶ 16.

---

[1] This matter does not involve a governmental participant other than the LWDA, *see McKenzie v. Fed. Exp. Corp.*, 2012 WL 2930201 (C.D. Cal. July 2, 2012) (Feess, J.) (compliance with LWDA notice requirement and payment of 75% of PAGA penalties favors approval of settlement). The reaction of the class members to the settlement will be better gauged at final approval. *See infra* for a discussion of the other factors.

**2. The Court Should Weigh the Strength of Plaintiffs' Case Against the Risk, Expense, Complexity and Likely Duration of Further Litigation, and the Risk of Maintaining Class Action Status Through Trial.**

As discussed in Section III.B, *supra*, Plaintiffs believe the case has significant strengths, but that there are also considerable risks to further litigation, through appeals, and to maintaining class action status.

**3. The Amount Offered in Settlement Weighs Strongly in Favor of Preliminary Approval.**

The Settlement will provide Class Members with significant cash payments, and if Landsafe is not sold by BofA, a long-term benefit for all current and future Staff Appraisers of reclassification as non-exempt. As to the latter, *see Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918, 924 n.1 (9th Cir. 2014), *vacated on other grounds*, 772 F.3d 608 (appropriate to value injunctive relief in considering settlement approval).

If all eligible Staff Appraisers participate in the suit, the average payment per class member will be *a gross of nearly $100,000 – or a net of nearly $65,000 each. See* Schwartz Decl. ¶¶ 6, 18. Because the Settlement is non-reversionary, to the extent that any eligible California Class Member opts out (though the undersigned expects few or none will do so), other Class Members will receive a *pro rata* increase. Exh. 1 ¶ 69. For those not opting-out, if any fails to cash a check for 180 days, the Settlement proposes distribution to *cy pres* Legal Aid Society–Employment Law Center. Exh. 1 ¶ 69.

Few wage and hour class action settlements result in such a generous recovery. The review appraiser settlement in this case – which, after extensive briefing and a comprehensive notice process, the Court appropriately labeled an "exceptional result" (ECF No. 276 at p. 14) – yielded an average of $10,840 net per class member (*id.*) – *about one-sixth of the net recovery per class member here*. Compare this extraordinary result with approved wage-hour class action settlements in Ninth Circuit misclassification cases– *e.g., Rieve v. Coventry Healthcare Inc.*, 11-cv-1032 (ECF Nos. 243-1, 245) (C.D. Cal. 2014) (Carter, J.) (Exhibit 3 to Schwartz Decl.) ($3 million gross settlement fund for 225 employees, after plaintiffs' summary judgment victory; paying an average gross recovery of $13,333 per class member, and an average net of "more

than $7,000" per class member); *Carter v. Anderson Merchandisers, LP*, 2010 WL 144067 (C.D. Cal. Jan. 7, 2010) (Philips, J.) (in wage-hour misclassification case, $3.625 million settlement ($2.617 million net settlement) for 313 FLSA class members and 174 California class members– $5,374 per person net on average); *Gerlach v. Wells Fargo,* 05-cv-00585 (ECF Nos. 300, 312, 332) (N.D. Cal. 2007) (Exhibit 4 to Schwartz Decl.) (in misclassification case, $12.8 million settlement fund for approximately 4,500 class members – gross of $2,844/each average). Settlements in other wage-hour class actions tend to pay even less. *See, e.g., Ma*, 2014 WL 360196, **2, 5 (gross recovery of approximately $2,500/person ($2.5 million divided among 974 class members)); *Mojica v. Compass Group*, 13-cv-1754 (ECF Nos. 54, 69) (C.D. Cal.) (Fisher, J.) (Exhibit 5 to Schwartz Decl.) (claimants among 3,471 wage-hour class members share $787,708.50–highest payment is $575.33 and average is $226.94); *O'Sullivan v. AMN Services, Inc.*, 12-cv-2125 (ECF No. 92) (N.D. Cal. Feb. 7, 2014) (Exhibit 6 to Schwartz Decl.) ($478.12 average payment to wage-hour claimants– $14.46/workweek).

The settlement monetary relief compares favorably with the estimated full relief for Plaintiffs and the class members' claims. As explained in further detail in Counsel's appended declaration, the estimated value of the claims, according to an expert's analysis after reviewing thousands of records and conducting a scientific survey, is approximately $108,040,713. *See* Schwartz Decl. ¶ 4.[2] The $36 million recovered is thus arguably 33.32% of the total exposure in the case – a strong result, warranting this Court's approval. Compare this result to *Ma*, 2014 WL 360196, at *5, in which this Court found that a settlement providing "9.1% of the total value of the action [was] 'within the range of reasonableness.'" *Id. See also* Exh. 3, *Rieve v. Coventry Healthcare Inc.*,11-cv-1032 (ECF Nos. 243-1, 245) (C.D. Cal. 2014) ("The settlement of

---

[2] This total excludes penalty claims and liquidated damages. *Cf. Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 955 (9th Cir. 2009) (court may calculate settlement reasonableness without considering penalties).

$3,000,000, before deductions, represents more than 29% of Plaintiffs' estimated maximum damages, assuming these amounts could be proven at trial.").

On the other hand, settlements that have been disapproved are dramatically different from this one. For example, in *Lusby v. Gamestop Inc.*, 2013 WL 1210283 (N.D. Cal. Mar. 25, 2013), the rejected settlement would have been $750,000 for 13,872 people – paying $0.26/shift, after fees/costs, etc. were deducted.

### 4. Given the Extent of Discovery Completed and the Late Stage of the Proceedings, Plaintiffs and Counsel are Well-Situated to Arrive at a Fair Settlement.

Defendants took all named Plaintiffs' depositions and a host of class members' depositions. Schwartz Decl. ¶ 13. Plaintiffs took the depositions of Defendants' top manager and the two FRCP 30(b)(6) witnesses for the Defendants. *Id*. The parties exchanged over 200,000 pages of discovery, held three full-day mediation sessions with top mediators, and negotiated – while actively litigating – for years. *Id.* at ¶¶ 3-5, 13. In addition, the Parties briefed a host of heavily-contested motions. *Id.* at ¶ 14.

The parties exchanged expert reports, and undersigned counsel, in consultation with Plaintiffs' experts, estimated Defendants' exposure. Seplow Decl. ¶¶ 7-8, Exh. 1 ¶ 40. Employing the parties' joint scientific survey of Defendants' Staff Appraisers, Plaintiffs determined the average time it takes to complete various common appraisal reports, to estimate with precision the number of hours each class member worked - notwithstanding Defendants' lack of timekeeping records. *Id.* ¶¶ 40, 64.[3] The proposed Settlement payments, therefore, are based on each class member's *pro rata* share of the

---

[3] In allocating each class member's *pro rata* share, Plaintiffs' expert, in consultation with undersigned counsel, discounted by 50% meal and rest break damages and related penalties, in addition to FLSA liquidated damages, to account for litigation risk. No discount was applied to California or FLSA overtime damages, or to pre-judgment interest on California overtime claims. Plaintiffs also discounted by 20% the claims of those who signed severance agreements with release and class waiver provisions, based on those class members' additional litigation risk. Exh. 1 to Schwartz Decl. ¶ 64. *See Chindarah v. PickUp Stix,* 171 Cal. App. 4th 796 (2009).

maximum possible damages in this case, as determined by Plaintiffs' expert Dr. Brian Kriegler, using each class member's actual production record and payroll data. *Id*. at ¶¶ 7-9. The parties are exceptionally well-prepared to reach a fair Settlement.

### 5. The Considerable Experience and Strongly Supportive Views of Counsel Weigh in Favor of Preliminary Approval.

Counsel for Plaintiffs have represented thousands of employees in wage/hour class actions like this one, and have had settlements approved repeatedly by this Court and numerous other courts in the Ninth Circuit and elsewhere. Schwartz Class Cert. Decl. (ECF No. 119) ¶ 17; Harris Class Cert. Decl. (ECF No. 120) ¶¶ 4, 8, 13. Counsel are recognized as among the top lawyers in the wage and hour field. *Id*.

In the view of counsel, this settlement is an extraordinary result, largely unprecedented, in terms of the huge payments to class members of a modest-sized wage-hour class. Schwartz Decl. ¶ 2; Seplow Decl. ¶ 14. Counsel has demonstrated a willingness to advance the Staff Appraiser class claims to trial when doing so was in the class's best interest – having prepared a trial plan and collaborated extensively with a trial expert. Schwartz Decl. ¶ 5. However, given the extremely favorable Settlement terms, counsel believe the risk and delay of trial and appeal are not in the class's best interest, compared with this Settlement. *Id*. at ¶ 2. The Court should grant preliminary approval.

### 6. All Additional Settlement Terms are Fair.

The Settlement avoids the pitfalls of other, unsuccessful settlements. Unlike in *Kakani v. Oracle Corp.*, 2007 WL 1793774 (N.D. Cal. June 19, 2007), no funds will revert to Defendants, if the settlement becomes final. *See* Exh. 1 ¶¶ 57, 100. *See La Parne v. Monex Deposit Co.,* 2010 WL 4916606 (C.D. Cal. Nov. 29, 2010) (Carter, J.) (favoring a non-reversionary settlement under similar circumstances). Workers' existing claims are only extinguished upon receiving substantial settlement payments, after a detailed notice. Exh. 1 ¶¶ 74-78; 90-95. The wage-claim-tailored release in this case does not implicate the concerns related to the sweeping release in *Kakani*. Exh. 1

¶¶ 90-95. Defendants will bear their own share of payroll taxes. *See Rosenburg v. IBM*, 2007 WL 2043855, at *3 (N.D. Cal. July 12, 2007) (noting this factor favorably).

The Staff Appraiser position is represented adequately by the four representative Plaintiffs. *Id.* ¶ 41(b); ECF No. 232 at 9-12 (Plaintiffs found to be adequate representatives). Plaintiffs' Counsel selected a reputable claims administrator with a competitive bid amount, KCC – the firm which capably administered the Review Appraiser settlement, with the Court's approval. Schwartz Decl. ¶ 22; ECF No. 229 at 2.

The enhancements to the Class Representatives, attorneys' fees, costs, and *cy pres* designee are also fair and appropriate, as discussed below.

### a. The Named Plaintiffs' proposed enhancement payments are fair.

The jurisprudence and facts of this case justify the Class Representatives' enhancement payments of $25,000 each - less than seven hundredths of a percent of the common fund a piece. *See, e.g.*, *Staton v. Boeing,* 327 F.3d 938, 977 (9th Cir. 2003) (recognizing that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable); *Glass v. UBS Fin. Servs.*, Inc., 2007 WL 221862, at *16 (N.D. Cal. Jan. 26, 2007) (approving payments of $25,000 to each named plaintiff); *Van Vranken v. Atlantic Richfield Co.,* 901 F. Supp. 294, 299 (N.D. Cal. 1995) (awarding $50,000 to a lead plaintiff). In *Van Vranken*, the court articulated the following relevant factors to assess the appropriateness of a class representative's enhancement: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representatives; 3) the amount of time and effort spent by the class representatives; 4) the duration of the litigation, and; 5) the personal benefit (or lack thereof) enjoyed by the class representatives as a result of the litigation. 901 F. Supp. at 299. These factors all support the requested enhancements here.

First, Plaintiffs Boyd and Parks feel they risked their reputations as a result of bringing this case and serving as Staff Appraiser Class Representatives.[4] As the named Plaintiffs testify, the Appraiser community is tightly knit, and by placing themselves in the spotlight to advance the interests of the class, they feel they have taken the risk that future employers will not hire them, or that BofA and other large mortgage sellers will decline to place them on their "fee appraisal panels" or hire them for similar positions, making it difficult for them to find work. *Id.*; *see Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *23 (D.N.J. Apr. 8, 2011) (awarding enhancements to named plaintiffs in recognition that "they risk their good will and job security in the industry for the benefit of the class as a whole").

Second, the named Plaintiffs have experienced unwelcome "notoriety."[5] The risk of blackballing in the appraisal industry weighs in favor of a significant service award under this factor. *See Rutti v. Lojack Corp.*, 2012 WL 3151077, at *5 (C.D. Cal. July 31, 2012) (Carter, J.) (noting the "strong disincentives for employees to participate in a class action against their current or former employer, particularly when the suit requires an affirmative opt-in, as does the FLSA"); *Ross v. U.S. Bank Nat. Ass'n*, 2010 WL 3833922, at *4 (N.D. Cal. Sept. 29, 2010) (enhancements based on "willingness to serve as representatives despite the potential stigma that might attach to them in the banking industry from taking on those roles"). Their participation has also caused them sleepless nights, stress, fear, and/or anxiety.[6] The named Plaintiffs made personal financial sacrifices to appear at depositions and deposition preparation sessions.[7]

Third, each of the named Plaintiffs estimates that he or she has spent a substantial numbers of hours on this case, including the time required to: research his or her rights; speak extensively with Plaintiffs' counsel on the telephone and meet in person over the

---

[4] *See* Boyd Decl. ¶¶ 7-8, 10; Parks Decl. ¶¶ 6-7.

[5] Boyd Decl. ¶¶ 7-8, 10; Parks Decl. ¶¶ 6-7; Medina Decl. ¶ 6; Zanko Decl. ¶ 8.

[6] Boyd Decl. ¶¶ 7-8; Parks Decl. ¶¶ 6-7; Medina Decl. ¶¶ 6-7; Zanko Decl. ¶ 8.

[7] Boyd Decl. ¶¶ 4-5; Parks Decl. ¶¶ 4-5; Medina Decl. ¶¶ 4-5; Zanko Decl.¶¶ 4-5.

course of nearly two and a half years in order to assist counsel with their understanding of the facts in this case – particularly, the job duties and manner of compensation of Staff Appraisers and the qualifications necessary to work as a Staff Appraiser for Defendants; discuss with Plaintiffs' counsel Defendants' requests for production of documents and interrogatories, search for electronic and hard copy documents sought by those requests, and provide responsive documents and information to Plaintiffs' counsel; attend preparation sessions with Plaintiffs' counsel in advance of a deposition; be deposed by Defendants' attorneys; review and correct the deposition transcript; and collaborate regarding mediation and settlement.[8]

Fourth, the named Plaintiffs have been involved in this litigation since spring 2013. ECF Nos. 1 (Complaint filed by named Plaintiff Boyd), 13 (First Amended Complaint filed May 16, 2013, adding named Plaintiffs Parks, Medina, and Zanko). For years, this case has occupied Plaintiffs' lives and thoughts.[9] Without enhanced compensation, class representatives will be deterred from undertaking such a concerted effort in other cases. *See* Schwartz Decl. ¶ 19.

Fifth, and perhaps most importantly, the benefit the named Plaintiffs would receive as class members, if they were not also allocated service payments, would not compensate them for foregoing the likely superior results they could have obtained on their own, had they not stepped forward to represent the class. *See, e.g., In re Revco Sec. Litig.*, 1992 WL 118800, at *7 (N.D. Ohio May 6, 1992) (awarding $200,000 enhancement: named plaintiff's "losses were of a large enough magnitude that an individual action would have been feasible. Had an individual action been commenced and settled, the class would have recovered nothing"). The named Plaintiffs, all of whom are no longer employed by Defendants, will receive smaller recoveries than absent class members who worked for a larger portion of the Settlement class period.

---

[8] Boyd Decl. ¶¶ 4-5; Parks Decl. ¶¶ 4-5; Medina Decl. ¶¶ 4-5; Zanko Decl.¶¶ 4-5.
[9] Boyd Decl. ¶ 3; Parks Decl. ¶ 3; Medina Decl. ¶ 3; Zanko Decl.¶ 3.

18

See *Boyd v. Bank of Am. Corp.*, 2014 WL 6473804, at *7 (C.D. Cal. Nov. 18, 2014) (Carter, J.) (awarding enhancement in part because named plaintiff's recovery would be less than other class members that worked for larger portion of statutory period). In addition, the named Plaintiffs, as former employees, will not personally reap any benefit if the Settlement's injunctive relief (reclassification of Staff Appraiser position) occurs. *See Van Vranken*, 901 F. Supp. at 299 (named plaintiff awarded $50,000 in part because he "will not receive great personal benefit" from the litigation).

In addition, the named Plaintiffs are executing much broader waivers of claims than other class members, warranting additional compensation. *See* Exh. 1 ¶¶ 96-97; *Dent v. ITC Serv. Grp., Inc.*, 2013 WL 5437331, at *4 (D. Nev. Sept. 27, 2013) (awarding enhancement in part because wage-hour plaintiff signed a general release).

As such, undersigned counsel believes a $25,000 enhancement to each Plaintiff is the minimum in a case of this nature which would viably promote the public policy interest in encouraging those with wage claims to assert them, despite the fears, stress, and significant time associated with doing so. Schwartz Decl. ¶ 19; *Gentry v. Super. Court*, 42 Cal.4th 443, 459-61 (2007). At the end of the day, 365 class members are receiving major payments because of the sacrifices of the four named Plaintiffs, and the Court should recognize this. *See also Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 188 (S.D.N.Y. 1997) ($85,000 to lead plaintiff, $50,000 to second plaintiff, $25,000 each to remaining named plaintiffs); *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 1:05-cv-06583 (ECF Nos. 595, 615) (N.D. Ill.) (awarding $250,000 to each class representative and $75,000 to each of the six members of the Steering Committee); *Velez v. Novartis Pharm. Corp.*, 2010 U.S. Dist. LEXIS 125945, at *69-74 (S.D.N.Y. Nov. 30, 2010) (granting service awards between $175,000 and $425,000 to 26 named plaintiffs who released their claims for emotional distress); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990) (two enhancements of $55,000, and three of $35,000); *Brotherton v. Cleveland*, 141 F.Supp.2d 907, 913-14 (S.D. Ohio 2001) ($50,000 enhancement); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240 (S.D. Ohio 1991) ($50,000 to each class rep.).

**b. The Proposed Enhancement Payments to Deponents and Class Member Discovery Respondents are Fair.**

Proposed enhancement payments to deponents of $2,000, and to class member discovery respondents of $1,000, are also justified under the circumstances. *See, e.g., Satchell*, 2007 WL 1114010, at *4 (preliminarily approving awards of up $5,000 each to 18 class members who signed declarations and were deposed); *In re Novartis Wage & Hour Litig.*, 1:06-MD-1974-PAC, ECF No. 214 (S.D.N.Y. May 31, 2012) (awards of $3,500 each to 21 deponents) (Exh. 2 to Schwartz Decl.); *In re Bank of Am. Wage & Hour Empl. Litig.*, 2013 U.S. Dist. LEXIS 180056 (D. Kan. Dec. 18, 2013) ($1,000 to deponents; $500 to plaintiffs who responded to interrogatories; and $300 to plaintiffs who provided a declaration or responded to document requests).

Here, deponents "furthered the litigation in immeasurable ways" and provided substantial benefit to the class at considerable personal cost. *Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669, 677-78 (S.D. Iowa 2009) (approving $1,000 to each class member deponent). In addition to the risk of retaliation and blackballing, class member deponents took time away from their busy jobs both to prepare for their depositions with counsel and to testify. Class member deponents' testimony figured prominently in developing the record, contributing to this successful resolution. *See, e.g.*, ECF No. 329-1 (Pfs' Opp'n to Decert.) (citing deposition testimony of class member deponents).

Similarly, class members that responded to discovery assisted in resolving this dispute on a class-wide basis by providing representative information and documents, informing the parties about the universe of evidence in this case. Responding to discovery was time-consuming and burdensome: Defendants served three sets of interrogatories, requests for admissions, and 168 document requests.

The result achieved for the class is excellent given the modest class size and the significant litigation risks. Class member deponents and discovery respondents should be compensated for their valuable services to the class.

**c. Attorneys' Fees of One Third of the Common Fund Are Justified.**

Before final approval, Plaintiffs' counsel intends to seek, and Defendants will not oppose, attorneys' fees of one-third of the $36 million Settlement.[10] Exh. 1 ¶ 49. Though Plaintiffs will separately and more extensively brief their fee request later, Plaintiffs request preliminary approval of the one-third amount.

The U.S. Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund … is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Plaintiffs' request for one-third of the common fund is above average, but not unusual for a settlement with such eye-popping relief to class members. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (collecting cases, *inter alia*: *In re Merry–Go–Round Enterprise, Inc.,* 244 B.R. 327 (Bankr. D. Md. 2000) (fees of 40% of $185 million common fund - a 19.6 lodestar multiplier); *In Re Combustion, Inc.,* 968 F. Supp. 1116 (W. D. La. 1997) (36% of $127 million); *In Re Melridge, Inc., Sec. Litig.,* No. 87-1426 (D. Or. Mar. 19, 1992, Nov. 1, 1993, Apr. 15, 1996) (37.1% of $54 million)).

Throughout this litigation, the parties and Court have discussed *Davis v. JP Morgan Chase*, involving over 5,000 misclassified mortgage loan underwriters. *Id.,* 775 F. Supp. 2d 601, 608 (W.D.N.Y. 2011). It remains relevant. In *Davis,* the plaintiffs obtained a $42 million settlement fund, with an average gross recovery under $8,400 – and with a reversionary clause. *Id.,* 827 F. Supp. 2d 172, 186 (W.D.N.Y. 2011). Though the settlement was far inferior in a *pro rata* comparison with the instant one, the court approved one-third ($14 million) in attorneys' fees, for a lodestar multiplier of approximately 5.3. *Id.* at 185. *See also Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 361, 369-370 (S.D.N.Y. 2002) (counsel received a 4.65x lodestar multiplier, one-third of the $11.5 million common fund–"well within the range awarded by courts in this Circuit and courts throughout the country"); *Di Giacomo v. Plains All American*

---

[10]The actual settlement amount is greater, because of the employer's separate contribution of its share of payroll taxes.

*Pipeline,* 2001 WL 34633373, at *11 (S.D.Tex. Dec. 19, 2001) (5.3 multiplier; $8.85 million fees – over 40% of the total actually paid in settlement, after a reversion).

In this Court, the instant result compares favorably with others where one-third of the fund was awarded in fees, despite far less recovery for class members than here. *E.g., Rieve* Final Approval (Schwartz Decl., Exh. 3 at 7 (awarding one-third of $3 million settlement fund with average net recovery of $7,000+ per class member)); *Lee v. JPMorgan Chase,* 13-cv-0511 (ECF No. 95) (C.D. Cal. Apr. 28, 2015) (Staton, J.) (Exh. 7 to Schwartz Decl.) (in appraiser misclassification settlement, average class member payment of $9,089.51; one-third of common fund awarded as fees); *Fernandez v. Victoria's Secret Stores, LLC,* 2008 WL 8150856, at *8-16 (C.D. Cal. July 21, 2008) (Morrow, J.) (awarding one-third of $8.5 million settlement fund as fees in wage and hour class settlement; class members filing claims each received a $67.50 gift card).[11]

Moreover, for strong class settlements in contingent litigation, courts nationwide routinely award lodestar multiples over 4, like that sought here (estimated to be 4-4.5X (Schwartz Decl., at ¶ 17)). *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008). *See, e.g., Craft v. County of San Bernardino,* 624 F.Supp.2d 1113, 1123 (C.D. Cal. 2008) (Larson, J.) (5.2x multiplier); *In re Charter Communications, Inc., Securities Litigation,* 2005 WL 4045741, *18 (E.D. Mo. June 30, 2005) (5.61x multiplier); *In re Rite Aid Corp. Sec. Litig.,* 146 F.Supp.2d 706 (E.D. Pa. 2001) (4.5-8.5x multiplier); *In Re IDB Communication Group, Inc.,* Sec. Litig., No. 94-3618 (C.D. Cal. Jan. 17, 1997) (Hupp, J.) (cited in *Vizcaino,* 290 F.3d at 1052) (6.2x multiplier); *Roberts v. Texaco, Inc.,* 979 F. Supp. 185, 197 (S.D.N.Y.1997) (5.5x multiplier); *RJR Nabisco, Inc. Sec. Litig.,*1992 WL 210138, **5-8 (S.D.N.Y. Aug.24, 1992) (6x multiplier); *In re Beverly Hills Fire Litigation,* 639 F.Supp. 915 (E.D. Ky.1986) (5x multiplier); *In re Boston and Maine Corp. v. Sheehan, Phinney, Bass & Green,*

---

[11] The *Fernandez* fund was $10 million, but because it would be paid in gift cards, the Court valued it at $8.5 million, and awarded fees equal to one-third of $8.5 million.

1  *P.A.,* 778 F.2d 890 (1st Cir.1985) (6x multiplier).

2      While the Ninth Circuit's benchmark for reasonable fees under the percentage-

3  of-the-common-fund method is 25 percent of the gross settlement amount, *see, e.g.*,

4  *Glass*, 2007 WL 221862, at *14, the 25-percent benchmark should be adjusted when

5  special circumstances indicate that a larger or smaller fee award is appropriate. *See Six*

6  *Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). The

7  choice of "the benchmark or any other rate must be supported by findings that take into

8  account all of the circumstances of the case." *Vizcaino*, 290 F.3d 1048.[12]

9      Here, the nearly $100,000 gross recovery per class member warrants the higher

10  than average common fund award. Plaintiffs' counsel's excellent work throughout the

11  case – winning major motions, from certification through summary judgment – also

12  warrants an upward departure. Counsel worked thousands of hours on this matter,

13  swallowing a significant share of their practices at very small firms, and undertook

14  hundreds of thousands of dollars in out-of-pocket expenses, millions in uncompensated

15  legal work, ultimately helping set precedents that will benefit appraisers and similar

16  workers throughout the country. *See* Schwartz Decl. ¶ 15. *See Vizcaino*, 290 F.3d at

17  1048 ("exceptional results" in "absence of supporting precedents" – as here, regarding

18  appraiser misclassification – relevant to fee determination). The risk of this litigation

19  and the contingent nature of the fee and the financial burden carried by the Plaintiffs

20  warrant the fees sought. *See, e.g.*, *In re Omnivision Techs., Inc.*, 2007 WL 4293467, at

21  *9 (N.D. Cal. 2007) (citing *Vizcaino*). Compensation merely at the benchmark would

22   

23  [12] As noted *supra,* if Defendants continue to employ in-house Staff Appraisers, they

24  will take steps to reclassify Staff Appraisers as non-exempt and begin paying overtime as soon as practicable - further warranting the one-third fee sought. Exh. 1 ¶ 72. *See*

25  *Laguna*, 753 F.3d at 924 n.1; *Vizcaino*, 290 F.3d at 1049 ("non-monetary benefits" to the Class, such as causing the defendant "to change its personnel classification

26  practices," are "a relevant circumstance" in the fee analysis); *Singer v. Am. Airlines*

27  *Fed'l Credit Union*, 2006 WL 3093759 (N.D. Cal. Oct. 30, 2006) (injunctive relief for class helps justify fees and plaintiffs' enhancements).

28   

undercompensate counsel, in light of the extraordinary outcome, which dwarfs many results in cases where the benchmark was awarded. *See, e.g., O'Sullivan* Final Approval Order, Exh. 6 to Schwartz Decl. (awarding 25% of $3 million gross wage-hour settlement for 11,685 people, where the total estimated exposure was $108 million, and the average payment to claimants was under $500).

With their fee petition, Plaintiffs' Counsel will provide the Court with a detailed breakdown of their hours worked and fees incurred for a lodestar cross-check. Plaintiffs will make their fee petition public more than 15 days in advance of the final approval hearing. *See* [Proposed] Order Granting Preliminary Approval, submitted herewith.

### d. Plaintiffs' Requested Costs are Reasonable.

Plaintiffs' maximum estimated costs – $200,000 – are reasonable in light of the late stage of the proceedings and the extensive discovery conducted. Plaintiffs' joint scientific survey with Defendants, and the Dr. Kriegler expert report which arose from it, and from an evaluation of Defendants' compiled appraisal records – were essential to trial preparation. This expensive investigation was necessary to inform settlement discussions, and will be the anchor of a fair settlement allocation. These alone cost an estimated $150,000 to date. Seplow Decl. ¶ 13. Deposition costs for depositions cost over $12,000. *Id.* Counsel have traveled repeatedly to Orange County and around California and elsewhere in the country, vigorously prosecuting this action. *Id.*; Schwartz Decl. at ¶ 14. The Court should grant preliminary approval of up to $200,000 for reasonable litigation costs - less than six-tenths of a percent of the common fund.

### e. The Requested Cy Pres Beneficiary Is Appropriate

Under *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2013), "to avoid the many nascent dangers to the fairness of the distribution process," the Ninth Circuit requires "that there be a driving nexus between the plaintiff class and the *cy pres* beneficiaries." *Id.* (internal quotations omitted). Here, there is. This is a workers' rights suit seeking to enforce the wage laws in California, among other claims, to benefit workers such as appraisers. The Legal Aid Society–Employment Law Center

24

(www.las-elc.org) is likely familiar to the Court as a leading provider of direct legal services in employment law for low-wage workers in California.

### C. The Notice to the Class Is Sufficient.

The proposed Class Notice and the proposed method of distribution are appropriate. *See* Fed. R. Civ. P. 23(c)(2)(B); *Churchill Village, LLC. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *White v. NFL*, 41 F.3d 402, 408 (8th Cir. 1994), *abrogated on other grounds*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 618-20 (1997). The proposed form of notice will be sent via first-class mail to the last known mailing address of each Class Member. Exh. 1 ¶ 75. Prior to mailing the Class Notice, the Claims Administrator will consult the U.S. Postal Service's National Change of Address Database (or similar customarily used search method) to review the accuracy of and, if possible, update a Class Member's mailing address. *Id.* ¶ 77. The Class Notice (Exh. 1 at Exh. A) provides case and settlement details and the specific options available to Class Members so they can make an informed decision about whether to opt out, object, or simply await payment. Class Members will have an ample 60 days to respond to the Notice. *Id.* ¶ 78-80. Settlement- and case-related documents will also be available on a dedicated website. Exh. 1 ¶ 68.

## V.     CONCLUSION

For the foregoing reasons, Plaintiffs submit that the settlement is not just fair, adequate, and reasonable - but an exceptional result for the class. Under the applicable class and collective action standards, Plaintiffs request that the Court grant this unopposed motion and: preliminarily approve the Settlement; name KCC as Claims Administrator; authorize the mailing of Notice to the Settlement Class; and schedule a final approval hearing date.

DATED: August 24, 2015              BRYAN SCHWARTZ LAW
                                    SCHONBRUN DESIMONE SEPLOW
                                     HARRIS & HOFFMAN, LLP

                                    By:   /s/ *Bryan J. Schwartz*
                                    Bryan J. Schwartz (SBN 209903)
                                    Attorneys for Plaintiffs