# EXHIBIT 1

**McGuireWoods LLP**
Matthew C. Kane, Esq. (SBN 171829)
Email: mkane@mcguirewoods.com
Michael D. Mandel, Esq. (SBN 216934)
Email: mmandel@mcguirewoods.com
John A. Van Hook, Esq. (SBN 205067)
Email: jvanhook@mcguirewoods.com
Christopher A. Killens, Esq. (SBN 254466)
Email: ckillens@mcguirewoods.com
1800 Century Park East, 8th Floor
Los Angeles, California 90067
Telephone:   (310) 315-8200
Facsimile:    (310) 315-8210

Attorneys for Defendants
BANK OF AMERICA CORPORATION, LANDSAFE, INC. AND
LANDSAFE APPRAISAL SERVICES, INC.

**BRYAN SCHWARTZ LAW**
Bryan J. Schwartz (SBN 209903)
Email: bryan@bryanschwartzlaw.com
Rachel M. Terp (SBN 290666)
rachel@bryanschwartzlaw.com
Eduard R. Meleshinsky (SBN 300547)
eduard@bryanschwartzlaw.com
1330 Broadway, Suite 1630
Oakland, CA 94612
Telephone: (510) 444-9300
Facsimile: (510) 444-9301

Attorneys for Plaintiffs
(*Additional counsel listed on following page*)

# UNITED STATES DISTRICT COURT

# CENTAL DISTRICT OF CALIFORNIA -- SOUTHERN DIVISION

| | |
|---|---|
| Terry P. Boyd, Ethel Joann Parks, Sonia Medina, Linda Zanko, Victor Galaz, individually, and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Bank of America Corp.; LandSafe, Inc.; LandSafe Appraisal Services, Inc.; and DOES 1 to 10, inclusive,<br><br>Defendants. | CASE NO. SACV13-00561-DOC (JPRx)<br><br>**JOINT STIPULATION FOR SETTLEMENT AND RELEASE OF CLASS AND COLLECTIVE ACTION CLAIMS OF STAFF APPRAISERS**<br><br>**Complaint Filed: April 9, 2013** |

*(Additional counsel continued from prior page)*

SCHONBRUN DESIMONE SEPLOW
HARRIS & HOFFMAN, LLP
Wilmer J. Harris (SBN 150407)
wharris@sdshhlaw.com
715 Fremont Ave.
S. Pasadena, CA 91030
Telephone: (310) 396-0731
Facsimile: (310)399-7040

SCHONBRUN DESIMONE SEPLOW
HARRIS & HOFFMAN, LLP
Benjamin Schonbrun (SBN 118323)
bschonbrun@sdshhlaw.com
Michael D. Seplow (SBN 150183)
mseplow@sdshhlaw.com
723 Ocean Front Walk
Venice, CA 90291
Telephone: (310) 396-0731

Facsimile: (310) 399-7040

## STIPULATION

This Stipulation for Settlement and Release of Class Action and Collective Action Claims ("Agreement") is entered into between Defendants Bank of America Corporation ("BAC"), LandSafe, Inc. ("LSI"), and LandSafe Appraisal Services, Inc. ("LAS") (collectively, "Defendants"), on the one hand, and individual named plaintiffs Terry Boyd, Ethel Joann Parks, Sonia Medina and Linda Zanko ("Plaintiffs" or "Class Representatives"), each on their own behalf and as Representative Plaintiffs on behalf of the Class Members (as described in Paragraphs 1-3) and each of the members of the Class (collectively "Staff Appraisers") in *Terry P. Boyd, et al. v. Bank of America Corp., et al.* (United States District Court, Central District of California, Case No. 8:13-cv-00561-DOC-JPR), on the other hand. For purposes of this Agreement, Plaintiffs and Defendants are referred to individually as a "Party" and collectively as the "Parties."

## DEFINITIONS

### A.   Class Definitions

1.      "Class Members" shall be comprised of the membership of two subclasses, (1) the "California Class," and (2) the "FLSA Class." "Class Member" means any person who is a member of the California Class and/or FLSA Class. The Parties understand that there are 367 Class Members. "Settlement Class Members" means all members of the Class that do not timely opt out of the California Class or effectuate a withdrawal from the FLSA Class. An individual can be a member of both the California Class and the FLSA Class.

2.      The "California Class" shall be: All persons who received notice pursuant to the Court's June 27, 2014 class certification order (Dkt. #232) and

did not timely submit a request to be excluded from the certified class.  The "California Settlement Class" shall be all members of the California Class that do not timely submit a request to opt out of this settlement.

3.      The "FLSA Class" shall be: All persons who filed a consent-to-join form to join the FLSA collective action, as conditionally certified by the Court on December 11, 2013 (Dkt. #109), and who have not withdrawn their consents.

4.      "Class Period" means from April 9, 2009 through the Date of Preliminary Approval for the California Class, and April 9, 2010 through the Date of Preliminary Approval for the FLSA Class.

## B.    Additional Definitions

When used in this Agreement, along with the defined terms set forth above and elsewhere in this Agreement, the following terms have the meanings specified below:

5.      "Agreement" means this Joint Stipulation for Settlement and Release and the terms and conditions assented to by the Parties in this document.

6.      "Claims Administrator" means Kurtzman Carson Consultants, LLC (or "KCC"), subject to the Court's approval, to disseminate notices, prepare settlement distribution calculations, distribute checks, issue tax reporting documents, and conduct any necessary reporting to the Parties and/or the Court, as set forth in this Agreement.  The fees and costs of the Claims Administrator are capped at $18,000, per an agreement with Class Counsel, and shall be referred to as the "Claims Administration Charges."

7.      Class Counsel" means Bryan Schwartz Law and Schonbrun Desimone Seplow Harris & Hoffman, LLP, or either of them.

8.      "Class Counsel Attorneys' Fees and Costs" means the attorneys' fees and costs awarded by the Court to Class Counsel.

9.      "Class Representatives" means Plaintiffs Terry Boyd, Sonia Medina, Ethel Parks and Linda Zanko.

10.     "Class Member Deponents" means Jeff Mandel, Michael Petris, Ricky Leung, Michael D. Smith, Gregory Walsh, Kelly Williams and Ronald Yamada.

11.     "Class Member Discovery Respondents" means Michael J. Carroll, Bruce Cohen, Damien Patrick del Fierro, Douglas Flomer, Carol L. Garcia, Walter E. Gardiner, Gregory Glen Gibbs, Tammy C. Green, Todd A Holmes, Bruce J. Kratochwill,  Kristjan Laube, Ricky Leung, David M. Locey,  Jerome A. Maher,  Jeff Mandel, John H. Markert, Delia Marie Millet, Jo Ann Moses, Bradley Nelson, Anthony Ostrow, Michael Petris, Jack J. Readeau, Kevin Riley, Margaret S. Riley, Mary Jo Sayles, Michael P. Size, Michael D. Smith, Richard L. Stanfield, Shannon Susick, Geoffrey Tam, Gregory Walsh, Linda M. Wilkins, Kelly Williams, Martin Wolters, and Ronald K. Yamada.

12.     "Class Representative Enhancements," "Class Member Deponent Enhancements" and "Class Member Discovery Respondent Enhancements" means the payments, as determined and approved by the Court, to the Class Representatives, Class Member Deponents and Class Member Discovery Respondents from the Gross Settlement Amount that are in addition to their Net Pro Rata Distributions.

13.     "Court" means Judge David O. Carter, judge of the United States District Court for the Central District of California.

14.     "Date of Preliminary Approval" means the date when the Court issues an order granting preliminary approval of the settlement reflected in

this Agreement.

15.     "Effective Date" means the date when the Court issues an order granting final approval of this Agreement and enters Judgment in accordance with this Agreement, and the Judgment becomes final by the earliest of the following occurrences:

(a)     If no timely objections to the Agreement were filed, as described in Paragraph 80, below, the Judgment becomes final the date it is entered by the Court; or

(b)     The Judgment becomes final one court day after the date upon which any appeal from the Judgment must be filed passes without any appeal being filed; or

(c)     If an appeal is filed, the Judgment becomes final one court day after all proceedings arising out of the appeal or appeals are concluded and the Lawsuit is remanded back to the Court PROVIDED THAT the final resolution affirms the terms of the Judgment without any material modification (for purposes of this Agreement, modifications to any Class Representative Enhancement, Class Member Deponent Enhancement, Class Member Discovery Respondent Enhancement and/or the Class Counsel Attorneys' Fees and Costs are not considered material modifications).

16.     "Final Fairness Hearing" means the hearing at which the Court determines whether this Settlement is fair, reasonable and adequate, anticipated by the Parties to occur not later than December 31, 2015.

17.     "Gross Settlement Amount" means Thirty Six Million Dollars ($36,000,000), the total sum that Defendants will be paying for the settlement

of this Lawsuit and of the Released Claims in accordance with the terms of this Agreement, except that Defendants will separately pay the amount of the employer's share of any payroll taxes that arise from any payments to Settlement Class Members pursuant to this Agreement.

18.   "Lawsuit" means this action, styled as *Terry P. Boyd, et al. v. Bank of America Corp. et al.*, initially filed on April 9, 2013 in the United States District Court, Central District of California, Case No. 8:13-cv-00561-DOC-JPR, as subsequently amended by Plaintiffs.

19.   "LWDA" means the California Labor & Workforce Development Agency.

20.   "LWDA Distribution" means the $75,000.00 to be distributed to the LWDA from the Gross Settlement Amount (75% of the $100,000.00 allocated to civil penalties pursuant to the California Labor Code Private Attorney General Act of 2004 ("PAGA")).

21.   "Net Settlement Fund" means the amount remaining after deducting each of the following from the Gross Settlement Amount:  the LWDA Distribution, the Class Representative Enhancements, Class Member Deponent Enhancements, Class Member Discovery Respondent Enhancements, the Claims Administration Charges, and the Class Counsel Attorneys' Fees and Costs.

22.   "Preliminary Approval Hearing" means the hearing at which the Court will be requested to preliminarily make the determinations set forth in Paragraph 52, below.  The date for this hearing will be set forth in Plaintiffs' motion for preliminary approval, or such other date as the Court may designate.

23.   "Released Claims" means all claims, demands, rights, liabilities, and causes of action that were asserted in the original Complaint, the First

Amended Complaint and/or the Second Amended Complaint (collectively, the "Complaints") in the Lawsuit on behalf of Staff Appraisers (including any "Residential Appraisers," "Residential Staff Appraisers" or other titles used to describe employees performing the same job duties), and any additional wage and hour claims that could have been brought based on the facts alleged in the Complaints on behalf of Staff Appraisers. The released claims include all claims relating to or arising out of the designation and treatment of the Class Representatives and Class Members as "exempt" from overtime compensation while they worked as Staff Appraisers, including claims for violations of any state or federal statutes, rules, or regulations. This includes, but is not limited to, claims that, during the Class Periods, Defendants failed to pay overtime or any other wages due under California state law, failed to pay overtime or any other wages due under the Fair Labor Standards Act, failed to provide legally-required meal and rest periods or pay wages due for such failure, failed to timely furnish accurate itemized wage statements, engaged in conduct subjecting Defendants to any statutory or civil penalties under any statute, ordinance, or otherwise arising from or related to the classification of Plaintiffs and Class Members as exempt from overtime, including, without limitation, California Labor Code section 2698, *et seq.* ("The Labor Code Private Attorneys General Act of 2004" or "PAGA") and Labor Code sections 203 and 226; engaged in any unfair business practices arising from the misclassification alleged; and failed to pay all wages due to Class Representatives and Class Members upon termination of employment. In addition, with respect to the Class Representatives, "Released Claims" includes a general release of any and all claims arising out of or related to his employment with Defendants, seeking any such employment, or the termination thereof, including without limitation any claim for wrongful

termination in violation of public policy, employment discrimination, violation of the California Fair Employment and Housing Act, or violation of the Americans With Disabilities Act.

24.    "Released Parties" means Defendants and their past, present or future officers, directors, shareholders, employees, agents, principals, heirs, assigns, executors, administrators, representatives, trustees, accountants, auditors, consultants, insurers and reinsurers of such identified Released Parties and their respective successors and predecessors in interest, parents, subsidiaries, divisions affiliates, and attorneys, both individually and collectively.

25.    "Staff Appraisers" means employees working for Defendants in the positions entitled "Staff Appraiser," "Residential Appraiser," and/or "Residential Staff Appraisers" or other titles used to describe employees that performed the same job duties. "Review Appraisers" are excluded from the definition of "Staff Appraisers" and the term "Review Appraisers" encompasses those employees encompassed by the partial settlement which received final approval in this matter on November 18, 2014 (Dkt. #276).

## BACKGROUND AND FACTUAL RECITALS

26.    On April 9, 2013, a putative class action and collective action complaint was filed in the United States District Court, Central District of California, Case No. 8:13-cv-00561-DOC-JPR, entitled *Terry P. Boyd, et al. v. Bank of America Corp., et al.* (the "Complaint").  Plaintiffs subsequently filed two amended complaints, most recently the operative Second Amended Complaint (the "SAC") on June 26, 2013.  The SAC asserted causes of action on behalf of Plaintiffs and other named plaintiffs on behalf of two putative classes, (1) individuals that had worked for Defendants during the relevant

time period as "Residential Appraisers and other similar positions" ("Staff Appraisers"), and (2) individuals that had worked for Defendants during the relevant time period as "Review Appraisers and other similar positions" ("Review Appraisers").

27.     On behalf of each putative class, the SAC asserted causes of action for: (1) Violation of the FLSA, 29 U.S.C. § 207, (2) Violation of Cal. Lab. Code §§ 510, 1194, and 1198, and IWC Wage Order(s), (3) Failure to Provide Itemized Wages Statements (Cal. Lab. Code §226), (4) Failure to Provide and/or Authorize Meal and Rest Periods (Cal. Lab. Code §§ 512, 226.7 and IWC Wage Order(s)), (5) Violation of Cal. Bus. & Prof. Code § 17200, et seq., (6) Waiting Time Penalties (Cal. Lab. Code § 203), and (7) Civil penalties pursuant to the California Labor Code Private Attorneys General Act of 2004, Cal. Lab. Code § 2698 *et seq.* ("PAGA").

28.     On July 10, 2013, Defendants answered the SAC.

29.     On July 9, 2013, Plaintiffs filed a motion for conditional certification of a collective action under 29 U.S.C. § 216(b) (Dkt. #44).

30.     On December 11, 2013, the Court granted in part Plaintiffs' motion for conditional certification under 29 U.S.C. § 216(b), authorizing notice to be sent to the putative members of the collective action (Dkt. #109).

31.     Subsequently, 183 individuals outside California filed consent-to-join forms to become opt-in plaintiffs (the "FLSA Class Members"). An additional 49 California Class Members filed FLSA consent forms.

32.     On January 13, 2014, Plaintiffs moved for class certification on behalf of current and former California Staff Appraisers, pursuant to Fed.R.Civ.P. 23 ("Rule 23"), of the claims asserted in the SAC.  (Dkt. #118).

33.     On or about February 25, 2014, the Parties agreed in general

terms to a settlement to resolve all class action and collective action claims asserted on behalf of the Review Appraisers only, agreeing to resolve all disputes and claims between them, including all of the wage and hour claims that have been or could have been raised during the course of the Lawsuit (the "Reviewer Claims"), and continuing to litigate the claims asserted on behalf of the Staff Appraisers.

34.    On June 27, 2014, the Court issued its Order Granting Plaintiffs Motion for Class Certification (Dkt. #232) and certified a class consisting of:

> All persons who are or have been employed by Defendants as Appraisers, including employees with the job title "Residential Appraiser" and any other employee performing the same or similar job duties for Defendants, within the State of California at any time from four years prior to the filing of this Complaint to the final disposition of this case.

The following subclasses were also established (together, the "California Subclass"):

> (a)    All California Class members who are no longer employed by Defendants and have not been employed by Defendants for more than 72 hours (the "California Waiting Time Penalties Subclass"); and

> (b)    All California Class members who are currently employed by Defendants or were employed by Defendants at some point within the year preceding the filing of the initial Complaint in this action (the "California Itemized Wage Statement and PAGA Penalties Subclass").

35.    In its June 27, 2014 Certification Order, the Court also appointed Bryan Schwartz Law and Schonbrun Desimone Seplow Harris & Hoffman, LLP be appointed as Class Counsel and appointed Terry Boyd, Sonia Median, Ethel Parks and Linda Zanko be appointed as Class Representatives.  (Dkt. #232).

36.    Subsequently, the Court-approved notice was issued to the California Class Members.  Excluding those individuals that timely requested to be excluded from the certified class, there are 184 California Class

Members.

37.     On November 18, 2014, the Court granted final approval of a partial class action settlement and approval of attorney's fees with respect to the Reviewer Claims. (Dkt. #276).  The Parties continued litigation with respect to the claims asserted on behalf of the Staff Appraisers, and prepared to proceed to trial, scheduled to commence on August 31, 2015.

38.     On May 6, 2015, the Court granted Plaintiffs' motion for partial summary judgment, holding that as a matter of law the Staff Appraisers were not exempt from overtime under the administrative or learned professional exemptions under California or federal law, or the highly-compensated employee exemption under federal law. The Court denied Defendants' summary judgment motion. (Dkt. #307).

39.     Defendants filed a motion to certify an interlocutory appeal under 28 U.S.C. sec. 1292(b), which Plaintiffs opposed, and which was set to be heard on August 3, 2015, if this matter had not been settled. Likewise, Defendants filed a motion to decertify Plaintiffs' meal and rest period claims, which Plaintiffs opposed, and which was set to be heard on the same date.

40.     On July 13, 2015, the parties exchanged expert disclosures under Fed.R.Civ.P. 26. Plaintiffs' expert report, from Dr. Brian Kriegler, calculated the damages Plaintiffs asserted were owed to the Class, based upon Defendants' records of which appraisals were completed by which appraisers during the Class Period, and a joint survey the Parties commissioned, which sought to estimate the average length of time to complete each type of appraisal report.

41.     The Parties have engaged in extensive, arms-length settlement negotiations regarding settlement of the Lawsuit, including full-day mediations before mediator David Rotman, Esq. on November 5, 2013, and

before mediator Mark Rudy, Esq. on January 29, 2014 and July 17, 2015.

42.     On or about July 17, 2015, the Parties agreed in general terms to a settlement to resolve all class action and collective action claims asserted on behalf of the Staff Appraisers, agreeing to resolve all disputes and claims between them, including all of the wage and hour claims that have been or could have been raised during the course of the Lawsuit (the "Staff Appraiser Claims").

43.     As part of the settlement, the Parties agreed to take off calendar the 1292(b) and decertification motions and continue the trial in the case, scheduled for August 31, 2015.

44.     It is the desire of the Parties to fully, finally, and forever settle, compromise, and discharge all disputes and claims against the Released Parties arising from or related to the Staff Appraiser Claims, and that this Agreement shall constitute a full and complete settlement and release of all the Released Parties from all of the Staff Appraiser Claims averred in the Lawsuit.

45.     The Parties expressly acknowledge that nothing in this Agreement, nor the fact of the Agreement itself, shall be construed or deemed an admission of liability, culpability, negligence or wrongdoing of any kind by Defendants, nor shall it constitute an admission on behalf of Defendants of any fact or allegations against them, including any allegation that this matter is suitable for class treatment.  Defendants specifically deny any liability.

46.     Defendants deny all the claims and contentions alleged by the Plaintiffs in the Lawsuit.  Nonetheless, Defendants have concluded that further litigation of the Released Claims encompassed by this Agreement would be protracted and expensive, and would also divert management and employee time.  Defendants have taken into account the uncertainty and risks

inherent in litigation and have, therefore, concluded that it is desirable that the Staff Appraiser Claims in the Lawsuit be settled in the manner and upon the terms and conditions set forth in this Agreement.

47.     Plaintiffs and Class Counsel believe that the claims asserted in this Lawsuit have merit.  Plaintiffs and Class Counsel, however, recognize and acknowledge the significant expense and length of continued proceedings necessary to prosecute the litigation of the Released Claims against Defendants through trials and through appeals.  Plaintiffs and Class Counsel are also mindful of the possible defenses to the Released Claims.  After careful consideration and mediation, Plaintiffs and Class Counsel have concluded that it is desirable that the Staff Appraiser Claims in the Lawsuit be settled in the manner and upon the terms and conditions set forth in this Agreement.  Both Plaintiffs and Class Counsel believe that the settlement set forth in this Agreement is fair, reasonable and adequate, and confers substantial benefits upon the Class Members.

48.     The Parties recognize the inherent risk in proceeding with wage and hour class action litigation based on the current uncertainty of California and federal jurisprudence in wage and hour law.  The Parties agree that the settlement set forth herein adequately balances the risk of proceeding with the Staff Claims against any potential recovery for the Class Members and, therefore, the Agreement represents a fair and just compromise of the Released Claims.

49.     The Parties and their respective counsel of record deem the Agreement to be fair and reasonable and have arrived at the Agreement in arms-length negotiations taking into account all relevant factors, present or potential.

50.     The Parties enter into this Agreement on a conditional basis.

This Agreement will become final and effective only upon the occurrence of all of the following events: (i) the Court enters an order granting preliminary approval of the settlement reflected in the Agreement; (ii) the Court enters an order granting final approval of the settlement reflected in the Agreement; and (iii) the Effective Date occurs.  Unless the Court orders otherwise, this Stipulation shall be deemed null and void *ab initio* upon the failure of any of these three conditions to occur.

## SETTLEMENT APPROVAL PROCEDURE

51.    The Parties and their respective counsel shall take all steps that may be requested by the Court relating to the approval and implementation of this Agreement and shall otherwise use their respective best efforts to obtain Court approval and implement this Agreement.  The procedure for obtaining Court approval of and implementing this Agreement shall be as set forth below.

52.    Within fourteen (14) days after this Agreement has been signed by all parties and their counsel, Plaintiffs shall move the Court for preliminary approval of this settlement, and request an order that accomplishes the following:

(a)    Preliminarily approving this settlement as fair, reasonable, and adequate;

(b)    Preliminarily appointing and approving the Claims Administrator;

(c)    Approving the procedure for sending notice to the Class Members as set forth in this Agreement;

(d)    Approving the notices to be sent to the class members in substantially the same form as **Exhibit A** to this Agreement, or as modified by the Court (the "Notice of

Settlement"); and

(e)     Authorizing the Claims Administrator to mail the approved Notice of Settlement to the Class Members at their last known or provided address by posting the notice through U.S. mail.

53.     Defendants shall not oppose Plaintiffs' motion for preliminary or final approval of the settlement so long as the motions and supporting papers are consistent with the terms of this Agreement and facts of this case. Class Counsel shall provide Defendants' counsel with a reasonable opportunity to review, provide comments to, and otherwise approve the motions for preliminary and final approval of the settlement before the motions and supporting papers are filed with the Court.

54.     This Agreement will not become effective, and Defendants shall have no obligation to make any payments contemplated by this Agreement, unless the Court conducts a Final Fairness Hearing, enters an Order, as described below, approving without material modification all of the terms of this Agreement, and the Effective Date occurs.

55.     Class Counsel shall be responsible for ensuring that at least the following documents are filed with the Court in advance of the Final Fairness Hearing so that the Court will have a sufficient basis upon which to evaluate and approve the settlement:

(a)     A final report by the Claims Administrator providing details regarding the execution of the approved notice process, the rate (if any) of opt-outs and objections, and other information vital to the Court's assessment of the fairness of the Agreement at the Final Fairness Hearing;

(b)     A duly noticed motion, accompanying memorandum of points and authorities prepared by Class Counsel (and approved by Defendants' counsel), and such other pleadings, evidence or other documents as may be necessary for the Court to determine that the settlement documented by this Agreement is fair, adequate and reasonable;

(c)     A proposed Order for the Court's signature (i) approving the settlement documented by this Agreement as being fair, adequate and reasonable; and (ii) ordering a Judgment of dismissal of the Lawsuit with prejudice be entered consistent with this Agreement.

(d)     A Proposed Judgment and Notice of Entry of Judgment (collectively, "Judgment").

56.     Defendants shall not oppose Plaintiffs' motion for final approval of the settlement so long as the motions and supporting papers are consistent with the terms of this Agreement and facts of this case. Class Counsel shall provide Defendants' counsel with a reasonable opportunity to review, provide comments to, and otherwise approve the motion for final approval of the settlement and proposed order and Judgment thereon before the motions and supporting papers are filed with the Court.

## SETTLEMENT CALCULATIONS AND PAYMENTS

57.     Without admitting any liability whatsoever, Defendants will settle the Plaintiffs' and Class Members' claims released by this Agreement by depositing, within 15 days of the order granting final approval of the settlement (unless one of the conditions in Paragraph 15(c), 99 or 100, occurs,

in which case the matter shall proceed as indicated), a total of $36,000,000 million (Thirty Six Million Dollars) (the Gross Settlement Amount), plus the full amount necessary to pay the employer's share of payroll taxes on settlement payments, as estimated by the Claims Administrator, into a qualified settlement fund, which shall be established and administered by the Claims Administrator (the "Qualified Settlement Fund"). All amounts paid as part of this settlement shall be paid out of the Qualified Settlement Fund. These amounts shall include (1) all payments to Class Members under this Agreement, including all amounts required to be paid as federal, state and local payroll taxes; (2) the LWDA Distribution, (3) the Class Representative Enhancements; (4) the Class Member Deponent Enhancements; (5) the Class Member Discovery Respondent Enhancements; (6) the Claims Administration Charges, (7) the Class Counsel Attorneys' Fees and Costs, and (8) any other amounts required to be paid under this Agreement. Under no circumstances, except for the voiding of this Agreement in its entirety as discussed in Paragraphs 99 and 100, below, shall any portion of the Gross Settlement Amount revert to Defendants, or any of them.

58.   All amounts to be paid by Defendants under this Agreement shall be paid from the Qualified Settlement Fund, and Defendants shall have no obligation under this Agreement or otherwise to make any payment whatsoever beyond their obligation to make payments to the Qualified Settlement Fund in an amount equal to the designated Gross Settlement Amount, except for the employer's share of any payroll taxes that are due by virtue of any payments made to Class Members under the terms of this Agreement.

59.   <u>Claims Administration Charges</u>.  The Claims Administration Charges for administration of the settlement include, but are not limited to,

printing and mailing of the Notice of Settlement, processing disputes, requests for exclusion, and objections in accordance with this Agreement, calculating preliminary and final payment amounts and tax withholdings for Class Members, responding to inquiries from Class Members, issuing and mailing settlement payments and checks, reasonable efforts to locate Class Members, and preparing any required tax returns and tax reports. All Claims Administrator Charges, whether foreseen or unforeseen, will be paid from the Gross Settlement Amount. All Claims Administration Charges shall also be paid from the Settlement Sum. The Claims Administrator shall submit monthly invoices to Class Counsel and Defendants' Counsel and, if approved, such invoices shall be paid out of the Qualified Settlement Fund. The Claims Administrator's fees for these services will be capped at $18,000.

60. <u>Class Counsel Attorneys' Fees and Costs</u>. Defendants will not oppose an application by Class Counsel for an award of attorneys' fees up to one-third (33 1/3%) of the Gross Settlement Amount, nor oppose an application by Class Counsel for an award of actual litigation costs incurred by Class Counsel in connection with the litigation of the Staff Appraiser Claims, all of which will be paid out of the Gross Settlement Amount. The Parties expressly agree that the Court's approval or denial of any request for attorneys' fees and costs are not material conditions to the Agreement, and are to be considered by the Court separately from the fairness, reasonableness, adequacy, and good faith of the settlement. Any order or proceeding relating to the application by Class Counsel for an award for attorneys' fees and costs shall not operate to terminate or cancel this Agreement. To the extent the Court awards less than the amount of attorneys' fees and costs requested by Class Counsel, the remaining amount will be redistributed to the Settlement Class Members on a pro rata basis.

61.     Class Representative, Class Member Deponent and Class Member Discovery Respondent Enhancements. Defendants will not oppose an application for: (1)  payment of a Class Representative Enhancement to the Class Representatives in an amount not to exceed $25,000.00 each (to be paid from the Gross Settlement Amount); (2) payment of an enhancement to the Class Member Deponents (listed in Paragraph 11, above) in an amount not to exceed $2,000 each (to be paid from the Gross Settlement Amount), and (3) payment of an enhancement to the Class Member Discovery Respondents (listed in Paragraph 10, above) in an amount not to exceed $1,000 each (to be paid from the Gross Settlement Amount), all subject to approval by the Court. The final amount of any enhancement as determined and approved by the Court shall be binding on the Class Representatives, Class Member Deponents and/or Class Member Discovery Respondents. Any enhancement will be treated as a non-wage payment and reported as such by the Claims Administrator to the appropriate government taxing authorities, with the recipients of the enhancement being solely responsible for paying any and all taxes due on enhancement. The Parties expressly agree that the Court's approval or denial of any request for any enhancement is not a material condition to the Agreement, and is to be considered by the Court separately from the fairness, reasonableness, adequacy, and good faith of the settlement. Any order or proceeding relating to the application by Class Counsel for an award of an enhancement shall not operate to terminate or cancel this Agreement. To the extent the Court awards less than the amount of the enhancements requested, the remaining amount will be redistributed to the Settlement Class Members on a pro rata basis.

62.     PAGA Penalties.  The Parties agree to allocate One Hundred Thousand Dollars ($100,000.00) of the Gross Settlement Amount to the

settlement of the PAGA claims alleged in the Lawsuit on behalf of Staff Appraisers, which the Parties believe in good faith is a fair and reasonable apportionment.  The Claims Administrator shall pay seventy-five percent (75%), or $75,000.00, of this amount to the LWDA.  The other twenty-five percent (25%), or $25,000.00, of this amount shall remain as part of the Net Settlement Fund, to be paid to Settlement Class Members on a pro rata basis based upon the number of each type of appraisal that each Settlement Class Member submitted during the Class Period, his/her wages paid during the Class Period, and whether he/she signed a severance agreement (as described in Paragraph 64, below).

63.  <u>Net Settlement Fund</u>.  Class Claimants shall be paid their Net Pro Rata Distribution (as defined in Paragraph 64, below) from the Net Settlement Fund, which is the amount remaining of the Gross Settlement Amount after deduction of (1) Claims Administration Charges; (2) Class Counsel Attorneys' Fees and Costs; (3) Class Representative, Class Member Deponent and Class Member Discovery Respondent Enhancements; and (4) amounts paid to the LWDA for PAGA penalties.

64.  <u>The Net Pro Rata Distribution for each Class Member:</u> Each Class Member's allocation will be based upon the number of each type of appraisal that each Class Member completed during the class period, as well as the results of the survey the parties jointly commissioned regarding how long each type of appraisal would take on average to complete. The allocation will also factor in the wages paid to each Class Member, and whether or not he/she signed a severance agreement. More specifically, this will be determined as follows:

      a.  In July 2015, Plaintiffs' counsel disclosed to Defendants an expert report calculating each Class Member's hours

worked based upon the number of each type of appraisal he/she submitted which was accepted by Landsafe during the class period, as well as each Class Member's payroll records.  These hours were based on Defendants' records produced in discovery, combined with the results from the aforementioned survey.  Each Class Member's regular rate of pay was derived from the aforementioned payroll records.  From these results, Plaintiffs' expert, Dr. Brian Kriegler, calculated damages for the whole class and for each Class Member.[1]

b.  The Net Pro Rata Distribution will be based upon each Class Member's damages attributed to the following:

- Unpaid overtime plus interest;[2]

- 50% of liquidated damages (FLSA Class Members only);[3];

- 50% of missed meal and rest premiums plus interest (California Class Members only);

- 50% of waiting time and inaccurate wage statement penalties (California Class Members only).

---

[1] Defendants do not necessarily agree that Dr. Kriegler's calculations are accurate or correct.  However, for purposes of calculating individual settlement shares, Defendants are willing to rely upon Dr. Kriegler's calculations.

[2] For FLSA Class Members, unpaid overtime damages are calculated using a three-year statute of limitation dating back to April 9, 2010.  Interest is calculated for California Class members only using the statutory rate of 10 percent per annum.

[3] Note that some California Class Members have also opted into the FLSA class. Under the proposed formula they would receive their pro rata share of 50% of their liquidated damages under the FLSA.

Liquidated damages, meal/rest period damages, waiting time penalties, and inaccurate wage statement penalties are multiplied by 50% to take into account Plaintiffs' litigation risks.

Hypothetically, suppose that for a given Class Member, Dr. Kriegler calculated their full overtime plus interest damages to be $50,000, missed meal and rest premiums plus interest are $15,000, waiting time damages are $10,000, and inaccurate wage statement damages are $4,000. Using the formula described above, this Class Member's full damages would be $64,500 if Plaintiffs prevailed on all claims, which is approximately 0.058% of class-wide, "full relief" damages reported by Dr. Kriegler.[4]

c. Ultimately, each Class Member's damages share, described in subparagraph b, above, can then be multiplied by the Net Settlement Amount to calculate how much to allocate each Class Member.

d. After calculating each Class Member's damages share as described in subparagraphs b and c above, the amount

---

[4] *See* Expert Report of Brian Kriegler, Ph.D. Overtime damages: $65,852,557; interest on overtime damages: $17,200,005; liquidated damages: $29,958,256; missed meal and rest premiums: $18,226,643; interest on missed meal and rest premiums: $6,729,292; waiting time penalties: $701,812; inaccurate wage statement penalties: $576,100. Using the formula above, total damages are $65,852,557 + $17,200,005 + 0.5 x ($29,958,256 + $18,226,643 + $6,729,292 + $701,812 + $576,100) = $111.11 million. $64,500 divided by $111.11 million equals 0.058% of all damages.

allocated to those Class Members who previously signed severance agreements will be reduced by 20% to take into account their increased litigation risk, since the Court could have found their claims, or some of them, and their right to proceed in a class or collective action waived by the releases.  The amount by which their allocations are reduced will be reallocated on a pro rata basis amongst the remaining Class Members who did not sign severance agreements.

e.  The final pro rata share amounts will be given to the Claims Administrator for their use in providing notice and disbursing settlement shares.

65.    Each Settlement Class Members will have his or her Net Pro Rata Distribution apportioned by the Claims Administrator as follows: (a) one-third for payment of any claimed interest (the "Interest Portion"); (b) one-third for payment of any claimed penalties and liquidated damages of any type (the "Penalties Portion"), and (c) one-third for payment of any claimed unpaid wages during the Class Period (the "Gross Wages Portion").  The Claims Administrator will make appropriate deductions from the Gross Wages Portion of each Settlement Class Member's Net Pro Rata Distribution for the payment of employee payroll taxes and deductions required or permitted by applicable law in connection with the payment of wages to the Settlement Class Member and will timely remit those sums to the appropriate government taxing authorities, with the remaining balance of the Gross Wages Portion after such deductions being made being the "Net Wages Portion."

66.    The Claims Administrator will also calculate the total payment

of employer payroll taxes due based upon the total Net Pro Rata Distributions, and will effectuate payment of these taxes to the appropriate tax agencies from the funds deposited by Defendants for this purpose in the Qualified Settlement Fund. To the extent the Claims Administrator estimates and Defendants pay a payroll tax amount that is greater than the amount owed to taxing authorities, the balance of this payment will be refunded to Defendants. To the extent the Claims Administrator initially estimates and Defendants pay an insufficient amount to cover the employers' share of all payroll taxes actually due, Defendants will pay the additional amount of payroll tax required within fifteen (15) calendar days of a request for payment by the Claims Administrator.

67.    The Parties are mindful that the total consideration payable hereunder is comprised of a number of separate and distinct claims for damages and penalties by Plaintiffs and the Class Members. Accordingly, having considered the matter in detail, having performed their own separate and independent computations and estimation of the damages and penalties potentially awardable to Plaintiffs at trial, and having done the foregoing with complete and satisfactory access to, and advice from, accounting and legal advisors, the Parties mutually consent and agree that the Net Pro Rata Distribution be apportioned among the Class Members' various wage and non-wage claims in this action as set forth above.  Moreover, the Parties mutually consent and agree, and hereby represent to the Court in this judicially-supervised settlement transaction, that the apportionment of the Net Pro Rata Distributions as stated above is a reasonable and arm's length determination of the character of the Net Pro Rata Distribution for all purposes, including for tax purposes.

68.    All Settlement Class Members (i.e., those Class Members that do

not affirmatively opt out and/or withdraw their consent-to-join form, as applicable) shall be sent a check or checks representing their Net Pro Rata Distribution.  Checks sent to Class Members' shall contain a legend on the reverse of the check that states: "Endorsement or depositing of this check means that you are certifying under penalty of perjury to being a Class Member in the matter of *Boyd, et al. v. Bank of America Corp., et al.*, are participating in the settlement in this case, and are waiving all wage and hour claims under the Federal Labor Standards Act and/or California law, as applicable.  You    may    read    the    full    notice    and    waiver online: www.bryanschwartzlaw.com/LandsafeStaffAppraiserSettlement.htm. " However, regardless of whether he or she negotiates the settlement check, any Class Member who fails to opt out timely of the California Class as indicated in the Notice, or has not withdrawn from the FLSA Class, shall automatically be deemed a Settlement Class Member whose rights and claims with respect to the issues raised in the Lawsuit with respect to any claims are determined by the Court's order granting final approval of this settlement, and by other rulings in the Lawsuit.

69.    The allocations of any Class Members who opt out of and/or withdraw from the settlement ("unclaimed funds") will be allocated pro rata to the Settlement Class Members at the time of settlement disbursement.  Any payments made to Settlement Class Members that remain uncashed one hundred eighty (180) days after mailing shall be voided, and the amount of those checks will be distributed to Legal Aid Society – Employment Law Center as the *cy pres* recipient, subject to the Court's approval.

70.    <u>No Effect on Benefit Plans</u>.  No employee benefit provided by Defendants to any Settlement Class Member, including but not limited to any 401k benefits, shall increase or accrue as a result of any payment made in

accordance with this Agreement.

71.   <u>No Additional Contribution by Defendants</u>.   Defendants' monetary obligation under this Agreement is limited to the amount defined as the Gross Settlement Amount, plus the employer's share of payroll taxes. Defendants may not be called upon or required to contribute additional monies above the Gross Settlement Amount plus the employer's share of payroll taxes under any circumstances whatsoever.  All costs and expenses arising out of or in connection with the performance of this Agreement shall be paid from the Gross Settlement Amount and the employer's share of payroll taxes paid by Defendants into the Qualified Settlement Fund, unless expressly provided otherwise herein.  In the event that this Agreement is canceled, rescinded, terminated, voided, or nullified, however that may occur, or the settlement of the Action is barred by operation of law, or invalidated, or ordered not to be carried out by a court of competent jurisdiction, Defendants will cease to have any obligation to pay any portion of the Gross Settlement Amount to the Qualified Settlement Fund or any other party under the terms of this Agreement, and all previous disbursements made from Defendants to the Qualified Settlement Fund will immediately revert back to Defendants, less any Claims Administration Charges already incurred. Notwithstanding the foregoing, Defendants will bear sole responsibility for paying the employer's share of payroll taxes in connection with any payments made under the terms of this Agreement, out of funds separate and apart from the Gross Settlement Amount.

## RECLASSIFICATION OF STAFF APPRAISERS

72.   In light of the prior Review Appraiser settlement and resulting reclassification, and in light of the Court's orders in this case, to the extent that

Bank of America Corporation, either directly or through a direct or indirect subsidiary, continues to maintain in-house Staff Appraisers as their employees, Defendants will take steps to reclassify the Staff Appraiser position as overtime eligible as soon as practicable.

## SETTLEMENT ADMINISTRATION

73.    The Claims Administrator will administer disbursements from the Gross Settlement Amount paid by Defendants into the Qualified Settlement Fund, including, but not limited to, distributing the Notice of Settlement, calculating claims against the Qualified Settlement Fund, calculating interest owed, calculating the employer's share of payroll taxes owed, preparing and issuing all disbursements to be paid to Class Claimants, Class Counsel, Class Representatives, Class Member Deponents, Class Member Discovery Respondents, the LWDA, and the local state and federal payroll tax authorities, and handling inquiries about the calculation of the Net Pro Rata Distribution.  The Claims Administrator shall be responsible for the timely filing of all federal, state and local tax returns of the Qualified Settlement Fund and making the timely payment of any and all taxes and withholdings required with such returns.  The Claims Administrator shall establish an email address and toll-free telephone number to direct inquiries regarding the Notice of Settlement and determination of Net Pro Rata Distributions.  All questions by Class Members shall be directed to the Claims Administrator.    All  Claims  Administration  Charges  associated  with administering disbursements from the Qualified Settlement Fund including, but not limited to, the fees and costs of the Claims Administrator and the cost of the Notice of Settlement, shall be paid entirely from the Gross Settlement Amount.  The Parties expect that the Claims Administrator shall conduct all

administration of all disbursements of the Settlement Amounts and that Class
Counsel shall receive no fees or disbursements relating to the administration
of disbursements of the Qualified Settlement Fund.

## NOTICE TO THE CLASS AND CLAIMS PROCESS

74.     The Claims Administrator shall disseminate the Notice of
Settlement by first-class United States mail.  The Notice of Settlement shall
be provided to Class Members in the following manner:

75.     No later than fifteen (15) days after the Court enters an order
granting preliminary approval of the settlement reflected in this Agreement,
Defendants will provide the Claims Administrator with a database including
the following information for each Class Member: (1) last known address and
telephone number; (2) last known email address from Defendants' electronic
employment records (where available); and (3) Social Security number
(collectively, the "Class List").  Plaintiffs, during the same period of time, will
provide Dr. Kriegler's calculations regarding pro rata shares for the Class
Members to the Claims Administrator and Defendants. The Class List will be
deemed to be designated as Confidential under the Stipulated Protective
Order (Dkt. #99) as approved by the Court (Dkt. #100), and subject to the
Claims Administrator first signing and returning to Defendants' counsel the
Acknowledgment and Agreement to Be Bound attached as Exhibit A to such
Stipulated Protective Order.

76.     Within seven (7) days of receiving the pro rata shares from Dr.
Kriegler, assuming every Class Member remains in the Classes, Class
Counsel and Defendants' Counsel shall jointly review the same to determine
if the calculations are consistent with this Agreement.

77.     Within five (5) days of receiving approval from Class Counsel

and Defendants' counsel of the preliminary Pro Rata Distribution for each Class Member, the Claims Administrator shall mail to each Class Member the Notice of Settlement. The Claims Administrator will use information that is reasonably available via customary search methods (i.e., National Change of Address database and skip tracing) to update the addresses of Class Members provided by Defendants.  With respect to each Notice of Settlement mailed to a Class Member that is returned as undeliverable prior to 60 days after the Notice is originally mailed, the Claims Administrator shall promptly attempt to determine a correct address for the Class Member using a reasonable search method and shall re-send the Notice of Settlement via first-class mail to any new address thereby determined.   The Claims Administrator will use reasonable efforts to contact the Class Members to effectuate this Agreement.

78.   Opting Out of California Class.  In order for a member of the California Class to validly exclude himself or herself from the California Class and this settlement (i.e., to validly opt out), the member of the California Class must (1) indicate in writing that he or she requests to be excluded from the California Class and this settlement in the manner indicated in the Notice, and (2) mail the written request for exclusion to the Claims Administrator, postmarked no later than 60 days after the date that the Claims Administrator originally mails the Notice of Settlement to Class Members.  The Parties and their respective counsel agree that none of them will take any steps to encourage any California Class Member to opt out of the California Class.  The date of mailing of the Notice of Settlement, and the date the signed request for exclusion is postmarked, shall be conclusively determined according to the records of the Claims Administrator.   Any California Class Member who timely and validly opts out of the California Class and this settlement will not be entitled to any settlement payment, will

not be bound by the terms and conditions of this Agreement, and will not have any right to object, appeal or comment thereon.  By signing this Agreement, Plaintiffs agree to be bound by the terms herein and further agree not to request to be excluded from the California Class and agree not to object to any of the terms of this Agreement.  Any such request for exclusion or objection shall therefore be void and of no force or effect.

79.    Dispute Process.    Any Class Member who disputes the information shown on his or her Notice of Settlement regarding the number and types of appraisals completed during the Class Period as a Staff Appraiser, or the amount of wages they were paid in a  particular year, or whether he or she signed a severance agreement, may indicate and explain such disagreement under penalty of perjury within sixty (60) days of the mailing of the Notice of Settlement by notifying the Claims Administrator pursuant to the procedures set forth herein and described in the Notice of Settlement.  Any such Class Member must submit documentation relating to his or her dispute.   The Claims Administrator shall notify Defendants' Counsel and Class Counsel of any such dispute no later than five (5) days after receiving notice of the dispute.  In the case of a dispute, Defendants' records shall control and will have a rebuttable presumption of correctness.  For any dispute that arises, counsel for the Parties may stipulate to a resolution, or may stipulate to allow the Claims Administrator to resolve the dispute and make a final and binding determination without hearing or right of appeal, or may ask the Court to resolve a dispute.

80.    Objections to Settlement.  In order to object to this Agreement, or any term of it, the person making the objection must be a Settlement Class Member, must not opt-out, and must, by no later than sixty (60) days after the original mailing of the Notice of Settlement, file with the Court, and serve on

Class Counsel and Defendants' counsel, a written statement of the grounds of objection, signed by the objecting Class Member or his or her attorney, along with all supporting papers, in accordance with the instructions in the Notice of Settlement. Any objection that does not meet the requirements of this paragraph shall not be considered by the Court. Class Members who fail to timely file and serve objections in the manner specified herein shall be deemed to have waived any objections.

81. The Claims Administrator shall provide the Parties with a weekly update as to the number of returned Notices (if any), opt-outs (if any), and objections (if any) it has received. Upon completion of the sixty (60) day time period in which Class Members can timely opt out of the settlement, or object to the settlement, the Claims Administrator shall inform the Parties as to the total number of Class Members in each category, if any.

82. Within seven (7) days after the deadline to object or opt-out, the Claims Administrator shall recalculate the Net Pro Rata Distribution for those Class Members who remain in the Class to determine the final Net Pro Rata Distribution of each Class Claimant. The Claims Administrator shall provide Class Counsel and Defendant's Counsel with a list of all such amounts. Within seven (7) days after receiving the Claims Administrator's report, Class Counsel and Defendant's Counsel shall jointly review the same to determine if the calculations are consistent with this settlement.

83. Declaration of Compliance. As soon as practicable, and no later than seven days prior to the hearing regarding final approval of the settlement, the Claims Administrator shall provide Defendants' Counsel and Settlement Class Counsel with a declaration attesting to completion of the notice process (except for any ongoing attempt to obtain valid mailing addresses for, and the resending of, any returned Notices of Settlement) ("Declaration of

Compliance"). The Parties agree that compliance with the notice procedures described in this Stipulation constitutes due and sufficient notice to Class Members of this proposed settlement and the hearing regarding final approval of the settlement, and should satisfy the requirement of due process. Nothing else shall be required of, or done by, the Parties, Class Counsel, Defendants' Counsel, or the Claims Administrator to provide notice of the proposed settlement and the final approval hearing.

84. <u>Funding of Qualified Settlement Fund</u>. Within fifteen (15) days after the Effective Date, Defendants shall wire the Gross Settlement Amount, plus the full amount estimated for the employers' share of payroll taxes, to the Claims Administrator for deposit into the Qualified Settlement Fund.

85. Immediately after the Effective Date, the Claims Administrator will forward to the Parties a cover letter addressed to the LWDA referencing (i) the LWDA Distribution and (ii) that the Court has given its final approval to the terms of the settlement, including the amount of the LWDA Distribution. The Claims Administrator shall forward the aforementioned letter and LWDA Distribution to the LWDA in accordance with this Agreement.

86. <u>Disbursement of Class Counsel Attorneys' Fees and Costs, LWDA Payment, Class Representative Enhancement, Class Member Deponent Enhancement and Class Member Discovery Respondent Enhancement and Claims Administration Charges</u>. Within five (5) business days after Defendants wire the Gross Settlement Amount to the Claims Administrator for deposit into the Qualified Settlement Fund, the Claims Administrator shall disburse any court-approved attorneys' fees, costs, the LWDA Distribution, Class Representative Enhancements, Class Member Deponent Enhancements, Class Member Discovery Respondent

Enhancements and any unpaid Claims Administration Charges.

87.   <u>Disbursement of Net Pro Rata Distributions</u>.  No later than five (5) business days after Defendants have wired the Gross Settlement Amount to the Claims Administrator for deposit into the Qualified Settlement Fund, the Claims Administrator will send each Class Claimant, at their last known or provided address, their Net Pro Rata Distribution in the form of (a) a non-payroll check for the combined amounts of the Interest Portion and Penalties Portion of the Pro Rata Distribution and (b) a payroll check in the net amount of the Net Wages Portion of the Pro Rata Distribution.  The Claims Administrator shall report all such payments to the appropriate government taxing authorities using the tax reporting forms and methods required under applicable law.  The mailing of Net Pro Rata Distributions shall be by first-class United States mail to the last known mailing address of each Class Claimant.

88.   Upon completion of the administration of the settlement under this Agreement, the Claims Administrator shall provide to Defendants' counsel the following: (a) specimens of all form documents sent to Class Members, including the Notice of Settlement; (b) copies of all non-privileged documents actually sent to Class Members, including without limitation, those itemized in (a), *supra;* (c) a register of all California Class Members who excluded themselves from the settlement; and (d) a register listing all Class Members and the Net Pro Rata Distribution (including both the original and secondary allocation, if any) made to each Class Member.

89.   <u>Extension of Time to Pay and/or Process Claims</u>.  Should the Claims Administrator need more time than is provided under this Agreement to complete any of its obligations as set forth in this Agreement, the Claims Administrator may request such additional time in writing (including an

explanation of the need for additional time) from Defendants' Counsel and Class Counsel. If Defendants' Counsel and Class Counsel do not agree, in writing, to the Claims Administrator's request for additional time, the Claims Administrator may seek such additional time from the Court.

## RELEASE OF CLAIMS

90.    Plaintiffs and all members of the Settlement Class stipulate and agree that, upon the Effective Date, they shall be deemed to have, and by operation of the Court's order granting final approval of the settlement set forth in this Agreement and the Judgment of dismissal entered pursuant thereto shall have expressly waived and relinquished the Released Claims. Even if Plaintiffs and/or any such Class Members may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of the Released Claims, Plaintiffs and each of such Class Members, upon the Effective Date, shall be deemed to have and by operation of the Court's order granting final approval of the settlement set forth in this Agreement and the Judgment of dismissal entered pursuant thereto shall have fully, finally, and forever settled and released any and all of the Released Claims. This is true whether the Released Claims are known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts.

91.    Plaintiffs and all members of the Settlement Class agree not to

sue or otherwise make a claim against any of the Released Parties based upon the Released Claims.

92.    All members of the California Class and FLSA Class make this waiver with full knowledge of their rights and with the specific intent to release all known and unknown claims arising from the claims in the Lawsuit.

93.    Plaintiffs and all members of the Settlement Class shall be deemed to have waived their rights as to the Released Claims with respect to the Released Parties under Section 1542 of the California Civil Code, which states:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

94.    For the purposes of effectuating this Agreement only, Plaintiffs, all members of the Settlement Class, also shall be deemed to have acknowledged and agreed that: (1) their claims for compensation for missed meal and rest breaks, overtime compensation, minimum wages, statutory and civil penalties, and any other payments and/or penalties in the Lawsuit are disputed; and (2) the payments set forth herein constitute full payment of any amounts allegedly due to them.  Such acknowledgements pertain only to effectuating this Agreement and, if this Agreement fails for any reason, shall be of no effect whatsoever. In light of these acknowledgements for settlement purposes only, Plaintiffs, all members of the California Class and FLSA Class that do not timely and properly exclude themselves from the terms of this Agreement, and all members of the Non-California Subclass, shall be deemed to have acknowledged and agreed that California Labor Code section 206.5 is not applicable to the Parties hereto.  That section provides in pertinent part as

follows:

> "An employer shall not require the execution of any release of a
> release of a claim or right on account of wages due, or to
> become due, or made as an advance on wages to be earned,
> unless payment of those wages has been made."

95.     Each member of the California Subclass that does not timely and
properly exclude themselves from the terms of this Agreement, and all
members of the Non-California Subclass shall be deemed to have made the
foregoing Release and representations as if by manually signing them.

96.     In addition to the release provided above with respect to all Class
Members, and for a valuable consideration, the receipt and adequacy of which
is hereby acknowledged and except as specifically provided below, Class
Representatives Terry Boyd, Ethel Joann Parks, Sonia Medina and Linda
Zanko, on behalf of themselves and each of their heirs, executors,
administrators, attorneys, devisees, successors, and assigns, do hereby release
and forever discharge the Released Parties of and from any and all claims,
causes of action, suits, debts, liens, contracts, judgments, agreements,
promises, liabilities, claims, demands, damages, losses, costs, or expenses of
any nature whatsoever, known or unknown, fixed or contingent (hereinafter
called "Claims"), which Class Representatives now have against the Released
Parties, or any of them, by reason of any matter, event, act, omission, cause or
thing whatsoever from the beginning of time to the date of this Agreement,
including but not limited to any and all Claims relating to or arising out of the
hire, employment, demotion, termination or remuneration (including without
limitation salary, bonus, incentive or other compensation, sick leave or
medical insurance benefits), except vested benefits, of Class Representatives
by the Released Parties, including without limitation all Claims arising out of,

based upon or relating to the Lawsuit.

97.     Without limiting the generality of the foregoing, the Claims of the Class Representatives released herein include any Claims arising out of, based upon, or in any way related to (i) claims of discrimination, harassment, and retaliation; (ii) any tort claims, including wrongful discharge, intentional or negligent infliction of emotional distress, intentional or negligent misrepresentation, invasion of privacy, defamation, loss of consortium, breach of fiduciary duty, assault, battery, sexual battery, violation of public policy, or any other common law claim of any kind; (iii) any other violation or alleged violation of Title VII of the Civil Rights Act of 1964, as amended, the Equal Pay Act, as amended, the Fair Labor Standards Act, the Employee Retirement Income Security Act, the Americans With Disabilities Act, the Family and Medical Leave Act, the California Family Rights Act, the California Fair Employment and Housing Act, the Civil Rights Act of 1866, and the Consolidated Omnibus Budget Reconciliation Act; and (iv) any claim relating to or arising under any other local, state or federal statute, regulation or principle of common law governing the employment of individuals and/or discrimination in employment.   This release extends to any and all administrative charges whether before the Equal Employment and Opportunity Commission or the Department of Fair Employment and Housing or any other court or agency.  Should the Class Representatives ever become a party to any such proceeding against the Released Parties, as a result of claims released in the agreement, he or she shall immediately ask any such administrative agency or court to withdraw any such charge as to him.  In consideration of the mutual promises contained herein, the Class Representatives, on behalf of themselves, and each of their heirs, representatives, successors, assigns, and attorneys, specifically agree to

forever fully and finally release, waive, acquit and discharge, to the fullest extent permitted by law, all claims, charges, complaints, liens, demands, causes of action, obligations, damages and liabilities, whether known or unknown, including, but not limited to all claims delineated in the subsequent section below.  Further, Class Representatives agree to sign this Agreement and to be bound by the terms herein stated, and further agree not to request to be excluded from the Agreement and agree not to object to any of the terms of the Agreement.

## CLASS ACTION FAIRNESS ACT NOTICE

98.    Defendants will be responsible for providing appropriate notifications to the relevant agencies under the Class Action Fairness Act ("CAFA") within ten (10) days of the filing of the motion for preliminary approval.

## VOIDING THE AGREEMENT

99.    In the event: (i) the Court does not enter any order specified herein; (ii) the Court does not finally approve the settlement set forth in this Agreement as provided herein; (iii) the Court does not enter an order granting final approval of the settlement set forth in this Agreement and a Judgment of dismissal of the Lawsuit with prejudice as provided herein that becomes final as a result of the occurrence of the Effective Date; or (iv) the settlement set forth in this Agreement does not become final for any other reason, this Agreement shall be null and void *ab initio* and any order or judgment entered by the Court in furtherance of the settlement set forth herein shall be treated as withdrawn or vacated by stipulation of the parties.  In such case, the Parties shall be returned to their respective statuses as of the date immediately prior to the execution of this Agreement, and the Parties shall proceed in all respects

as if this Agreement had not been executed.  In the event an appeal is filed from the Court's order granting final approval of the settlement set forth in this Agreement and any Judgment entered pursuant thereto, or any other appellate review is sought prior to the Effective Date, administration of the Settlement shall be stayed pending final resolution of the appeal or other appellate review.

100.   In the event 5% or more of the members of the Class (including members of the California Class and/or members of the FLSA Class) opt out and/or withdraw from the Class, Defendants may, at their option, void the Agreement in its entirety.  For illustration purposes only, if there are 367 total individuals in the Class, and 19 or more individuals opt out and/or withdraw (from the California Class and/or FLSA Class), Defendants will have the right to void the Agreement under this Paragraph.  Unless there are 5% or more of the total Class that opt out and/or withdraw, Defendants will not receive reversion of any part of the Gross Settlement Amount, unless the settlement is not finally approved by the Court with terms materially identical to the terms set forth in this Agreement.  In the event the settlement is voided pursuant to this paragraph, or is not given final approval by the Court, Defendants will bear only the already-incurred costs of the Claims Administrator.

### MISCELLANEOUS PROVISIONS

101.   Each Party to Bear Own Costs.  Except as specifically provided herein, the Parties hereto will bear responsibility for their own attorneys' fees and costs, taxable or otherwise, incurred by them or arising out of this Lawsuit, and will not seek reimbursement thereof from any Party to this Agreement.

102.   Severability.  If any of the above provisions are found null, void,

or inoperative, for any reason, the remaining provisions will remain in full force and effect.  Notwithstanding, the invalidation of any material term of this Agreement, including but not limited to all the terms and provisions specified in the Release of Claims, will invalidate this Agreement in its entirety unless the Parties subsequently agree in writing that the remaining provisions will remain in force and effect.

103.  <u>Headings</u>.  The descriptive headings of any paragraphs or sections of this Agreement are inserted for convenience of reference only and do not constitute any part of this Agreement.

104.  <u>No Admission</u>.  Neither the acceptance nor the performance by Defendants of the terms of this Agreement nor any of the related negotiations or proceedings is or shall be claimed to be construed as, or deemed to be an admission by Defendants of the truth of any of the allegations of the lawsuit, the representative character of the Lawsuit, the validity of any of the claims that were or could have been asserted by Plaintiffs and/or Class Members in the Lawsuit, or any liability or guilt of Defendants in the Lawsuit.

105.  <u>Agreement Jointly Prepared</u>.  The Parties and their attorneys have reviewed this Agreement.  The Parties have had a full opportunity to negotiate the terms and conditions of this Agreement.  Accordingly, the Parties expressly waive the common-law and statutory rule of construction that ambiguities should be construed against the drafter of an agreement, and agree, covenant, and represent that the language in all parts of this Agreement shall be in all cases construed as a whole, according to its fair meaning.

106.  <u>Non-Evidentiary Use</u>.  Neither the fact of this Agreement, the existence of this Stipulation, the terms of this Agreement, nor any order or action pursuant thereto may be referred to, relied upon, cited, or used as evidence by any of the Parties, Class Members, or their respective counsel in

the Lawsuit or in any other action or proceeding; provided, however, that nothing contained in this section shall prevent this Agreement from being used, offered, or received in evidence in any proceeding to enforce, construe, or finalize this Agreement.

107.  <u>Amendment or Modification</u>.  Unless otherwise provided herein, this Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors-in-interest.

108.  <u>Authorization to Enter Into Stipulation</u>.  Each individual signing this Agreement warrants that he or she has the authority and is expressly authorized to enter into this Agreement on behalf of the party for which that individual signs.

109.  The Parties agree that because the Class Members are so numerous, it is impossible or impractical to have each of them execute this Agreement. Accordingly, the Notice of Settlement, which is included within Exhibit A attached to this Agreement, will advise all of the Class Members of the binding nature of the release and that the release shall have the same force and effect as if the Agreement were executed by each of them, whether or not the Notice of Settlement is actually received by the Class Member.

110.  <u>Advice of Counsel</u>.   The Parties to this Agreement are represented by competent counsel, and they have had an opportunity to consult with counsel.  The Parties to this Stipulation agree that it reflects their good faith compromise of the claims raised in this action, based upon their assessment of the mutual risks and costs of further litigation and the assessments of their respective counsel.

111.  <u>Assignment</u>.  None of the rights, commitments, or obligations recognized under this Stipulation may be assigned by any Party, Class Member, Class Counsel or Defendants' Counsel without the express written

consent of each Party and their respective counsel hereto.   The representations, warranties, covenants, and agreements contained in this Agreement are for the sole benefit of the Parties under this Agreement, and shall not be construed to confer any right or to avail any remedy to any other person.

112.   <u>Governing Law.</u>  This Agreement shall be governed, construed, and interpreted, and the rights of the Parties shall be determined, in accordance with the laws of the State of California, irrespective of the State of California's choice of law principles.

113.   <u>Entire Agreement</u>.   This Agreement and any supplemental written agreement subsequently incorporated constitute the entire Agreement among these Parties, and no oral or written representations, warranties or inducements have been made to any Party concerning this Agreement other than the representations, warranties and covenants contained and memorialized herein.  This Agreement, once it is fully executed, supersedes, any and all prior agreements between the Parties, whether written or verbal, including the Parties' "Memorandum of Understanding."

114.   <u>Counterparts</u>.   This Agreement, and any amendments hereto, may be executed in any number of counterparts and any Party and/or their respective counsel hereto may execute any such counterpart, each of which when executed and delivered shall be deemed to be an original and all of which counterparts taken together shall constitute but one and the same instrument.  It shall not be necessary in making proof of this Agreement or any counterpart hereof to produce or account for any of the other counterparts.

115.   <u>Cooperation</u>.  The Parties shall cooperate fully with one another in seeking approval of the Court of this Agreement (including all exhibits thereto) and to use their best efforts to consummate the Agreement and cause

the Court to enter an order of final approval of the settlement.  No Party to this Agreement shall seek to evade his, her or its good faith obligations to seek approval and implementation of the Agreement by virtue of any ruling, order, or other development, whether in the Lawsuit, in any other litigation or otherwise that hereafter might occur and might be deemed to alter the relative strengths of the Parties with respect to any claims or defenses of their relative bargaining power with respect to negotiating.

116.  <u>Press Release/Non-Disparagement</u>.  Subsequent to the date of filing with the Court of a motion for preliminary approval and a copy of this Agreement, Class Counsel may issue a press release.  Any statements Class Counsel make/issue will be factually accurate and not derogatory or disparaging about the company.  Statements regarding contrasting views of the claims in this matter are not "derogatory" or "disparaging" for purposes of this Agreement.

117.  <u>Website.</u>  After the court grants preliminary approval of the settlement, Class Counsel will set up a website to provide settlement documents and other case-related documents online for class members' review.  Any statements Class Counsel makes on the website about this lawsuit will be factually accurate and not derogatory or disparaging about the company.  Statements regarding contrasting views of the claims in this matter are not "derogatory" or "disparaging" for purposes of this Agreement.

118.  To the extent permitted by law, the Court shall retain jurisdiction for the purposes of managing and overseeing the class action settlement set forth in this Agreement and the distribution of funds pursuant thereto.

*       *       *

THE UNDERSIGNED ACKNOWLEDGE THAT EACH HAS READ THE FOREGOING AGREEMENT AND ACCEPTS AND AGREES TO THE PROVISIONS CONTAINED THEREIN, AND HEREBY EXECUTES IT VOLUNTARILY WITH FULL KNOWLEDGE OF ITS CONSEQUENCES.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement on the dates indicated below.

**IT IS SO STIPULATED AND AGREED:**

*[Signatures on following pages]*

**PLAINTIFFS/CLASS REPRESENTATIVES:**

DATED: 08/21/2015 , 2015     _____

Terry Boyd, Plaintiff/Class Representative


DATED: _____, 2015     _____

Ethell Joann Parks, Plaintiff/Class
Representative


DATED: _____, 2015     _____

Sonia Medina, Plaintiff/Class Representative


DATED: _____, 2015     _____

Linda Zanko, Plaintiff/Class Representative

**PLAINTIFFS/CLASS REPRESENTATIVES:**

DATED: _____, 2015          _____

                                  Terry Boyd, Plaintiff/Class Representative


DATED: 08/17, 2015                _____

                                  Ethel Joann Parks, Plaintiff/Class
                                  Representative


DATED: _____, 2015          _____

                                  Sonia Medina, Plaintiff/Class Representative


DATED: _____, 2015          _____

                                  Linda Zanko, Plaintiff/Class Representative

## PLAINTIFFS/CLASS REPRESENTATIVES:

DATED: _____, 2015    _____

Terry Boyd, Plaintiff/Class Representative

DATED: _____, 2015    _____

Ethel Joann Parks, Plaintiff/Class Representative

DATED: 08/20 ___, 2015    _____

Sonia Medina, Plaintiff/Class Representative

DATED: _____, 2015    _____

Linda Zanko, Plaintiff/Class Representative

## PLAINTIFFS/CLASS REPRESENTATIVES:

DATED: _____, 2015    _____

Terry Boyd, Plaintiff/Class Representative


DATED: _____, 2015    _____

Ethell Joann Parks, Plaintiff/Class
Representative


DATED: _____, 2015    _____

Sonia Medina, Plaintiff/Class Representative


DATED: _8/17/15_, 2015    _Linda Zanko_____

Linda Zanko, Plaintiff/Class Representative

**DEFENDANTS:**

**DEFENDANTS BANK OF AMERICA CORPORATION, LANDSAFE, INC., AND LANDSAFE APPRAISAL SERVICES. INC.**

DATED: *August 18* , 2015

By: _Jay J. Price_

Name: _JAY J. PRICE_

Title: _SVP & Associate General Counsel Bank of America_

**COUNSEL:**

DATED: _____, 2015    **BRYAN SCHWARTZ LAW**

By: _____
           Bryan J. Schwartz, Esq.

Attorneys for Plaintiffs and the Class

DATED: _____, 2015    **SCHONBRUN DESIMONE SEPLOW HARRIS & HOFFMAN, LLP**

By: _____
           Wilmer Harris, Esq.

Attorneys for Plaintiffs and the Class

DATED: 6-18-2015, 2015    **MCGUIREWOODS LLP**

By: _____
           Matthew C. Kane, Esq.
           Michael D. Mandel, Esq.
           John A. Van Hook, Esq.
           Christopher A. Killens, Esq.

Attorneys for Defendants
Bank of America Corporation
LandSafe, Inc., and
LandSafe Appraisal Services, Inc.

**COUNSEL:**

DATED: _8/21_, 2015       **BRYAN SCHWARTZ LAW**

By: _____
         Bryan J. Schwartz, Esq.

Attorneys for Plaintiffs and the Class


DATED: _8/17_, 2015       **SCHONBRUN DESIMONE SEPLOW
                          HARRIS & HOFFMAN, LLP**

By: _Wilmer L. Harris_
       Wilmer Harris, Esq.

Attorneys for Plaintiffs and the Class


DATED: _____, 2015       **McGuireWoods LLP**

By: _____
         Matthew C. Kane, Esq.
         Michael D. Mandel, Esq.
         John A. Van Hook, Esq.
         Christopher A. Killens, Esq.

Attorneys for Defendants
Bank of America Corporation
LandSafe, Inc., and
LandSafe Appraisal Services, Inc.

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

TERRY P. BOYD, ETHEL JOANN PARKS,
SONIA MEDINA, LINDA ZANKO, and
VICTOR GALAZ, individually, on behalf of
all others similarly situated, and on behalf of
the general public,

          Plaintiffs,

    v.

BANK OF AMERICA CORP.; LANDSAFE,
INC.; LANDSAFE APPRAISAL SERVICES,
INC.; and DOES 1-10, inclusive

          Defendants.

_____/

Case No. 13-CV-00561 DOC (JPRx)

**NOTICE OF CLASS AND
COLLECTIVE ACTION
SETTLEMENT TO STAFF
APPRAISERS**

Honorable David O. Carter

---

**IMPORTANT NOTIFICATION TO CLASS AND COLLECTIVE ACTION MEMBERS**

**TO:**    ALL INDIVIDUALS WHO HAVE BEEN EMPLOYED AS A STAFF APPRAISER BY
BANK OF AMERICA CORPORATION, LANDSAFE, INC., AND/OR LANDSAFE
APPRAISAL SERVICES, INC. IN CALIFORNIA AT ANY TIME BETWEEN APRIL
9, 2009 AND THE PRESENT WHO HAVE NOT PREVIOUSLY EXCLUDED
THEMSELVES FROM THE CERTIFIED CLASS IN THE ABOVE-REFERENCED
LAWSUIT; AND

        ALL INDIVIDUALS WHO HAVE BEEN EMPLOYED AS A STAFF APPRAISER BY
BANK OF AMERICA CORPORATION, LANDSAFE, INC., AND/OR LANDSAFE
APPRAISAL SERVICES, INC. AT ANY TIME BETWEEN APRIL 9, 2010 AND THE
PRESENT AND WHO HAVE FILED CONSENTS TO JOIN THE ABOVE-
REFERENCED LAWSUIT

**PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY. A FEDERAL
COURT AUTHORIZED THIS NOTICE. THIS IS NOT A SOLICITATION FROM A
LAWYER.**

**THE DEFENDANTS IN THE ABOVE-REFERNCED LAWSUIT HAVE AGREED TO
CREATE A $36 MILLION SETTLEMENT FUND TO PAY CLAIMS OF STAFF
APPRAISER CLASS MEMBERS IN ORDER TO SETTLE A WAGE AND HOUR
LAWSUIT.**

**ACCORDING TO COMPANY RECORDS, YOU (A) ACTIVELY WORKED AS A**

**STAFF APPRAISER IN CALIFORNIA BETWEEN APRIL 9, 2009 AND, ACCORDING TO THE RECORDS OF A THIRD-PARTY ADMINISTRATOR, DID NOT EXCLUDE YOURSELF FROM THE CLASS CERTIFIED IN THE ABOVE-REFERENCED LAWSUIT AND/OR (B) ACTIVELY WORKED AS A STAFF APPRAISER AFTER APRIL 9, 2010 AND, ACCORDING TO COURT RECORDS, HAVE FILED AND NEVER WITHDRAWN A CONSENT TO JOIN THE ABOVE-REFERENCED LAWSUIT.**

**YOUR ANTICIPATED MINIMUM ALLOCATION OF THE SETTLEMENT IS $[XXXXX], BASED ON COMPANY RECORDS OF YOUR INDIVIDUAL APPRAISAL REPORT PRODUCTION HISTORY, PAYROLL RECORDS, AND THE FORMULA ARRIVED AT BY THE PARTIES.**

- The settlement will provide $36 million to pay claims of current and former staff appraisers who worked for Bank of America Corporation, LandSafe, Inc., and/or LandSafe Appraisal Services, Inc. (collectively, "LandSafe") in California between April 9, 2009 and the present who did not exclude themselves from the certified class in the lawsuit, and/or who worked as a staff appraiser between April 9, 2010 and the present and filed a consent to join the lawsuit.

- The settlement resolves claims of staff appraisers in a lawsuit that alleged causes of action against LandSafe for: (1) failure to pay overtime wages under federal and California law; (2) failure to pay earned wages upon discharge under California law; (3) failure to provide timely, accurate, itemized wage statements under California law; (4) failure to provide and/or authorize meal and rest periods under California law; (5) unlawful and/or unfair business practices in violation of California Business and Professions Code; and (6) penalties under the California Labor Code Private Attorneys General Act of 2004.

- LandSafe denies that it is liable for any of the claims. However, in light of the risk, expense, and delay of proceeding to trial and potentially litigating an appeal of pre-trial rulings and the trial outcome, both LandSafe and Class Counsel for the Plaintiffs believe that this is a fair settlement of the staff appraisers' claims.

| YOUR OPTIONS AND LEGAL RIGHTS IN THIS SETTLEMENT | |
|---|---|
| **DO NOTHING AND RECEIVE A SETTLEMENT PAYMENT** | If you do nothing, you will receive a settlement payment equal to or greater than your "minimum allocation" stated above, assuming that the Court approves the settlement. The minimum allocation is based on the number and types of appraisals you completed and your payroll records within the relevant period. If you do nothing, a check will arrive in the mail. The back of the check will explain that by cashing the check, you are agreeing to release all claims covered by this Settlement, and will be releasing your claims under the federal Fair Labor Standards |

| | Act. |
|---|---|
| **EXCLUDE YOURSELF** | If you affirmatively write to exclude yourself (*i.e.*, "opt out" of the case), you will receive no payment from this settlement. However, you would be free to pursue your claims separately against LandSafe. The steps to exclude yourself are explained below. |
| **OBJECT** | If you wish to challenge the terms of the settlement, including amounts requested for attorneys' fees, costs and service awards to the Plaintiffs and others, you may file an objection with the Court, setting forth the reasons why you oppose the settlement or any of its terms. However, in order to object to the settlement you must also not exclude yourself from the settlement. You may also appear in Court and explain why you do not like the settlement or use an attorney to appear for you. If you object, this does not mean you opt out of the class (in fact, as explained below, if you choose to "opt out" of the class, you will not be permitted to object to the settlement terms). |

---

### WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION**                                                              **PAGE 1**
   1. Why did I get this notice package?
   2. What is this lawsuit about?
   3. What is a class action?
   4. Why is there a settlement?                                       **PAGE 2**

**WHO IS IN THE SETTLEMENT**
   5. How do I know if I am part of the settlement?
   6. Are there exceptions to being included?
   7. I am still not sure if I am included.
   8. For former employees: will this affect my severance?

**THE SETTLEMENT BENEFITS – WHAT YOU GET**                                          **PAGE 3**
   9. What does the settlement provide?
  10. How much will my payment be?

**YOU WILL RECEIVE A PAYMENT UNLESS YOU AFFIRMATIVELY OPT OUT**
  11. How can I get a payment?
  12. When would I get my payment?
  13. What am I giving up to get a payment?                             **PAGE 4**
  14. What if I believe I am not being credited for the right number of work-weeks?

**EXCLUDING YOURSELF FROM THE SETTLEMENT**
    15. How do I get out of the settlement?        **PAGE 5**
    16. What happens if I do nothing?
    17. What are claims under the Fair Labor Standards Act?

**THE LAWYERS REPRESENTING THE CLASS**
    18. Do I have a lawyer in the case?        **PAGE 6**
    19. How will the lawyers and Class Representative
        Plaintiffs be paid?

**OBJECTING TO THE SETTLEMENT**
    20. How do I tell the Court that I challenge all or some of the settlement
        terms?
    21. What's the difference between objecting, on the one hand, and    **PAGE 7**
        excluding myself (*i.e.*, "opting out") from the settlement, on the other?

**THE COURT'S FINAL FAIRNESS HEARING**
    22. When and where will the Court decide whether to approve the settlement?
    23. Do I have to come to the hearing?
    24. May I speak at the hearing?        **PAGE 8**

**GETTING MORE INFORMATION**        **PAGE 8**
    25. Are there more details about the settlement?
    26. How do I get more information?

**BASIC INFORMATION**

| 1.  **Why did I get this notice package?** |
|---|

LandSafe's records indicate that: (a) you worked for LandSafe as a staff appraiser in California between April 9, 2009 and the present, and a third-party claims administrator's records indicate that you did not exclude yourself from the class of staff appraisers certified by the Court in the lawsuit; and/or (b) you worked for LandSafe as a staff appraiser between April 9, 2010 and the present and, according to Court records, you previously have filed a consent to join the lawsuit and never withdrawn it.

You received this notice because you have a right to know about a proposed settlement of a class and collective action lawsuit, and about your options, before the Court decides whether to approve the settlement.  If the Court approves it, and after any objections and appeals are resolved, a third-party administrator appointed by the Court will make the payments that the settlement requires.

This package explains the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the case is the United States District Court for the Central District of California, and the case is known as *Terry P. Boyd et al. v. Bank of America Corp.; LandSafe, Inc. et al.*, Case No. 13-CV-00561 DOC.  The people who brought the suit are called Plaintiffs, and entities the suit was brought against (Bank of America Corp., LandSafe, Inc. and LandSafe Appraisal Services, Inc.) are the Defendants.

**DO NOT CONTACT THE COURT DIRECTLY WITH QUESTIONS. THE COURT WILL NOT ANSWER ANY OF YOUR QUESTIONS.**

| 2.  **What is this lawsuit about?** |
|---|

The lawsuit claims that LandSafe misclassified staff appraisers as "exempt" from state and federal overtime laws and thereby:  (1) failed to pay  staff  appraisers overtime when they worked more than eight hours in a day  in California or forty hours in a week both within and outside of California; (2) failed to provide rest and meal breaks to California staff appraisers; (3) failed to provide complete and accurate wage statements to its California employees; (4) failed to pay its California employees all wages due at the time of discharge or resignation from employment; and (5) as a result of the foregoing, engaged in unfair or unlawful business practices in violation of the California Business and Professions Code.

The Court has ruled that LandSafe staff appraisers are not exempt from overtime under the administrative or learned professional exemptions under California or federal law, or the highly-compensated employee exemption under federal law. However, LandSafe believes that its pay practices have at all times been appropriate under California and federal law and has vowed to appeal any adverse ruling by the Court. Nonetheless, as a result of this lawsuit and as part of this

settlement, to the extent that Bank of America Corporation, either directly or through a direct or indirect subsidiary, continues to maintain in-house Staff Appraisers as their employees, Defendants will take steps to reclassify the Staff Appraiser position as overtime eligible as soon as practicable.

**3.  What is a class action?**

In a class action,  Class Representatives (in this case Terry P. Boyd, Ethel Joann Parks, Sonia Medina and Linda Zanko, on behalf of staff  appraisers), sue on behalf of people who have similar claims ("Class Members").  The Court will resolve the issues for all Class Members, except for those who exclude themselves from the Class. Note that the other individual listed in the suit (Victor Galaz) was a review appraiser, whose claims were resolved in a prior settlement.

**4.  Why is there a settlement?**

The Court did not issue a final judgment in favor of Plaintiffs or Defendants. Instead, the parties reached a negotiated settlement, which avoids the uncertainties and delays associated with further litigation and which compensates the Class Members sooner, rather than later. The Class Representatives and Plaintiffs' attorneys believe that this settlement is in the best interests of all Class Members.

### WHO IS IN THE SETTLEMENT

**5.  How do I know if I am part of the settlement?**

Everyone who fits the following description is a Class Member: *All Staff Appraisers who worked for Bank of America Corp., LandSafe, Inc., and/or LandSafe Appraisal Services, Inc. in California at any time between April 9, 2009 and the present, who did not opt out of this case, or worked in a state other than California at any time between April 9, 2010 and the present, who timely submitted a consent form to opt-into this case, and who never withdrew their consent.*

**6.  Are there exceptions to being included?**

You are not a Class Member if you did not work for *Bank of America Corp., LandSafe, Inc., and/or LandSafe Appraisal Services, Inc.* as a Staff Appraiser in California during the period in question. Staff Appraisers that worked in a state other than California at any time between April 9, 2010 and the present but did not timely submit a consent form to opt-into this case, or who withdrew a prior consent form, are not included in the settlement and cannot participate in this settlement. Staff Appraisers who opted out of this case also may not participate.

**7.  I am still not sure if I am included.**

If you are receiving this notice, it is most likely that you do qualify to participate, and unless you opt out or withdraw your consent form opting into this case, you will receive a settlement payment, assuming that the Court approves the settlement. If you have questions about whether you qualify, you may contact Class Counsel at the contact information provided below.

**8.   For former employees:  will this affect my severance?**

If you are a former employee who, in connection with a reduction in force, signed a severance agreement containing various releases of claims against LandSafe, LandSafe has agreed that you are still permitted to participate in this settlement. You are not required to opt out of this settlement. Remaining a part of the class will not jeopardize any severance payments you received when you left LandSafe. However, the amount of your recovery from the settlement will be reduced by 20% to reflect the litigation risks associated with your claims.

### THE SETTLEMENT BENEFITS – WHAT YOU GET

**9.   What does the settlement provide?**

LandSafe has agreed to create a fund of $36,000,000.00 to be divided among all California and non-California Staff Appraisers who participate in the settlement, and also to be used to pay for Plaintiffs' attorney's fees and costs, enhancement payments to the named Plaintiffs and others who assisted in the litigation, and other payments made pursuant to this Settlement.

Staff appraisers who participate in the settlement will receive a pro rata payment based on the number and type of appraisals that they completed for LandSafe during the Class Period, and how much they earned. California staff appraisers will receive payment that is proportionally larger than review appraisers in other states, to reflect the fact that California staff appraisers have claims for meal- and rest-period violations and various California-specific penalties, which are claims that arise under California law, and which are available only to California employees. Staff appraisers who previously signed a severance agreement will have their recovery from the settlement reduced by 20% to reflect the litigation risks associated with their claims.

**10. How much will my payment be?**

Your minimum share of the fund is listed on the first page of this Notice. The amount will depend on the number and type of appraisals you completed for LandSafe during the Class Period, whether you worked in California or another state, and whether you previously signed a severance agreement. If other Class Members do not participate in the settlement, your share of the fund may increase proportionately.

One third of the settlement amount you receive will be considered wages (and have standard payroll taxes deducted from it) and the other two thirds will be considered interest and penalties,

to be paid to you with an IRS Form 1099. You alone are responsible to pay any appropriate taxes on the latter amount.

### YOU WILL RECEIVE A PAYMENT UNLESS YOU AFFIRMATIVELY OPT OUT

**11. How can I get a payment?**

If you are receiving this notice, you qualify for payment, and unless you affirmatively opt out of the settlement by [*date – 60 days after notice is mailed*], you will automatically receive a payment.

**12. When would I get my payment?**

The Court will hold a hearing on [*date*] **2015** at [*time*] to decide whether to finally approve the settlement. If the Court approves the settlement, there may be appeals. Resolving any appeals can take time, perhaps more than a year. Please be patient.

However, if the Court approves the settlement at the hearing and there are no appeals, payments will be made within several weeks after the hearing.

**13. What am I giving up to get a payment?**

Unless you affirmatively exclude yourself from the settlement, you are part of the Class. You cannot sue, continue to sue, or be part of any other lawsuit against LandSafe about the wage and hour claims covered by this settlement. It also means that all of the Court's orders will apply to you and legally bind you.

Unless you affirmatively exclude yourself from the settlement, you will be releasing all wage and hour claims covered by this settlement, whether you cash your check or not, except for federal Fair Labor Standards Act claims, which will only be released if you cash your check.

You can review the exact language of the release by reviewing the Settlement Agreement online, at the web address listed in the "Getting More Information" section of this Notice, below. The relevant portion begins in Page 33 of the Settlement Agreement.

**14. What if I believe I am not being credited for the right number and types of appraisals?**

Any Class Member who disputes the information shown in Section 27 of his or her Notice of Settlement regarding the total number and type of appraisals that he or she actively worked as a staff appraiser may indicate and explain such disagreement under penalty of perjury within sixty (60) days of the mailing of the Notice of Settlement by notifying the Claims Administrator pursuant to the procedures set forth herein and described in the Notice of Settlement. Any such

QUESTIONS? CALL
[ADMINISTRATOR]: XXX-XXX-XXXX

Class Member must submit documentation relating to his or her dispute.  The Claims Administrator shall notify LandSafe's Counsel and Class Counsel of any such dispute no later than five (5) days after receiving notice of the dispute.  In the case of a dispute, LandSafe's records shall control and will have a rebuttable presumption of correctness.  For any dispute that arises, counsel for the Parties may stipulate to a resolution, or may ask the Court to resolve a dispute.

### EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want a payment from this settlement, but you want to keep the right to pursue claims (or continue to pursue claims) against LandSafe on your own regarding the legal issues in this case, then you must exclude yourself from the settlement.  This is called "opting out" of the settlement Class.  If you exclude yourself from the Settlement, you will not receive any money at all from this Settlement.

**15. How do I get out of the settlement?**

To exclude yourself from the settlement, you must send a letter by mail stating that you want to be excluded from *Terry P. Boyd et. al v. Bank of America Corp. et al*.  Be sure to include your name, address, telephone number, and your signature.  You must mail your exclusion request postmarked no later than [***date 60 days after notice is mailed***] to:

Claims Administrator
P.O. Box XXXX
City, ST XXXXX-XXXX

If you ask to be excluded, you will not get any settlement payments of any kind in this case and you cannot object to the settlement. You will not be legally bound by anything that happens in this lawsuit.  You will be able to pursue claims (or continue to pursue claims) against LandSafe for the wage claims at issue in this case in the future. If you have a pending claim or lawsuit, speak to your lawyer in that case immediately. You may need to exclude yourself from this Class to continue your own claim or lawsuit.

**16. What happens if I do nothing?**

If you do nothing regarding this notice, you will be sent a check for your allocated amount. If you do not cash the check, your rights will still be affected, in that you will give up your right to sue LandSafe for claims that this settlement resolves, other than federal claims under the Fair Labor Standards Act.

**17. What are claims under the Fair Labor Standards Act?**

The Fair Labor Standards Act is a federal law governing the payment of overtime for hours

QUESTIONS? CALL
[ADMINISTRATOR]: XXX-XXX-XXXX

worked past 40 in a week. It does not have the same provisions that California law has relating to employees taking meal or rest breaks or double-time wages.

In contrast, California law requires overtime to be paid for hours worked past 8 in a day or 40 hours in a week. California also has laws relating to meal breaks and rest breaks.  If you do nothing in this lawsuit and receive a check, you will give up your right to sue based on any California wage law. If you deposit your check, you will release your state and federal wage claims; if you do not deposit your check, you will retain your right to sue under the Fair Labor Standards Act.

### THE LAWYERS REPRESENTING THE CLASS

**18. Do I have a lawyer in this case?**

Two law firms – Bryan Schwartz Law and Schonbrun DeSimone Seplow Harris & Hoffman, LLP – represent the Class. These lawyers are called Class Counsel. These lawyers will be paid from the settlement amount, so you will not be charged personally for these lawyers' work on this case and in negotiating this settlement. If you want to be represented by your own lawyer, you may hire one at your own expense.

**19. How will the lawyers and Class Representative Plaintiffs be paid?**

Class Counsel will ask the Court to approve the payment of up to one-third of the settlement amount for attorneys' fees (*i.e.*, up to $12,000,000), as well as actual litigation costs, associated with investigating the facts, litigating the case, and negotiating the settlement. The Claims Administrator administering the settlement will be compensated at the fair market rate of those services from the settlement, currently estimated at $18,000, subject to Court approval.  Plaintiffs will also request that the Court approve payments of up to $25,000 to each of the four named Plaintiffs representing the staff appraisers, for their work in bringing this lawsuit and in exchange for them waiving a much broader array of personal claims than you are waiving. Plaintiffs will also request that the Court approve payments of $2,000 to each Class Member who assisted the litigation by testifying in a deposition in this case and $1,000 to each Class Member who assisted by responding to written discovery.

Class Counsel will also ask the Court to approve a payment of $75,000  to the State of California's Labor and Workforce Development Agency to satisfy alleged Labor Code violations pursuant to the California Labor Code Private Attorneys General Act of 2004 ("PAGA"). This payment to the LWDA is required by statute.

The Court may award less than these amounts. LandSafe has agreed not to oppose Class Counsel's request for fees and expenses. If the Court awards less than the amounts described in this section, that money will be redistributed to Class Members or distributed to an appropriate charity, depending upon the amount of the money.  None of this money will revert to LandSafe.

**OBJECTING TO THE SETTLEMENT**

**20. How do I tell the Court that I challenge all or some of the settlement terms?**

If you are a Class Member, you can object to the settlement if you wish to challenge any part of it, including the requested attorneys' fees, costs and service payments. You can give reasons why you think the Court should not approve it. The Court will consider your views. Please note, however, that you cannot ask the Court to order a larger settlement; the Court can only approve or deny the settlement as it is presented. If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue. To object, you must send a letter saying that you object to the settlement in *Terry P. Boyd et al. v. Bank of America Corp. et al*, Case No. 13-CV-00561 DOC (be sure to include this case name and number in your letter). Be sure to also include your name, address, telephone number, your signature, and the reasons you object to the settlement. To be considered, you must mail any objection to the four different places set forth below, postmarked no later than [XXXX – 60 days after mailing of notice], however, you may submit your objections to the request for attorneys' fees, costs and/or service awards 14 days before the final fairness hearing. The motion and documents requesting final approval and requesting attorneys' fees, costs and service awards will be filed no later than 28 days before the final fairness hearing and will be posted on Class Counsel's website, listed below. Further, please note that the date and time of the final fairness hearing may change so please be sure to check Class Counsel's website to confirm. The addresses to which your objections must be submitted are:

| Court | Class Counsel | Defense Counsel |
|---|---|---|
| Clerk of the Court<br>U.S. District Court for the<br>Central District of California<br>411 W. Fourth St.<br>Santa Ana, CA 92701 | Bryan Schwartz Law<br>1330 Broadway, Suite 1630<br>Oakland, CA 94612<br><br>Schonbrun DeSimone Seplow<br>Harris & Hoffman LLP<br>Attn: Wilmer Harris<br>715 Fremont Ave.<br>S. Pasadena, CA 91030 | McGuire Woods LLP<br>Attn: Michael Mandel<br>1800 Century Park East, 8th Fl<br>Los Angeles, CA 90067 |

**21. What's the difference between objecting, on the one hand, and excluding myself (*i.e.*, "opting-out") from the settlement, on the other?**

Objecting is simply telling the Court that you wish to challenge all or part of the settlement. You can object only if you stay in the Class. Excluding yourself from the settlement or "opting out" is telling the Court that you do not want to be part of the Class or receive any payment at all from the settlement. If you exclude yourself, you have no basis to object because the case no longer affects you.

**THE COURT'S FINAL FAIRNESS HEARING**

7

QUESTIONS? CALL
[ADMINISTRATOR]: XXX-XXX-XXXX

**22. When and where will the Court decide whether to approve the settlement?**

The Court will hold a Final Approval Fairness Hearing at [XXX] P.M. on [XXX], 2015, at the United States District Court for the Central District of California, at 411 W. Fourth St., Santa Ana, CA 92701, before the Honorable David O. Carter, Courtroom 9D.  At this hearing the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. After the hearing, the Court will decide whether to approve the settlement.  Please note that the hearing may be postponed without further notice to the Class. Thus, if you plan to attend the hearing, you should check the website identified in Question 25, below, or access the Court docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cacd.uscourts.gov.

**23. Do I have to come to the hearing?**

No.  But, you are welcome to come at your own expense.  If you send an objection, you do not have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

**24. May I speak at the hearing?**

You may ask the Court for permission to speak at the Final Fairness Hearing. To do so, you must send a letter to the Clerk of the Court saying that it is your "Notice of Intention to Appear in *Terry P. Boyd et al. v. Bank of America Corp. et al.*, Case No. 13-CV-00561 DOC."  Be sure to include your name, address, telephone number, and your signature. Your Notice of Intention to Appear must be postmarked no later than [XXX], **2015**, and be sent to the Clerk of the Court, Class Counsel, and Defense Counsel, at the four addresses listed in Question 20, above. You cannot speak at the hearing if you excluded yourself ("opted out") from the settlement.

GETTING MORE INFORMATION

**25. Are there more details about the settlement?**

This notice summarizes the proposed settlement.  More details are in a Settlement Agreement. If there is any conflict between this notice and the Settlement Agreement, the Settlement Agreement will control.  You can view a copy of the Settlement Agreement and other key documents in this case at the following web address:
www.bryanschwartzlaw.com/LandsafeStaffAppraiserSettlement.htm.

**26. How do I get more information?**

8

QUESTIONS? CALL
[ADMINISTRATOR]: XXX-XXX-XXXX

You can call 1-XXX-XXX-XXXX toll free, write to [Administrator], Inc., P.O. Box XXXX, City ST XXXXX-XXXX, or go to www.bryanschwartzlaw.com/LandsafeStaffAppraiserSettlement.htm.

You may also call Class Counsel:

Bryan Schwartz (510) 444-9300
Wilmer Harris (626) 441-4129
Michael Seplow (310) 396-0731

## INFORMATION USED TO CALCULATE YOUR SETTLEMENT SHARE

**27. What data is being used to calculate my settlement share?**

According to LandSafe's records, you completed the following types of appraisals in the following years, with the following total earnings each year:

In California Only: 2009:

1004
[type 2]
[type 3]
Etc.

Total 2009 Earnings:

2010:

1004
[type 2]
[type 3]
Etc.

Total 2010 Earnings:

2011:

1004
[type 2]
[type 3]
Etc.

Total 2011 Earnings:

2012:

QUESTIONS? CALL
[ADMINISTRATOR]: XXX-XXX-XXXX

1004
[type 2]
[type 3]
Etc.

Total 2012 Earnings:

2013:

1004
[type 2]
[type 3]
Etc.

Total 2013 Earnings:

2014:

1004
[type 2]
[type 3]
Etc.

Total 2014 Earnings:

2015:

1004
[type 2]
[type 3]
Etc.

Total 2015 Earnings:

According to Landsafe's records, you [X] did [X] did not sign a severance agreement.

**DO NOT CALL THE COURT**

**CONCLUSION**

    **THIS NOTICE AND ITS CONTENTS HAVE BEEN AUTHORIZED BY THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, THE HONORABLE DAVID O. CARTER, UNITED STATES DISTRICT COURT JUDGE.**

10

QUESTIONS? CALL
[ADMINISTRATOR]: XXX-XXX-XXXX

1

2

_____

The Honorable David O. Carter

3

United States District Judge

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11