# EXHIBIT A

**McGuireWoods LLP**
Matthew C. Kane, Esq. (SBN 171829)
Email: mkane@mcguirewoods.com
Michael D. Mandel, Esq. (SBN 216934)
Email: mmandel@mcguirewoods.com
John A. Van Hook, Esq. (SBN 205067)
Email: jvanhook@mcguirewoods.com
Christopher A. Killens, Esq. (SBN 254466)
Email: ckillens@mcguirewoods.com
1800 Century Park East, 8th Floor
Los Angeles, California 90067
Telephone:   (310) 315-8200
Facsimile:    (310) 315-8210

Attorneys for Defendants
BANK OF AMERICA CORPORATION, LANDSAFE, INC. AND
LANDSAFE APPRAISAL SERVICES, INC.

**BRYAN SCHWARTZ LAW**
Bryan J. Schwartz (SBN 209903)
Email: bryan@bryanschwartzlaw.com
Rachel M. Terp (SBN 290666)
rachel@bryanschwartzlaw.com
Eduard R. Meleshinsky (SBN 300547)
eduard@bryanschwartzlaw.com
1330 Broadway, Suite 1630
Oakland, CA 94612
Telephone: (510) 444-9300
Facsimile: (510) 444-9301

Attorneys for Plaintiffs
(*Additional counsel listed on following page*)

## UNITED STATES DISTRICT COURT

## CENTAL DISTRICT OF CALIFORNIA -- SOUTHERN DIVISION

| | |
|---|---|
| Terry P. Boyd, Ethel Joann Parks, Sonia Medina, Linda Zanko, Victor Galaz, individually, and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Bank of America Corp.; LandSafe, Inc.; LandSafe Appraisal Services, Inc.; and DOES 1 to 10, inclusive,<br><br>Defendants. | CASE NO. SACV13-00561-DOC (JPRx)<br><br>**JOINT STIPULATION FOR SETTLEMENT AND RELEASE OF CLASS AND COLLECTIVE ACTION CLAIMS OF STAFF APPRAISERS**<br><br>**Complaint Filed: April 9, 2013** |

(*Additional counsel continued from prior page*)
SCHONBRUN DESIMONE SEPLOW
HARRIS & HOFFMAN, LLP
Wilmer J. Harris (SBN 150407)
wharris@sdshhlaw.com
715 Fremont Ave.
S. Pasadena, CA 91030
Telephone: (310) 396-0731
Facsimile: (310)399-7040

SCHONBRUN DESIMONE SEPLOW
HARRIS & HOFFMAN, LLP
Benjamin Schonbrun (SBN 118323)
bschonbrun@sdshhlaw.com
Michael D. Seplow (SBN 150183)
mseplow@sdshhlaw.com
723 Ocean Front Walk
Venice, CA 90291
Telephone: (310) 396-0731

Facsimile: (310) 399-7040

## STIPULATION

This Stipulation for Settlement and Release of Class Action and Collective Action Claims ("Agreement") is entered into between Defendants Bank of America Corporation ("BAC"), LandSafe, Inc. ("LSI"), and LandSafe Appraisal Services, Inc. ("LAS") (collectively, "Defendants"), on the one hand, and individual named plaintiffs Terry Boyd, Ethel Joann Parks, Sonia Medina and Linda Zanko ("Plaintiffs" or "Class Representatives"), each on their own behalf and as Representative Plaintiffs on behalf of the Class Members (as described in Paragraphs 1-3) and each of the members of the Class (collectively "Staff Appraisers") in *Terry P. Boyd, et al. v. Bank of America Corp., et al.* (United States District Court, Central District of California, Case No. 8:13-cv-00561-DOC-JPR), on the other hand. For purposes of this Agreement, Plaintiffs and Defendants are referred to individually as a "Party" and collectively as the "Parties."

## DEFINITIONS

### A.    Class Definitions

1.    "Class Members" shall be comprised of the membership of two subclasses, (1) the "California Class," and (2) the "FLSA Class." "Class Member" means any person who is a member of the California Class and/or FLSA Class. The Parties understand that there are 367 Class Members. "Settlement Class Members" means all members of the Class that do not timely opt out of the California Class or effectuate a withdrawal from the FLSA Class. An individual can be a member of both the California Class and the FLSA Class.

2.    The "California Class" shall be: All persons who received notice pursuant to the Court's June 27, 2014 class certification order (Dkt. #232) and

did not timely submit a request to be excluded from the certified class.  The
"California Settlement Class" shall be all members of the California Class
that do not timely submit a request to opt out of this settlement.

3.     The "FLSA Class" shall be: All persons who filed a
consent-to-join form to join the FLSA collective action, as conditionally
certified by the Court on December 11, 2013 (Dkt. #109), and who have not
withdrawn their consents.

4.     "Class Period" means from April 9, 2009 through the Date of
Preliminary Approval for the California Class, and April 9, 2010 through the
Date of Preliminary Approval for the FLSA Class.

## B.     Additional Definitions

When used in this Agreement, along with the defined terms set forth
above and elsewhere in this Agreement, the following terms have the
meanings specified below:

5.     "Agreement" means this Joint Stipulation for Settlement and
Release and the terms and conditions assented to by the Parties in this
document.

6.     "Claims Administrator" means Kurtzman Carson Consultants,
LLC (or "KCC"), subject to the Court's approval, to disseminate notices,
prepare settlement distribution calculations, distribute checks, issue tax
reporting documents, and conduct any necessary reporting to the Parties
and/or the Court, as set forth in this Agreement.  The fees and costs of the
Claims Administrator are capped at $18,000, per an agreement with Class
Counsel, and shall be referred to as the "Claims Administration Charges."

7.     Class Counsel" means Bryan Schwartz Law and Schonbrun
Desimone Seplow Harris & Hoffman, LLP, or either of them.

8.     "Class Counsel Attorneys' Fees and Costs" means the attorneys' fees and costs awarded by the Court to Class Counsel.

9.     "Class Representatives" means Plaintiffs Terry Boyd, Sonia Medina, Ethel Parks and Linda Zanko.

10.     "Class Member Deponents" means Jeff Mandel, Michael Petris, Ricky Leung, Michael D. Smith, Gregory Walsh, Kelly Williams and Ronald Yamada.

11.     "Class Member Discovery Respondents" means Michael J. Carroll, Bruce Cohen, Damien Patrick del Fierro, Douglas Flomer, Carol L. Garcia, Walter E. Gardiner, Gregory Glen Gibbs, Tammy C. Green, Todd A Holmes, Bruce J. Kratochwill, Kristjan Laube, Ricky Leung, David M. Locey, Jerome A. Maher, Jeff Mandel, John H. Markert, Delia Marie Millet, Jo Ann Moses, Bradley Nelson, Anthony Ostrow, Michael Petris, Jack J. Readeau, Kevin Riley, Margaret S. Riley, Mary Jo Sayles, Michael P. Size, Michael D. Smith, Richard L. Stanfield, Shannon Susick, Geoffrey Tam, Gregory Walsh, Linda M. Wilkins, Kelly Williams, Martin Wolters, and Ronald K. Yamada.

12.     "Class Representative Enhancements," "Class Member Deponent Enhancements" and "Class Member Discovery Respondent Enhancements" means the payments, as determined and approved by the Court, to the Class Representatives, Class Member Deponents and Class Member Discovery Respondents from the Gross Settlement Amount that are in addition to their Net Pro Rata Distributions.

13.     "Court" means Judge David O. Carter, judge of the United States District Court for the Central District of California.

14.     "Date of Preliminary Approval" means the date when the Court issues an order granting preliminary approval of the settlement reflected in

this Agreement.

15.   "Effective Date" means the date when the Court issues an order granting final approval of this Agreement and enters Judgment in accordance with this Agreement, and the Judgment becomes final by the earliest of the following occurrences:

(a)   If no timely objections to the Agreement were filed, as described in Paragraph 80, below, the Judgment becomes final the date it is entered by the Court; or

(b)   The Judgment becomes final one court day after the date upon which any appeal from the Judgment must be filed passes without any appeal being filed; or

(c)   If an appeal is filed, the Judgment becomes final one court day after all proceedings arising out of the appeal or appeals are concluded and the Lawsuit is remanded back to the Court PROVIDED THAT the final resolution affirms the terms of the Judgment without any material modification (for purposes of this Agreement, modifications to any Class Representative Enhancement, Class Member Deponent Enhancement, Class Member Discovery Respondent Enhancement and/or the Class Counsel Attorneys' Fees and Costs are not considered material modifications).

16.   "Final Fairness Hearing" means the hearing at which the Court determines whether this Settlement is fair, reasonable and adequate, anticipated by the Parties to occur not later than December 31, 2015.

17.   "Gross Settlement Amount" means Thirty Six Million Dollars ($36,000,000), the total sum that Defendants will be paying for the settlement

of this Lawsuit and of the Released Claims in accordance with the terms of this Agreement, except that Defendants will separately pay the amount of the employer's share of any payroll taxes that arise from any payments to Settlement Class Members pursuant to this Agreement.

18.    "Lawsuit" means this action, styled as *Terry P. Boyd, et al. v. Bank of America Corp. et al.*, initially filed on April 9, 2013 in the United States District Court, Central District of California, Case No. 8:13-cv-00561-DOC-JPR, as subsequently amended by Plaintiffs.

19.    "LWDA" means the California Labor & Workforce Development Agency.

20.    "LWDA Distribution" means the $75,000.00 to be distributed to the LWDA from the Gross Settlement Amount (75% of the $100,000.00 allocated to civil penalties pursuant to the California Labor Code Private Attorney General Act of 2004 ("PAGA")).

21.    "Net Settlement Fund" means the amount remaining after deducting each of the following from the Gross Settlement Amount:  the LWDA Distribution, the Class Representative Enhancements, Class Member Deponent Enhancements, Class Member Discovery Respondent Enhancements, the Claims Administration Charges, and the Class Counsel Attorneys' Fees and Costs.

22.    "Preliminary Approval Hearing" means the hearing at which the Court will be requested to preliminarily make the determinations set forth in Paragraph 52, below.  The date for this hearing will be set forth in Plaintiffs' motion for preliminary approval, or such other date as the Court may designate.

23.    "Released Claims" means all claims, demands, rights, liabilities, and causes of action that were asserted in the original Complaint, the First

Amended Complaint and/or the Second Amended Complaint (collectively, the "Complaints") in the Lawsuit on behalf of Staff Appraisers (including any "Residential Appraisers," "Residential Staff Appraisers" or other titles used to describe employees performing the same job duties), and any additional wage and hour claims that could have been brought based on the facts alleged in the Complaints on behalf of Staff Appraisers.  The released claims include all claims relating to or arising out of the designation and treatment of the Class Representatives and Class Members as "exempt" from overtime compensation while they worked as Staff Appraisers, including claims for violations of any state or federal statutes, rules, or regulations.  This includes, but is not limited to, claims that, during the Class Periods, Defendants failed to pay overtime or any other wages due under California state law, failed to pay overtime or any other wages due under the Fair Labor Standards Act, failed to provide legally-required meal and rest periods or pay wages due for such failure, failed to timely furnish accurate itemized wage statements, engaged in conduct subjecting Defendants to any statutory or civil penalties under any statute, ordinance, or otherwise arising from or related to the classification of Plaintiffs and Class Members as exempt from overtime, including, without limitation, California Labor Code section 2698, *et seq.* ("The Labor Code Private Attorneys General Act of 2004" or "PAGA") and Labor Code sections 203 and 226; engaged in any unfair business practices arising from the misclassification alleged; and failed to pay all wages due to Class Representatives and Class Members upon termination of employment. In addition, with respect to the Class Representatives, "Released Claims" includes a general release of any and all claims arising out of or related to his employment with Defendants, seeking any such employment, or the termination thereof, including without limitation any claim for wrongful

termination in violation of public policy, employment discrimination, violation of the California Fair Employment and Housing Act, or violation of the Americans With Disabilities Act.

24.    "Released Parties" means Defendants and their past, present or future officers, directors, shareholders, employees, agents, principals, heirs, assigns, executors, administrators, representatives, trustees, accountants, auditors, consultants, insurers and reinsurers of such identified Released Parties and their respective successors and predecessors in interest, parents, subsidiaries, divisions affiliates, and attorneys, both individually and collectively.

25.    "Staff Appraisers" means employees working for Defendants in the positions entitled "Staff Appraiser," "Residential Appraiser," and/or "Residential Staff Appraisers" or other titles used to describe employees that performed the same job duties. "Review Appraisers" are excluded from the definition of "Staff Appraisers" and the term "Review Appraisers" encompasses those employees encompassed by the partial settlement which received final approval in this matter on November 18, 2014 (Dkt. #276).

## BACKGROUND AND FACTUAL RECITALS

26.    On April 9, 2013, a putative class action and collective action complaint was filed in the United States District Court, Central District of California, Case No. 8:13-cv-00561-DOC-JPR, entitled *Terry P. Boyd, et al. v. Bank of America Corp., et al.* (the "Complaint").  Plaintiffs subsequently filed two amended complaints, most recently the operative Second Amended Complaint (the "SAC") on June 26, 2013.  The SAC asserted causes of action on behalf of Plaintiffs and other named plaintiffs on behalf of two putative classes, (1) individuals that had worked for Defendants during the relevant

time period as "Residential Appraisers and other similar positions" ("Staff Appraisers"), and (2) individuals that had worked for Defendants during the relevant time period as "Review Appraisers and other similar positions" ("Review Appraisers").

27.     On behalf of each putative class, the SAC asserted causes of action for: (1) Violation of the FLSA, 29 U.S.C. § 207, (2) Violation of Cal. Lab. Code §§ 510, 1194, and 1198, and IWC Wage Order(s), (3) Failure to Provide Itemized Wages Statements (Cal. Lab. Code §226), (4) Failure to Provide and/or Authorize Meal and Rest Periods (Cal. Lab. Code §§  512, 226.7 and IWC Wage Order(s)), (5) Violation of Cal. Bus. & Prof. Code § 17200, et seq., (6) Waiting Time Penalties (Cal. Lab. Code § 203), and (7) Civil penalties pursuant to the California Labor Code Private Attorneys General Act of 2004, Cal. Lab. Code § 2698 *et seq*. ("PAGA").

28.     On July 10, 2013, Defendants answered the SAC.

29.     On July 9, 2013, Plaintiffs filed a motion for conditional certification of a collective action under 29 U.S.C. § 216(b) (Dkt. #44).

30.     On December 11, 2013, the Court granted in part Plaintiffs' motion for conditional certification under 29 U.S.C. § 216(b), authorizing notice to be sent to the putative members of the collective action (Dkt. #109).

31.     Subsequently, 183 individuals outside California filed consent-to-join forms to become opt-in plaintiffs (the "FLSA Class Members"). An additional 49 California Class Members filed FLSA consent forms.

32.     On January 13, 2014, Plaintiffs moved for class certification on behalf of current and former California Staff Appraisers, pursuant to Fed.R.Civ.P. 23 ("Rule 23"), of the claims asserted in the SAC.  (Dkt. #118).

33.     On or about February 25, 2014, the Parties agreed in general

terms to a settlement to resolve all class action and collective action claims asserted on behalf of the Review Appraisers only, agreeing to resolve all disputes and claims between them, including all of the wage and hour claims that have been or could have been raised during the course of the Lawsuit (the "Reviewer Claims"), and continuing to litigate the claims asserted on behalf of the Staff Appraisers.

34.     On June 27, 2014, the Court issued its Order Granting Plaintiffs Motion for Class Certification (Dkt. #232) and certified a class consisting of:

> All persons who are or have been employed by Defendants as Appraisers, including employees with the job title "Residential Appraiser" and any other employee performing the same or similar job duties for Defendants, within the State of California at any time from four years prior to the filing of this Complaint to the final disposition of this case.

The following subclasses were also established (together, the "California Subclass"):

> (a)     All California Class members who are no longer employed by Defendants and have not been employed by Defendants for more than 72 hours (the "California Waiting Time Penalties Subclass"); and

> (b)     All California Class members who are currently employed by Defendants or were employed by Defendants at some point within the year preceding the filing of the initial Complaint in this action (the "California Itemized Wage Statement and PAGA Penalties Subclass").

35.     In its June 27, 2014 Certification Order, the Court also appointed Bryan Schwartz Law and Schonbrun Desimone Seplow Harris & Hoffman, LLP be appointed as Class Counsel and appointed Terry Boyd, Sonia Median, Ethel Parks and Linda Zanko be appointed as Class Representatives.  (Dkt. #232).

36.     Subsequently, the Court-approved notice was issued to the California Class Members.  Excluding those individuals that timely requested to be excluded from the certified class, there are 184 California Class

Members.

37.     On November 18, 2014, the Court granted final approval of a partial class action settlement and approval of attorney's fees with respect to the Reviewer Claims. (Dkt. #276).   The Parties continued litigation with respect to the claims asserted on behalf of the Staff Appraisers, and prepared to proceed to trial, scheduled to commence on August 31, 2015.

38.     On May 6, 2015, the Court granted Plaintiffs' motion for partial summary judgment, holding that as a matter of law the Staff Appraisers were not exempt from overtime under the administrative or learned professional exemptions under California or federal law, or the highly-compensated employee exemption under federal law. The Court denied Defendants' summary judgment motion. (Dkt. #307).

39.     Defendants filed a motion to certify an interlocutory appeal under 28 U.S.C. sec. 1292(b), which Plaintiffs opposed, and which was set to be heard on August 3, 2015, if this matter had not been settled. Likewise, Defendants filed a motion to decertify Plaintiffs' meal and rest period claims, which Plaintiffs opposed, and which was set to be heard on the same date.

40.     On July 13, 2015, the parties exchanged expert disclosures under Fed.R.Civ.P. 26. Plaintiffs' expert report, from Dr. Brian Kriegler, calculated the damages Plaintiffs asserted were owed to the Class, based upon Defendants' records of which appraisals were completed by which appraisers during the Class Period, and a joint survey the Parties commissioned, which sought to estimate the average length of time to complete each type of appraisal report.

41.     The Parties have engaged in extensive, arms-length settlement negotiations regarding settlement of the Lawsuit, including full-day mediations before mediator David Rotman, Esq. on November 5, 2013, and

before mediator Mark Rudy, Esq. on January 29, 2014 and July 17, 2015.

42.     On or about July 17, 2015, the Parties agreed in general terms to a settlement to resolve all class action and collective action claims asserted on behalf of the Staff Appraisers, agreeing to resolve all disputes and claims between them, including all of the wage and hour claims that have been or could have been raised during the course of the Lawsuit (the "Staff Appraiser Claims").

43.     As part of the settlement, the Parties agreed to take off calendar the 1292(b) and decertification motions and continue the trial in the case, scheduled for August 31, 2015.

44.     It is the desire of the Parties to fully, finally, and forever settle, compromise, and discharge all disputes and claims against the Released Parties arising from or related to the Staff Appraiser Claims, and that this Agreement shall constitute a full and complete settlement and release of all the Released Parties from all of the Staff Appraiser Claims averred in the Lawsuit.

45.     The Parties expressly acknowledge that nothing in this Agreement, nor the fact of the Agreement itself, shall be construed or deemed an admission of liability, culpability, negligence or wrongdoing of any kind by Defendants, nor shall it constitute an admission on behalf of Defendants of any fact or allegations against them, including any allegation that this matter is suitable for class treatment.  Defendants specifically deny any liability.

46.     Defendants deny all the claims and contentions alleged by the Plaintiffs in the Lawsuit.  Nonetheless, Defendants have concluded that further litigation of the Released Claims encompassed by this Agreement would be protracted and expensive, and would also divert management and employee time.  Defendants have taken into account the uncertainty and risks

inherent in litigation and have, therefore, concluded that it is desirable that the Staff Appraiser Claims in the Lawsuit be settled in the manner and upon the terms and conditions set forth in this Agreement.

47.    Plaintiffs and Class Counsel believe that the claims asserted in this Lawsuit have merit.  Plaintiffs and Class Counsel, however, recognize and acknowledge the significant expense and length of continued proceedings necessary to prosecute the litigation of the Released Claims against Defendants through trials and through appeals.  Plaintiffs and Class Counsel are also mindful of the possible defenses to the Released Claims.  After careful consideration and mediation, Plaintiffs and Class Counsel have concluded that it is desirable that the Staff Appraiser Claims in the Lawsuit be settled in the manner and upon the terms and conditions set forth in this Agreement.  Both Plaintiffs and Class Counsel believe that the settlement set forth in this Agreement is fair, reasonable and adequate, and confers substantial benefits upon the Class Members.

48.    The Parties recognize the inherent risk in proceeding with wage and hour class action litigation based on the current uncertainty of California and federal jurisprudence in wage and hour law.  The Parties agree that the settlement set forth herein adequately balances the risk of proceeding with the Staff Claims against any potential recovery for the Class Members and, therefore, the Agreement represents a fair and just compromise of the Released Claims.

49.    The Parties and their respective counsel of record deem the Agreement to be fair and reasonable and have arrived at the Agreement in arms-length negotiations taking into account all relevant factors, present or potential.

50.    The Parties enter into this Agreement on a conditional basis.

This Agreement will become final and effective only upon the occurrence of all of the following events: (i) the Court enters an order granting preliminary approval of the settlement reflected in the Agreement; (ii) the Court enters an order granting final approval of the settlement reflected in the Agreement; and (iii) the Effective Date occurs.   Unless the Court orders otherwise, this Stipulation shall be deemed null and void *ab initio* upon the failure of any of these three conditions to occur.

## SETTLEMENT APPROVAL PROCEDURE

51.    The Parties and their respective counsel shall take all steps that may be requested by the Court relating to the approval and implementation of this Agreement and shall otherwise use their respective best efforts to obtain Court approval and implement this Agreement.  The procedure for obtaining Court approval of and implementing this Agreement shall be as set forth below.

52.    Within fourteen (14) days after this Agreement has been signed by all parties and their counsel, Plaintiffs shall move the Court for preliminary approval of this settlement, and request an order that accomplishes the following:

(a)    Preliminarily approving this settlement as fair, reasonable, and adequate;

(b)    Preliminarily appointing and approving the Claims Administrator;

(c)    Approving the procedure for sending notice to the Class Members as set forth in this Agreement;

(d)    Approving the notices to be sent to the class members in substantially the same form as **Exhibit A** to this Agreement, or as modified by the Court (the "Notice of

Settlement"); and

(e)    Authorizing the Claims Administrator to mail the approved Notice of Settlement to the Class Members at their last known or provided address by posting the notice through U.S. mail.

53.    Defendants shall not oppose Plaintiffs' motion for preliminary or final approval of the settlement so long as the motions and supporting papers are consistent with the terms of this Agreement and facts of this case. Class Counsel shall provide Defendants' counsel with a reasonable opportunity to review, provide comments to, and otherwise approve the motions for preliminary and final approval of the settlement before the motions and supporting papers are filed with the Court.

54.    This Agreement will not become effective, and Defendants shall have no obligation to make any payments contemplated by this Agreement, unless the Court conducts a Final Fairness Hearing, enters an Order, as described below, approving without material modification all of the terms of this Agreement, and the Effective Date occurs.

55.    Class Counsel shall be responsible for ensuring that at least the following documents are filed with the Court in advance of the Final Fairness Hearing so that the Court will have a sufficient basis upon which to evaluate and approve the settlement:

(a)    A final report by the Claims Administrator providing details regarding the execution of the approved notice process, the rate (if any) of opt-outs and objections, and other information vital to the Court's assessment of the fairness of the Agreement at the Final Fairness Hearing;

(b)     A duly noticed motion, accompanying memorandum of
points and authorities prepared by Class Counsel (and
approved by Defendants' counsel), and such other
pleadings, evidence or other documents as may be
necessary for the Court to determine that the settlement
documented by this Agreement is fair, adequate and
reasonable;

(c)     A proposed Order for the Court's signature (i) approving
the settlement documented by this Agreement as being
fair, adequate and reasonable; and (ii) ordering a
Judgment of dismissal of the Lawsuit with prejudice be
entered consistent with this Agreement.

(d)     A Proposed Judgment and Notice of Entry of Judgment
(collectively, "Judgment").

56.     Defendants shall not oppose Plaintiffs' motion for final
approval of the settlement so long as the motions and supporting papers are
consistent with the terms of this Agreement and facts of this case. Class
Counsel shall provide Defendants' counsel with a reasonable opportunity to
review, provide comments to, and otherwise approve the motion for final
approval of the settlement and proposed order and Judgment thereon before
the motions and supporting papers are filed with the Court.

## SETTLEMENT CALCULATIONS AND PAYMENTS

57.     Without admitting any liability whatsoever, Defendants will
settle the Plaintiffs' and Class Members' claims released by this Agreement
by depositing, within 15 days of the order granting final approval of the
settlement (unless one of the conditions in Paragraph 15(c), 99 or 100, occurs,

in which case the matter shall proceed as indicated), a total of $36,000,000 million (Thirty Six Million Dollars) (the Gross Settlement Amount), plus the full amount necessary to pay the employer's share of payroll taxes on settlement payments, as estimated by the Claims Administrator, into a qualified settlement fund, which shall be established and administered by the Claims Administrator (the "Qualified Settlement Fund"). All amounts paid as part of this settlement shall be paid out of the Qualified Settlement Fund. These amounts shall include (1) all payments to Class Members under this Agreement, including all amounts required to be paid as federal, state and local payroll taxes; (2) the LWDA Distribution, (3) the Class Representative Enhancements; (4) the Class Member Deponent Enhancements; (5) the Class Member Discovery Respondent Enhancements; (6) the Claims Administration Charges, (7) the Class Counsel Attorneys' Fees and Costs, and (8) any other amounts required to be paid under this Agreement. Under no circumstances, except for the voiding of this Agreement in its entirety as discussed in Paragraphs 99 and 100, below, shall any portion of the Gross Settlement Amount revert to Defendants, or any of them.

58.     All amounts to be paid by Defendants under this Agreement shall be paid from the Qualified Settlement Fund, and Defendants shall have no obligation under this Agreement or otherwise to make any payment whatsoever beyond their obligation to make payments to the Qualified Settlement Fund in an amount equal to the designated Gross Settlement Amount, except for the employer's share of any payroll taxes that are due by virtue of any payments made to Class Members under the terms of this Agreement.

59.     <u>Claims Administration Charges</u>.  The Claims Administration Charges for administration of the settlement include, but are not limited to,

printing and mailing of the Notice of Settlement, processing disputes, requests
for exclusion, and objections in accordance with this Agreement, calculating
preliminary and final payment amounts and tax withholdings for Class
Members, responding to inquiries from Class Members, issuing and mailing
settlement payments and checks, reasonable efforts to locate Class Members,
and preparing any required tax returns and tax reports. All Claims
Administrator Charges, whether foreseen or unforeseen, will be paid from the
Gross Settlement Amount. All Claims Administration Charges shall also be
paid from the Settlement Sum. The Claims Administrator shall submit
monthly invoices to Class Counsel and Defendants' Counsel and, if approved,
such invoices shall be paid out of the Qualified Settlement Fund. The Claims
Administrator's fees for these services will be capped at $18,000.

     60.    <u>Class Counsel Attorneys' Fees and Costs</u>**.** Defendants will not
oppose an application by Class Counsel for an award of attorneys' fees up to
one-third (33 1/3%) of the Gross Settlement Amount, nor oppose an
application by Class Counsel for an award of actual litigation costs incurred
by Class Counsel in connection with the litigation of the Staff Appraiser
Claims, all of which will be paid out of the Gross Settlement Amount. The
Parties expressly agree that the Court's approval or denial of any request for
attorneys' fees and costs are not material conditions to the Agreement, and are
to be considered by the Court separately from the fairness, reasonableness,
adequacy, and good faith of the settlement.  Any order or proceeding relating
to the application by Class Counsel for an award for attorneys' fees and costs
shall not operate to terminate or cancel this Agreement.  To the extent the
Court awards less than the amount of attorneys' fees and costs requested by
Class Counsel, the remaining amount will be redistributed to the Settlement
Class Members on a pro rata basis.

61.  Class Representative, Class Member Deponent and Class Member Discovery Respondent Enhancements.  Defendants will not oppose an application for: (1)  payment of a Class Representative Enhancement to the Class Representatives in an amount not to exceed $25,000.00 each (to be paid from the Gross Settlement Amount); (2) payment of an enhancement to the Class Member Deponents (listed in Paragraph 11, above) in an amount not to exceed $2,000 each (to be paid from the Gross Settlement Amount), and (3) payment of an enhancement to the Class Member Discovery Respondents (listed in Paragraph 10, above) in an amount not to exceed $1,000 each (to be paid from the Gross Settlement Amount), all subject to approval by the Court. The final amount of any enhancement as determined and approved by the Court shall be binding on the Class Representatives, Class Member Deponents and/or Class Member Discovery Respondents. Any enhancement will be treated as a non-wage payment and reported as such by the Claims Administrator to the appropriate government taxing authorities, with the recipients of the enhancement being solely responsible for paying any and all taxes due on enhancement. The Parties expressly agree that the Court's approval or denial of any request for any enhancement is not a material condition to the Agreement, and is to be considered by the Court separately from the fairness, reasonableness, adequacy, and good faith of the settlement. Any order or proceeding relating to the application by Class Counsel for an award of an enhancement shall not operate to terminate or cancel this Agreement. To the extent the Court awards less than the amount of the enhancements requested, the remaining amount will be redistributed to the Settlement Class Members on a pro rata basis.

62.  PAGA Penalties.  The Parties agree to allocate One Hundred Thousand Dollars ($100,000.00) of the Gross Settlement Amount to the

settlement of the PAGA claims alleged in the Lawsuit on behalf of Staff Appraisers, which the Parties believe in good faith is a fair and reasonable apportionment. The Claims Administrator shall pay seventy-five percent (75%), or $75,000.00, of this amount to the LWDA. The other twenty-five percent (25%), or $25,000.00, of this amount shall remain as part of the Net Settlement Fund, to be paid to Settlement Class Members on a pro rata basis based upon the number of each type of appraisal that each Settlement Class Member submitted during the Class Period, his/her wages paid during the Class Period, and whether he/she signed a severance agreement (as described in Paragraph 64, below).

63.    Net Settlement Fund. Class Claimants shall be paid their Net Pro Rata Distribution (as defined in Paragraph 64, below) from the Net Settlement Fund, which is the amount remaining of the Gross Settlement Amount after deduction of (1) Claims Administration Charges; (2) Class Counsel Attorneys' Fees and Costs; (3) Class Representative, Class Member Deponent and Class Member Discovery Respondent Enhancements; and (4) amounts paid to the LWDA for PAGA penalties.

64.    The Net Pro Rata Distribution for each Class Member: Each Class Member's allocation will be based upon the number of each type of appraisal that each Class Member completed during the class period, as well as the results of the survey the parties jointly commissioned regarding how long each type of appraisal would take on average to complete. The allocation will also factor in the wages paid to each Class Member, and whether or not he/she signed a severance agreement. More specifically, this will be determined as follows:

     a.   In July 2015, Plaintiffs' counsel disclosed to Defendants an expert report calculating each Class Member's hours

worked based upon the number of each type of appraisal he/she submitted which was accepted by Landsafe during the class period, as well as each Class Member's payroll records. These hours were based on Defendants' records produced in discovery, combined with the results from the aforementioned survey. Each Class Member's regular rate of pay was derived from the aforementioned payroll records. From these results, Plaintiffs' expert, Dr. Brian Kriegler, calculated damages for the whole class and for each Class Member.[1]

b. The Net Pro Rata Distribution will be based upon each Class Member's damages attributed to the following:

- Unpaid overtime plus interest;[2]
- 50% of liquidated damages (FLSA Class Members only);[3];
- 50% of missed meal and rest premiums plus interest (California Class Members only);
- 50% of waiting time and inaccurate wage statement penalties (California Class Members only).

---

[1] Defendants do not necessarily agree that Dr. Kriegler's calculations are accurate or correct. However, for purposes of calculating individual settlement shares, Defendants are willing to rely upon Dr. Kriegler's calculations.

[2] For FLSA Class Members, unpaid overtime damages are calculated using a three-year statute of limitation dating back to April 9, 2010. Interest is calculated for California Class members only using the statutory rate of 10 percent per annum.

[3] Note that some California Class Members have also opted into the FLSA class. Under the proposed formula they would receive their pro rata share of 50% of their liquidated damages under the FLSA.

Liquidated damages, meal/rest period damages, waiting time penalties, and inaccurate wage statement penalties are multiplied by 50% to take into account Plaintiffs' litigation risks.

Hypothetically, suppose that for a given Class Member, Dr. Kriegler calculated their full overtime plus interest damages to be $50,000, missed meal and rest premiums plus interest are $15,000, waiting time damages are $10,000, and inaccurate wage statement damages are $4,000. Using the formula described above, this Class Member's full damages would be $64,500 if Plaintiffs prevailed on all claims, which is approximately 0.058% of class-wide, "full relief" damages reported by Dr. Kriegler.[4]

c. Ultimately, each Class Member's damages share, described in subparagraph b, above, can then be multiplied by the Net Settlement Amount to calculate how much to allocate each Class Member.

d. After calculating each Class Member's damages share as described in subparagraphs b and c above, the amount

---

[4] *See* Expert Report of Brian Kriegler, Ph.D. Overtime damages: $65,852,557; interest on overtime damages: $17,200,005; liquidated damages: $29,958,256; missed meal and rest premiums: $18,226,643; interest on missed meal and rest premiums: $6,729,292; waiting time penalties: $701,812; inaccurate wage statement penalties: $576,100. Using the formula above, total damages are $65,852,557 + $17,200,005 + 0.5 x ($29,958,256 + $18,226,643 + $6,729,292 + $701,812 + $576,100) = $111.11 million. $64,500 divided by $111.11 million equals 0.058% of all damages.

---

allocated to those Class Members who previously signed severance agreements will be reduced by 20% to take into account their increased litigation risk, since the Court could have found their claims, or some of them, and their right to proceed in a class or collective action waived by the releases. The amount by which their allocations are reduced will be reallocated on a pro rata basis amongst the remaining Class Members who did not sign severance agreements.

e. The final pro rata share amounts will be given to the Claims Administrator for their use in providing notice and disbursing settlement shares.

65.     Each Settlement Class Members will have his or her Net Pro Rata Distribution apportioned by the Claims Administrator as follows: (a) one-third for payment of any claimed interest (the "Interest Portion"); (b) one-third for payment of any claimed penalties and liquidated damages of any type (the "Penalties Portion"), and (c) one-third for payment of any claimed unpaid wages during the Class Period (the "Gross Wages Portion"). The Claims Administrator will make appropriate deductions from the Gross Wages Portion of each Settlement Class Member's Net Pro Rata Distribution for the payment of employee payroll taxes and deductions required or permitted by applicable law in connection with the payment of wages to the Settlement Class Member and will timely remit those sums to the appropriate government taxing authorities, with the remaining balance of the Gross Wages Portion after such deductions being made being the "Net Wages Portion."

66.     The Claims Administrator will also calculate the total payment

of employer payroll taxes due based upon the total Net Pro Rata Distributions, and will effectuate payment of these taxes to the appropriate tax agencies from the funds deposited by Defendants for this purpose in the Qualified Settlement Fund. To the extent the Claims Administrator estimates and Defendants pay a payroll tax amount that is greater than the amount owed to taxing authorities, the balance of this payment will be refunded to Defendants. To the extent the Claims Administrator initially estimates and Defendants pay an insufficient amount to cover the employers' share of all payroll taxes actually due, Defendants will pay the additional amount of payroll tax required within fifteen (15) calendar days of a request for payment by the Claims Administrator.

67.    The Parties are mindful that the total consideration payable hereunder is comprised of a number of separate and distinct claims for damages and penalties by Plaintiffs and the Class Members. Accordingly, having considered the matter in detail, having performed their own separate and independent computations and estimation of the damages and penalties potentially awardable to Plaintiffs at trial, and having done the foregoing with complete and satisfactory access to, and advice from, accounting and legal advisors, the Parties mutually consent and agree that the Net Pro Rata Distribution be apportioned among the Class Members' various wage and non-wage claims in this action as set forth above.  Moreover, the Parties mutually consent and agree, and hereby represent to the Court in this judicially-supervised settlement transaction, that the apportionment of the Net Pro Rata Distributions as stated above is a reasonable and arm's length determination of the character of the Net Pro Rata Distribution for all purposes, including for tax purposes.

68.    All Settlement Class Members (i.e., those Class Members that do

not affirmatively opt out and/or withdraw their consent-to-join form, as applicable) shall be sent a check or checks representing their Net Pro Rata Distribution.  Checks sent to Class Members' shall contain a legend on the reverse of the check that states: "Endorsement or depositing of this check means that you are certifying under penalty of perjury to being a Class Member in the matter of *Boyd, et al. v. Bank of America Corp., et al.*, are participating in the settlement in this case, and are waiving all wage and hour claims under the Federal Labor Standards Act and/or California law, as applicable.  You may read the full notice and waiver online: www.bryanschwartzlaw.com/LandsafeStaffAppraiserSettlement.htm. " However, regardless of whether he or she negotiates the settlement check, any Class Member who fails to opt out timely of the California Class as indicated in the Notice, or has not withdrawn from the FLSA Class, shall automatically be deemed a Settlement Class Member whose rights and claims with respect to the issues raised in the Lawsuit with respect to any claims are determined by the Court's order granting final approval of this settlement, and by other rulings in the Lawsuit.

69.    The allocations of any Class Members who opt out of and/or withdraw from the settlement ("unclaimed funds") will be allocated pro rata to the Settlement Class Members at the time of settlement disbursement.  Any payments made to Settlement Class Members that remain uncashed one hundred eighty (180) days after mailing shall be voided, and the amount of those checks will be distributed to Legal Aid Society – Employment Law Center as the *cy pres* recipient, subject to the Court's approval.

70.    No Effect on Benefit Plans.  No employee benefit provided by Defendants to any Settlement Class Member, including but not limited to any 401k benefits, shall increase or accrue as a result of any payment made in

accordance with this Agreement.

71.    <u>No Additional Contribution by Defendants</u>.    Defendants'
monetary obligation under this Agreement is limited to the amount defined as
the Gross Settlement Amount, plus the employer's share of payroll taxes.
Defendants may not be called upon or required to contribute additional
monies above the Gross Settlement Amount plus the employer's share of
payroll taxes under any circumstances whatsoever.  All costs and expenses
arising out of or in connection with the performance of this Agreement shall
be paid from the Gross Settlement Amount and the employer's share of
payroll taxes paid by Defendants into the Qualified Settlement Fund, unless
expressly provided otherwise herein.  In the event that this Agreement is
canceled, rescinded, terminated, voided, or nullified, however that may occur,
or the settlement of the Action is barred by operation of law, or invalidated, or
ordered not to be carried out by a court of competent jurisdiction, Defendants
will cease to have any obligation to pay any portion of the Gross Settlement
Amount to the Qualified Settlement Fund or any other party under the terms
of this Agreement, and all previous disbursements made from Defendants to
the Qualified Settlement Fund will immediately revert back to Defendants,
less any Claims Administration Charges already incurred. Notwithstanding
the foregoing, Defendants will bear sole responsibility for paying the
employer's share of payroll taxes in connection with any payments made
under the terms of this Agreement, out of funds separate and apart from the
Gross Settlement Amount.

## RECLASSIFICATION OF STAFF APPRAISERS

72.    In light of the prior Review Appraiser settlement and resulting
reclassification, and in light of the Court's orders in this case, to the extent that

Bank of America Corporation, either directly or through a direct or indirect subsidiary, continues to maintain in-house Staff Appraisers as their employees, Defendants will take steps to reclassify the Staff Appraiser position as overtime eligible as soon as practicable.

## SETTLEMENT ADMINISTRATION

73.    The Claims Administrator will administer disbursements from the Gross Settlement Amount paid by Defendants into the Qualified Settlement Fund, including, but not limited to, distributing the Notice of Settlement, calculating claims against the Qualified Settlement Fund, calculating interest owed, calculating the employer's share of payroll taxes owed, preparing and issuing all disbursements to be paid to Class Claimants, Class Counsel, Class Representatives, Class Member Deponents, Class Member Discovery Respondents, the LWDA, and the local state and federal payroll tax authorities, and handling inquiries about the calculation of the Net Pro Rata Distribution.  The Claims Administrator shall be responsible for the timely filing of all federal, state and local tax returns of the Qualified Settlement Fund and making the timely payment of any and all taxes and withholdings required with such returns.  The Claims Administrator shall establish an email address and toll-free telephone number to direct inquiries regarding the Notice of Settlement and determination of Net Pro Rata Distributions.  All questions by Class Members shall be directed to the Claims Administrator.    All Claims Administration Charges associated with administering disbursements from the Qualified Settlement Fund including, but not limited to, the fees and costs of the Claims Administrator and the cost of the Notice of Settlement, shall be paid entirely from the Gross Settlement Amount.  The Parties expect that the Claims Administrator shall conduct all

administration of all disbursements of the Settlement Amounts and that Class
Counsel shall receive no fees or disbursements relating to the administration
of disbursements of the Qualified Settlement Fund.

## NOTICE TO THE CLASS AND CLAIMS PROCESS

74.     The Claims Administrator shall disseminate the Notice of
Settlement by first-class United States mail.  The Notice of Settlement shall
be provided to Class Members in the following manner:

75.     No later than fifteen (15) days after the Court enters an order
granting preliminary approval of the settlement reflected in this Agreement,
Defendants will provide the Claims Administrator with a database including
the following information for each Class Member: (1) last known address and
telephone number; (2) last known email address from Defendants' electronic
employment records (where available); and (3) Social Security number
(collectively, the "Class List").  Plaintiffs, during the same period of time, will
provide Dr. Kriegler's calculations regarding pro rata shares for the Class
Members to the Claims Administrator and Defendants. The Class List will be
deemed to be designated as Confidential under the Stipulated Protective
Order (Dkt. #99) as approved by the Court (Dkt. #100), and subject to the
Claims Administrator first signing and returning to Defendants' counsel the
Acknowledgment and Agreement to Be Bound attached as Exhibit A to such
Stipulated Protective Order.

76.     Within seven (7) days of receiving the pro rata shares from Dr.
Kriegler, assuming every Class Member remains in the Classes, Class
Counsel and Defendants' Counsel shall jointly review the same to determine
if the calculations are consistent with this Agreement.

77.     Within five (5) days of receiving approval from Class Counsel

and Defendants' counsel of the preliminary Pro Rata Distribution for each Class Member, the Claims Administrator shall mail to each Class Member the Notice of Settlement. The Claims Administrator will use information that is reasonably available via customary search methods (i.e., National Change of Address database and skip tracing) to update the addresses of Class Members provided by Defendants. With respect to each Notice of Settlement mailed to a Class Member that is returned as undeliverable prior to 60 days after the Notice is originally mailed, the Claims Administrator shall promptly attempt to determine a correct address for the Class Member using a reasonable search method and shall re-send the Notice of Settlement via first-class mail to any new address thereby determined. The Claims Administrator will use reasonable efforts to contact the Class Members to effectuate this Agreement.

78. <u>Opting Out of California Class</u>. In order for a member of the California Class to validly exclude himself or herself from the California Class and this settlement (i.e., to validly opt out), the member of the California Class must (1) indicate in writing that he or she requests to be excluded from the California Class and this settlement in the manner indicated in the Notice, and (2) mail the written request for exclusion to the Claims Administrator, postmarked no later than 60 days after the date that the Claims Administrator originally mails the Notice of Settlement to Class Members. The Parties and their respective counsel agree that none of them will take any steps to encourage any California Class Member to opt out of the California Class. The date of mailing of the Notice of Settlement, and the date the signed request for exclusion is postmarked, shall be conclusively determined according to the records of the Claims Administrator. Any California Class Member who timely and validly opts out of the California Class and this settlement will not be entitled to any settlement payment, will

not be bound by the terms and conditions of this Agreement, and will not have any right to object, appeal or comment thereon.  By signing this Agreement, Plaintiffs agree to be bound by the terms herein and further agree not to request to be excluded from the California Class and agree not to object to any of the terms of this Agreement.  Any such request for exclusion or objection shall therefore be void and of no force or effect.

79.   <u>Dispute Process</u>.   Any Class Member who disputes the information shown on his or her Notice of Settlement regarding the number and types of appraisals completed during the Class Period as a Staff Appraiser, or the amount of wages they were paid in a  particular year, or whether he or she signed a severance agreement, may indicate and explain such disagreement under penalty of perjury within sixty (60) days of the mailing of the Notice of Settlement by notifying the Claims Administrator pursuant to the procedures set forth herein and described in the Notice of Settlement.  Any such Class Member must submit documentation relating to his or her dispute.   The Claims Administrator shall notify Defendants' Counsel and Class Counsel of any such dispute no later than five (5) days after receiving notice of the dispute.  In the case of a dispute, Defendants' records shall control and will have a rebuttable presumption of correctness.  For any dispute that arises, counsel for the Parties may stipulate to a resolution, or may stipulate to allow the Claims Administrator to resolve the dispute and make a final and binding determination without hearing or right of appeal, or may ask the Court to resolve a dispute.

80.   <u>Objections to Settlement</u>.  In order to object to this Agreement, or any term of it, the person making the objection must be a Settlement Class Member, must not opt-out, and must, by no later than sixty (60) days after the original mailing of the Notice of Settlement, file with the Court, and serve on

Class Counsel and Defendants' counsel, a written statement of the grounds of objection, signed by the objecting Class Member or his or her attorney, along with all supporting papers, in accordance with the instructions in the Notice of Settlement.   Any objection that does not meet the requirements of this paragraph shall not be considered by the Court.  Class Members who fail to timely file and serve objections in the manner specified herein shall be deemed to have waived any objections.

81.   The Claims Administrator shall provide the Parties with a weekly update as to the number of returned Notices (if any), opt-outs (if any), and objections (if any) it has received. Upon completion of the sixty (60) day time period in which Class Members can timely opt out of the settlement, or object to the settlement, the Claims Administrator shall inform the Parties as to the total number of Class Members in each category, if any.

82.   Within seven (7) days after the deadline to object or opt-out, the Claims Administrator shall recalculate the Net Pro Rata Distribution for those Class Members who remain in the Class to determine the final Net Pro Rata Distribution of each Class Claimant.  The Claims Administrator shall provide Class Counsel and Defendant's Counsel with a list of all such amounts. Within seven (7) days after receiving the Claims Administrator's report, Class Counsel and Defendant's Counsel shall jointly review the same to determine if the calculations are consistent with this settlement.

83.   Declaration of Compliance.  As soon as practicable, and no later than seven days prior to the hearing regarding final approval of the settlement, the Claims Administrator shall provide Defendants' Counsel and Settlement Class Counsel with a declaration attesting to completion of the notice process (except for any ongoing attempt to obtain valid mailing addresses for, and the resending of, any returned Notices of Settlement) ("Declaration of

Compliance"). The Parties agree that compliance with the notice procedures described in this Stipulation constitutes due and sufficient notice to Class Members of this proposed settlement and the hearing regarding final approval of the settlement, and should satisfy the requirement of due process. Nothing else shall be required of, or done by, the Parties, Class Counsel, Defendants' Counsel, or the Claims Administrator to provide notice of the proposed settlement and the final approval hearing.

84.    <u>Funding of Qualified Settlement Fund</u>.  Within fifteen (15) days after the Effective Date, Defendants shall wire the Gross Settlement Amount, plus the full amount estimated for the employers' share of payroll taxes, to the Claims Administrator for deposit into the Qualified Settlement Fund.

85.    Immediately after the Effective Date, the Claims Administrator will forward to the Parties a cover letter addressed to the LWDA referencing (i) the LWDA Distribution and (ii) that the Court has given its final approval to the terms of the settlement, including the amount of the LWDA Distribution.  The Claims Administrator shall forward the aforementioned letter and LWDA Distribution to the LWDA in accordance with this Agreement.

86.    <u>Disbursement of Class Counsel Attorneys' Fees and Costs, LWDA Payment, Class Representative Enhancement, Class Member Deponent Enhancement and Class Member Discovery Respondent Enhancement and Claims Administration Charges</u>.  Within five (5) business days after Defendants wire the Gross Settlement Amount to the Claims Administrator for deposit into the Qualified Settlement Fund, the Claims Administrator shall disburse any court-approved attorneys' fees, costs, the LWDA Distribution, Class Representative Enhancements, Class Member Deponent Enhancements, Class Member Discovery Respondent

Enhancements and any unpaid Claims Administration Charges.

87.     <u>Disbursement of Net Pro Rata Distributions</u>.  No later than five (5) business days after Defendants have wired the Gross Settlement Amount to the Claims Administrator for deposit into the Qualified Settlement Fund, the Claims Administrator will send each Class Claimant, at their last known or provided address, their Net Pro Rata Distribution in the form of (a) a non-payroll check for the combined amounts of the Interest Portion and Penalties Portion of the Pro Rata Distribution and (b) a payroll check in the net amount of the Net Wages Portion of the Pro Rata Distribution.  The Claims Administrator shall report all such payments to the appropriate government taxing authorities using the tax reporting forms and methods required under applicable law.  The mailing of Net Pro Rata Distributions shall be by first-class United States mail to the last known mailing address of each Class Claimant.

88.     Upon completion of the administration of the settlement under this Agreement, the Claims Administrator shall provide to Defendants' counsel the following: (a) specimens of all form documents sent to Class Members, including the Notice of Settlement; (b) copies of all non-privileged documents actually sent to Class Members, including without limitation, those itemized in (a), *supra;* (c) a register of all California Class Members who excluded themselves from the settlement; and (d) a register listing all Class Members and the Net Pro Rata Distribution (including both the original and secondary allocation, if any) made to each Class Member.

89.     <u>Extension of Time to Pay and/or Process Claims</u>.  Should the Claims Administrator need more time than is provided under this Agreement to complete any of its obligations as set forth in this Agreement, the Claims Administrator may request such additional time in writing (including an

explanation of the need for additional time) from Defendants' Counsel and Class Counsel.  If Defendants' Counsel and Class Counsel do not agree, in writing, to the Claims Administrator's request for additional time, the Claims Administrator may seek such additional time from the Court.

## RELEASE OF CLAIMS

90.     Plaintiffs and all members of the Settlement Class stipulate and agree that, upon the Effective Date, they shall be deemed to have, and by operation of the Court's order granting final approval of the settlement set forth in this Agreement and the Judgment of dismissal entered pursuant thereto shall have expressly waived and relinquished the Released Claims. Even if Plaintiffs and/or any such Class Members may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of the Released Claims, Plaintiffs and each of such Class Members, upon the Effective Date, shall be deemed to have and by operation of the Court's order granting final approval of the settlement set forth in this Agreement and the Judgment of dismissal entered pursuant thereto shall have fully, finally, and forever settled and released any and all of the Released Claims.  This is true whether the Released Claims are known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts.

91.     Plaintiffs and all members of the Settlement Class agree not to

sue or otherwise make a claim against any of the Released Parties based upon the Released Claims.

92.     All members of the California Class and FLSA Class make this waiver with full knowledge of their rights and with the specific intent to release all known and unknown claims arising from the claims in the Lawsuit.

93.     Plaintiffs and all members of the Settlement Class shall be deemed to have waived their rights as to the Released Claims with respect to the Released Parties under Section 1542 of the California Civil Code, which states:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

94.     For the purposes of effectuating this Agreement only, Plaintiffs, all members of the Settlement Class, also shall be deemed to have acknowledged and agreed that: (1) their claims for compensation for missed meal and rest breaks, overtime compensation, minimum wages, statutory and civil penalties, and any other payments and/or penalties in the Lawsuit are disputed; and (2) the payments set forth herein constitute full payment of any amounts allegedly due to them.   Such acknowledgements pertain only to effectuating this Agreement and, if this Agreement fails for any reason, shall be of no effect whatsoever. In light of these acknowledgements for settlement purposes only, Plaintiffs, all members of the California Class and FLSA Class that do not timely and properly exclude themselves from the terms of this Agreement, and all members of the Non-California Subclass, shall be deemed to have acknowledged and agreed that California Labor Code section 206.5 is not applicable to the Parties hereto.   That section provides in pertinent part as

follows:

> "An employer shall not require the execution of any release of a
> release of a claim or right on account of wages due, or to
> become due, or made as an advance on wages to be earned,
> unless payment of those wages has been made."

95.     Each member of the California Subclass that does not timely and
properly exclude themselves from the terms of this Agreement, and all
members of the Non-California Subclass shall be deemed to have made the
foregoing Release and representations as if by manually signing them.

96.     In addition to the release provided above with respect to all Class
Members, and for a valuable consideration, the receipt and adequacy of which
is hereby acknowledged and except as specifically provided below, Class
Representatives Terry Boyd, Ethel Joann Parks, Sonia Medina and Linda
Zanko, on behalf of themselves and each of their heirs, executors,
administrators, attorneys, devisees, successors, and assigns, do hereby release
and forever discharge the Released Parties of and from any and all claims,
causes of action, suits, debts, liens, contracts, judgments, agreements,
promises, liabilities, claims, demands, damages, losses, costs, or expenses of
any nature whatsoever, known or unknown, fixed or contingent (hereinafter
called "Claims"), which Class Representatives now have against the Released
Parties, or any of them, by reason of any matter, event, act, omission, cause or
thing whatsoever from the beginning of time to the date of this Agreement,
including but not limited to any and all Claims relating to or arising out of the
hire, employment, demotion, termination or remuneration (including without
limitation salary, bonus, incentive or other compensation, sick leave or
medical insurance benefits), except vested benefits, of Class Representatives
by the Released Parties, including without limitation all Claims arising out of,

based upon or relating to the Lawsuit.

97.    Without limiting the generality of the foregoing, the Claims of the Class Representatives released herein include any Claims arising out of, based upon, or in any way related to (i) claims of discrimination, harassment, and retaliation; (ii) any tort claims, including wrongful discharge, intentional or negligent infliction of emotional distress, intentional or negligent misrepresentation, invasion of privacy, defamation, loss of consortium, breach of fiduciary duty, assault, battery, sexual battery, violation of public policy, or any other common law claim of any kind; (iii) any other violation or alleged violation of Title VII of the Civil Rights Act of 1964, as amended, the Equal Pay Act, as amended, the Fair Labor Standards Act, the Employee Retirement Income Security Act, the Americans With Disabilities Act, the Family and Medical Leave Act, the California Family Rights Act, the California Fair Employment and Housing Act, the Civil Rights Act of 1866, and the Consolidated Omnibus Budget Reconciliation Act; and (iv) any claim relating to or arising under any other local, state or federal statute, regulation or principle of common law governing the employment of individuals and/or discrimination in employment.    This release extends to any and all administrative charges whether before the Equal Employment and Opportunity Commission or the Department of Fair Employment and Housing or any other court or agency.    Should the Class Representatives ever become a party to any such proceeding against the Released Parties, as a result of claims released in the agreement, he or she shall immediately ask any such administrative agency or court to withdraw any such charge as to him.    In consideration of the mutual promises contained herein, the Class Representatives, on behalf of themselves, and each of their heirs, representatives, successors, assigns, and attorneys, specifically agree to

forever fully and finally release, waive, acquit and discharge, to the fullest extent permitted by law, all claims, charges, complaints, liens, demands, causes of action, obligations, damages and liabilities, whether known or unknown, including, but not limited to all claims delineated in the subsequent section below.  Further, Class Representatives agree to sign this Agreement and to be bound by the terms herein stated, and further agree not to request to be excluded from the Agreement and agree not to object to any of the terms of the Agreement.

## CLASS ACTION FAIRNESS ACT NOTICE

98.   Defendants will be responsible for providing appropriate notifications to the relevant agencies under the Class Action Fairness Act ("CAFA") within ten (10) days of the filing of the motion for preliminary approval.

## VOIDING THE AGREEMENT

99.   In the event: (i) the Court does not enter any order specified herein; (ii) the Court does not finally approve the settlement set forth in this Agreement as provided herein; (iii) the Court does not enter an order granting final approval of the settlement set forth in this Agreement and a Judgment of dismissal of the Lawsuit with prejudice as provided herein that becomes final as a result of the occurrence of the Effective Date; or (iv) the settlement set forth in this Agreement does not become final for any other reason, this Agreement shall be null and void *ab initio* and any order or judgment entered by the Court in furtherance of the settlement set forth herein shall be treated as withdrawn or vacated by stipulation of the parties.  In such case, the Parties shall be returned to their respective statuses as of the date immediately prior to the execution of this Agreement, and the Parties shall proceed in all respects

as if this Agreement had not been executed.  In the event an appeal is filed from the Court's order granting final approval of the settlement set forth in this Agreement and any Judgment entered pursuant thereto, or any other appellate review is sought prior to the Effective Date, administration of the Settlement shall be stayed pending final resolution of the appeal or other appellate review.

100.   In the event 5% or more of the members of the Class (including members of the California Class and/or members of the FLSA Class) opt out and/or withdraw from the Class, Defendants may, at their option, void the Agreement in its entirety.  For illustration purposes only, if there are 367 total individuals in the Class, and 19 or more individuals opt out and/or withdraw (from the California Class and/or FLSA Class), Defendants will have the right to void the Agreement under this Paragraph.  Unless there are 5% or more of the total Class that opt out and/or withdraw, Defendants will not receive reversion of any part of the Gross Settlement Amount, unless the settlement is not finally approved by the Court with terms materially identical to the terms set forth in this Agreement.  In the event the settlement is voided pursuant to this paragraph, or is not given final approval by the Court, Defendants will bear only the already-incurred costs of the Claims Administrator.

## MISCELLANEOUS PROVISIONS

101.   Each Party to Bear Own Costs.  Except as specifically provided herein, the Parties hereto will bear responsibility for their own attorneys' fees and costs, taxable or otherwise, incurred by them or arising out of this Lawsuit, and will not seek reimbursement thereof from any Party to this Agreement.

102.   Severability.  If any of the above provisions are found null, void,

or inoperative, for any reason, the remaining provisions will remain in full force and effect.  Notwithstanding, the invalidation of any material term of this Agreement, including but not limited to all the terms and provisions specified in the Release of Claims, will invalidate this Agreement in its entirety unless the Parties subsequently agree in writing that the remaining provisions will remain in force and effect.

103.   <u>Headings</u>.   The descriptive headings of any paragraphs or sections of this Agreement are inserted for convenience of reference only and do not constitute any part of this Agreement.

104.   <u>No Admission</u>.   Neither the acceptance nor the performance by Defendants of the terms of this Agreement nor any of the related negotiations or proceedings is or shall be claimed to be construed as, or deemed to be an admission by Defendants of the truth of any of the allegations of the lawsuit, the representative character of the Lawsuit, the validity of any of the claims that were or could have been asserted by Plaintiffs and/or Class Members in the Lawsuit, or any liability or guilt of Defendants in the Lawsuit.

105.   <u>Agreement Jointly Prepared</u>.   The Parties and their attorneys have reviewed this Agreement.  The Parties have had a full opportunity to negotiate the terms and conditions of this Agreement.  Accordingly, the Parties expressly waive the common-law and statutory rule of construction that ambiguities should be construed against the drafter of an agreement, and agree, covenant, and represent that the language in all parts of this Agreement shall be in all cases construed as a whole, according to its fair meaning.

106.   <u>Non-Evidentiary Use</u>.   Neither the fact of this Agreement, the existence of this Stipulation, the terms of this Agreement, nor any order or action pursuant thereto may be referred to, relied upon, cited, or used as evidence by any of the Parties, Class Members, or their respective counsel in

the Lawsuit or in any other action or proceeding; provided, however, that nothing contained in this section shall prevent this Agreement from being used, offered, or received in evidence in any proceeding to enforce, construe, or finalize this Agreement.

107.   <u>Amendment or Modification</u>.  Unless otherwise provided herein, this Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors-in-interest.

108.   <u>Authorization to Enter Into Stipulation</u>.  Each individual signing this Agreement warrants that he or she has the authority and is expressly authorized to enter into this Agreement on behalf of the party for which that individual signs.

109.   The Parties agree that because the Class Members are so numerous, it is impossible or impractical to have each of them execute this Agreement. Accordingly, the Notice of Settlement, which is included within Exhibit A attached to this Agreement, will advise all of the Class Members of the binding nature of the release and that the release shall have the same force and effect as if the Agreement were executed by each of them, whether or not the Notice of Settlement is actually received by the Class Member.

110.   <u>Advice of Counsel</u>.   The Parties to this Agreement are represented by competent counsel, and they have had an opportunity to consult with counsel.  The Parties to this Stipulation agree that it reflects their good faith compromise of the claims raised in this action, based upon their assessment of the mutual risks and costs of further litigation and the assessments of their respective counsel.

111.   <u>Assignment</u>.  None of the rights, commitments, or obligations recognized under this Stipulation may be assigned by any Party, Class Member, Class Counsel or Defendants' Counsel without the express written

consent of each Party and their respective counsel hereto. The representations, warranties, covenants, and agreements contained in this Agreement are for the sole benefit of the Parties under this Agreement, and shall not be construed to confer any right or to avail any remedy to any other person.

112.   <u>Governing Law.</u>  This Agreement shall be governed, construed, and interpreted, and the rights of the Parties shall be determined, in accordance with the laws of the State of California, irrespective of the State of California's choice of law principles.

113.   <u>Entire Agreement</u>.   This Agreement and any supplemental written agreement subsequently incorporated constitute the entire Agreement among these Parties, and no oral or written representations, warranties or inducements have been made to any Party concerning this Agreement other than the representations, warranties and covenants contained and memorialized herein.  This Agreement, once it is fully executed, supersedes, any and all prior agreements between the Parties, whether written or verbal, including the Parties' "Memorandum of Understanding."

114.   <u>Counterparts</u>.  This Agreement, and any amendments hereto, may be executed in any number of counterparts and any Party and/or their respective counsel hereto may execute any such counterpart, each of which when executed and delivered shall be deemed to be an original and all of which counterparts taken together shall constitute but one and the same instrument.  It shall not be necessary in making proof of this Agreement or any counterpart hereof to produce or account for any of the other counterparts.

115.   <u>Cooperation</u>.  The Parties shall cooperate fully with one another in seeking approval of the Court of this Agreement (including all exhibits thereto) and to use their best efforts to consummate the Agreement and cause

the Court to enter an order of final approval of the settlement.  No Party to this Agreement shall seek to evade his, her or its good faith obligations to seek approval and implementation of the Agreement by virtue of any ruling, order, or other development, whether in the Lawsuit, in any other litigation or otherwise that hereafter might occur and might be deemed to alter the relative strengths of the Parties with respect to any claims or defenses of their relative bargaining power with respect to negotiating.

116.   Press Release/Non-Disparagement.  Subsequent to the date of filing with the Court of a motion for preliminary approval and a copy of this Agreement, Class Counsel may issue a press release.  Any statements Class Counsel make/issue will be factually accurate and not derogatory or disparaging about the company.  Statements regarding contrasting views of the claims in this matter are not "derogatory" or "disparaging" for purposes of this Agreement.

117.   Website.  After the court grants preliminary approval of the settlement, Class Counsel will set up a website to provide settlement documents and other case-related documents online for class members' review.  Any statements Class Counsel makes on the website about this lawsuit will be factually accurate and not derogatory or disparaging about the company.  Statements regarding contrasting views of the claims in this matter are not "derogatory" or "disparaging" for purposes of this Agreement.

118.   To the extent permitted by law, the Court shall retain jurisdiction for the purposes of managing and overseeing the class action settlement set forth in this Agreement and the distribution of funds pursuant thereto.

*      *      *

THE UNDERSIGNED ACKNOWLEDGE THAT EACH HAS READ THE FOREGOING AGREEMENT AND ACCEPTS AND AGREES TO THE PROVISIONS CONTAINED THEREIN, AND HEREBY EXECUTES IT VOLUNTARILY WITH FULL KNOWLEDGE OF ITS CONSEQUENCES.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement on the dates indicated below.

**IT IS SO STIPULATED AND AGREED:**

*[Signatures on following pages]*

**PLAINTIFFS/CLASS REPRESENTATIVES:**

DATED: 08/21/2015, 2015   _____

Terry Boyd, Plaintiff/Class Representative

DATED: _____, 2015   _____

Ethell Joann Parks, Plaintiff/Class Representative

DATED: _____, 2015   _____

Sonia Medina, Plaintiff/Class Representative

DATED: _____, 2015   _____

Linda Zanko, Plaintiff/Class Representative

**PLAINTIFFS/CLASS REPRESENTATIVES:**

DATED: _____, 2015        _____

                                  Terry Boyd, Plaintiff/Class Representative


DATED: 08/17, 2015                _____

                                  Ethel Joann Parks, Plaintiff/Class
                                  Representative


DATED: _____, 2015        _____

                                  Sonia Medina, Plaintiff/Class Representative


DATED: _____, 2015        _____

                                  Linda Zanko, Plaintiff/Class Representative

## PLAINTIFFS/CLASS REPRESENTATIVES:

DATED: _____, 2015    _____

Terry Boyd, Plaintiff/Class Representative

DATED: _____, 2015    _____

Ethel Joann Parks, Plaintiff/Class Representative

DATED: 08/20 ____, 2015    _____

Sonia Medina, Plaintiff/Class Representative

DATED: _____, 2015    _____

Linda Zanko, Plaintiff/Class Representative

---

*Boyd, et al. v. Bank of America, et al.,* SACV 13-00561 (DOC)
Staff Appraiser Class Stipulation for Settlement                 Page 47 of 49

## PLAINTIFFS/CLASS REPRESENTATIVES:

DATED: _____, 2015    _____

Terry Boyd, Plaintiff/Class Representative

DATED: _____, 2015    _____

Ethell Joann Parks, Plaintiff/Class
Representative

DATED: _____, 2015    _____

Sonia Medina, Plaintiff/Class Representative

DATED: 8/17/15 , 2015    _____

Linda Zanko, Plaintiff/Class Representative

**DEFENDANTS:**

**DEFENDANTS BANK OF AMERICA CORPORATION, LANDSAFE, INC., AND LANDSAFE APPRAISAL SERVICES. INC.**

DATED: *August 18* , 2015

By: _____

Name: JAY J. PRICE

Title: SVP & Associate General Counsel
Bank of America)

**COUNSEL:**

DATED: _____, 2015    **BRYAN SCHWARTZ LAW**

By: _____
    Bryan J. Schwartz, Esq.

Attorneys for Plaintiffs and the Class

DATED: _____, 2015    **SCHONBRUN DESIMONE SEPLOW HARRIS & HOFFMAN, LLP**

By: _____
    Wilmer Harris, Esq.

Attorneys for Plaintiffs and the Class

DATED: 6-18-2015, 2015    **MCGUIREWOODS LLP**

By: _____
    Matthew C. Kane, Esq.
    Michael D. Mandel, Esq.
    John A. Van Hook, Esq.
    Christopher A. Killens, Esq.

Attorneys for Defendants
Bank of America Corporation
LandSafe, Inc., and
LandSafe Appraisal Services, Inc.

**COUNSEL:**

DATED: ___8/21___, 2015

**BRYAN SCHWARTZ LAW**

By: _____
         Bryan J. Schwartz, Esq.

Attorneys for Plaintiffs and the Class


DATED: ___8/17___, 2015

**SCHONBRUN DESIMONE SEPLOW
HARRIS & HOFFMAN, LLP**

By: _Wilmer J. Harris_
         Wilmer Harris, Esq.

Attorneys for Plaintiffs and the Class


DATED: _____, 2015

**McGuireWoods LLP**

By: _____
         Matthew C. Kane, Esq.
         Michael D. Mandel, Esq.
         John A. Van Hook, Esq.
         Christopher A. Killens, Esq.

Attorneys for Defendants
Bank of America Corporation
LandSafe, Inc., and
LandSafe Appraisal Services, Inc.

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

TERRY P. BOYD, ETHEL JOANN PARKS, SONIA MEDINA, LINDA ZANKO, and VICTOR GALAZ, individually, on behalf of all others similarly situated, and on behalf of the general public,

Plaintiffs,

v.

BANK OF AMERICA CORP.; LANDSAFE, INC.; LANDSAFE APPRAISAL SERVICES, INC.; and DOES 1-10, inclusive

Defendants.

_____/

Case No. 13-CV-00561 DOC (JPRx)

**NOTICE OF CLASS AND COLLECTIVE ACTION SETTLEMENT TO STAFF APPRAISERS**

Honorable David O. Carter

**IMPORTANT NOTIFICATION TO CLASS AND COLLECTIVE ACTION MEMBERS**

**TO:** ALL INDIVIDUALS WHO HAVE BEEN EMPLOYED AS A STAFF APPRAISER BY BANK OF AMERICA CORPORATION, LANDSAFE, INC., AND/OR LANDSAFE APPRAISAL SERVICES, INC. IN CALIFORNIA AT ANY TIME BETWEEN APRIL 9, 2009 AND THE PRESENT WHO HAVE NOT PREVIOUSLY EXCLUDED THEMSELVES FROM THE CERTIFIED CLASS IN THE ABOVE-REFERENCED LAWSUIT; AND

ALL INDIVIDUALS WHO HAVE BEEN EMPLOYED AS A STAFF APPRAISER BY BANK OF AMERICA CORPORATION, LANDSAFE, INC., AND/OR LANDSAFE APPRAISAL SERVICES, INC. AT ANY TIME BETWEEN APRIL 9, 2010 AND THE PRESENT AND WHO HAVE FILED CONSENTS TO JOIN THE ABOVE-REFERENCED LAWSUIT

**PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY. A FEDERAL COURT AUTHORIZED THIS NOTICE. THIS IS NOT A SOLICITATION FROM A LAWYER.**

**THE DEFENDANTS IN THE ABOVE-REFERNCED LAWSUIT HAVE AGREED TO CREATE A $36 MILLION SETTLEMENT FUND TO PAY CLAIMS OF STAFF APPRAISER CLASS MEMBERS IN ORDER TO SETTLE A WAGE AND HOUR LAWSUIT.**

**ACCORDING TO COMPANY RECORDS, YOU (A) ACTIVELY WORKED AS A**

**STAFF APPRAISER IN CALIFORNIA BETWEEN APRIL 9, 2009 AND, ACCORDING TO THE RECORDS OF A THIRD-PARTY ADMINISTRATOR, DID NOT EXCLUDE YOURSELF FROM THE CLASS CERTIFIED IN THE ABOVE-REFERENCED LAWSUIT AND/OR (B) ACTIVELY WORKED AS A STAFF APPRAISER AFTER APRIL 9, 2010 AND, ACCORDING TO COURT RECORDS, HAVE FILED AND NEVER WITHDRAWN A CONSENT TO JOIN THE ABOVE-REFERENCED LAWSUIT.**

**YOUR ANTICIPATED MINIMUM ALLOCATION OF THE SETTLEMENT IS $[XXXXX], BASED ON COMPANY RECORDS OF YOUR INDIVIDUAL APPRAISAL REPORT PRODUCTION HISTORY, PAYROLL RECORDS, AND THE FORMULA ARRIVED AT BY THE PARTIES.**

- The settlement will provide $36 million to pay claims of current and former staff appraisers who worked for Bank of America Corporation, LandSafe, Inc., and/or LandSafe Appraisal Services, Inc. (collectively, "LandSafe") in California between April 9, 2009 and the present who did not exclude themselves from the certified class in the lawsuit, and/or who worked as a staff appraiser between April 9, 2010 and the present and filed a consent to join the lawsuit.

- The settlement resolves claims of staff appraisers in a lawsuit that alleged causes of action against LandSafe for: (1) failure to pay overtime wages under federal and California law; (2) failure to pay earned wages upon discharge under California law; (3) failure to provide timely, accurate, itemized wage statements under California law; (4) failure to provide and/or authorize meal and rest periods under California law; (5) unlawful and/or unfair business practices in violation of California Business and Professions Code; and (6) penalties under the California Labor Code Private Attorneys General Act of 2004.

- LandSafe denies that it is liable for any of the claims. However, in light of the risk, expense, and delay of proceeding to trial and potentially litigating an appeal of pre-trial rulings and the trial outcome, both LandSafe and Class Counsel for the Plaintiffs believe that this is a fair settlement of the staff appraisers' claims.

| YOUR OPTIONS AND LEGAL RIGHTS IN THIS SETTLEMENT | |
|---|---|
| DO NOTHING AND RECEIVE A SETTLEMENT PAYMENT | If you do nothing, you will receive a settlement payment equal to or greater than your "minimum allocation" stated above, assuming that the Court approves the settlement. The minimum allocation is based on the number and types of appraisals you completed and your payroll records within the relevant period. If you do nothing, a check will arrive in the mail. The back of the check will explain that by cashing the check, you are agreeing to release all claims covered by this Settlement, and will be releasing your claims under the federal Fair Labor Standards |

| | |
|---|---|
| | Act. |
| **EXCLUDE YOURSELF** | If you affirmatively write to exclude yourself (*i.e.*, "opt out" of the case), you will receive no payment from this settlement. However, you would be free to pursue your claims separately against LandSafe. The steps to exclude yourself are explained below. |
| **OBJECT** | If you wish to challenge the terms of the settlement, including amounts requested for attorneys' fees, costs and service awards to the Plaintiffs and others, you may file an objection with the Court, setting forth the reasons why you oppose the settlement or any of its terms. However, in order to object to the settlement you must also not exclude yourself from the settlement. You may also appear in Court and explain why you do not like the settlement or use an attorney to appear for you. If you object, this does not mean you opt out of the class (in fact, as explained below, if you choose to "opt out" of the class, you will not be permitted to object to the settlement terms). |

---

### WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION**                                                **PAGE 1**
    1.  Why did I get this notice package?
    2.  What is this lawsuit about?
    3.  What is a class action?
    4.  Why is there a settlement?                       **PAGE 2**

**WHO IS IN THE SETTLEMENT**
    5.  How do I know if I am part of the settlement?
    6.  Are there exceptions to being included?
    7.  I am still not sure if I am included.
    8.  For former employees: will this affect my severance?

**THE SETTLEMENT BENEFITS – WHAT YOU GET**                           **PAGE 3**
    9.  What does the settlement provide?
    10. How much will my payment be?

**YOU WILL RECEIVE A PAYMENT UNLESS YOU AFFIRMATIVELY OPT OUT**
    11. How can I get a payment?
    12. When would I get my payment?
    13. What am I giving up to get a payment?           **PAGE 4**
    14. What if I believe I am not being credited for the right number of work-weeks?

**EXCLUDING YOURSELF FROM THE SETTLEMENT**
    15. How do I get out of the settlement?          **PAGE 5**
    16. What happens if I do nothing?
    17. What are claims under the Fair Labor Standards Act?

**THE LAWYERS REPRESENTING THE CLASS**
    18. Do I have a lawyer in the case?          **PAGE 6**
    19. How will the lawyers and Class Representative
         Plaintiffs be paid?

**OBJECTING TO THE SETTLEMENT**
    20. How do I tell the Court that I challenge all or some of the settlement
         terms?
    21. What's the difference between objecting, on the one hand, and         **PAGE 7**
         excluding myself (*i.e.*, "opting out") from the settlement, on the other?

**THE COURT'S FINAL FAIRNESS HEARING**
    22. When and where will the Court decide whether to approve the settlement?
    23. Do I have to come to the hearing?
    24. May I speak at the hearing?          **PAGE 8**

**GETTING MORE INFORMATION**          **PAGE 8**
    25. Are there more details about the settlement?
    26. How do I get more information?

**BASIC INFORMATION**

| **1.  Why did I get this notice package?** |

LandSafe's records indicate that: (a) you worked for LandSafe as a staff appraiser in California between April 9, 2009 and the present, and a third-party claims administrator's records indicate that you did not exclude yourself from the class of staff appraisers certified by the Court in the lawsuit; and/or (b) you worked for LandSafe as a staff appraiser between April 9, 2010 and the present, and, according to Court records, you previously have filed a consent to join the lawsuit and never withdrawn it.

You received this notice because you have a right to know about a proposed settlement of a class and collective action lawsuit, and about your options, before the Court decides whether to approve the settlement.  If the Court approves it, and after any objections and appeals are resolved, a third-party administrator appointed by the Court will make the payments that the settlement requires.

This package explains the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the case is the United States District Court for the Central District of California, and the case is known as *Terry P. Boyd et al. v. Bank of America Corp.; LandSafe, Inc. et al.*, Case No. 13-CV-00561 DOC.  The people who brought the suit are called Plaintiffs, and entities the suit was brought against (Bank of America Corp., LandSafe, Inc. and LandSafe Appraisal Services, Inc.) are the Defendants.

**DO NOT CONTACT THE COURT DIRECTLY WITH QUESTIONS. THE COURT WILL NOT ANSWER ANY OF YOUR QUESTIONS.**

| **2.  What is this lawsuit about?** |

The lawsuit claims that LandSafe misclassified staff appraisers as "exempt" from state and federal overtime laws and thereby:  (1) failed to pay  staff  appraisers overtime when they worked more than eight hours in a day  in California or forty hours in a week both within and outside of California; (2) failed to provide rest and meal breaks to California staff appraisers; (3) failed to provide complete and accurate wage statements to its California employees; (4) failed to pay its California employees all wages due at the time of discharge or resignation from employment; and (5) as a result of the foregoing, engaged in unfair or unlawful business practices in violation of the California Business and Professions Code.

The Court has ruled that LandSafe staff appraisers are not exempt from overtime under the administrative or learned professional exemptions under California or federal law, or the highly-compensated employee exemption under federal law. However, LandSafe believes that its pay practices have at all times been appropriate under California and federal law and has vowed to appeal any adverse ruling by the Court. Nonetheless, as a result of this lawsuit and as part of this

settlement, to the extent that Bank of America Corporation, either directly or through a direct or indirect subsidiary, continues to maintain in-house Staff Appraisers as their employees, Defendants will take steps to reclassify the Staff Appraiser position as overtime eligible as soon as practicable.

**3.  What is a class action?**

In a class action,  Class Representatives (in this case Terry P. Boyd, Ethel Joann Parks, Sonia Medina and Linda Zanko, on behalf of staff  appraisers), sue on behalf of people who have similar claims ("Class Members").  The Court will resolve the issues for all Class Members, except for those who exclude themselves from the Class. Note that the other individual listed in the suit (Victor Galaz) was a review appraiser, whose claims were resolved in a prior settlement.

**4.  Why is there a settlement?**

The Court did not issue a final judgment in favor of Plaintiffs or Defendants. Instead, the parties reached a negotiated settlement, which avoids the uncertainties and delays associated with further litigation and which compensates the Class Members sooner, rather than later. The Class Representatives and Plaintiffs' attorneys believe that this settlement is in the best interests of all Class Members.

WHO IS IN THE SETTLEMENT

**5.  How do I know if I am part of the settlement?**

Everyone who fits the following description is a Class Member: *All Staff Appraisers who worked for Bank of America Corp., LandSafe, Inc., and/or LandSafe Appraisal Services, Inc. in California at any time between April 9, 2009 and the present, who did not opt out of this case, or worked in a state other than California at any time between April 9, 2010 and the present, who timely submitted a consent form to opt-into this case, and who never withdrew their consent.*

**6.  Are there exceptions to being included?**

You are not a Class Member if you did not work for *Bank of America Corp., LandSafe, Inc., and/or LandSafe Appraisal Services, Inc.* as a Staff Appraiser in California during the period in question. Staff Appraisers that worked in a state other than California at any time between April 9, 2010 and the present but did not timely submit a consent form to opt-into this case, or who withdrew a prior consent form, are not included in the settlement and cannot participate in this settlement. Staff Appraisers who opted out of this case also may not participate.

**7.  I am still not sure if I am included.**

2

If you are receiving this notice, it is most likely that you do qualify to participate, and unless you opt out or withdraw your consent form opting into this case, you will receive a settlement payment, assuming that the Court approves the settlement. If you have questions about whether you qualify, you may contact Class Counsel at the contact information provided below.

**8. For former employees:  will this affect my severance?**

If you are a former employee who, in connection with a reduction in force, signed a severance agreement containing various releases of claims against LandSafe, LandSafe has agreed that you are still permitted to participate in this settlement. You are not required to opt out of this settlement. Remaining a part of the class will not jeopardize any severance payments you received when you left LandSafe. However, the amount of your recovery from the settlement will be reduced by 20% to reflect the litigation risks associated with your claims.

**THE SETTLEMENT BENEFITS – WHAT YOU GET**

**9. What does the settlement provide?**

LandSafe has agreed to create a fund of $36,000,000.00 to be divided among all California and non-California Staff Appraisers who participate in the settlement, and also to be used to pay for Plaintiffs' attorney's fees and costs, enhancement payments to the named Plaintiffs and others who assisted in the litigation, and other payments made pursuant to this Settlement.

Staff appraisers who participate in the settlement will receive a pro rata payment based on the number and type of appraisals that they completed for LandSafe during the Class Period, and how much they earned. California staff appraisers will receive payment that is proportionally larger than review appraisers in other states, to reflect the fact that California staff appraisers have claims for meal- and rest-period violations and various California-specific penalties, which are claims that arise under California law, and which are available only to California employees. Staff appraisers who previously signed a severance agreement will have their recovery from the settlement reduced by 20% to reflect the litigation risks associated with their claims.

**10. How much will my payment be?**

Your minimum share of the fund is listed on the first page of this Notice. The amount will depend on the number and type of appraisals you completed for LandSafe during the Class Period, whether you worked in California or another state, and whether you previously signed a severance agreement. If other Class Members do not participate in the settlement, your share of the fund may increase proportionately.

One third of the settlement amount you receive will be considered wages (and have standard payroll taxes deducted from it) and the other two thirds will be considered interest and penalties,

to be paid to you with an IRS Form 1099. You alone are responsible to pay any appropriate taxes on the latter amount.

**YOU WILL RECEIVE A PAYMENT UNLESS YOU AFFIRMATIVELY OPT OUT**

**11. How can I get a payment?**

If you are receiving this notice, you qualify for payment, and unless you affirmatively opt out of the settlement by [***date – 60 days after notice is mailed***], you will automatically receive a payment.

**12. When would I get my payment?**

The Court will hold a hearing on [***date***] **2015** at [***time***] to decide whether to finally approve the settlement. If the Court approves the settlement, there may be appeals. Resolving any appeals can take time, perhaps more than a year. Please be patient.

However, if the Court approves the settlement at the hearing and there are no appeals, payments will be made within several weeks after the hearing.

**13. What am I giving up to get a payment?**

Unless you affirmatively exclude yourself from the settlement, you are part of the Class. You cannot sue, continue to sue, or be part of any other lawsuit against LandSafe about the wage and hour claims covered by this settlement. It also means that all of the Court's orders will apply to you and legally bind you.

Unless you affirmatively exclude yourself from the settlement, you will be releasing all wage and hour claims covered by this settlement, whether you cash your check or not, except for federal Fair Labor Standards Act claims, which will only be released if you cash your check.

You can review the exact language of the release by reviewing the Settlement Agreement online, at the web address listed in the "Getting More Information" section of this Notice, below. The relevant portion begins in Page 33 of the Settlement Agreement.

**14. What if I believe I am not being credited for the right number and types of appraisals?**

Any Class Member who disputes the information shown in Section 27 of his or her Notice of Settlement regarding the total number and type of appraisals that he or she actively worked as a staff appraiser may indicate and explain such disagreement under penalty of perjury within sixty (60) days of the mailing of the Notice of Settlement by notifying the Claims Administrator pursuant to the procedures set forth herein and described in the Notice of Settlement.  Any such

QUESTIONS? CALL
[ADMINISTRATOR]: XXX-XXX-XXXX

Class Member must submit documentation relating to his or her dispute.  The Claims Administrator shall notify LandSafe's Counsel and Class Counsel of any such dispute no later than five (5) days after receiving notice of the dispute.  In the case of a dispute, LandSafe's records shall control and will have a rebuttable presumption of correctness.  For any dispute that arises, counsel for the Parties may stipulate to a resolution, or may ask the Court to resolve a dispute.

### EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want a payment from this settlement, but you want to keep the right to pursue claims (or continue to pursue claims) against LandSafe on your own regarding the legal issues in this case, then you must exclude yourself from the settlement.  This is called "opting out" of the settlement Class.  If you exclude yourself from the Settlement, you will not receive any money at all from this Settlement.

**15. How do I get out of the settlement?**

To exclude yourself from the settlement, you must send a letter by mail stating that you want to be excluded from *Terry P. Boyd et. al v. Bank of America Corp. et al*.  Be sure to include your name, address, telephone number, and your signature.  You must mail your exclusion request postmarked no later than [***date 60 days after notice is mailed***] to:

Claims Administrator
P.O. Box XXXX
City, ST XXXXX-XXXX

If you ask to be excluded, you will not get any settlement payments of any kind in this case and you cannot object to the settlement. You will not be legally bound by anything that happens in this lawsuit.  You will be able to pursue claims (or continue to pursue claims) against LandSafe for the wage claims at issue in this case in the future. If you have a pending claim or lawsuit, speak to your lawyer in that case immediately. You may need to exclude yourself from this Class to continue your own claim or lawsuit.

**16. What happens if I do nothing?**

If you do nothing regarding this notice, you will be sent a check for your allocated amount. If you do not cash the check, your rights will still be affected, in that you will give up your right to sue LandSafe for claims that this settlement resolves, other than federal claims under the Fair Labor Standards Act.

**17. What are claims under the Fair Labor Standards Act?**

The Fair Labor Standards Act is a federal law governing the payment of overtime for hours

worked past 40 in a week. It does not have the same provisions that California law has relating to employees taking meal or rest breaks or double-time wages.

In contrast, California law requires overtime to be paid for hours worked past 8 in a day or 40 hours in a week. California also has laws relating to meal breaks and rest breaks.  If you do nothing in this lawsuit and receive a check, you will give up your right to sue based on any California wage law. If you deposit your check, you will release your state and federal wage claims; if you do not deposit your check, you will retain your right to sue under the Fair Labor Standards Act.

### THE LAWYERS REPRESENTING THE CLASS

**18. Do I have a lawyer in this case?**

Two law firms – Bryan Schwartz Law and Schonbrun DeSimone Seplow Harris & Hoffman, LLP – represent the Class. These lawyers are called Class Counsel. These lawyers will be paid from the settlement amount, so you will not be charged personally for these lawyers' work on this case and in negotiating this settlement. If you want to be represented by your own lawyer, you may hire one at your own expense.

**19. How will the lawyers and Class Representative Plaintiffs be paid?**

Class Counsel will ask the Court to approve the payment of up to one-third of the settlement amount for attorneys' fees (*i.e.*, up to $12,000,000), as well as actual litigation costs, associated with investigating the facts, litigating the case, and negotiating the settlement. The Claims Administrator administering the settlement will be compensated at the fair market rate of those services from the settlement, currently estimated at $18,000, subject to Court approval.  Plaintiffs will also request that the Court approve payments of up to $25,000 to each of the four named Plaintiffs representing the staff appraisers, for their work in bringing this lawsuit and in exchange for them waiving a much broader array of personal claims than you are waiving. Plaintiffs will also request that the Court approve payments of $2,000 to each Class Member who assisted the litigation by testifying in a deposition in this case and $1,000 to each Class Member who assisted by responding to written discovery.

Class Counsel will also ask the Court to approve a payment of $75,000  to the State of California's Labor and Workforce Development Agency to satisfy alleged Labor Code violations pursuant to the California Labor Code Private Attorneys General Act of 2004 ("PAGA"). This payment to the LWDA is required by statute.

The Court may award less than these amounts. LandSafe has agreed not to oppose Class Counsel's request for fees and expenses. If the Court awards less than the amounts described in this section, that money will be redistributed to Class Members or distributed to an appropriate charity, depending upon the amount of the money.  None of this money will revert to LandSafe.

QUESTIONS? CALL
[ADMINISTRATOR]: XXX-XXX-XXXX

**OBJECTING TO THE SETTLEMENT**

| **20. How do I tell the Court that I challenge all or some of the settlement terms?** |
| --- |

If you are a Class Member, you can object to the settlement if you wish to challenge any part of it, including the requested attorneys' fees, costs and service payments.  You can give reasons why you think the Court should not approve it. The Court will consider your views. Please note, however, that you cannot ask the Court to order a larger settlement; the Court can only approve or deny the settlement as it is presented.  If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue.  To object, you must send a letter saying that you object to the settlement in *Terry P. Boyd et al. v. Bank of America Corp. et al*, Case No. 13-CV-00561 DOC (be sure to include this case name and number in your letter).  Be sure to also include your name, address, telephone number, your signature, and the reasons you object to the settlement. To be considered, you must mail any objection to the four different places set forth below, postmarked no later than [XXXX – 60 days after mailing of notice], however, you may submit your objections to the request for attorneys' fees, costs and/or service awards 14 days before the final fairness hearing.   The motion and documents requesting final approval and requesting attorneys' fees, costs and service awards will be filed no later than 28 days before the final fairness hearing and will be posted on Class Counsel's website, listed below. Further, please note that the date and time of the final fairness hearing may change so please be sure to check Class Counsel's website to confirm. The addresses to which your objections must be submitted are:

| Court | Class Counsel | Defense Counsel |
| --- | --- | --- |
| Clerk of the Court<br>U.S. District Court for the<br>Central District of California<br>411 W. Fourth St.<br>Santa Ana, CA 92701 | Bryan Schwartz Law<br>1330 Broadway, Suite 1630<br>Oakland, CA 94612<br><br>Schonbrun DeSimone Seplow<br>Harris & Hoffman LLP<br>Attn: Wilmer Harris<br>715 Fremont Ave.<br>S. Pasadena, CA 91030 | McGuire Woods LLP<br>Attn: Michael Mandel<br>1800 Century Park East, 8th Fl<br>Los Angeles, CA 90067 |

| **21. What's the difference between objecting, on the one hand, and excluding myself (*i.e.,* "opting-out") from the settlement, on the other?** |
| --- |

Objecting is simply telling the Court that you wish to challenge all or part of the settlement.  You can object only if you stay in the Class. Excluding yourself from the settlement or "opting out" is telling the Court that you do not want to be part of the Class or receive any payment at all from the settlement.  If you exclude yourself, you have no basis to object because the case no longer affects you.

**THE COURT'S FINAL FAIRNESS HEARING**

7

QUESTIONS? CALL
[ADMINISTRATOR]: XXX-XXX-XXXX

**22. When and where will the Court decide whether to approve the settlement?**

The Court will hold a Final Approval Fairness Hearing at [XXX] P.M. on [XXX], 2015, at the United States District Court for the Central District of California, at 411 W. Fourth St., Santa Ana, CA 92701, before the Honorable David O. Carter, Courtroom 9D.  At this hearing the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. After the hearing, the Court will decide whether to approve the settlement.  Please note that the hearing may be postponed without further notice to the Class. Thus, if you plan to attend the hearing, you should check the website identified in Question 25, below, or access the Court docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cacd.uscourts.gov.

**23. Do I have to come to the hearing?**

No.  But, you are welcome to come at your own expense.  If you send an objection, you do not have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

**24. May I speak at the hearing?**

You may ask the Court for permission to speak at the Final Fairness Hearing. To do so, you must send a letter to the Clerk of the Court saying that it is your "Notice of Intention to Appear in *Terry P. Boyd et al. v. Bank of America Corp. et al.*, Case No. 13-CV-00561 DOC."  Be sure to include your name, address, telephone number, and your signature. Your Notice of Intention to Appear must be postmarked no later than [XXX], **2015**, and be sent to the Clerk of the Court, Class Counsel, and Defense Counsel, at the four addresses listed in Question 20, above. You cannot speak at the hearing if you excluded yourself ("opted out") from the settlement.

GETTING MORE INFORMATION

**25. Are there more details about the settlement?**

This notice summarizes the proposed settlement.  More details are in a Settlement Agreement. If there is any conflict between this notice and the Settlement Agreement, the Settlement Agreement will control.  You can view a copy of the Settlement Agreement and other key documents in this case at the following web address:
www.bryanschwartzlaw.com/LandsafeStaffAppraiserSettlement.htm.

**26. How do I get more information?**

QUESTIONS? CALL
[ADMINISTRATOR]: XXX-XXX-XXXX

You can call 1-XXX-XXX-XXXX toll free, write to [Administrator], Inc., P.O. Box XXXX, City ST XXXXX-XXXX, or go to www.bryanschwartzlaw.com/LandsafeStaffAppraiserSettlement.htm.

You may also call Class Counsel:

Bryan Schwartz (510) 444-9300
Wilmer Harris (626) 441-4129
Michael Seplow (310) 396-0731

## INFORMATION USED TO CALCULATE YOUR SETTLEMENT SHARE

**27. What data is being used to calculate my settlement share?**

According to LandSafe's records, you completed the following types of appraisals in the following years, with the following total earnings each year:

In California Only: 2009:

1004
[type 2]
[type 3]
Etc.

Total 2009 Earnings:

2010:

1004
[type 2]
[type 3]
Etc.

Total 2010 Earnings:

2011:

1004
[type 2]
[type 3]
Etc.

Total 2011 Earnings:

2012:

9

1

2
1004
[type 2]
3
[type 3]
Etc.
4
Total 2012 Earnings:
5
6
2013:
7
1004
[type 2]
8
[type 3]
Etc.
9
10
Total 2013 Earnings:
11
2014:
12
1004
[type 2]
13
[type 3]
Etc.
14
15
Total 2014 Earnings:
16
2015:
17
1004
[type 2]
18
[type 3]
Etc.
19
20
Total 2015 Earnings:
21
According to Landsafe's records, you [X] did [X] did not sign a severance agreement.
22
23
**DO NOT CALL THE COURT**
24
**CONCLUSION**
25
      **THIS NOTICE AND ITS CONTENTS HAVE BEEN AUTHORIZED BY THE**
26
**UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF**
**CALIFORNIA, THE HONORABLE DAVID O. CARTER, UNITED STATES DISTRICT**
27
**COURT JUDGE.**
28

QUESTIONS? CALL
[ADMINISTRATOR]: XXX-XXX-XXXX

1

2

_____
The Honorable David O. Carter
United States District Judge

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

QUESTIONS? CALL
[ADMINISTRATOR]: XXX-XXX-XXXX

# EXHIBIT B

8:13-CV-0561-DOC  9/28/2015 - Item No. 9

1

| | |
|---|---|
| 1 | **UNITED STATES DISTRICT COURT** |
| 2 | **CENTRAL DISTRICT OF CALIFORNIA** |
| 3 | **HONORABLE DAVID O. CARTER, JUDGE PRESIDING** |
| 4 | - - - - - - - |

```
 5   TERRY P. BOYD, etc.,              )
                                       )     CERTIFIED
 6            Plaintiffs,              )
                                       )
 7        vs.                          ) No. 8:13-CV-0561-DOC
                                       )     Item No. 9
 8   BANK OF AMERICA CORP., et al.,    )
                                       )
 9            Defendants.              )
     _____)
10
11
12
13              REPORTER'S TRANSCRIPT OF PROCEEDINGS
14                       Hearing on Motion
15                      Santa Ana, California
16                   Monday, September 28, 2015
17
18
19
20
21
22   Debbie Gale, CSR 9472, RPR, CCRR
     Federal Official Court Reporter
23   United States District Court
     411 West 4th Street, Room 1-053
24   Santa Ana, California 92701
     (714) 558-8141
25
```

**DEBBIE GALE, U.S. COURT REPORTER**

```
1    APPEARANCES OF COUNSEL:

2
     FOR PLAINTIFF TERRY P. BOYD, ETC.:
3

4        Bryan J. Schwartz
         Attorney at Law
5        BRYAN SCHWARTZ LAW OFFICES
         1330 Broadway
6        Suite 1630
         Oakland, California 94612
7        510-444-9300
         bryan@bryanschwartzlaw.com
8
         Michael D. Seplow
9        Attorney at Law
         SCHONBRUN DeSIMONE SEPLOW HARRIS & HOFFMAN LLP
10       723 Ocean Front Walk
         Suite 100
11       Venice, California 90291
         310-396-0731
12       mseplow@gmail.com

13       Wilmer J. Harris
         Attorney at Law
14       SCHONBRUN DeSIMONE SEPLOW HARRIS & HOFFMAN LLP
         715 Fremont Avenue
15       Suite A
         South Pasadena, California 91030
16       626-441-4129
         wharris@sdshhlaw.com
17

18

19   FOR DEFENDANT BANK OF AMERICA CORP., ET AL.:

20       Michael David Mandel
         Attorney at Law
21       McGuireWoods LLP
         1800 Century Park East
22       8th Floor
         Los Angeles, CA 90067
23       310-315-8200
         mmandel@mcguirewoods.com
24

25
```

Case 8:13-cv-00561-DOC-JPR  Document 380-1  Filed 11/23/15  Page 74 of 185  Page ID
#:8610
8:13-CV-0561-DOC - 5/28/2015 - Item No. 9

3

1                        **I N D E X**

2      **PROCEEDINGS**                                      **PAGE**

3

4      Hearing on Motion for Preliminary Approval of        4
       Class action
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**DEBBIE GALE, U.S. COURT REPORTER**

|   |   |
|---|---|
| | 1 |

SANTA ANA, CALIFORNIA, MONDAY, SEPTEMBER 28, 2015

1  SANTA ANA, CALIFORNIA, MONDAY, SEPTEMBER 28, 2015

2  Item No. 9

3  (9:01 a.m.)

09:01  4  THE COURT:  Terry Boyd v. Bank of America.

09:01  5  MR. MANDEL:  Good morning, Your Honor.  Michael

6  Mandel for the defendants.

09:01  7  THE COURT:  Pleasure.  How are you today?

09:01  8  MR. HARRIS:  Good morning, Your Honor.  Wilmer

9  Harris for plaintiffs.

09:01  10  THE COURT:  Pleasure.

09:01  11  MR. SCHWARTZ:  Your Honor, Bryan Schwartz for

12  plaintiffs.

09:01  13  MR. SEPLOW:  I'm Michael Seplow for plaintiffs.

14  Good morning, Your Honor.

09:01  15  THE COURT:  Good morning.  How are all of you

16  today?

09:01  17  In Case No. 13-0561, before this Court is the

18  unopposed Motion for Preliminary Approval of Class Action

19  Settlement.

09:01  20  Plaintiff's are seeking preliminary approval for

21  $36 million in a settlement between Staff Appraiser

22  Plaintiffs and Defendants Bank of America Corporation,

23  LandSafe Inc., and LandSafe Appraisal Services, and also to

24  name Kurtzman Carson Consultants as the "class"

25  administrator; to authorize the mailing of notices to the

DEBBIE GALE, U.S. COURT REPORTER

```
09:02
09:02
09:03
09:03
09:03
09:03
```

 1  Staff Appraiser, California Class, and the nationwide

 2  Collective Class, and to schedule a final approval date.

 3         This case concerns allegations that defendants

 4  misclassified residential real estate appraisers as exempt

 5  from overtime and failed to provide meal breaks and rest

 6  breaks, resulting in lost wages for the class members.

 7         In April, this Court held a hearing on the parties'

 8  cross-motions for summary judgment; and in May denied

 9  defendants' motion and granted plaintiffs' motion.

10  Defendants filed a motion for decertification and

11  interlocutory appeal.  Prior to ruling on those matters, the

12  parties filed a notice of settlement with the Court.

13         On August 24, 2015, plaintiffs' filed the Unopposed

14  Motion for Preliminary Approval of a Class Action

15  Settlement.  The settlement provides as follows:

16         First, a total non-reversionary settlement of

17  $36 million, with a one-third set-aside for attorney's fees;

18  not more than $200,000 for litigation costs; enhancements of

19  $25,000 for each named plaintiff, $2,000 for each deponent,

20  and $,1000 for each class member that responded to discovery

21  requests; a payment of $75,000 to California's Workers --

22  or, California's Labor Workforce Development Agency and the

23  PAGA claims; and the claims administrator's charges to total

24  no more than $18,000.

25         This leaves $23,556,000 as the net settlement

6

```
 1    amount.  For the class size of 365 members, this leaves
 2    approximately $65,000 per class member to be allocated based
 3    on the number of appraisals conducted.  This is around
 4    33 percent of the total potential recovery.
 5         Preliminarily, this Court believes that this is a
 6    favorable settlement, considering the risk of
 7    decertification and potential delays on appeal.
 8         The class notice adequately explains the purpose of
 9    the class notice, and describes the litigation, the terms of
10    the settlement, and each class member's options with regard
11    to participating in the settlement.  The Class Notice
12    provides information regarding the consequences of doing
13    nothing, the final approval hearing, and how class members
14    can obtain additional information, object, or opt out.
15    Thus, the Court finds that notice and opt-out procedures
16    seem fair.  The class is a manageable size, and it appears
17    that everyone should be able to be contacted effectively
18    based on the procedures in the notice.
19         Based upon the information in the motion,
20    declarations, and the Court's long history with this
21    litigation, I'm tentatively satisfied that the settlement
22    was non-collusive.
23         And also, released claims for class members include
24    all claims alleged in the lawsuit, and named plaintiffs are
25    signing a general release.
```

09:04 (line 5)
09:04 (line 8)
09:05 (line 19)
09:05 (line 23)

09:05   1      Now, I want to make certain and find out today by

2  asking if there's any members present in court who object to

3  this?

09:05   4      All right.  Hearing none, I've considered the

5  relevant factors, and it appears that this settlement is

6  appropriate for preliminary approval.  The settlement

7  initially appears fair, adequate and reasonable.

09:05   8      I'm prepared simply to stamp -- or sign the

9  proposed order, unless there's something else that you wish

10  to call to my attention.

09:05  11      And I will say that very rarely, if ever, can I

12  remember, in the last 17 years, going above 30 percent.  The

13  benchmark's 25 percent.  <u>In this case, with the complexity</u>

14  <u>of this lawsuit, I think that the 33 percent is called for.</u>

15  <u>And I'll make that record now so that, at the time of final</u>

16  <u>approval, if somebody's objecting, they know the Court's</u>

17  <u>tentative thought and can come in.</u>

09:06  18      Now, Counsel, is there anything further on behalf

19  of the plaintiff?

09:06  20      MR. SCHWARTZ:  Thank you, Your Honor.  Just to set

21  a date.

09:06  22      THE COURT:  And what date's convenient for you

23  gentlemen?  I'm here all the time -- well, most of the time.

09:06  24      MR. SCHWARTZ:  Your Honor, for the final approval

25  motion, we would set January 11, 2016 -- I'm sorry -- for it

Case 8:13-cv-00561-DOC-JPR  Document 380-1  Filed 11/23/15  Page 79 of 185  Page ID
#:8645
8:13-CV-0561-DOC   9/28/2015 - Item No. 9

8

| | | |
|---|---|---|
| | 1 | to be heard on that date. |
| 09:06 | 2 | THE COURT:  January 11th, 2016 is fine. |
| 09:06 | 3 | MR. SCHWARTZ:  Thank you. |
| 09:06 | 4 | And if for some reason the data exchange takes |
| | 5 | longer, then, obviously, we'll ask for -- |
| 09:06 | 6 | THE COURT:  Now, Counsel, I may -- I may be |
| | 7 | putting on a counter-terrorism program in Indonesia that |
| | 8 | week.  I'm just not sure.  But that week was tossed out to |
| | 9 | me last week, from memory.  I think it starts January 12th. |
| 09:07 | 10 | So, with your permission, let's set it on that |
| | 11 | date; but I may have to change that date, depending upon |
| | 12 | communications with the State Department.  Okay?  And it may |
| | 13 | be a little bit earlier. |
| 09:07 | 14 | MR. SCHWARTZ:  Thank you, Your Honor. |
| 09:07 | 15 | THE COURT:  Maybe a Thursday or Friday before I |
| | 16 | leave. |
| 09:07 | 17 | MR. SCHWARTZ:  Thank you. |
| 09:07 | 18 | And then we'll file our final approval papers by -- |
| | 19 | well, let's see.  I'm sorry.  We don't have to put that in |
| | 20 | the order.  But file our fee motion by November 23rd to |
| | 21 | ensure that it gets in before the end of the opt-out period. |
| 09:07 | 22 | THE COURT:  Okay. |
| 09:07 | 23 | Anything further on behalf of plaintiffs? |
| 09:07 | 24 | MR. SCHWARTZ:  No, Your Honor. |
| 09:07 | 25 | THE COURT:  On behalf of the defense? |

**DEBBIE GALE, U.S. COURT REPORTER**

8:13-CV-0561-DOC 3/28/2015 - Item No. 9

9

| 09:07 | 1 | MR. MANDEL:  No, Your Honor. |
| 09:07 | 2 | THE COURT:  Pleasure visiting with all of you. |
| | 3 | It's been quite a case by the way.  Very, very interesting. |
| 09:07 | 4 | Thank you very much. |
| 09:07 | 5 | MR. MANDEL:  Most interesting case on your docket, |
| | 6 | Your Honor. |
| 09:07 | 7 | *(Laughter in the courtroom.)* |
| 09:07 | 8 | *(Proceedings adjourned at 9:07 a.m.)* |
| 09:07 | 9 | -oOo- |
| 09:07 | 10 | |
| | 11 | |
| | 12 | |
| | 13 | |
| | 14 | |
| | 15 | |
| | 16 | |
| | 17 | |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

**DEBBIE GALE, U.S. COURT REPORTER**

Case 8:13-cv-00561-DOC-JPR  Document 380-1  Filed 11/23/15  Page 81 of 185  Page ID
#:8617
8:13-CV-0561-DOC - 9/28/2015 - Item No. 9

10

```
09:07   1                          -oOo-

09:07   2

09:07   3                        CERTIFICATE

09:07   4

09:07   5        I hereby certify that pursuant to Section 753,

        6   Title 28, United States Code, the foregoing is a true and

        7   correct transcript of the stenographically reported

        8   proceedings held in the above-entitled matter and that the

        9   transcript page format is in conformance with the

       10   regulations of the Judicial Conference of the United States.

09:07  11

09:07  12   Date:  October 5, 2015

09:07  13

09:07  14
09:07                          /s/ Debbie Gale
09:07  15                   _____
09:07                       DEBBIE GALE, U.S. COURT REPORTER
09:07  16                   CSR NO. 9472, RPR, CCRR

09:07  17

       18

       19

       20

       21

       22

       23

       24

       25
```

# EXHIBIT C

SSHH Billing

*Boyd v. Bank of America, et al.*

**ALL BILLING  02/26/2014 throught 11/19/15**

| Name | Title | Year of Law School Graduations | Hours | Billing Rate | Lodestar |
|---|---|---|---|---|---|
| Benjamin Schonbrun | Partner | 1983 | 89.8 | $790 | $70,942.00 |
| Wilmer J. Harris | Partner | 1990 | 487.4 | $760 | $370,424.00 |
| Michael Seplow | Partner | 1990 | 525.6 | $760 | $399,456.00 |
| Aidan McGlaze | Associate | 2007 | 405.2 | $530 | $214,756.00 |
| Shayla R. Myers | Associate | 2008 | 130.9 | $500 | $65,450.00 |
| Isabel M. Daniels | Associate | 2009 | 171.5 | $480 | $82,320.00 |
| Raya Marinova | Associate | 2012 | 218.2 | $420 | $91,644.00 |
| Kari Haugen | Senior Contract Attorney | 1988 | 56.9 | $760 | $43,244.00 |
| Sarah Meyabadi | Litigation Support Specialist | 2008 | 29.42 | $275 | $8,090.50 |
| Shahane Martirosyan | Contract Attorney | 2013 | 147.6 | $440 | $64,944.00 |
| Kristina Akopyan | Certified Paralegal | | 181.5 | $200 | $36,300.00 |
| William Clifton | Certified Paralegal | | 12.7 | $200 | $2,540.00 |
| Emma Huang | Paralegal | | 25.67 | $200 | $5,134.00 |
| Sarah Bennet | Paralegal | | 6.5 | $200 | $1,300.00 |
| Kai Valenzuela | Paralegal | | 71.2 | $200 | $14,240.00 |
| **Total for Staff Appraisers Only** | | | 2470.29 | | **$1,399,842.50** |

50% of Lodestar through 02/25/2014 [50% of $639,311.25]             $        319,655.63

**TOTAL LODESTAR**                                        **$1,719,498.13**

# EXHIBIT D

**Schonbrun Seplow Harris & Hoffman LLP**
723 Ocean Front Walk
Venice, CA  90291
Ph: 310-396-0731 Fax: 310-399-7040

---

Boyd et al. v. Bank of America

November 22, 2015

Cost Summary:

|  | **Amount** |
|---|---|
| Copy, Scan and Postage Charges: | |
| 9/30/2013 Postage charges for September 2013. | 83.72 |
| 10/8/2013 Pasadena Office Copy Charge; 47 pages @ $.25 per page. | 11.75 |
| 10/28/2013 Pasadena Postage charge. | 5.05 |
| 10/29/2013 Pasadena Postage charge. | 20.24 |
| 10/31/2013 Pasadena Office Scan Charges. | 455.00 |
| Pasadena Office Copy Charge. | 81.50 |
| 12/27/2013 Pasadena Postage charge. | 0.46 |
| 1/28/2014 Pasadena Office Scan Charges. | 46.50 |
| 3/31/2014 Postage charges for March 2014. | 1.17 |
| 4/11/2014 Pasadena Postage charge. | 1.44 |
| 4/30/2014 Postage charges for April 2014. | 0.48 |
| 6/10/2014 Venice Office Copy Charges through June 10,  2014; 4,358 pages @ $.25 per page. | 1,089.50 |
| Venice Office Scan Charges through June 10, 2014; 1,216 pages @ $.15 per page. | 182.40 |
| 6/20/2014 Venice Office Copy Charges June 11,  2014 through June 20, 2014; 721 pages @ $.25 per page. | 180.25 |
| 8/7/2014 Pasadena Postage charge. | 0.48 |
| 8/31/2014 Postage charges for August 2014. | 0.98 |
| 9/8/2014 Venice Office Copy Charges  June 21, 2014 through September 8, 2014; 323 pages @ $.25 per page. | 80.75 |

| | Amount |
|---|---|
| 9/8/2014 Venice Office Scan Charges  June 10, 2014 through September 8, 2014; 20 pages @ $.15 per page. | 3.00 |
| Pasadena Office Scan Charges. | 205.25 |
| Pasadena Office Copy Charges. | 6.00 |
| 1/22/2015 Postage for Sending Discovery Out to Class Members. | 102.60 |
| 1/31/2015 Postage charges for January 2015. | 0.69 |
| 2/10/2015 Pasadena Postage charge. | 4.32 |
| 3/2/2015 Pasadena Postage charge. | 11.90 |
| 3/27/2015 Pasadena Postage charge. | 2.03 |
| 3/30/2015 Pasadena Office Scan Charges. | 546.60 |
| Pasadena Office Copy Charge. | 72.25 |
| 3/31/2015 Postage charges for March 2015. | 12.63 |
| 5/12/2015 Pasadena Postage charge. | 1.82 |
| 5/28/2015 Pasadena Postage charge. | 0.69 |
| 5/31/2015 Postage charges for May 2015. | 17.54 |
| 6/4/2015 Pasadena Postage charge. | 0.71 |
| 6/30/2015 Postage charges for June 2015. | 2.83 |
| Pasadena Postage charge. | 1.20 |
| 7/10/2015 Venice Office Copy Charges  September 9, 2014 through July 10, 2015; 5018 pages @ $.25 per page. | 1,254.50 |
| Venice Office Scan Charges  September 9, 2014 through July 10, 2015; 586 pages @ $.15 per page. | 87.90 |
| 7/31/2015 Postage charges for July 2015. | 23.07 |
| 8/13/2015 Venice Office Copy Charges  July 11, 2015 through August 13, 2015; 3254 pages @ $.25 per page. | 813.50 |
| 8/14/2015 Pasadena Office Copy Charge. | 146.25 |
| 9/18/2015 Pasadena Postage charge. | 6.10 |

|  | | **Amount** |
|---|---|---|
| 9/30/2015 | Postage charges for September 2015. | 17.90 |
| 11/17/2015 | Venice Office Copy Charges  August 13, 2015 through November 17, 2015; 410 pages @ $.25 per page. | 102.50 |
|  | Pasadena Office Copy Charge. | 41.25 |
|  | Total: | [  5,726.70] |
|  | Court Filing Fees: | |
| 1/15/2014 | Motion for Class Certification Filing Fee. | 25.95 |
|  | Total: | [    25.95] |
|  | Court Reporters- Network Deposition Liens: | |
| 10/22/2013 | Network Deposition Services, Inc.  Invoice No.: A1310618;Deposition of Kenneth Nicholson, volume 1; Paid on December 11, 2014. | 3,750.25 |
| 10/23/2013 | Network Deposition Services, Inc.  Invoice No.: A1310611;Deposition of Kenneth Nicholson, volume 2; Paid on December 11, 2014. | 3,830.60 |
|  | Total: | [  7,580.85] |
|  | Court Reporters-Veritext Liens: | |
| 4/30/2014 | Veritext Charges for Deposition of Medina; Invoice No.: CS2021351; Paid on July 3, 2014. | 771.45 |
|  | Veritext Charges for Deposition of Parks; Invoice No.: CS2021352; Paid on July 3, 2014. | 1,235.80 |
| 6/9/2015 | Veritext Legal Solutions Inc. Invoice No.: CS2340426; Certified Transcript of G. Walsh and K. Williams; On Lien. | 953.30 |
|  | Veritext Legal Solutions Inc. Invoice No.: CS2340464; Certified Transcript of L. Zanko; On Lien. | 625.50 |
|  | Total: | [  3,586.05] |
|  | Expert Costs- Econ One: | |
| 1/23/2015 | Expert Retainer Paid to Econ One. | 1,500.00 |
| 5/13/2015 | Payment to Econ One. | 5,000.00 |

|  | __Amount__ |
|---|---|
| 6/5/2015 Payment to Econ One. | 5,000.00 |
| 7/6/2015 Payment to Econ One. | 5,000.00 |
| 8/10/2015 Payment to Econ One. | 5,000.00 |
| 9/15/2015 Payment to Econ One. | 5,000.00 |
| 10/6/2015 Payment to Econ One. | 5,000.00 |
| 10/15/2015 Payment to Econ One. | 5,000.00 |
| 11/16/2015 Payment to Econ One. | 10,000.00 |
| 11/17/2015 Outstanding Charges Owed to Econ One [January 2015 Statement: $10,138.50, February 2015: $1,647.50; March 2015: $3,816.00; April 2015 Statement: $3,075.00,  May 2015 Statement: $9,139.50; June 2015 Statement: $19,494.50; July 2015 Statement: $37,947.20; August Statement: $9,867.30; September Charges: $427.00; October Estimated Charges: $7,389.00. | 56,440.50 |

|  | |
|---|---|
| Total: | [ 102,940.50] |

### Expert Costs- Russell Research:

|  | |
|---|---|
| 6/22/2015 Expert Fees to Russell Research, Pre-Wave Research. | 5,100.00 |
| 8/3/2015 Expert Fees to Russell Research, Next Phase of Research. | 7,600.00 |
| Total: | [ 12,700.00] |

### Mediation Fees:

|  | |
|---|---|
| 10/27/2013 Mediation Fees Paid to David A. Rotman. | 9,250.00 |
| 1/10/2014 Mediation Fees Paid to Mark S. Rudy; January 29th, 2014 Mediation. | 5,000.00 |
| 6/19/2015 Mediation Fees Paid to Mark S. Rudy; July 17th, 2015 Mediation. | 5,500.00 |
| Total: | [ 19,750.00] |

### Messenger and Attorney Service Costs:

|  | |
|---|---|
| 6/27/2013 FedEx charges in connection with documents to Hon. D. O'Carter. | 15.97 |
| 7/9/2013 USA Express process service charges in connection with USDC Filing. | 95.00 |

| | **Amount** |
|---|---|
| 8/5/2013 FedEx charges in connection with documents to M. Kane. | 14.13 |
| 8/13/2013 USA Express process service charges in connection with USDC Filing. | 15.63 |
| 8/14/2013 FedEx charges in connection with documents to Hon. D. O'Carter. | 15.90 |
| 10/17/2013 Attorney Service Fees: Notice of Change of Firm Name. | 25.95 |
| 10/22/2013 FedEx charges in connection with documents to Hon. D. O'Carter. | 16.19 |
| 12/5/2013 FedEx charges in connection with documents to V. Galaz. | 25.05 |
| FedEx charges in connection with documents to T. Boyd. | 15.46 |
| 12/23/2013 FedEx charges in connection with documents to D. O'Carter. | 16.04 |
| 1/14/2014 USA Express process service charges in connection with USDC Filing. | 95.00 |
| 2/19/2014 FedEx charges in connection with documents from Jeff Mandel to Venice Office. | 12.95 |
| 3/19/2014 FedEx charges in connection with documents from Ricky Leung to Venice Office. | 21.37 |
| 4/2/2014 FedEx charges in connection with documents from Ricky Leung to Venice Office. | 17.81 |
| 5/1/2014 USA Express process service charges in connection with USDC Filing. | 110.00 |
| 5/22/2014 FedEx charges in connection with documents to Hon. D. O'Carter. | 16.60 |
| 1/30/2015 First Legal Management Services, Inc. charges in connection with delivery to McGuireWoods LLP. | 44.80 |
| 2/25/2015 FedEx charges in connection with documents from Pasadena Office to Venice. | 10.14 |
| 3/11/2015 FedEx charges in connection with documents from Martin Wolters to Venice Office. | 23.35 |
| 5/21/2015 FedEx charges in connection with documents to Hon. D. O'Carter. | 16.04 |
| 5/29/2015 FedEx charges in connection with documents to Hon. D. O'Carter. | 16.04 |
| 6/4/2015 USA Express process service charges in connection with Attempted Service of Subpoena on Wesley McDaniel. | 250.00 |
| 6/16/2015 FedEx charges in connection with documents to Hon. D. O'Carter. | 16.12 |
| 7/1/2015 FedEx charges in connection with documents to Hon. D. O'Carter. | 16.12 |
| USA Express process service charges in connection with Attempted Service of Subpoena on Wesley McDaniel. | 250.00 |

|  | Amount |
|---|---|
| 7/6/2015 USA Express process service charges in connection with Service of Subpoena on Wesley McDaniel. | 500.00 |
| 7/13/2015 FedEx charges in connection with documents to Hon. D. O'Carter. | 16.28 |
| 7/15/2015 FedEx charges in connection with Mediation documents to Wilmer Harris in NJ. | 107.57 |
| 8/25/2015 USA Express process service charges in connection with Santa Ana Court Filing. | 95.00 |
| 9/1/2015 USA Express process service charges in connection with USDC Filing. | 95.00 |
| 9/16/2015 USA Express process service charges in connection with USDC Filing. | 41.67 |
| 9/28/2015 FedEx charges in connection with documents to Debbie Gale, US District Court. | 15.01 |
| 10/9/2015 FedEx charges in connection with documents to Hon. D. O'Carter. | 15.81 |
| 10/26/2015 FedEx charges in connection with documents to Hon. D. O'Carter. | 15.81 |

Total:                                                                                                    [    2,073.81]

Miscellaneous Costs:

| | |
|---|---|
| 6/30/2013 Pacer Service Center Records Retrieval Fee; 2nd Quarter 2013. | 17.10 |
| 9/25/2013 Working Meal, WH, BS and AM. | 53.00 |
| 9/30/2013 Pacer Service Center Records Retrieval Fee; 3rd Quarter 2013. | 97.80 |
| 10/7/2013 Snacks for Boyd Deposition. | 33.73 |
| 12/31/2013 Pacer Service Center Records Retrieval Fee. | 28.80 |
| 2/3/2014 Payment to Tina M. Park for GIS Mapping. | 225.00 |
| 3/13/2014 Mileage Reimbursement Paid to Plaintiff, Jeff Mandel for travel to West L.A. for Deposition. | 161.28 |
| Parking Reimbursement Paid to J. Mandel; Deposition. | 32.00 |
| Jeff Mandel Hotel Charges. | 219.18 |
| Working Meal at Jeff Mandel Deposition. | 10.85 |
| 3/25/2014 Meal Reimbursement Paid to A. McGlaze; Leung Deposition. | 10.85 |
| 3/31/2014 Pacer Service Center Records Retrieval Fee for 1st Quarter 2014. | 8.80 |

| | Amount |
|---|---|
| 5/13/2014 Payment to Kurtzman Carson Consultants LLC for Damage Calculation Preparation. | 1,500.00 |
| 6/2/2014 Kurtzman Carson Consultants LLC Class Notice Charges. | 1,342.00 |
| 6/22/2014 Team Working Meal Reimbursement Paid to M.Seplow. | 118.82 |
| 7/29/2014 Meal Reimbursement Paid to W. Harris; Lunch with B. Schwartz Re: Strategy. | 65.68 |
| 11/17/2014 Breakfast for Boyd Team. | 30.00 |
| 4/20/2015 Meal Reimbursement Paid to W. Harris; Working lunch at Hearing. | 57.00 |
| 7/8/2015 Epiq Systems Invoice No.: 90118218. | 2,019.85 |
| 8/13/2015 Epiq Systems Invoice No.: 114691 | 740.30 |
| 8/14/2015 Payment to Alameda County Court for Downloading Order. | 42.50 |
| 9/28/2015 Hearing Transcript Fee Paid to Debbie Gale, CSR, CCRR. | 58.20 |
| 10/8/2015 Hearing Transcript Fee Paid to Debbie Gale, CSR, CCRR; Outstanding dues on 9/28 Transcript. | 17.46 |
| 11/5/2015 Law360 Access Fee. | 354.00 |
| Total: | [  7,244.20] |

Parking and Mileage Costs:

| | |
|---|---|
| 9/25/2013 Parking Reimbursement Paid to W. Harris for Hearing on FLSA & Status Conference. | 14.00 |
| 10/14/2013 Mileage Reimbursement Paid to A.McGlaze; Deposition Preparation Meeting. | 27.12 |
| 10/29/2013 Parking Reimbursement Paid to M. Seplow; Deposition Preparation. | 10.00 |
| Parking Reimbursement Paid to A. McGlaze; Deposition Preparation. | 10.00 |
| Mileage Reimbursement Paid to S. Myers. | 28.14 |
| 10/31/2013 Mileage Reimbursement Paid to S. Myers. | 24.30 |
| Parking Reimbursement Paid to S. Myers, Parking for S.Myers and Client. | 64.00 |
| 3/8/2014 Mileage Reimbursement Paid to S. Myers; Deposition of M. Petris. | 42.84 |
| 3/10/2014 Mileage Reimbursement Paid to B. Schonbrun; Travel to Palm Springs for Deposition. | 56.00 |
| 3/13/2014 Parking Reimbursement Paid to A. McGlaze for Jeff Mandel Deposition. | 13.00 |

|  | | __Amount__ |
|---|---|---|
| 3/13/2014 Mileage Reimbursement Paid to A.McGlaze for travel to Jeff Mandel Deposition in Century City. | | 7.34 |
| 3/15/2014 Mileage Reimbursement Paid to S. Myers; Deposition of M. Petris. | | 43.56 |
| Mileage Reimbursement Paid to S. Myers; Deposition of M. Petris. | | 43.56 |
| 3/16/2014 Parking Reimbursement Paid to B. Schonbrun; Mandel Desposition. | | 32.00 |
| 3/25/2014 Parking Reimbursement Paid to A. McGlaze; Leung Deposition. | | 13.00 |
| Mileage Reimbursement Paid to A. McGlaze; Leung Deposition. | | 7.34 |
| Parking Reimbursement Paid to B.Schonbrun. | | 26.00 |
| 3/26/2014 Parking Reimbursement Paid to Ricky Leung for deposition. | | 30.80 |
| 6/23/2014 Parking Reimbursement Paid to M.Seplow. | | 4.00 |
| 11/17/2014 Parking Reimbursement Paid to M.Seplow. | | 4.00 |
| 4/20/2015 Parking Reimbursement Paid to W.Harris. | | 5.00 |
| 9/28/2015 Parking Reimbursement Paid to W.Harris. | | 2.00 |
| 10/28/2015 Parking Reimbursement Paid to M.Seplow. | | 3.00 |
| Total: | | [      511.00] |

Travel Costs: _____

| | | |
|---|---|---|
| 10/23/2013 Flight to Oakland for Mediation; M. Seplow. | | 255.60 |
| Flight to San Francisco for Mediation; W. Harris. | | 152.80 |
| 10/24/2013 Working Lunch, Deposition Preparation. | | 35.12 |
| 11/4/2013 Travel Costs; Skycap Travel to SF. | | 5.00 |
| 11/5/2013 Hotel Charges in SF for Mediation; M. Seplow. | | 283.04 |
| Travel Costs; Bart Travel to SF. | | 3.15 |
| Travel Costs; Business Meals in SF. | | 269.51 |
| Hotel Charges in San Francisco for Mediation; W. Harris. | | 283.04 |
| Cabfare in San Francisco for Mediation; W. Harris. | | 26.00 |

| | | Amount |
|---|---|---:|
| 11/6/2013 | Hotel Charges in San Francisco for Mediation; B. Schonbrun. | 283.04 |
| | Taxi Charges in San Francisco for Mediation; B. Schonbrun. | 142.00 |
| 1/28/2014 | Travel Costs Paid to W. Harris; Mediation. | 589.01 |
| | Hotel Charges in San Francisco for Mediation; B. Schonbrun. | 168.33 |
| | Cabfare Charges in San Francisco for Mediation; B. Schonbrun. | 114.35 |
| | Team working Meal in San Francisco for Mediation. | 278.85 |
| | Travel Costs; Skycap Travel to SF; M. Seplow. | 5.00 |
| | Hotel Charges in San Francisco for Mediation; M. Seplow. | 168.33 |
| | Team working Meal in San Francisco for Mediation. | 18.00 |
| | Airport Parking, Travel to SF for Mediation; M. Seplow. | 60.00 |
| | Flight, Travel to SF for Mediation; M. Seplow. | 216.00 |
| 6/18/2015 | Hotel Reimbursement to Benjamin Schonbrun; Mediation in San Francisco. | 358.59 |
| 7/17/2015 | Travel Reimbursement to Wilmer Harris; Mediation in San Francisco. | 309.94 |
| | Travel Expense Reimbursement to M. Seplow; April Hearing and July Mediation. | 2,393.34 |
| 9/28/2015 | Hotel Reimbursement to Michael Seplow; MPA Hearing. | 179.70 |
| | Working Meal  MPA Hearing. | 28.46 |
| | Working Meal  MPA Hearing. | 49.20 |
| | Hotel Reimbursement to Wilmer Harris; MPA Hearing. | 173.26 |
| | Total: | [   6,848.66] |

Westlaw Legal Research:

| | | |
|---|---|---:|
| 6/30/2013 | Westlaw Legal Research Charges for June 2013. | 50.00 |
| 8/31/2013 | Westlaw Legal Research Charges for August 2013. | 50.00 |
| 9/30/2013 | Westlaw Legal Research Charges for September 2013. | 50.00 |
| 10/31/2013 | Westlaw Legal Research Charges for October 2013. | 50.00 |

|  | **Amount** |
|---|---|
| 11/30/2013 Westlaw Legal Research Charges for November 2013. | 50.00 |
| 12/31/2013 Westlaw Legal Research Charges for December 2013. | 50.00 |
| 1/27/2014 Westlaw Legal Research Charges for January 2014. | 50.00 |
| 1/31/2014 Westlaw Legal Research Charges for January 2014. | 50.00 |
| 3/31/2014 Westlaw Legal Research Charges for March 2014. | 50.00 |
| 4/30/2014 Westlaw Legal Research Charges for April 2014. | 50.00 |
| 5/31/2014 Westlaw Legal Research Charges for May 2014. | 50.00 |
| 6/30/2014 Westlaw Legal Research Charges for June 2014. | 50.00 |
| 7/31/2014 Westlaw Legal Research Charges for July 2014. | 50.00 |
| 8/31/2014 Westlaw Legal Research Charges for August 2014. | 50.00 |
| 9/30/2014 Westlaw Legal Research Charges for September 2014. | 50.00 |
| 10/31/2014 Westlaw Legal Research Charges for October 2014. | 50.00 |
| 11/30/2014 Westlaw Legal Research Charges for November 2014. | 2.03 |
| 12/31/2014 Westlaw Legal Research Charges for December 2014. | 50.00 |
| 1/31/2015 Westlaw Legal Research Charges for January 2015. | 26.02 |
| 2/28/2015 Westlaw Legal Research Charges for February 2015. | 50.00 |
| 3/31/2015 Westlaw Legal Research Charges for March 2015. | 50.00 |
| 5/31/2015 Westlaw Legal Research Charges for May 2015. | 50.00 |
| 6/30/2015 Westlaw Legal Research Charges for June 2015. | 50.00 |
| 7/31/2015 Westlaw Legal Research Charges for July 2015. | 50.00 |
| 8/31/2015 Westlaw Legal Research Charges for August 2015. | 50.00 |
| 9/30/2015 Westlaw Legal Research Charges for September 2015. | 50.00 |
| 10/31/2015 Westlaw Legal Research Charges for October 2015. | 50.00 |
| Total: | [   1,278.05] |

Page    11

| | **Amount** |
|---|---|
| | **$170,265.77** |
| Accounts receivable transactions | |
| 12/9/2014 Payment - Thank You | ($21,236.14) |
| **Total payments and adjustments** | **($21,236.14)** |
| | $149,029.63 |

# EXHIBIT E

NOTE: CHANGES HAVE BEEN
MADE TO THIS DOCUMENT

1

2                                                                        JS6

3

4

5

6

7                        UNITED STATES DISTRICT COURT

8              CENTRAL DISTRICT OF CENTRAL CALIFORNIA

9

10   JULIA A. RIEVE and CARRIE          Case No. 8:11-cv-01032-DOC-MLG
     GOLD, individuals, on behalf of
11   themselves and all persons         [PROPOSED] ORDER (1)
     similarly situated,                CONFIRMING CERTIFICATION
12                                       OF CLASS ACTION FOR
                     Plaintiffs,        SETTLEMENT PURPOSES; (2)
13                                       GRANTING FINAL APPROVAL
     vs.                                OF CLASS ACTION
14                                       SETTLEMENT; AND (3)
     COVENTRY HEALTH CARE, INC.         ENTERING FINAL JUDGMENT [243]
15   and COVENTRY HEALTH CARE
     WORKERS COMPENSATION, INC.,        Judge:    Hon. David O. Carter
16
                     Defendants.
17

18

19          This matter came on for hearing upon the Court's Order of March 10, 2014 (the

20   "Preliminary Approval Order") and following the Plaintiffs' unopposed motion for final approval

21   of the settlement in this action. Due and adequate notice having been given to the Class (as

22   defined below), and the Court having considered all papers filed and proceedings had herein and

23   all oral and written comments received regarding the proposed settlement, and having reviewed

24   the record in the above captioned matter, and good cause appearing,

25          IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

26

27

28

1.  The Court has jurisdiction over the subject matter of the above-captioned action (the "Action"), the Plaintiffs, Defendants Coventry Health Care, Inc. and Coventry Health Care Workers' Compensation, Inc. (together, "Defendants") and all members of the Class, which consists of all individuals employed by Coventry Health Care Workers' Compensation, Inc. ("CHC-WC") or alleged to be employed by Coventry Health Care, Inc. ("CHC") in whole or in part in California who worked as a Field Case Manager – Medical Workers' Compensation (""FCM") at any time during the period between April 11, 2007 and March 31, 2014 (collectively the "Class" or "Class Members").

2.  All terms herein shall have the same meaning as terms defined in the Stipulation, unless specifically provided otherwise herein.

3.  The Court grants final approval of the parties' Settlement on the terms set forth in the Stipulation.

4.  The Court finds that the distribution by first-class mail of the Notice of Proposed Class Action Settlement and Election Not to Participate in Settlement Form (the "Notice Materials," including Forms A and B thereto) constituted the best notice practicable under the circumstances to all persons within the definition of the Class and fully met the requirements of due process under the United States Constitution and applicable state law.  Based on evidence and other material submitted in conjunction with the Fairness Hearing, the actual notice to the Class was adequate.  These papers informed Class Members of the terms of the Settlement, their right to a share of the Settlement Payment, their right to object to the Settlement, their right to elect not to participate in the Settlement and pursue their own remedies, and their right to appear in person or by counsel at the Fairness Hearing and to be heard regarding approval of the Settlement.  Adequate periods of time were provided by each of these procedures, as set forth in the Court's preliminary approval order and the Stipulation.  No Class Members objected to the Settlement, and no individuals opted out of the Settlement.

5.  The Court finds, for settlement purposes only, that the Class satisfies the applicable standards for certification under Federal Rules 23(a) and 23(b)(3).  Accordingly, solely

[PROPOSED] ORDER (1) CONFIRMING
CERTIFICATION OF CLASS ACTION FOR
SETTLEMENT PURPOSES; (2) GRANTING FINAL
APPROVAL OF CLASS ACTION SETTLEMENT; AND
(3) ENTERING FINAL JUDGMENT

1   for purposes of effectuating this Settlement, this Court has certified a class of all Class Members,

2   as that term is defined above.  Because the Rule 23 class is being certified here for settlement

3   purposes only, the Court need not (and does not) address the manageability requirement of Rule

4   23(b)(3).  *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997).

5         6.      The Court approves the Settlement of the Action, and each of the releases and

6   other terms set forth in the Stipulation, as fair, just, reasonable and adequate as to the Class, the

7   Plaintiffs, and Defendants (collectively "Settling Parties").  The Settling Parties and the

8   Settlement Administrator are directed to perform in accordance with the terms set forth in the

9   Stipulation.

10        7.      Except as to any individual claim of those persons (identified in Attachment 1

11  hereto, if any, by employee identification number) who have validly and timely requested

12  exclusion from the Class, all of the claims asserted in the above-captioned matter are dismissed

13  with prejudice as to the Plaintiffs and the Class Members.  The Settling Parties are to bear their

14  own attorneys' fees and costs, except as otherwise provided in the Stipulation.

15        8.      By this Judgment, the Plaintiffs, on behalf of themselves and their heirs and

16  assigns, hereby release Coventry Health Care, Inc., Coventry Health Care Workers'

17  Compensation, Inc., and their past, present and future parents, subsidiaries (whether or not

18  wholly-owned), joint ventures, affiliates (including each such affiliate's past, present and future

19  parents, subsidiaries and joint ventures), divisions and subdivisions, and each of such entities'

20  current and former officers, directors, employees, partners, shareholders, agents, insurers,

21  successors, assigns, and legal representatives, all in their individual and corporate capacities

22  (collectively, the "Released Parties"), from any and all claims, damages, costs, obligations, causes

23  of action, actions, demands, rights, and liabilities of every kind, nature and description, whether

24  known or unknown, whether anticipated or unanticipated, arising on or before the date the Final

25  Approval Order becomes Final ("Plaintiffs' Released Claims").  The Plaintiffs' Released Claims

26  include, but are not limited to, those claims that were or could have been asserted in the Action,

27  including claims arising under the Fair Labor Standards Act; the California Working Hours Law;

28

[PROPOSED] ORDER (1) CONFIRMING
CERTIFICATION OF CLASS ACTION FOR
SETTLEMENT PURPOSES; (2) GRANTING FINAL
APPROVAL OF CLASS ACTION SETTLEMENT; AND
(3) ENTERING FINAL JUDGMENT

1   the California Payment of Wages Law; California Labor Code §§ 96 through 98.2 et seq., §§ 200

2   et seq. (including, but not limited to §§ 201, 202, 203, 204, 210, 218, 218.5, 218.6, 226(a), 226.3

3   and 226.7), §§ 300 et seq., §§ 400 et seq., §§ 500 et seq. (including but not limited to §§ 510, 512

4   and 558), § 1194 and §§ 1198-1199; the California Unfair Competition Act and, in particular, the

5   California Business & Professions Code §§ 17200 et seq.; the PAG Act, codified at California

6   Labor Code §§ 2698 et seq.; and California Code of Civil Procedure §1021.5;  all discrimination,

7   harassment and retaliation claims; all penalties that were sought or could have been sought in the

8   Action, liquidated damages, related tort and punitive damages, interest, attorneys' fees, litigation

9   costs, restitution, and declaratory or equitable relief.

10          9.      By this Judgment, each Class Member who has not validly and timely requested

11   exclusion from the Settlement by opting out (including the Plaintiffs), shall be deemed to have,

12   and by operation of the Judgment shall have, fully, finally, and forever released and discharged

13   the Released Parties from any and all claims, obligations, causes of action, actions, demands,

14   rights, and liabilities of every kind, nature and description, whether known or unknown, whether

15   anticipated or unanticipated, arising during the Class Period as stated in the Class Notice (the

16   period from April 11, 2007 through March 31, 2014), which: (a) were pled in the Action; and/or

17   or (b) could have been pled and which are based on any of the following: (i) alleged failure to pay

18   any time of overtime wages, (ii) alleged failure to pay minimum wages, (iii) alleged failure to

19   provide meal or rest periods, (iv) alleged failure to provide itemized or accurate wage statements,

20   (v) alleged failure to timely pay wages due, before or after the end of employment, (vi) any

21   statutory, constitutional, regulatory, contractual or common law claims for wages, damages,

22   litigation costs, unfair business practices, unfair competition (including, without limitation, claims

23   arising under California Bus. & Prof. Code sections 17200 et seq); and (c) includes any and all of

24   the following based on any of the matters released by the foregoing: penalties (including those

25   arising under PAGA), liquidated damages, punitive damages, interest, attorneys' fees, litigation

26   costs, restitution, and equitable relief (the "Participating Class Members' Released Claims").

27   Expressly excluded from this release for Class Members other than the Plaintiffs are all claims for

28

[PROPOSED] ORDER (1) CONFIRMING CERTIFICATION OF CLASS ACTION FOR SETTLEMENT PURPOSES; (2) GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND (3) ENTERING FINAL JUDGMENT

1    retaliation, discrimination, unemployment insurance, disability, workers' compensation, and

2    claims arising outside the Class Period.  In addition, each Class Member who has not validly and

3    timely requested exclusion from the Settlement by opting out (including the Plaintiffs), shall be

4    deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released

5    and discharged the Released Parties from any and all claims, obligations, causes of action,

6    actions, demands, rights, and liabilities, whether known or unknown, whether anticipated or

7    unanticipated, arising during the Class Period that were asserted or could have been asserted in

8    the action pursuant to the FLSA based any of the claims described above, and this release

9    includes any and all of the following penalties, liquidated damages, punitive damages, interest,

10    attorneys' fees, litigation costs, restitution, and equitable relief.  By cashing his or her Settlement

11    Share check, each Class Member will have confirmed that he or she consents to be a party-

12    plaintiff in the settled class/collective action and to release all of his or her FLSA claims against

13    the Releasees through the date the check is cashed.

14         10.    By this Judgment, Class Counsel hereby releases all claims, causes of action,

15    demands, damages, costs, rights, and liabilities of every nature and description for attorneys' fees,

16    costs, and expenses against the Released Parties arising from or related to this Action, the

17    Plaintiffs' Released Claims, or the Participating Class Members' Released Claims ("Class

18    Counsel's Released Claims").

19         11.    Neither the Stipulation nor the Settlement contained therein, nor any act performed

20    or document executed pursuant to or in furtherance of the Stipulation or the Settlement:  (i) is or

21    may be deemed to be or may be cited or used as an admission of, or evidence of, the validity of

22    any of the released claims described above, any wrongdoing or liability of Defendants or any of

23    the Released Parties, or whether class action certification is warranted in this Action or any other

24    proceeding or that decertification is not warranted in this Action or any other proceeding; or (ii) is

25    or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission

26    of Defendants or any of the Released Parties in any civil, criminal or administrative proceeding in

27    any court, administrative agency or other tribunal.  Defendants may file the Judgment from the

28

XXXXXXXXX [PROPOSED] ORDER (1) CONFIRMING
CERTIFICATION OF CLASS ACTION FOR
SETTLEMENT PURPOSES; (2) GRANTING FINAL
APPROVAL OF CLASS ACTION SETTLEMENT; AND
(3) ENTERING FINAL JUDGMENT

above-captioned matter in any other action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

12.     The Action is dismissed on the merits and with prejudice, permanently barring the Plaintiffs and Participating Class Members from prosecuting any of the Participating Class Members' Released Claims, permanently barring the Plaintiffs' from prosecuting any of the Plaintiffs' Released Claims, and permanently barring Class Counsel from prosecuting any of Class Counsel's Released Claims.

13.     The Court hereby orders the appointment of Carrie Gold as Class Representative for the Class for purposes of the Settlement.

14.     The Court hereby orders the appointment of Norman Blumenthal, Kyle Nordrehaug, and Aparajit Bhowmik of the law firm of Blumenthal, Nordrehaug, & Bhowmik as Class Counsel for the Class for purposes of Settlement and the releases and other obligations therein.

15.     Pursuant to the Stipulation, Defendants shall pay Three Million Dollars and No Cents ($3,000,000.00) to fund the Qualified Settlement Fund.  In addition, Defendants shall pay the employer's share of applicable payroll taxes on the Settlement Shares or Plaintiff Settlement Payment.  Defendants shall not be required to make any other payments in connection with the Settlement.

16.     The Court finds that the plan of allocation for the Qualified Settlement Fund set forth in the Stipulation is fair and reasonable and that distribution of the Qualified Settlement Fund shall be made in accordance with the terms outlined in the Stipulation, subject to the following:

[PROPOSED] ORDER (1) CONFIRMING
CERTIFICATION OF CLASS ACTION FOR
SETTLEMENT PURPOSES; (2) GRANTING FINAL
APPROVAL OF CLASS ACTION SETTLEMENT; AND
(3) ENTERING FINAL JUDGMENT

a.      The Court hereby awards to Class Counsel attorneys' fees of $1,000,000.00 and costs of $168,179.36.

b.      The Court hereby approves the payment of settlement administration costs in the amount of $20,000.00 to the Settlement Administrator, Gilardi & Co., for services rendered in connection with the Settlement.

c.      The Court hereby awards to the Carrie Gold an enhancement payment in the amount of $10,000 for her contributions to the Action and to the Estate of Julia Rieve a payment in the amount of $~~40,000~~ 20,000 for her contributions to the Action and to acknowledge that the Court granted summary judgment in Plaintiff Rieve's favor on her California law misclassification claim.

d.      The Court hereby approves the payment in the amount of $30,000.00 to the California Labor and Workforce Development Agency ("LWDA") for the Plaintiffs' Private Attorney General Act penalty claims.

e.      The Settlement Administrator is directed to make the foregoing payments to Class Counsel, the Settlement Administrator, the Plaintiffs, and the LWDA in accordance with the terms of the Stipulation.  These payments shall come out of the Qualified Settlement Fund. After deducting the foregoing, the remaining funds shall constitute the Net Qualified Settlement Fund ("Net QSF"), and the Settlement Administrator shall distribute the Net QSF to the Participating Class Members pursuant to the terms of the Stipulation.

17.     All checks sent to Participating Class Members that remain uncashed after one hundred and twenty (120) days, as well as all amounts allocated to Class Members who elect to opt-out of the Settlement, will revert to Defendants.

18.     This matter is hereby dismissed with prejudice.  The Court reserves and retains exclusive and continuing jurisdiction over the above-captioned matter, the Class Representative, the Class, Class Counsel, and Defendants for the purposes of supervising the implementation, effectuation, enforcement, construction, administration and interpretation of the Settlement and this Judgment.

[PROPOSED] ORDER (1) CONFIRMING
CERTIFICATION OF CLASS ACTION FOR
SETTLEMENT PURPOSES; (2) GRANTING FINAL
APPROVAL OF CLASS ACTION SETTLEMENT; AND
(3) ENTERING FINAL JUDGMENT

1    19.    This document shall constitute a judgment for purposes of Rule 58 of the Federal

2   Rules of Civil Procedure.

3        IT IS SO ORDERED.

4   August 8, 2014        _David O. Carter_____

5                         Hon. David O. Carter, U.S.D.J.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] ORDER (1) CONFIRMING
CERTIFICATION OF CLASS ACTION FOR
SETTLEMENT PURPOSES; (2) GRANTING FINAL
APPROVAL OF CLASS ACTION SETTLEMENT; AND
(3) ENTERING FINAL JUDGMENT

# EXHIBIT F

1

2

3

4

5

6

7

8

9

10

11

12

13                    UNITED STATES DISTRICT COURT

14                   NORTHERN DISTRICT OF CALIFORNIA

15

16  JASMIN GERLACH, and REGGIE            Case No.  C-05-0585-CW
    PLACE, on behalf of themselves and those
17  similarly situated,                    **ORDER GRANTING CLASS
                                           COUNSEL'S MOTION FOR
18              Plaintiffs,                 ATTORNEYS' FEES AND
                                           REIMBURSEMENT OF COSTS AND
19  vs.                                     EXPENSES**

20  WELLS FARGO & CO., WELLS FARGO
    BANK, N.A., AND WELLS FARGO
21  SERVICES COMPANY,

22              Defendants.

23  ────────────────────────────

24  WELLS FARGO BANK, N.A.,

25              Counterclaimant,           Date:   January 19, 2007
                                           Time:  10:00a.m.
26  vs.                                    Place:  Courtroom 2, 4th Floor
                                           **Hon. Claudia Wilken**
27  JASMIN GERLACH,

28              Counterdefendant.

[PROPOSED] ORDER GRANTING CLASS
COUNSEL'S MOTION FOR ATTORNEYS' FEES                     C 05-0585 CW
AND COSTS

1      WHEREAS, the Court having considered the Joint Stipulation of Settlement ("Settlement

2  Agreement"), and having preliminarily approved the same on October 6, 2006;

3      WHEREAS, the Court having entered an Order directing that notice be given to the

4  Classes, and notice having been individually mailed to the Classes, and the Court having

5  conducted a Fairness Hearing concerning the proposed settlement;

6      WHEREAS, the Court having entered final approval of this class action settlement;

7      WHEREAS, the Court having reviewed Class Counsel's Notice of Motion and Motion for

8  Award of Attorneys' Fees and Reimbursement of Costs and Expenses; Memorandum of Points

9  and Authorities in Support Thereof; and

10      WHEREAS, the Court having reviewed the entire record of this action, and good cause

11  appearing,

12      **IT IS HEREBY ORDERED:**

13      1.      To the extent defined in the Settlement Agreement, attached as Exhibit 1 to the

14  Order Granting Final Approval and incorporated herein by reference, the terms in this Order shall

15  have the meanings set forth therein.

16      2.      The Court has jurisdiction over the subject matter of this action, the Defendants,

17  and the Classes.

18      3.      Notice of the requested award of attorneys' fees and reimbursement of costs and

19  expenses was directed to Class members in a reasonable manner through first-class mailing to

20  their most recent know addresses, and complies with Rule 23(h)(1) of the Federal Rules of Civil

21  Procedure;

22      4.      Class members and any party from who payment is sought have been given the

23  opportunity to object in compliance with Fed. R. Civ. P. 23(h)(2);

24      5.      The amount of the reasonable attorneys' fees awarded to Class Counsel should be

25  based on the percentage of the common fund approach. *Blum v. Stenson*, 465 U.S. 886, 900 n.16

26  (1984).  An attorneys' fees award of $3,200,000 is hereby ordered based on this Circuit's

27  benchmark of 25 percent.  *See e.g., Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th

28  Cir. 1989); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990);

1    *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002). This award is based on attorneys'

2    fees awards issued in similar cases, the fact that the common fund of $12,800,000 was created for

3    the Class through the efforts of Class Counsel, and the fact that Class Counsel have litigated this

4    case despite having received no compensation for their efforts to date and despite having no

5    guarantees that they would be paid for their time or efforts;

6         6.     The requested award of attorneys' fees is reasonable and justified; and

7         7.     The $136,982.43 in litigation costs and expenses incurred by Class Counsel

8    through December 12, 2006 have been adequately documented and were reasonably incurred for

9    the benefit of the Class. The Court approves reimbursement of additional costs incurred between

10    December 12, 2006, and the date the settlement is finally administered, in the amount of up to

11    $41,517.57. The Court finds that reimbursement of costs and expenses in an amount not to

12    exceed $178,500 is reasonable and justified;

13    **THE COURT HEREBY ORDERS:**

14         Class Counsel are hereby awarded attorneys' fees in the amount of $3,200,000 and

15    reimbursement of costs and expenses in an amount not to exceed $178,500.

16

17         **IT IS SO ORDERED.**

18    Dated: January 19, 2007           _____

19                                      Claudia Wilken
                                         United States District Court Judge

20

21

22

23

24

25

26

27

28

# EXHIBIT G

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

| Case No. | CV 13–1754 DSF (AGRx) | Date | 12/4/14 |
|---|---|---|---|

| Title | Gerardo Mojica v. Compass Group USA, Inc., et al. |
|---|---|

| Present: The Honorable | DALE S. FISCHER, United States District Judge |
|---|---|

| Debra Plato | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**     (In Chambers) Order re Attorneys' Fees and Costs (Dkt. 43), Class Representative Enhancement, and Payment to Class Administrator

On November 19, 2014, this Court granted the parties' Motion for Final Approval of Joint Stipulation of Class Action Settlement and Release and Award of Administrative Expenses (Motion), but deferred its ruling on Class Counsel's request for attorneys' fees and costs, the request for a Class Representative Enhancement, and the request for costs and expenses incurred by ILYM Group, Inc.  (Dkt. No. 68.)  This Order addresses those issues.

Class actions involving wage and hour claims under California law have become ubiquitous.[1]  Though these cases sometimes proceed through the certification stage (with mixed results) and the rare case may proceed to trial, most cases settle – as this one did – before the class certification motion is heard.  Here, the parties' settlement agreement (Agreement) provides for a maximum common fund of $5,000,000 (Maximum Settlement Amount).  (Agreement ¶ 3.11.)  The remainder of this amount (Net Settlement Amount) after subtracting attorneys' fees – to be decided by the Court – and other costs and expenses, is "available" for distribution to the class.  (Id. ¶ 3.14.)  Class Counsel estimated the Net Settlement Amount to be $3,150,834.  (Mot. Final Approval at 10.)  But clearly neither Class Counsel nor defense counsel expected that anywhere near this

---

[1]  Contrary to Class Counsel's assertion, in the Court's experience, these cases are not particularly complex.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

amount would be paid. ILYM estimated its original fees and expenses based on being required to send out only 8,800 checks to Class Members. (Declaration of Lisa Mullins in Support of Unopposed Mot. for Final Approval (Mullins Decl.), Ex. F at 044.) The Class consisted of 22,573 Class Members. (Declaration of James R. Hawkins in Support of Unopposed Motion for Final Approval (Hawkins Decl.) ¶ 3(c).) Despite sending out four notices, only 3,471 Class Members submitted a claim. (Mullins Decl. ¶¶ 7-12, 17.) 1,243 notices were undeliverable. (Id. ¶ 16.) 182 Class Members submitted a timely Request for Exclusion from the Agreement. (Id. ¶ 19.) The Agreement provides that regardless of the claims received, Defendant "shall pay no less than twenty-five percent (25%) of the Net Settlement Amount to Valid Claimants." (Agreement ¶ 7.3.2.)

Concurrent with the Motion, Class Counsel requested an attorneys' fees award of $1,666,666.00, or 33% of the Maximum Settlement Amount, costs of $17,790[2] and a Class Representative Enhancement of $20,000. (Dkt. No. 54 at 25; Dkt. No. 66 ¶ 5.) Defendant agreed not to challenge these requests. (Agreement ¶ 10.1.) The Court must nonetheless review Class Counsel's request to ensure that "the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."[3] In re Bluetooth Headset Products Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011). This is true even where a reduced award would not benefit the class. See id. at 943. As more fully explained below, the Court is unable to conclude that an award of 33% of the Maximum Settlement Amount (that is, the common fund) is reasonable under the facts of this case. The Court instead awards Class Counsel a rather generous $1,000,000 in attorneys' fees, or 20% of the Maximum Settlement Amount. The Court also awards costs in the amount of $17,790 and a Class Representative Enhancement of $5,000.

First, the Court examined – as it must – whether the settlement was the product of collusion. See id at 946. Although some of the Churchill factors[4] favored approval (and none strongly pointed toward disapproval), other factors caused the Court significant concern. Among other things, Class Counsel was likely to receive a disproportionate

---

[2]  Class Counsel originally sought $19,791.28 in costs but subsequently reduced the request to $17,790. (Dkt. No. 54 at 25; Dkt. No. 66 ¶ 5.)

[3]  The Agreement provided that fees, costs, and the Class Representative Enhancement were subject to Court approval. (Agreement ¶¶ 6.1, 7.3.1.2, 10.1.)

[4]  See Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

distribution of the settlement fund (and is now requesting more than twice what the Class Members will receive); the parties negotiated a "clear sailing agreement"; and both (1) "unclaimed" Class Member payments and (2) requested fees and costs not awarded to Class Counsel revert to the Defendant. See id. at 947. Ultimately, for the reasons stated in the Motion, the Court concluded that the Agreement (including the provisions that the Court would determine the appropriate amount of fees, costs, and Class Representative Enhancement) was fair and reasonable. For example, there were significant problems with Plaintiffs' case, further litigation would be time-consuming and costly, significant formal and informal discovery had been exchanged, the matter was being vigorously defended, and the Agreement was negotiated over an extended period of time with two separate experienced mediators. While counsel achieved only limited success, the Court was confident, based on the history of the case, that the settlement achieved was the best that could be negotiated – at least without further pursuing class certification, a risky endeavor that might well have resulted in the putative class members receiving nothing.

Having approved the settlement, the Court then turned to the specific monetary requests. In common fund cases such as this, courts may employ either the lodestar method or the percentage-of-recovery method to determine a fair and reasonable attorneys' fees award. In re Bluetooth, 654 F.3d at 942. When applying the percentage method, "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." Id. Relevant circumstances include: (1) the degree of success achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and financial burden carried by plaintiffs; and (5) awards in similar cases. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002). A lodestar cross-check is often helpful when determining whether a particular percentage is reasonable. See id. at 1050. Although courts have discretion to apply either method, "their discretion must be exercised so as to achieve a reasonable result." In re Bluetooth, 654 F.3d at 942. Where 25% would yield a windfall for class counsel, "courts should adjust the benchmark percentage or employ the lodestar method instead." Id.

Class Counsel argues that the results were exceptional because Defendants will pay a maximum of $5,000,000, of which an estimated $3,150,834 will be "available" to participating Class Members. The Court concludes that, while the settlement was fair and adequate, it was by no means "exceptional." Although it is technically accurate that more

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

than $3,000,000 was "available" to Class Members, the monetary award that Class
Members will actually recover is far lower – a result expected by Class Counsel.  Claims
submitted by Class Members have totaled only approximately $736,286.12, (Mullins
Decl. ¶ 21), which constitutes only 23.37% of the estimated Net Settlement Amount.
Pursuant to the Agreement, Claimants will receive a total of $787,708.50 (25% of the
estimated Net Settlement Amount), because Defendant will be required to contribute the
difference.[5]  (Agreement ¶ 7.3.2.)  But even at this slightly higher figure, the actual
recovery is only 15.75% of the Maximum Settlement Amount, or 2.63% of the potential
recovery had the Class prevailed at trial.[6]  The amount obtained as a percentage of
potential recovery is admittedly improved, but still relatively low, when measured with
reference to the Net Settlement Amount (10.55%) or the Maximum Settlement Amount
(16.67%).  In pointing out the limitations of the actual recovery, the Court by no means
intends to discount the challenges involved in arriving at the Agreement.  Nonetheless, an
accurate and holistic determination concerning the degree of success achieved cannot
ignore the limited recovery that will actually reach the Class, compared to the estimated
recovery at trial.  The limited success achieved weighs against a 33% award.

The Court agrees with Class Counsel that the litigation posed several risks.  In
addition to losing at the certification stage or trial – risks inherent to any putative class
action – this case has been removed twice and would undoubtedly face additional
procedural and substantive hurdles in the absence of settlement.  The Court also
recognizes that Class Counsel ultimately achieved a fair and adequate settlement while
bearing the risk and cost of litigation by proceeding on a contingency basis.[7]

Having considered the foregoing factors, the Court concludes that 33% is not

---

[5]  The Court recognizes, of course, that it cannot calculate the fee award based on the actual
claims against the fund.  See Williams v. MGM-Pathe Commc'ns Co., 129 F.3d 1026 (9th Cir.
1997).  It must, however, consider the "degree of success that counsel has achieved in the
litigation." In re Bluetooth, 654 F.3d at 943.

[6]  Class Counsel estimated a $30,000,000 recovery if the Class prevailed at trial.  (Hawkins
Decl. ¶ 9(b).)

[7]  At the same time, the Court does not mean to overstate the cost and risk born by Class
Counsel, whose outlay of less than $20,000 in costs is far from extraordinary.  And counsel
with the level of experience touted by Class Counsel here, are well able to identify and pursue
only cases likely to result in recovery by way of settlement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

reasonable in this instance.  The relatively limited success achieved – whether measured by the Maximum Settlement Amount, the Net Settlement Amount, or the actual recovery – precludes such a large award.  Class Counsel's citation to Ninth Circuit cases involving contingency awards between 3% and 40% does not change this conclusion.  Beyond these general citations, Class Counsel fails to point to specific Ninth Circuit authority that compels a 33% award here.  Using the Ninth Circuit's 25% benchmark as a point of departure, the Court concludes that the particular facts of this case warrant a 20% award, totaling $1,000,000.  Twenty percent, though obviously less than the 25% benchmark, is reasonable in light of all the circumstances.

A lodestar cross-check supports the Court's reduction.  Accepting Class Counsel's lodestar calculation, an award totaling 33% of the Maximum Settlement Amount would require a 2.81 lodestar multiplier.  (Hawkins Decl. ¶ 23.)  Class Counsel has failed to justify any multiplier at all, much less a multiplier of nearly 3; and as previously stated, there was nothing extraordinary about this case or the settlement.  In any event, the Court finds Class Counsel's lodestar calculation to be excessive.  For example, there are block-billed entries of $2,090 on 7/31/12, $2,860 on 8/1/12, $2,970 on 8/6/12, $3,465 on 8/29/12, $2,915 on 8/30/12, $1,760 on 6/17/13, $1,540 on 9/19/13, and $2,530 on 9/24/13.  There were a significant number of additional block-billed entries.  The Court simply did not note those that were under $1,500 or for which the Court could make some reasonable evaluation of the time spent.  The block-billed entries are reduced by 20%, or $4,026.  See Welch v. Metro. Life Ins. Co., 480 F.3d 942, 948 (9th Cir. 2007).

Class Counsel billed at least $18,975 to respond to an initial set of discovery.  The Court deducts a modest $2,000 for this task.  At least $22,690 was billed with regard to the initial motion to remand, and another $7,425 was billed in connection with the second removal.[8]  The time spent on the former is excessive and it is not clear why any time was billed for the latter as the case was obviously removed by Defendants and it was Defendants' responsibility to respond to the Court's Order to Show Cause.  The Court reduces these amounts by $15,240.  Class Counsel billed $3,410 for what appears to be services rendered in connection with Class Representative Gerardo Mojica's personal

---

[8]  Class Counsel sought (successfully) to remand the case even though it now contends the amount at issue was $30,000,000.  A review of Class Counsel's time records suggests that the parties later worked together to achieve a successful removal.  Arguably, as the motion to remand did not benefit the Class, all fees incurred should be deducted from the lodestar.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

NLRB matter, $220 for "attention to filing of proof of service," $275 for dealing with an item that was sent to the wrong address, and more than $4,000 for preparing a complaint or amended complaint to be filed in San Bernardino. The Court deducts $7,890 for these tasks. Paralegals appear to perform such secretarial tasks as making travel arrangements. The Court deducts $70 for these tasks. Approximately $60,000 was billed to prepare for and attend the initial mediation, including the preparation of a mediation brief. More than an additional $50,000 was billed in connection with the second mediation. These calculations include some of the time spent analyzing data in connection with the preparation for the mediations. They do not include "follow up" tasks performed in connection with either mediation. The Court deducts $30,000 for these tasks.

    More than $11,000 was spent apparently attempting to have venue changed from Orange County. This does not include time spent on an apparent effort to dismiss the Orange County case. It appears the parties were attempting to escape Orange County Superior Court. Class Counsel has not explained why this was beneficial to the Class. The Court deducts $11,000. The Court declines to spend the time to evaluate the motion for preliminary approval or final approval as the evaluations previously listed dictate a revised lodestar of no more than $479,608, which, as mentioned above, is used only as a cross-check to confirm the reasonableness of the percentage method fee award.

    For the same reason, the Court need not calculate the appropriate hourly rate for Class Counsel and other timekeepers. The Court notes, however, that the rates requested by Class Counsel appear somewhat inflated when compared to the market rates as listed in the *2013 Real Rate Report Snapshot* (*Real Rate Report*), a CEB and TyMetrix publication that identifies attorney rates by location, experience, firm size, areas of expertise, and industry, as well as the specific practice areas, and is based on actual legal billing, matter information, and paid and processed invoices from more than 80 companies.[9] See St. Louis Police Ret. Sys. v. Severson, Case No. 12-CV-5086 YGR (N.D. Cal. August 11, 2014) (relying on the *Real Rate Report*). For instance, James R. Hawkins requests an hourly rate of $600/hr, yet the *Real Rate Report* indicates that Los Angeles "Employment and Labor" partners charge a median of $516.44/hr, and Los

---

[9] Class Counsel directs the Court to rates stated in the National Law Journal (NLJ) survey. However, the NLJ survey lists only the rates charged by the 350 largest national law firms – according to those firms' advertised rates. Class Counsel are not comparable to the firms listed in the NLJ survey, and advertised rates are not the appropriate standard.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

Angeles "Litigation" partners charge a median of $370/hr. (*Real Rate Report* at 40, 47.) Class Counsel's requested rate appears similarly inflated when viewed on the basis of firm size. According to the *Real Rate Report,* "Employment and Labor" partners working in firms with 1 to 50 attorneys – as does Hawkins – charge a median of $385.00/hr. (Id. at 69.) Nonetheless, for the sole purpose of calculating the cross-check, the Court utilizes Class Counsel's requested rates.

Given the foregoing reductions, the Court's award of $1,000,000 still carries a multiplier (2.09), but one that is far more modest and reasonable in light of the facts of this case. In addition, the Court recognizes that additional fees have been incurred since the filing of the motion.

The Court had required that further information be provided concerning some of Class Counsel's requested costs. Counsel provided the information for some of the items and withdrew its requests for others. Although some of the costs charged by Class Counsel appear excessive[10], the Court awards the revised requested amount of $17,790.

Mr. Mojica seeks an enhancement award of $20,000. For reasons similar to those expressed above, the Court concludes the amount is excessive. As previously indicated, although the settlement achieved was fair, it was far from "exceptional." In addition, Mr. Mojica's explanation of the time expended and tasks performed is rather vague. (See Dkt. No. 27 at ¶ 5.) He states that he has "participated a lot," and has "been informed" of the progress of the litigation. His most specific statement as to the time expended is that he "spent many hours working with my counsel in order to provide responses to Compass Group's long discovery requests." (Id. at ¶ 6.) A review of counsel's records, however, appears to indicate that Mr. Mojica spent – at most – four hours in such meetings. Mr. Mojica also states that acting as the Class Representative in this case may affect his future ability to get jobs in the food services industry. (Id. at ¶ 6.) But Mr. Mojica severed his employment in July 2010 and filed this lawsuit in October 2010. He has not reported any negative consequences in the four years since that time. Although Mr. Mojica has not

---

[10] The Court has generally seen copies charged at 20 or 25 cents per page, not 30 cents. The Court also suspects that serviceable three-ring binders can be found (certainly if bought in bulk) for less than $24 each. Nevertheless, the Court recognizes that Class Counsel has eliminated the entirety of costs for certain items though some portion of those costs would clearly be compensable. The Court therefore awards the full amount of the revised request.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

provided his hourly rate,[11] a $20,000 payment would likely compensate Mr. Mojica for hundreds of hours at his regular hourly rate. The Court finds that an Enhancement of $5,000 is more than adequate for his contribution in light of the time spent and the result achieved.

Finally, the Court finds that ILYM had adequately supported its fees and costs and therefore GRANTS the request for payment in the amount of $105,000.

It is so ORDERED.

---

[11] The average hourly rate of the Class members is $11.71. (Hawkins Decl. ¶ 9(b).)

# EXHIBIT H

THERESA M. TRABER (SBN 116305)
LAUREN TEUKOLSKY (SBN 211381)
Traber & Voorhees
128 N. Fair Oaks Avenue, Suite 204
Pasadena, California 91103
Telephone: (626) 585-9611
Facsimile: (626) 585-1400
tmt@tvlegal.com
lt@tvlegal.com

JS - 6

MICHAEL RUBIN (SBN 80618)
JONATHAN WEISSGLASS
(SBN 185008)
ERIC P. BROWN (SBN 284245)
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, California 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
mrubin@altber.com
jweissglass@altber.com
ebrown@altber.com

SANDRA C. MUÑOZ (SBN 190404)
Law Offices of Sandra C. Muñoz
5429 E. Beverly Blvd.
Los Angeles, CA 90022
Telephone: (323) 720-9400
Facsimile: (323) 720-9090
scm4law@att.net

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EVERARDO CARRILLO, *et al.*, for
themselves and all others similarly
situated and the general public,

Plaintiffs,

v.

SCHNEIDER LOGISTICS
TRANSLOADING AND
DISTRIBUTION, INC.; PREMIER
WAREHOUSING VENTURES, LLC;
ROGERS-PREMIER UNLOADING
SERVICES, LLC; IMPACT
LOGISTICS, INC., WAL-MART
STORES EAST, LP, and DOES 1-15,
*et al.*,

Defendants.

Case No. CV 11-8557 CAS (DTBx)

[PROPOSED] ORDER GRANTING
PLAINTIFFS' MOTION FOR
FINAL SETTLEMENT
APPROVAL WITH RESPECT TO
SCHNEIDER LOGISTICS
TRANSLOADING AND
DISTRIBUTION, INC. AND WAL-
MART STORES EAST, LP

This matter was heard by the Court on September 15, 2015, at 12:00 p.m., in Courtroom 5 of United States District Court, Central District of California, before the Honorable Christina A. Snyder, pursuant to the noticed Motions for Final Settlement Approval (Doc. 622) and for Attorney's Fees and Reimbursement of Expenses (Doc. 621). During that hearing, the parties sought final approval of a settlement between plaintiffs and defendants Schneider Logistics Transloading and Distribution, Inc. ("Schneider") and Wal-Mart Stores East, LP ("Walmart").

Before the Court were Plaintiffs' Motion for Final Settlement Approval (Doc. 622) and supporting documents; the Motion for Attorneys' Fees and Expenses (Doc. 621); the Motion for Preliminary Settlement Approval (Doc. 611); the settlement agreement with defendants Schneider and Walmart (Doc. 611-4); and this Court's Order Granting Plaintiffs' Motion for Preliminary Settlement Approval (Doc. 617), as well as the arguments of counsel presented at the hearing. After reviewing the materials submitted by the parties and considering the arguments presented at the hearing, for the reasons cited on the record and supplemented by this Order and for good cause shown, the Court HEREBY ORDERS AS FOLLOWS:

1.     This Court has jurisdiction over the subject matter of this litigation and all claims raised in this action and released in the settlement agreements, and has personal jurisdiction over defendants Schneider and Walmart and all class members. Specifically, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332.

2.     Pursuant to this Court's order granting preliminary approval dated May 4, 2015 (Doc. 617), the Notice of Settlement ("Notice") and Claim Form (collectively "Notice Packet") were mailed by first-class mail on May 22, 2015 to members of the class as defined in Paragraph 13, below, and identified through the administration of plaintiffs' previous Court-approved settlements with: (a) defendants Impact Logistics, Inc. ("Impact"); and (b) Premier Warehousing Ventures, LLC and Rogers-Premier Unloading Services, LLC ("Premier"). Many of the Notice Packets

1

1  that were returned as undeliverable were re-mailed to new addresses determined after
2  investigation.  The Notices advised the class members of the pertinent terms of the
3  proposed settlement, namely, the claims to be resolved by way of the settlement, the
4  total settlement amount, the preliminary estimate of each settlement class members'
5  distribution and the basis upon which the class members' share was calculated, the
6  proposed deduction for attorney's fees, litigation costs, class representative
7  enhancement payments, and the payment to the State of California's Labor and
8  Workforce Development Agency ("LWDA").  The Notice Packet further informed
9  the class members of the processes for challenging dates of employment, requesting
10 exclusion, and objecting to the settlement and the deadlines for each, and their right
11 to appear in person or by counsel at the final approval hearing.  Adequate periods of
12 time were provided for each of these procedures.  As part of this notice process, no
13 class members have sought to be excluded from the settlement classes, no class
14 member has submitted a written objection, and no class member stated an intention to
15 appear or appeared at the final approval hearing.

16        3.     The Court finds and determines that this notice procedure afforded
17 adequate protections to members of the class defined in Paragraph 13, below, and
18 provides the basis for the Court to make an informed decision regarding approval of
19 the settlement based on the responses of class members.  The Court finds and
20 determines that the notice provided in this case was the best notice practicable and
21 that it satisfied the requirements of law and due process.

22        4.     The Court further finds and determines that the terms of the settlement
23 are fair, reasonable, and adequate to the class and to each class member, that the
24 settlement is ordered finally approved, and that all terms and provisions of the
25 settlement should be and hereby are ordered to be consummated.  In addition to the
26 reasons set forth in the Court's statements on the record at the preliminary and final
27 approval hearings and those set forth in the Preliminary Approval Order, the fact that
28 no class member objected and that no class member opted out further supports the

2

1    Court's finding that the settlement is fair, reasonable, and adequate.

2         5.    The Court finds and determines that the settlement payments to be paid

3    to the participating class members as provided for by the settlement are fair and

4    reasonable.  The Court hereby orders that the payment of those amounts be made to

5    the participating class members in accordance with the terms of the settlement from

6    the Net Settlement Fund of $13,638,000 ($21,000,000 Gross Settlement Amount -

7    $6,930,000 attorneys' fees award - $210,000 litigation costs award - $150,000

8    LWDA payment - $40,000 class representative enhancement awards [$5,000 x 8] -

9    $32,000 settlement administrator fees and costs, all as approved below).

10        6.    In connection with the motion for final approval, the Claims

11   Administrator has submitted several declarations setting forth the results of the notice

12   and claims procedure, as reflected in the Court's docket.  The Claims Administrator

13   states that 618 claim forms were timely filed by Class Members whose names were

14   listed on the class data obtained from the previous claims administrator who handled

15   the Premier and Impact settlements.  The Claims Administrator also informed the

16   Court that there were five (5) late claim forms submitted.  Based on the information

17   provided to explain the late-filed claims, the Claims Administrator made a final

18   binding determination that four of the claimants demonstrated good cause for their

19   late filings and that their claim forms have been accepted as timely, but that one

20   claimant failed to show good cause so that claimant's claim form is being rejected as

21   untimely.  As further set forth in Paragraph 9 below, the Court is satisfied that the

22   Claims Administrator's decisions regarding good cause for the four late-filed claims,

23   and lack of good cause for the fifth late-filed claim, comply with the terms of the

24   settlement and the Court approves the acceptance of four late-filed and rejection of

25   one late-filed claim forms identified by the Claims Administrator.  Specifically, the

26   claims numbered CAR637, CAR638, CAR 654 and CAR 655 are accepted as valid

27   claims to be paid out of the Net Settlement Fund as described above, and the claim

28   numbered CAR 636 is rejected as untimely.

7.      Also in connection with the final approval hearing, the Claims Administrator described the disputes raised by 15 claimants about the proper employment dates they worked during the relevant class period.  The Claims Administrator considered documentation submitted by the claimants, as well as documents produced during discovery between the parties in this lawsuit, to evaluate the validity of the workweek disputes raised by these claimants.  Based on the information provided, the Claims Administrator determined that 14 of the 15 claimants had substantiated their claims that they had worked additional workweeks during the class period and adjusted their calculated points and estimated awards to reflect all workweeks each claimant had worked.  The Court is satisfied that the Claims Administrator's decisions comply with the terms of the settlement and approves the workweek adjustments and consequent revised points and awards available for each of the 14 claimants whose disputes were credited by the Claims Administrator.  The approved claims are numbered CAR 17, 181, 205, 208, 247, 377, 447, 484, 464, 532, 562, 563, 565, and 576 to be paid out of the Net Settlement fund as described above.  The Court also approves the Claims Administrator's denial of the remaining dispute concerning claim number CAR561 by a class member who is not entitled to recover for the time that claimant was employed as an Impact supervisor.

8.      In connection with the final approval hearing, the Claims Administrator submitted declarations describing claim forms or letters that were submitted by 11 individuals whose names were not included in the class data from the Impact and Premier settlements, but who claimed they were members of the class described in the Court-approved settlement notice.  The Claims Administrator considered documentation submitted by the claimants, as well as documents produced during discovery between the parties in this lawsuit, to evaluate the validity of the individuals' contentions that they were employed by defendants Premier or Impact during the relevant class period.  Based on the information provided, the Claims

4

Administrator concluded that nine of the eleven individuals had provided documents corroborating their employment by Premier or Impact during the relevant time period and recommended that the Court approve their participation in the settlement. The Claims Administrator concluded that two of those nine individuals needed to submit valid claim forms in addition to the letters they had timely provided and that there was good cause to allow their late submission of executed claim forms (subject to Court approval). On September 14, 2015, the Claims Administrator provided them with claim forms to execute and submit within 10 days. As to the remaining two individuals, the Claims Administrator determined that they had not provided any documentation to substantiate that they had been employed by Premier or Impact during the relevant time period, and recommended to the Court that it not approve their participation in the settlement.

9. At the final approval hearing, Schneider objected to allowing settlement participation for the nine individuals not listed in the class data from the prior Premier and Impact settlements, arguing that these individuals are not covered by Section II.7 of the Settlement Agreement defining "Class Members." Class counsel rebutted this argument, based on their contrary construction of Section II.7 and the circumstances of this case as a whole. Having heard and considered the arguments of all parties, the Court finds that these nine individuals have proved that they worked for defendants Premier or Impact within the relevant settlement class period and concludes that they are "Class Members" within the definition of the settlement class set forth in the settlement agreement. Specifically, the Court finds that the following individuals are Class Members based on the following information:

        a. Claim No. CAR498: The individual submitted a claim form received by the Claims Administrator by email on August 7, 2015, with a selection of paystubs for the years in question and a copy of his ID badge for Rogers Premier. A review of the documents produced during the course of this lawsuit, specifically the file

entitled "AllMiraLomaTimesheets" corroborates the individual's claim that he is a member of the Class who worked directly for Premier but was not identified in class data. This latter document shows payroll records from 01/02/2010 through 06/01/2010. The calculated points assigned to this claim are 107.85, with an estimated payment of $5,049.60 from the Net Settlement Fund as described above.

b. Claim No. CAR505: The individual submitted a claim form postmarked on August 4, 2015, with a selection of paystubs for the years in question. A review of the documents produced during the course of this lawsuit, specifically the file entitled "Impact CA Schneider form Oct 17 2008 to Dec 30 2011" corroborates the individual's claim that he is a member of the Impact Class but was not identified in class data. This document shows payroll records from 02/20/2011 through 10/07/2011. The calculated points assigned to this claim are 224.00, with an estimated payment of $10,487.81 from the Net Settlement Fund as described above.

c. Claim No. CAR539: The individual submitted a claim form postmarked on August 6, 2015, with a selection of paystubs for the years in question. A review of the paystubs corroborates the individual's claim that he is a member of the Class but was not identified in class data. The submitted documents demonstrate eligibility from 12/27/2010 through 12/25/2011. The calculated points assigned to this claim are 364.00, with an estimated payment of $17,042.69 from the Net Settlement Fund as described above.

d. Claim No. CAR550: The individual submitted a claim form received by facsimile on August 12, 2015, with a selection of

6

paystubs for the years in question. A review of the paystubs corroborates the individual's claim that she is a member of the Class but was not identified in class data. The submitted documents demonstrate eligibility from 10/01/2007 through 10/28/2007. The calculated points assigned to this claim are 10.84, with an estimated payment of $507.53 from the Net Settlement Fund as described above.

    e.    Claim No. CAR657: The individual submitted a claim form postmarked on June 30, 2015, with a selection of paystubs for the years in question and Forms W-2 for 2008 through 2011. A review of the documents produced during the course of this lawsuit, specifically the file entitled "Impact CA Schneider form Oct 17 2008 to Dec 30 2011" corroborates the individual's claim that he is a member of the Class but was not identified in class data. This document shows payroll records from 10/17/2008 through 10/28/2011. The calculated points assigned to this claim are 898.47, with an estimated payment of $42,066.87 from the Net Settlement Fund as described above.

    f.    Claim No. CAR658: The individual submitted a claim form postmarked on July 15, 2015, with a selection of paystubs for the years in question. A review of the documents provided by the claimant and produced during the course of this lawsuit, specifically the file entitled "Impact CA Schneider form Oct 17 2008 to Dec 30 2011" corroborates the individual's claim that she is a member of the Class but was not identified in class data. This documents shows payroll records from 11/26/2006 through 08/23/2009. The calculated points assigned to this claim are 529.98, with an estimated payment of $24,813.96 from the Net

[Proposed] Order Granting Plaintiffs' Motion For Final Approval;
Case No. CV 11-8557 CAS (DTBx)

1    Settlement Fund as described above.

2    g.    Claim No. CAR655 - RG/2 Claims received the claim form from

3          class counsel on August 24, 2015, which was faxed to them on

4          August 22. The individual provided documentation that

5          establishes that he worked for Premier during the Class Period

6          and, despite his exclusion from the class data, meets all of the

7          qualifications to meet the definition of a Class Member. Further

8          review by class counsel revealed that the individual was included

9          in other documents produced during the lawsuit, specifically the

10         listing of Premier employees that transitioned to Schneider's

11         payroll, but not in the class data. The calculated points assigned

12         to this claim are 450.31, with an estimated payment of $21,083.77

13         from the Net Settlement Fund as described above.

14   h.    Claim No. CAR660: The individual submitted a selection of

15         paystubs for the years 2008 and 2009, received by RG/2 Claims

16         by facsimile on July 7, 2015. A review of the paystubs and

17         "Impact CA Schneider from Oct 17 2008 to Dec 30 2011"

18         corroborates the individual's claim that he is a member of the

19         Class but was not identified in class data. These documents

20         demonstrate eligibility from 10/06/2008 through 12/30/2011. The

21         calculated points assigned to this claim are 60.00, with an

22         estimated payment of $2,809.23 from the Net Settlement Fund as

23         described above. This individual was sent a Notice Packet on

24         September 14, 2015 advising him of the need to submit an

25         executed claims form and providing him with ten (10) days to do

26         so. If this individual timely submits an executed claim form as

27         directed, this claim will be allowed.

28   i.    Claim No. CAR661: The individual submitted a selection of

8

paystubs for the year 2008, received by RG/2 Claims by mail
postmarked on June 11, 2015. A review of the paystubs and
"Impact CA Schneider from Oct 17 2008 to Dec 30 2011"
corroborates the individual's claim that he is a member of the
Class but was not identified in class data. These document
demonstrate eligibility from 08/06/2007 through 04/26/2009. The
calculated points assigned to this claim are 408.84, with an
estimated payment of $19,142.12 from the Net Settlement Fund as
described above. This individual was sent a Notice Packet on
September 14, 2015 advising of the need to submit an executed
claims form and providing him with ten (10) days to do so. If this
individual timely submits an executed claim form as directed, this
claim will be allowed.

10.     The Court finds and determines that the $150,000 amount to be paid to
the LWDA for civil penalties under the Private Attorney General Act ("PAGA"), Cal
Labor Code §§2699, *et seq*., is fair and reasonable. The Court hereby grants final
approval to and orders said payment to the LWDA in accordance with the terms of
the settlement.

11.     Nothing in this order shall preclude any action to enforce the parties'
obligations under the settlement or under this Order.

12.     The parties are hereby ordered to comply with and carry out the terms of
the settlement as approved by this order.

13.     Solely for purposes of effectuating the approved settlement, the Court
now certifies the same class provisionally certified in connection with the order
granting preliminary approval (Doc. 617), which is defined as a single settlement
class under Federal Rule of Civil Procedure 23 comprised of the following groups:

Premier Class:  All non-exempt employees employed by Premier in any
of the warehouses, buildings, or surrounding premises at 4100 and 4250 Hamner

9

Avenue and/or 11900 Riverside Drive in Eastvale (formerly Mira Loma), California at any time from February 19, 2009 through February 24, 2012.

Impact Class: All non-exempt employees employed by Impact in any of the warehouses, buildings, or surrounding premises located at 4100 and 4250 Hamner Avenue, and/or 11900 Riverside Drive in Eastvale (formerly Mira Loma), California, at any time from 2001 through August 9, 2013.

14.     With respect to the settlement class and for purposes of approving these settlements only, this Court finds and concludes that: (a) the members of the settlement class are ascertainable and so numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to the settlement class which predominate over any individual issues; (c) the claims of Premier class representatives Everardo Carrillo, Fernando Chavez, Eric Flores and Jose Martinez Arceo, and those of Impact class representatives Juan Chavez, Armando Esquivel, Guadalupe Rangel Mendoza and Jose Enrique Trujillo-Vergara, are typical of the claims of the members of their respective classes; (d) each class representative has fairly and adequately protected the interests of the members of the classes; (e) a class action is superior to other available methods for an efficient adjudication of this controversy; and (f) the counsel of record for the class representatives, *i.e.*, class counsel, are qualified to serve as counsel for plaintiffs in their individual and representative capacities and for the settlement class.

15.     Every person in the above-described settlement class who did not submit a valid and timely request for exclusion shall be and hereby is deemed to be a Settlement Class Member as that term is defined in the settlement agreement, and, along with the LWDA, shall be bound by all of the terms and provisions of the approved settlement agreement, including to have released all Released Class Claims set forth therein, and the separately filed Order of Dismissal of Plaintiffs' claims that shall be jointly sought by the parties.

16.     The Court approves a payment to the eight class representatives in the

10

1  amount of $5,000 to each class representative, as an enhancement for the initiation of

2  this action, work performed, and risks undertaken, as more fully set forth in the

3  moving papers.  These amounts are separate and apart from any other recovery to

4  which these class representatives might be entitled to under other provisions of the

5  settlement agreement.

6       17.    The Court finds that notice of the requested award of attorney's fees and

7  reimbursement of reasonable costs and expenses was directed to class members in a

8  reasonable manner, and complied with Rule 23(h)(1) of the Federal Rules of Civil

9  Procedure.  Class members and any party from whom payment is sought have been

10  given the opportunity to object pursuant to Rule 23(h)(2) of the Federal Rules of

11  Civil Procedure, and no class member has objected to the requested fees or expenses.

12       18.    Class counsel, having conferred a benefit on absent class members and

13  having expended efforts to secure a benefit to the classes, is entitled to a fee and

14  accordingly, the Court approves the application of Class Counsel 1) Traber &

15  Voorhees, 2) Law Offices of Sandra C. Muñoz, 3) Bet Tzedek Legal Services; 4)

16  Altshuler Berzon LLP; and 5) Janet Herold in the total amount of $6,930,000 in

17  attorneys' fees,  $210,000 in expenses and $32,000 in claims administration costs.

18  The fee amount is within the range of common fund awards in similar wage-and-hour

19  class actions and is warranted in this case due to the high level of risk involved and

20  the exceptional skill and diligence required to litigate and resolve the legal claims at

21  issue.  The propriety of awarding these amounts in fees and expenses in this case is

22  confirmed by the lodestar cross check.  Based on the time expended and rates

23  charged, which the Court specifically finds to be reasonable, class counsel's lodestar

24  amount exceeds the amount of the common fund award.

25       19.    Any separate appeal from the portion of the Judgment regarding the

26  class representative enhancement payment awards, payment to the LWDA or award

27  of attorney's fees and reimbursement of expenses, if permissible, shall not operate to

28  terminate or cancel the settlement agreement.

11

20. Pursuant and subject to Section V.2 of the settlement agreement, within fourteen (14) calendar days after the date of entry of this order, Schneider shall deposit into a Qualified Settlement Fund established by the Claims Administrator all amounts approved by the Court in this Order for payment from the Gross Settlement Amount. The funds shall be maintained in an interest-bearing depository account to be approved by Schneider in advance of any deposit being made.

21. The Court further approves and directs RG2, the appointed claims administrator, to make the following payments thirty-three (33) calendar days after the date of entry of this order pursuant and subject to Sections II.12 and V.3 of the settlement agreement:

  A. To the participating class members, by check or wire, his/her individual settlement payment as calculated by the claims administrator.

  B. To the class representatives, the sum of $5,000 each in addition to any settlement distribution to which he/she is entitled.

  C. To the LWDA, by check or wire the amount of $150,000.

  D. To be wired to the Altshuler Berzon LLP Trust Account, the total amounts of $6,930,000 in attorneys' fees plus $210,000 in expenses, to be distributed by Altshuler Berzon LLP among all plaintiffs' counsel entitled to fees and cost reimbursements, including Traber & Voorhees LLP, the Law Offices of Sandra C. Muñoz, Bet Tzedek Legal Services, Altshuler Berzon LLP, and Janet Herold;

  E. To RG/2, $32,000 for administration costs.

22. All payroll taxes are to be paid by RG/2 from the Qualified Settlement Fund in accordance with the terms of the approved settlement agreement, and paid not later than the time specified by law or agency regulation.

23. Without limiting the provisions of Paragraph 11 of this order, the Court permanently enjoins Plaintiffs, Defendants, all Class Members, and all persons acting in concert with them, from pursuing or seeking to reopen any claims settled and released by the approved settlement agreement against any released parties as

12

1   provided in the approved settlement agreement.  Specifically excluded from the scope
2   of this permanent injunction is the pursuit of claims asserted by any of the defendants
3   named in the action against any of the other defendants, including without limitation
4   through claims, counterclaims or cross-claims previously, now and/or hereafter
5   pending in this or any other action or proceeding.

6        24.    Pursuant to, subject to and without limiting the provisions of Paragraph
7   VI.1 of the Settlement Agreement, nothing in this Order, or any aspect of the
8   approved settlement, is to be offered as evidence of, or construed or deemed to be an
9   admission of liability or wrongdoing on the part of any of the Settling Defendants in
10  this or any other action or proceeding.

11       25.    The Court retains jurisdiction over the administration and effectuation of
12  the settlement including, but not limited to, the ultimate disbursal to the participating
13  class members, payment of attorney's fees and expenses, the enhancement payment
14  awards to the class representatives, payment to the LWDA, and other issues related to
15  the settlement.  Unless otherwise specifically defined or stated in this Order, all terms
16  used in this Order have the same definition and meaning as those used in the
17  approved settlement agreement, which are incorporated herein by this reference as
18  though set forth in full.

19       IT IS SO ORDERED.

21  Dated:   September 24, 2015

                                   Christina A. Snyder
                                   Hon. Christina A. Snyder
                                   U.S. District Court Judge

13

# EXHIBIT I

R. Rex Parris, Esq. (SBN: 96567)                                    JS-6
      rrparris@rrexparris.com
Jason P. Fowler, Esq. (SBN: 239426)
      jfowler@rrexparris.com
Alexander R. Wheeler, Esq. (SBN: 239541)
      awheeler@rrexparris.com
**R. REX PARRIS LAW FIRM**
42220 10th Street West, Suite 109
Lancaster, California 93534
Telephone: (661) 949-2595 / Fax: (661) 949-7524

[Additional Attorneys for Plaintiffs and the Putative Class on Attachment]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROCHELLE INGALLS, suing individually and on behalf of all other similarly situated persons,<br><br>               Plaintiffs,<br><br>v.<br><br>HALLMARK MARKETING CORPORATION, a Delaware corporation, and defendant DOES 1 through 10, inclusive,<br><br>               Defendants.<br>_____ | Case No.: CV08-04342 VBF (Ex) C/W<br>          CV08-05330-VBF (FFMx)<br>          CV08-07481-VBF (Ex)<br><br>**ORDER GRANTING CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS, AND INCENTIVE AWARDS**<br><br>Date:        October 16, 2009<br>Time:        3:00 p.m.<br>Courtroom: 9<br>Judge:     Honorable Valerie<br>               Baker Fairbank |
| NIKKI FUZELL, an individual, on behalf of herself, all others similarly situated,<br><br>               Plaintiffs,<br><br>v.<br><br>HALLMARK MARKETING CORPORATION, a Delaware corporation with it's principal place of business in the State of Missouri,<br><br>               Defendants.<br>_____ | |
| BEVERLY WEAVER, et al., Plaintiffs,<br><br>v.<br><br>HALLMARK MARKETING CORP.,<br><br>               Defendants.<br>_____ | |

1          **ATTACHMENT TO CAPTION**

2

3  **ZELBST, HOLMES & BUTLER**
   John Zelbst, Esq. [admitted *pro hac vice*]
        john@zelbst.com
4  Chandra Holmes Ray, Esq. [admitted *pro hac vice*]
        chandra@zelbst.com
5  P.O. Box 365
   Lawton, OK 73502-0365
6  (580) 248-4844 Fax:  (580) 248-6916

7  James E. Wren, Esq. [admitted *pro hac vice*]
        James_Wren@baylor.edu
8  One Bear Place #97288
   Waco, TX  76798-7288
9  (254) 710-7670 Fax:  (254) 710-2817

10 **SLOAN, BAGLEY, HATCHER & PERRY**
   John Sloan, Esq. [admitted *pro hac vice*]
11      jsloan@textrialfirm.com
   Laureen Bagley, Esq. [admitted *pro hac vice*]
12      lbagley@textrialfirm.com
   P.O. Box Drawer 2909
13 Longview, TX  75006
   (903) 757-7000 Fax:  (903) 757-7574

14
   **CLARK & MARKHAM**
15 David R. Markham, Esq. (SBN 071814)
        dmarkham@clarkmarkham.com
16 R. Craig Clark, Esq. (SBN 129912)
        cclark@clarkmarkham.com
17 James M. Treglio, Esq. (SBN 228077)
        jtreglio@clarkmarkham.com
18 600 B Street, Suite 2130
   San Diego, CA 92101
19
   **GRACEHOLLIS**
20 Graham S.P. Hollis, Esq. (SBN 120577)
        ghollis@gracehollis.com
21 3555 Fifth Avenue
   San Diego, CA 92103
22 (619) 692-0800

23

24

25

26

27

28

On October 16, 2009, the Court heard a motion by Plaintiffs, Rochell Ingalls ("Ingalls"), Nikki Fuzell ("Fuzell"), and Beverly Weaver ("Weaver") on behalf of themselves and all others similarly situated, for approval of Class Counsel's Motion for an Award of Attorneys Fees, Litigation Costs and Incentive Awards to Ingalls, Fuzell, Weaver, Sandy Ripp ("Ripp"), Carol White ("White"), and Vanesa Yanez ("Yanez").

The Parties have submitted the proposed Settlement, which this Court finally approved on October 16, 2009. Having finally approved the Settlement, and having received and reviewed the supporting papers, the response of the Class Members to the Notice of Settlement, and the evidence and argument received by the Court at Hearing on October 16, 2009, the Court grants the Motion by Class Counsel for an Award of Attorneys' Fees, Litigation Costs and Incentive Awards, and HEREBY FINDS as follows:

1. Except as otherwise specified herein, the Court for purposes of this Order of Final Approval adopts all defined terms set forth in the Settlement;

2. Pursuant to the Preliminary Approval Order, a Notice Packet was sent to each Class Member by first-class mail. The Notice included language advising Class Members that Class Counsel would ask the Court to award attorneys' fees up to 33% of the Maximum Settlement Amount and litigation costs. In addition, the Notice provided that Class Counsel would ask the Court to authorize an enhancement payment of up to $10,000 each to Ingalls, Fuzell, Weaver, Ripp, White and Yanez;

3. The Claims Administrator took reasonable steps to provide the Notice Packet to Class Members when it learned that the address to which those documents were mailed was no longer accurate. These documents informed Class Members of the terms of the Settlement, including the request by Class Counsel for Attorneys' fees, litigation costs, and enhancement payments and their right to object to the Settlement or to opt out of the Settlement and pursue their own remedies, and their right to appear in

/ / / /

/ / / /

1

person or by counsel at the Final Approval Hearing and be heard regarding the final approval of the Settlement. Notice was provided with ample time for the Class Members to follow these procedures;

4. The Court finds that this notice procedure afforded adequate protections to Class Members and provides the basis for the Court to make an informed decision regarding approval of Class Counsels' Motion for an Award of Attorneys' Fees, Litigation Costs and the Incentive Awards requested. Notice was accomplished in all material respects in the manner prescribed by the Settlement. The Court finds that adequate notice provided to all persons entitled to such notice in this case, was the best notice practicable, and, therefore, fully satisfied the requirements of due process;

5. The Attorneys' Fees requested by Class counsel are commensurate with 1) the risk Class Counsel took in commencing this action, (2) the time, effort and expense dedicated to the case, (3) the skill and determination they have shown, (4) the results they have achieved throughout the litigation, (5) the value of the settlement they have achieved for class members, and (6) the other cases counsel have turned down in order to devote their time and efforts to this matter;

6. The Attorneys' Fees requested by Class counsel, $1,825,000.00 of the total settlement of $5,625,000 are reasonable and are within the range of fees awarded in comparable cases;

7. That the litigation costs for which Class Counsel requests reimbursement were reasonable and necessary;

8. That the enhancement payments requested by Ingalls, Fuzell, Weaver, Ripp, White, and Yanez, for their efforts in obtaining recovery for the Class are reasonable and are within the range of enhancement payments awarded in comparable cases;

Therefore, IT IS HEREBY ORDERED:

1. That the Motion by Class Counsel for an award of Attorneys' Fees in the amount of $1,825,000.00 is granted;

/ / / /

2

2.      That the Motion by Class Counsel for an award of litigation costs in the amount of $54,528.85 is granted;

3.      That the Motion by Class Counsel for an award of an enhancement payment to Rochell Ingalls, in the amount of $10,000 is granted;

4.      That the Motion by Class Counsel for an award of an enhancement payment to Nikki Fuzell, in the amount of $10,000 is granted.

5.      That the Motion by Class Counsel for an award of an enhancement payment to Beverly Weaver, in the amount of $10,000 is granted.

6.      That the Motion by Class Counsel for an award of an enhancement payment to Sandy Ripp, in the amount of $10,000 is granted.

7.      That the Motion by Class Counsel for an award of an enhancement payment to Carol White, in the amount of $10,000 is granted.

8.      That the Motion by Class Counsel for an award of an enhancement payment to Vanesa Yanez , in the amount of $10,000 is granted.

Dated: October 16, 2009

_____
Honorable Valerie Baker Fairbank

3

1    R. Rex Parris, Esq. (SBN: 96567)                                    JS-6
         rrparris@rrexparris.com
2    Jason P. Fowler, Esq. (SBN: 239426)
         jfowler@rrexparris.com
3    Alexander R. Wheeler, Esq. (SBN: 239541)
         awheeler@rrexparris.com
4    **R. REX PARRIS LAW FIRM**
     42220 10th Street West, Suite 109
5    Lancaster, California 93534
     Telephone: (661) 949-2595 / Fax: (661) 949-7524
6
7    [Additional Attorneys for Plaintiffs and the Putative Class on Attachment]

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10
11   ROCHELLE      INGALLS,    suing ) Case No.: CV08-04342 VBF (Ex) C/W
     individually and on behalf of all other )        CV08-05330-VBF (FFMx)
12   similarly situated persons,           )          CV08-07481-VBF (Ex)
                                           )
13                        Plaintiffs,      )
                                           ) **ORDER GRANTING CLASS COUNSEL'S**
14   v.                                    ) **MOTION FOR ATTORNEYS' FEES,**
                                           ) **LITIGATION COSTS, AND INCENTIVE**
15   HALLMARK      MARKETING ) **AWARDS**
     CORPORATION, a Delaware corporation, )
16   and defendant DOES 1 through 10, ) Date:          October 16, 2009
     inclusive,                            ) Time:      3:00 p.m.
17                        Defendants.      ) Courtroom: 9
     ————————————————————— ) Judge:        Honorable Valerie
18                                         )             Baker Fairbank
     NIKKI FUZELL, an individual, on behalf )
19   of herself, all others similarly situated, )
                                           )
20                        Plaintiffs,      )
                                           )
21   v.                                    )
                                           )
22   HALLMARK      MARKETING )
     CORPORATION, a Delaware corporation )
23   with it's principal place of business in the )
     State of Missouri,                    )
24                                         )
                          Defendants.      )
25   ————————————————————— )
                                           )
26   BEVERLY WEAVER, et al., Plaintiffs, )
                                           )
27   v.                                    )
                                           )
28   HALLMARK MARKETING CORP., )
                                           )
                          Defendants.      )
     ————————————————————— )

# <u>ATTACHMENT TO CAPTION</u>

**ZELBST, HOLMES & BUTLER**
John Zelbst, Esq. [admitted *pro hac vice*]
     john@zelbst.com
Chandra Holmes Ray, Esq. [admitted *pro hac vice*]
     chandra@zelbst.com
P.O. Box 365
Lawton, OK 73502-0365
(580) 248-4844 Fax: (580) 248-6916

James E. Wren, Esq. [admitted *pro hac vice*]
     James_Wren@baylor.edu
One Bear Place #97288
Waco, TX 76798-7288
(254) 710-7670 Fax: (254) 710-2817

**SLOAN, BAGLEY, HATCHER & PERRY**
John Sloan, Esq. [admitted *pro hac vice*]
     jsloan@textrialfirm.com
Laureen Bagley, Esq. [admitted *pro hac vice*]
     lbagley@textrialfirm.com
P.O. Box Drawer 2909
Longview, TX 75006
(903) 757-7000 Fax: (903) 757-7574

**CLARK & MARKHAM**
David R. Markham, Esq. (SBN 071814)
     dmarkham@clarkmarkham.com
R. Craig Clark, Esq. (SBN 129912)
     cclark@clarkmarkham.com
James M. Treglio, Esq. (SBN 228077)
     jtreglio@clarkmarkham.com
600 B Street, Suite 2130
San Diego, CA 92101

**GRACEHOLLIS**
Graham S.P. Hollis, Esq. (SBN 120577)
     ghollis@gracehollis.com
3555 Fifth Avenue
San Diego, CA 92103
(619) 692-0800

On October 16, 2009, the Court heard a motion by Plaintiffs, Rochell Ingalls ("Ingalls"), Nikki Fuzell ("Fuzell"), and Beverly Weaver ("Weaver") on behalf of themselves and all others similarly situated, for approval of Class Counsel's Motion for an Award of Attorneys Fees, Litigation Costs and Incentive Awards to Ingalls, Fuzell, Weaver, Sandy Ripp ("Ripp"), Carol White ("White"), and Vanesa Yanez ("Yanez").

The Parties have submitted the proposed Settlement, which this Court finally approved on October 16, 2009. Having finally approved the Settlement, and having received and reviewed the supporting papers, the response of the Class Members to the Notice of Settlement, and the evidence and argument received by the Court at Hearing on October 16, 2009, the Court grants the Motion by Class Counsel for an Award of Attorneys' Fees, Litigation Costs and Incentive Awards, and HEREBY FINDS as follows:

1.     Except as otherwise specified herein, the Court for purposes of this Order of Final Approval adopts all defined terms set forth in the Settlement;

2.     Pursuant to the Preliminary Approval Order, a Notice Packet was sent to each Class Member by first-class mail. The Notice included language advising Class Members that Class Counsel would ask the Court to award attorneys' fees up to 33% of the Maximum Settlement Amount and litigation costs. In addition, the Notice provided that Class Counsel would ask the Court to authorize an enhancement payment of up to $10,000 each to Ingalls, Fuzell, Weaver, Ripp, White and Yanez;

3.     The Claims Administrator took reasonable steps to provide the Notice Packet to Class Members when it learned that the address to which those documents were mailed was no longer accurate. These documents informed Class Members of the terms of the Settlement, including the request by Class Counsel for Attorneys' fees, litigation costs, and enhancement payments and their right to object to the Settlement or to opt out of the Settlement and pursue their own remedies, and their right to appear in

/ / / /

/ / / /

1

person or by counsel at the Final Approval Hearing and be heard regarding the final approval of the Settlement. Notice was provided with ample time for the Class Members to follow these procedures;

4. The Court finds that this notice procedure afforded adequate protections to Class Members and provides the basis for the Court to make an informed decision regarding approval of Class Counsels' Motion for an Award of Attorneys' Fees, Litigation Costs and the Incentive Awards requested. Notice was accomplished in all material respects in the manner prescribed by the Settlement. The Court finds that adequate notice provided to all persons entitled to such notice in this case, was the best notice practicable, and, therefore, fully satisfied the requirements of due process;

5. The Attorneys' Fees requested by Class counsel are commensurate with 1) the risk Class Counsel took in commencing this action, (2) the time, effort and expense dedicated to the case, (3) the skill and determination they have shown, (4) the results they have achieved throughout the litigation, (5) the value of the settlement they have achieved for class members, and (6) the other cases counsel have turned down in order to devote their time and efforts to this matter;

6. The Attorneys' Fees requested by Class counsel, $1,825,000.00 of the total settlement of $5,625,000 are reasonable and are within the range of fees awarded in comparable cases;

7. That the litigation costs for which Class Counsel requests reimbursement were reasonable and necessary;

8. That the enhancement payments requested by Ingalls, Fuzell, Weaver, Ripp, White, and Yanez, for their efforts in obtaining recovery for the Class are reasonable and are within the range of enhancement payments awarded in comparable cases;

Therefore, IT IS HEREBY ORDERED:

1. That the Motion by Class Counsel for an award of Attorneys' Fees in the amount of $1,825,000.00 is granted;

/ / / /

2.   That the Motion by Class Counsel for an award of litigation costs in the amount of $54,528.85 is granted;

3.   That the Motion by Class Counsel for an award of an enhancement payment to Rochell Ingalls, in the amount of $10,000 is granted;

4.   That the Motion by Class Counsel for an award of an enhancement payment to Nikki Fuzell, in the amount of $10,000 is granted.

5.   That the Motion by Class Counsel for an award of an enhancement payment to Beverly Weaver, in the amount of $10,000 is granted.

6.   That the Motion by Class Counsel for an award of an enhancement payment to Sandy Ripp, in the amount of $10,000 is granted.

7.   That the Motion by Class Counsel for an award of an enhancement payment to Carol White, in the amount of $10,000 is granted.

8.   That the Motion by Class Counsel for an award of an enhancement payment to Vanesa Yanez , in the amount of $10,000 is granted.


Dated: October 16, 2009

_____
Honorable Valerie Baker Fairbank

3

# EXHIBIT J

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH J. LEE, MARK G. THOMPSON, and DAVID C. ACREE, individually, on behalf of others similarly situated, and on behalf of the general public, | CASE NO. SACV 13-511-JLS (JPRx) |
| Plaintiffs, | **ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (Doc. 91) AND PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS AND CLASS REPRESENTATIVES' AND OPT-INS' ENHANCEMENTS (Doc. 81)** |
| vs. | |
| JPMORGAN CHASE & CO.; JPMORGAN CHASE BANK, NATIONAL ASSOCIATION; and DOES 1-10, inclusive, | |
| Defendants. | |

Before the Court is Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement. (Final Approval Mot., Doc. 91.) Also before the Court is Plaintiffs' Motion for Attorneys' Fees, Costs and Class Representatives' and Opt-Ins' Enhancements. (Attorneys' Fees Mot., Doc. 81.) Having reviewed the papers, held a fairness hearing, and taken the matter under submission, the Court GRANTS Plaintiffs' Motions.

## I.     BACKGROUND

On March 29, 2013, Plaintiffs Kenneth Lee and Mark Thompson filed a Class and Collective Action Complaint against Defendants, alleging JPMorgan Chase violated California and federal statutory wage laws and engaged in unfair competition in violation of California Business and Professions Code § 17200 *et seq.* (Compl., Doc. 1.) According to the Complaint, JPMorgan Chase misclassified Plaintiffs and putative class members who were or are commercial and review appraisers as exempt employees under federal and California wage and hour laws. (Id. ¶¶ 1, 39-68.) Specifically, Plaintiffs allege that Defendants misrepresented to these employees that they were exempt and therefore were not entitled to overtime pay for hours worked in excess of forty hours a week. (Id. ¶ 19.) On April 5, 2013, Joel Cuthbert filed a written consent to join the collective action. (Settlement Agreement, Doc. 68-1, Ex. A, at 2.) On May 1, 2013, Plaintiffs filed a First Amended Complaint ("FAC"), adding claims for waiting time penalties under California Labor Code § 203 and civil penalties under the Private Attorneys General Act of 2004, Cal. Labor Code § 2698, *et seq.* ("PAGA"). (FAC, Doc. 10.)

On July 2, 2013, Plaintiffs filed their Second Amended Complaint ("SAC"), which also added David C. Acree as a class representative Plaintiff. (SAC, Doc. 38.). The SAC defines the Collective Class as:

All persons who are or have been employed by Defendants as a commercial production appraiser ("Appraiser I;" Appraiser II;" "Senior Appraiser;" or positions consisting of similar job duties) in the CTL Appraisal division within the United States at any time from three years prior to the filing of this Complaint to the final disposition of this case.

(Id. ¶ 18.) The SAC defines the California Class similarly as:

All persons who are or have been employed by Defendants as Appraisers in the CTL Appraisal division (including production appraisers and review appraisers, with such titles as "Appraiser I;" "Appraiser II;" "Senior Appraiser"; "Review Appraiser;" "Senior Review Appraiser;" and any other position consisting of similar duties) within the State of California at any time from four years prior to the filing of this Complaint to the final disposition of this case.

(Id. ¶ 32.) The proposed California Class includes two sub-classes for related penalty claims. (Id. ¶¶ 33-34.)

On August 14, 2013, the parties stipulated to dismiss Plaintiffs' claims and compel arbitration. (Stip., Doc. 46.) Plaintiffs and putative class members had signed arbitration agreements with Defendants for claims related to their employment. Some of the agreements explicitly required arbitration on an individual basis, others were silent on the question of class arbitration, and 21 putative class members had not signed arbitration agreements at all. (Preliminary Approval Order at 3, Doc. 80.) On November 4, 2013, while this Court was considering whether the Court or an arbitrator should decide whether the agreements without express class waivers allowed arbitration to proceed on a class basis, Myles Norton filed a written consent to join the collective action. (Settlement Agreement at 3.) On November 14, 2013, this Court held that an arbitrator should decide

1 | whether the agreements prohibit class arbitration, and thus dismissed the action.

2 | (Order at 8, Doc. 63.)

3 |      Defendants appealed this ruling to the Ninth Circuit. (Notice of Appeal, Doc.

4 | 64.) Meanwhile, Plaintiffs filed demands to arbitrate their claims on either an

5 | individual or class-wide basis before the American Arbitration Association

6 | ("AAA"), depending on which arbitration agreement each Plaintiff had signed.

7 | (Settlement Agreement at 3.)

8 |      On June 17, 2014, the parties participated in a mediation session before wage

9 | and hour mediator Michael Dickstein. (Amended Schwartz Decl. ¶ 9, Doc. 75-1.)

10 | The original mediation session did not immediately result in a settlement, but the

11 | parties and mediator Dickstein conducted several follow-up conferences over the

12 | next several weeks. (Id. ¶¶ 9-10; Settlement Agreement at 5, n. 1.) On October 10,

13 | 2014, the parties finally executed the Settlement Agreement (Amended Schwartz

14 | Decl. ¶ 10), and Plaintiffs filed an Unopposed Motion for Preliminary Approval of

15 | Class Action Settlement. (Preliminary Approval Mot., Doc. 67.)

16 |      The Settlement Agreement defines "Covered Positions" as "the following

17 | positions in JPMorgan Chase's CTL division that current and former employees

18 | who are covered by this Stipulation held: Appraiser I; Appraiser II; Senior

19 | Appraiser; Commercial Appraiser – Team Lead Commercial Production Appraiser;

20 | Senior Commercial Review Appraiser; Review Appraiser; and Senior Review

21 | Appraiser." (Id. § 1.11.) The Settlement Agreement further provides that "[f]or a

22 | position to be a Covered Position, an employee must have worked in that position:

23 | (a) at any time from March 29, 2010 through the Preliminary Approval Date in any

24 | state other than California, and/or (b) at any time from March 29, 2009 through the

25 | Preliminary Approval Date in California." (Id.)

26 |      The Settlement Agreement provides for a settlement fund not to exceed the

27 | gross sum of $2,400,000.00. (Id. § 1.37.) No portion of the settlement fund will

28 |

revert back to Defendants unless the Settlement fails or more than 5% of the California Class opts out.  (Id. §§ 2.2.1, 2.11.1.)  In addition to the settlement fund, Defendants agree to pay each Participating Claimant's share of payroll taxes for the share of his or her settlement payment deemed to be wages.  (Id. § 2.2.1.)

The settlement fund will be used to pay for (1) Plaintiffs' attorneys' fees and costs, (2) reimbursement for actual litigation costs (not to exceed $25,000), (3) enhancement payments for the three named Plaintiffs and the two representatives who filed written consents to join the class action, (4) a payment of $7,500 to the California Labor Workforce Development Agency ("LWDA") for the PAGA claims, and (5) settlement administration expenses.  (Id. §§ 2.2.6, 2.5.6, 2.9.1, 2.9.2.)  More specifically, the Settlement Agreement allows Plaintiffs' counsel to apply for an award of one-third of the $2,400,000.00 ($800,000.00) as attorneys' fees.  (Id. § 2.9.1.)  In the event that this Court awards less than the one-third amount requested for attorneys' fees and/or costs, any amount not awarded will be distributed to the putative class members, with no portion reverting back to Defendants.  (Id. § 2.9.1.)  The Settlement Agreement also allocates enhancement payments, totaling $45,000.00, to the Plaintiffs as follows: $15,000.00 to Kenneth Lee, $10,000.00 to Mark Thompson, $10,000.00 to David Acree, $5,000.00 to Joel Cuthbert, and $5,000.00 to Myles Norton.  (Id. § 2.9.2.)  Expenses paid to the claims administrator are not to exceed $20,000.00.  (Amended Schwartz Decl. ¶ 19.)  The remainder of the settlement fund will be distributed to Class Members and no funds will revert to Defendants.  (Settlement Agreement §§ 1.1, 1.21, 1.37, 2.2.1.)

Participating Claimants will be allocated a share of the settlement fund based on the number of workweeks they worked for Defendants during the relevant time period.  (Id. § 2.2.2.)  For those in the California Class, a 1.64 multiplier will be used to provide them with a larger pro rata share per workweek, as a result of the release of their additional claims for meal/rest period violations, PAGA penalties,

waiting time violations, and wage statement violations under California law.  (Id.)

If fewer than all of the putative class members participate in the settlement

distribution, the settlement payment to any Participating Claimant will increase on a

pro rata basis, subject to the limitation that no Participating Claimant will be paid

greater than twice the initial amount calculated to be paid to that Participating

Claimant.  (Id.)  Any additional funds that cannot be paid to the Participating

Claimants due to the above restriction will be distributed by *cy pres* to the Legal Aid

Society – Employment Law Center.  (Id.; Preliminary Approval Order at 22, Doc.

80; Final Approval Mot. at 4; Schwartz Approval Decl. ¶ 17, Doc. 91-2.)

In addition to the monetary benefits of the Settlement Agreement, the

Commercial Appraiser I position at JPMorgan Chase will be reclassified as non-

exempt, allowing employees in that position in the future to be compensated for

their overtime and, in California, any missed meal/rest periods.  (Settlement

§ 2.12.6.)

In return for a share of the settlement fund and enhancement payments,

Plaintiffs agree to release any and all claims and causes of actions against

Defendants, "whether or not acting in the course and scope of employment…."[1]  (Id.

§ 1.9.)  The other Class Members agree to release "any and all federal wage and

hour law claims . . . that accrued on any date up through and including . . . final

approval of the Settlement, for any type of relief . . . arising under the Fair Labor

Standards Act of 1938 ("FLSA")."  (Id. § 1.33.)  As to state law claims, Class

Members similarly agree to release any and all wage and hour claims they may have

against Defendants under the relevant California laws for Class Members in

Covered Positions.  (Id. § 1.34.)  As a result, only the Plaintiffs receiving

---

[1] The parties have stipulated that nothing in the Settlement Agreement releases Plaintiff
Thompson's separate claims as set forth in the individual complaint he filed against Defendants in
this Court in Case No. SACV 14-01181 JLS (JPRx). (Settlement Agreement at 7 n. 2.)

1   enhancement payments are required to execute a general release of *all* claims

2   against Defendants existing up to the date of final approval.

3           Class Members who opt-in or, if they are in California, do not opt-out of the

4   Settlement will have 180 days to cash their settlement checks.  (Id. § 2.6.4.)  Any

5   amounts represented by uncashed checks will be distributed to the other

6   Participating Claimants on a pro rata basis, and any funds left over after that

7   redistribution will be distributed by *cy pres*, as discussed above.  (Id. § 2.12.1.)  The

8   back of the settlement check will have an endorsement that the Participating

9   Claimant must sign to release their federal and state law claims, as defined above,

10  and to receive his or her portion of the settlement fund.  (Id. § 1.38.)

11          The Court granted Plaintiffs' motion for preliminary approval on November

12  13, 2014.  (Doc. 78.)  On November 21, 2014, Class Counsel filed a Revised Class

13  Notice pursuant to the Court's Order.  (Revised Class Notice, Ex. A., Doc. 79.)  The

14  Court issued an Amended Preliminary Approval Order on November 24, 2014.

15  (Preliminary Approval Order, Doc. 80.)

16          On October 20, 2014, Defendants mailed CAFA Notices to the relevant

17  authorities.  (Schwartz Approval Decl. ¶ 11; Final Approval Mot. at 7.)  On

18  December 18, 2014, the parties' Claims Administrator, CPT Group, Inc., issued

19  notice to the Class pursuant to the terms of the Settlement Agreement.  (Shirinian

20  Decl. ¶ 7, Doc. 91-4; Shirinian Decl., Ex. A, Doc. 91-4.)  Four Notice Packets were

21  re-mailed by CPT either because Class Members requested the Notice packet to be

22  re-mailed or because CPT was provided with a new address.  (Shirinian Decl. ¶ 9.)

23  As of March 5, 2015, no Notice Packets have been returned to CPT as

24  undeliverable.  (Id. ¶¶ 8, 11.)  CPT has not received any requests for exclusion.  (Id.

25  ¶¶ 12, 18.)  Further, there are no outstanding disputes regarding calculated work

26  weeks for the estimated awards and no deficient, invalid, or late responses.  (Id. ¶¶

27

28

13-16.)  Finally, no objections to the Settlement have been filed by any of the 162 Class Members.  (Id. ¶¶ 17-18.)

Pursuant to the Settlement Agreement, on February 2, 2015, Class Counsel moved for attorneys' fees, costs, and enhancement payments.  (Attorneys' Fees Mot.)  On March 6, 2015, Plaintiffs filed their Unopposed Motion for Final Approval of Class Action Settlement.  (Final Approval Mot.)

## II.    FINAL APPROVAL OF SETTLEMENT

Rule 23(e)(2) requires the Court to determine whether the proposed settlement is fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e)(2).  To determine whether a settlement agreement is fair, reasonable, and adequate, "a district court must [ultimately] consider a number of factors, including: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant;[2] and (8) the reaction of the class members to the proposed settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (internal citation and quotation marks omitted).  "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety." *Staton*, 327 F.3d at

---

[2] This factor does not apply in the case.

960 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

The Court finds the factors listed above favor final approval of the Settlement.

### A. Strength of Plaintiffs' Case

Plaintiffs maintain that they have a strong case and would likely prevail at trial, but "recognize that they face several significant risks with continued litigation." (Final Approval Mot. at 9.) Plaintiffs note that "[n]o Ninth Circuit authority determines Appraisers' classification expressly," "[a]ll but approximately 25 of the 162 Appraisers signed arbitration agreements, at least 99 of which included explicit class waivers," and "Plaintiffs further faced a risk of being unable to certify a class and collective action due to Defendants' arguments that: (1) no two Appraisers do their job exactly the same; (2) the potentially significant size of each Class Member's full claim militates against a showing of superiority; (3) each claimant may seek to prove different types of damages . . .; and (4) [] Defendants' purported Due Process right to cross-examine each Class Member on job duties and to challenge his or her claimed hours necessitates mini-trials." (Id.) As a result, Plaintiffs argue that there are significant risks of losing on the merits at trial, that the Court will find a class action inefficient, and that at least 99 Class Members would be required to prosecute individual arbitrations without a settlement. (Id. at 9-10.) Further, Plaintiffs contend that they face "the risk of being unable to establish that Defendants' violation of the labor laws was 'willful' under the FLSA or that Defendants did not have a good faith defense to Plaintiffs' Labor Code Section 203 and 226 claims." (Id. at 10.) Finally, Plaintiffs argue that "Defendants' pending appeal, which challenges the Court's ruling that the arbitrator should decide whether the arbitration agreements permit class-wide arbitration, would result in further delay and increased risk and expenses from litigating either individual or class arbitrations." (Id.) The Court therefore concludes that this factor weighs in favor of

1  granting final approval.

2

3  **B. Complexity and Expense of Further Litigation**

4  This action settled after 18 months of litigation. Plaintiff notes that if this

5  action proceeds, "[c]ontinued litigation would be both expensive and time

6  consuming; whereas this Settlement will result in payment within months. (Id.) As

7  detailed above, Defendants' have appealed the Court's prior ruling regarding

8  whether the arbitrator or Court should decide whether the arbitration agreements

9  permit class-wide arbitration. As a result, without settlement, Plaintiffs would likely

10  have to continue litigation in this Court, the Ninth Circuit, and before arbitrators, on

11  potentially both an individual and class-wide basis. (Id.) Given the risks inherent in

12  the class certification process and trial discussed above, the Class could recover

13  nothing from these extensive additional proceedings. Undoubtedly, the expenses

14  incurred by the class will increase as the case progresses. The Court therefore finds

15  that this factor favors approving the Settlement.

16

17  **C. Risk of Maintaining Class Action Status through Trial**

18  As discussed above, this Court previously determined that the arbitrator

19  would determine whether class-wide arbitration is available when an arbitration

20  agreement is silent on that point. An appeal of this decision was pending in the

21  Ninth Circuit prior to settlement. Therefore, there is some risk of maintaining class

22  certification depending on how the Ninth Circuit and/or the arbitrator determine this

23  issue. The risk that Plaintiffs would be unable to certify a class should the action

24  proceed in litigation favors approving the Settlement.

25

26  **D. Amount Offered in Settlement**

27  The Court finds that the amount offered in settlement is reasonable. The

28

Settlement Agreement provides for a settlement fund of $2,400,000.00. (Settlement Agreement § 1.37.) No portion of the settlement fund will revert back to Defendants because no Class Member has filed a request for exclusion. (Id. §§ 2.2.1, 2.11.1.)

Defendants have agreed to pay each Participating Claimant's share of payroll taxes for the share of his or her settlement payment deemed to be wages. (Id. § 2.2.1.) Class Counsel has applied for $800,000 in attorneys' fees and $18,000[3] in costs. (Attorney's Fees Mot. at 1; Final Approval Mot. at 19.) The three named Plaintiffs and the two representatives who filed written consents to join the class action request a total of $45,000 in enhancement payments. (Attorneys' Fees Mot. at 15-20.) $7,500 will be paid to the LWDA for the PAGA claims. (Settlement Agreement §§ 2.2.6, 2.9.1.) Finally, CPT has requested $20,000 in settlement administration expenses. (Shirinian Decl. ¶ 20.) The remainder of the settlement fund will be distributed to Class Members and any additional funds that cannot be paid to the Participating Claimants will be distributed by *cy pres* to the Legal Aid Society – Employment Law Center. (Final Approval Mot. at 5.)

With the deductions listed above and the establishment of a "reserve fund" to resolve disputes, Plaintiffs estimate that a total of $1,472,500 will be distributed to Participating Claimants. (Suppl. Shirinian Decl. ¶ 3, Doc. 93.) "[T]he average settlement payment per Participating Class Member is estimated at $9,089.51. The highest estimated settlement payment is $25,160.84, while the lowest estimated payment is $54.41, for a person who had only ten days of employment in a relevant position during the class period." (Id.; *see also* Suppl. Schwartz Decl. ¶ 3, Doc. 92.) Finally, the Commercial Appraiser I position at JPMorgan Chase will be reclassified

---

[3] On February 2, 2015, Plaintiffs' moved for up to $25,000 for actual litigation costs in their Attorneys' Fees Motion. (Attorneys' Fees Mot. at 1.) However, when moving for final approval, Plaintiffs clarified that they are seeking only $18,000 in costs. (Final Approval Mot. at 19.)

as non-exempt, allowing employees in that position in the future to be compensated for their overtime and, in California, any missed meal/rest periods. (Id. § 2.12.6.) The Settlement therefore offers a substantial benefit to the Class in terms of both significant settlement payments and meaningful prospective relief. (*See* Final Approval Mot. at 11.)

Considering the difficulties, uncertainty, and likely length of the proceedings in this case before any recovery could be obtained, the Court finds that this factor weighs in favor of granting final approval.

### E. Stage of the Proceedings

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). While extensive formal discovery has not been completed in this case, Plaintiff contends that during that time the parties "briefed in detail the merits of this action in their mediation briefs, have briefed to the Court their arguments on whether the 'silent' arbitration agreements prohibit class arbitration, and appealed and fully briefed this Court's ruling to the Ninth Circuit." (Final Approval Mot. at 13.) Further, Plaintiffs assert that they "also submitted several declarations and hundreds of pages of exhibits detailing the duties of Appraisers and the policies they were required to follow." (Id.) Finally, prior to mediation, Plaintiffs conducted "extensive analysis of class-wide damages data to enable the parties to assess the reasonableness of the Settlement amount." (Id.) Class Counsel represents that the information exchanged was sufficient to allow Plaintiffs to properly evaluate the case. (Id.)

The Court recognizes that settlement occurred before class certification. However, the parties have shown that they have spent significant time investigating this action to allow for an informed decision, but not so much time that the

settlement amount will be unnecessarily depleted by extensive costs and fees.  The Court therefore finds that the parties have sufficient information to make an informed decision about settlement.  As such, the Court finds that this factor favors approving the Settlement.

## F.  Absence of Collusion

The Court finds no signs, explicit or subtle, of collusion between the parties. The requested award of $800,000 in attorneys' fees and $18,000 in costs, which is authorized by the Settlement Agreement, is not disproportionate to the benefits that have inured to the class as a result of this action.  The same is true with respect to the $45,000 in enhancement payments Plaintiffs seek under the Settlement. Moreover, this Settlement is the result of a mediation held before wage and hour mediator Michael Dickstein.  The mediator's involvement in the Settlement is an additional factor that supports the argument that it is non-collusive.  *See Satchell v. Fed. Express Corp.*, No. C 03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).

Accordingly, the Court is satisfied that the Settlement is the result of arms-length, non-collusive, and informed negotiations.

## G. Experience and Views of Counsel

Class Counsel, who have prior experience litigating class action lawsuits (*see* Schwartz Fee Decl. ¶¶ 10-14, Doc. 82; Ho Fee Decl. ¶¶ 3-6, Doc. 83.), have endorsed the Settlement as fair, reasonable, and adequate.  (Schwartz Fee Decl. ¶ 3; Ho Fee Decl. ¶¶ 8-10.)  "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."  *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (quotation marks omitted).  Accordingly, this factor favors approving the Settlement.

### H. Reaction of Class Members to Proposed Settlement

Notice was sent to all Class Members pursuant to the Court's Preliminary Approval Order. (Shirinian Decl. ¶ 7.) The deadline for opt-outs and objections has passed, and no exclusion requests or objections to the Settlement have been received. (Id. ¶¶ 12, 17-18.) "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004). Accordingly, the Court finds this factor weighs in favor of granting final approval.

Having considered the foregoing factors, the Court finds the proposed Settlement is fair, reasonable, and adequate.

### III.   ATTORNEYS' FEES

Class Counsel seeks an award of attorneys' fees of $800,000, which is one-third of the settlement fund. (Attorneys' Fees Mot. at 1.)

Rule 23 permits a court to award "reasonable attorneys' fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). In the Ninth Circuit, the benchmark for a fee award in a common fund case is 25% of the recovery obtained. *Id.* at 942. The Ninth Circuit has identified a number of factors the Court may consider in assessing whether an award is reasonable and whether a departure from that figure is warranted, including: (1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of the work; and (4) the contingent nature of the fee and the financial burden carried by the plaintiffs. *Vizcaino v.*

*Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002). The Court will consider each in turn.

### A.  Results Achieved

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *In re Omnivision Techs, Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (citation omitted). Here, a $2,400,000 settlement fund was created for Class Members. After subtracting the authorized and requested fees and costs, $1,472,500 will be distributed to the 162 Participating Claimants, with each Class Member receiving cash payments ranging from $54.41 to $25,160.84, with an average settlement payment of $9,089.51. (Suppl. Shirinian Decl.¶ 3; Suppl. Schwartz Decl. ¶ 3, Doc. 92; Attorneys' Fees Mot. at 7-8.) Moreover, the fact that no Class Member opted-out and no Class Member objected further supports the conclusion that Class Counsel achieved an exceptional result on behalf of the class.

Thus, this factor weighs in favor of granting the requested fee award.

### B.  Risk of Litigation

The risk of litigation further supports this award. As discussed above, Plaintiffs face numerous risks if the case were to proceed further in litigation. Plaintiffs note that "[t]here is no Ninth Circuit authority on point regarding Appraisers' classification" and "[a]ll but approximately 25 of the 162 Appraisers signed arbitration agreements, at least 99 of which included explicit class waivers." (Attorneys' Fees Mot. at 9.) Further, Defendants have made numerous arguments in opposition to Plaintiffs efforts to certify the class and maintain the case as a collective action. (Id.) Plaintiffs also recognize that they "faced the risk of being unable to establish that Defendants' violation of the labor laws was 'willful' under

the FLSA." (Id.) If Defendants were to succeed in opposing class certification or prevailing at trial, Class Members could receive no recovery, and additional resources would be spent by the parties.

The Court finds the risk that further litigation might result in Plaintiffs and Class Members not recovering anything weighs in favor of granting the requested fee award. *See Omnivision*, 559 F. Supp. 2d at 1047.

## C. Skill Required and Quality of Work

Class counsel has expended approximately 1500 hours on this case since it began on March 29, 2013. (Attorneys' Fees Mot. at 10; Schwartz Approval Decl. ¶ 13; Schwartz Approval Decl., Ex. 1, Doc. 91-2; Ho Approval Decl. ¶ 8; Ho Approval Decl. Ex. 1, Doc. 91-3.) Class Counsel "investigated and filed the complaint; successfully resisted a motion for a protective order that sought to prohibit communications with the Class; successfully resisted Defendants' motion requesting the Court to rule that arbitration would be permitted on an individual-only basis; prepared and filed a class arbitration and three individual arbitration; engaged in mediation and extensively brief the merits of the claims . . .; and overs[aw the] drafting and provision of notice to the Class." (Attorneys' Fees Mot. at 2-3; *see also* Schwartz Fee Decl. ¶ 5.) This effort over the course of over two years, coupled with Class Counsel's skillful work to negotiate a settlement in which Class Members will recover both monetary and prospective relief, weighs in favor of awarding the requested fee.

## D. Contingent Nature of the Fee

Class Counsel took this case on a contingent basis and has litigated it for over two years. (Attorneys' Fees Mot. at 11; Schwartz Fee Decl. ¶ 7, Schwartz Fee Decl., Ex. B, Doc. 82.) Courts have recognized that the public interest is served by

1    rewarding attorneys who assume representation on a contingent basis with an

2    enhanced fee to compensate them for the risk that they might be paid nothing for

3    their work.  *See In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d

4    1291, 1299 (9th Cir. 1994); *Vizcaino*, 290 F.3d at 1050.  Moreover, Class Counsel's

5    commitment of resources and the expenses incurred while litigating this matter are

6    significant, further increasing the risk counsel assumed.  (Attorneys' Fees Mot. at

7    11-14; *see generally* Schwartz Approval Decl.; Ho Approval Decl..)  This factor

8    therefore supports awarding the fees Class Counsel seeks.

9        Accordingly, the Court finds this factor weighs in favor of awarding the

10   requested fee.

11

12       **E.    Lodestar Crosscheck**

13       Finally, courts use the lodestar method as a cross-check to determine the

14   fairness of a fee award.  *Vizcaino*, 290 F.3d at 1050.  A lodestar multiplier of 1.5 is

15   reasonable where a case settles early.  *Fischel v. Equitable Life Assurance Soc'y of*

16   *U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002).  Here, Class Counsel estimates that they

17   will spend approximately 1500 attorney and paralegal hours on this case in total.

18   (Attorneys' Fees Mot. at 10.)  As of March 5, 2015, at their regular and customary

19   hourly rates, Class Counsel incurred approximately $630,225.00 in attorneys' fees

20   under the lodestar approach.[4]  (Final Approval Mot. at 18; Schwartz Approval Decl.

21   ¶ 13; Ho Approval Decl. ¶ 8.)  Class counsel seeks $800,000 in attorneys' fees, only

22   a 1.27 "fee multiplier" under the lodestar approach.  (Attorneys' Fees Mot. at 18.)

23   The lodestar crosscheck therefore confirms the reasonableness of a $800,000 fee

24   award in this case.

25   _____

26       [4] Class Counsel asserts that they will continue to spend time on securing final approval and
     assuring payout to Class Members, which will increase the amount in attorneys' fees under the
27   lodestar approach.  (Final Approval Mot. at 18.)

28
                                         17

For the foregoing reasons, the Court finds departure is warranted from the Ninth Circuit's benchmark of 25% of the common fund recovery. Accordingly, the Court approves Class Counsel's request for attorneys' fees in the amount of $800,000.

## IV.  COSTS

Class Counsel also requests the Court approve $18,000 for actual and expected litigation costs associated with this case. (Final Approval Mot. at 19.) Class Counsel asserts that, as of March 5, 2015, they have incurred slightly more than $18,000 in actual and expected costs. (Id.; Schwartz Approval Decl. ¶¶ 14-15; Schwartz Approval Decl., Ex. 2, Doc. 91-2; Ho Approval Decl. ¶¶ 9-13; Ho Approval Decl., Ex. 2, Doc. 91-3.) The Settlement Agreement provides that Class Counsel may seek an award of up to $25,000 for costs. (Settlement Agreement § 2.9.1.) The total amount Class Counsel now seeks for costs complies with the limitation in the Settlement Agreement. "Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *Omnivision*, 559 F. Supp. 2d at 1048. Class Counsel has documented expenses incurred in prosecuting this action, which include mediation fees, court and arbitration filing fees, photocopying, postage, legal research expenses, and travel expenses. (Attorneys' Fees Mot. at 14; Schwartz Fee Decl. ¶ 15; Schwartz Fee Decl., Ex. G, Doc. 82; Ho Approval Decl., Ex. 2.) Class Counsel also anticipates some additional costs associated with the final approval process and ensuring that Class Members receive their respective payments. (Ho Approval Decl. ¶¶ 10, 13.) The Court concludes that Class Counsel's expenses are reasonable.

Accordingly, the Court approves the reimbursement of $18,000 in costs.

# V.    ENHANCEMENT TO THE CLASS REPRESENTATIVES

The Settlement Agreement authorizes enhancement awards of $15,000.00 to Kenneth Lee, $10,000.00 to Mark Thompson, $10,000.00 to David Acree, $5,000.00 to Joel Cuthbert, and $5,000.00 to Myles Norton.  (Settlement Agreement § 2.9.2.)  District courts have the discretion to award incentive payments to named plaintiffs as compensation for their actions taken on behalf of the class.  *Staton*, 327 F.3d at 977; *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). The Ninth Circuit recently emphasized that district courts must "scrutiniz[e] all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013).  Here, Plaintiffs Lee, Thompson, and Acree were personally named as defendants in Defendants' counterclaims.  (Doc. 44 at 23.)  Further, each of the three Class Representatives and two opt-in Plaintiffs released large individual claims and executed broad waivers in order to pursue this case as a class action. (Attorneys' Fees Mot. at 17.)  Finally, each of the individuals receiving enhancement payments incurred significant expenses and/or spent considerable time assisting Class Counsel during litigation, with Lee spending approximately 250 hours and $700, Thompson spending approximately 95 hours and $1000, Acree spending approximately 80 hours and $885, and Norton and Cuthbert each spending approximately 40 hours on this case.  (Attorneys' Fees Mot. at 19-20 (citations omitted).)  The proposed enhancement payments totaling $45,000 for the three Class Representatives and two opt-in Plaintiffs therefore appear justified.  (*See generally* Lee Decl., Doc. 71; Thompson Decl., Doc. 70; Acree Decl., Doc. 72; Cuthbert Decl., Doc. 73; Norton Decl., Doc. 74.)  *Cf. Rausch v. Hartford Fin. Serv. Grp.*, No. 01-CV-1529-BR, 2007 WL 671334, at *3 (D. Or. Feb. 26, 2007) (granting $10,000 incentive fee award).  The enhancement awards proposed for these Plaintiffs are

also reasonable on the grounds that these Plaintiffs release additional claims against Defendants that other Participating Claimants are not required to release.

Accordingly, the Court approves the enhancement awards of $15,000.00 to Kenneth Lee, $10,000.00 to Mark Thompson, $10,000.00 to David Acree, $5,000.00 to Joel Cuthbert, and $5,000.00 to Myles Norton.

## VI. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motions.

The parties shall file a proposed judgment in conformity with this Order forthwith.

DATED: April 28, 2015

JOSEPHINE L. STATON

HONORABLE JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE

# EXHIBIT K

NERA
ECONOMIC CONSULTING

14 July 2015

# Trends in Wage and Hour Settlements: 2015 Update



By **Dr. Stephanie Plancich,**
**Neil Fanaroff,** and
**Janeen McIntosh**

In wage and hour litigation, current and/or former employees allege unpaid work, including unpaid overtime, failure to provide meals and/or rest breaks, and off-the-clock work. Cases may be brought under state law or under the Federal Fair Labor Standards Act (FLSA). These cases may result in civil settlements or verdicts, as well as in back wages and penalties levied by the Department of Labor (DOL).

In this 2015 Update, we add 27 months of data to our database of civil wage and hour settlements, creating a dataset that spans January 2007 to March 2015. Looking at patterns in this data over time, we found that companies continued to pay substantial amounts to settle lawsuits involving allegations of wage and hour violations. We identified total wage and hour settlement payments of $445 million in 2013, $400 million in 2014, and $39 million through the first three months of 2015, bringing the aggregate amount paid for cases settled since January 2007 to over $3.6 billion. In total, our database contains 613 settlements from January 2007 through March 2015, for an average rate of approximately 75 settlements per year.

Average settlement values were lower in 2014 than in prior years. On average, companies paid $5.3 million to resolve a case in 2014, lower than the observed average of $6.3 million in 2013 and the overall average of $6.9 million for the 2007 to 2015 period. This pattern has continued into the first quarter of 2015; during this period, average settlement values were down to $2.8 million. Median settlement values have similarly declined. The median settlement value was $3.0 million in 2013, the median was $2.4 million in 2014, and the median was just $1.9 million through the first 3 months of 2015. This is below the overall 2007-2015 median of $2.2 million.

*Insight in Economics*™

After controlling for the number of plaintiffs in a case and the number of years in the class period, we found a decreasing trend in the average settlement value per plaintiff per class year—from a peak of $1,475 in 2011 to $686 in 2014 and just $253 through the first three months of 2015.

Historically, the most common allegation in the settlement data related to overtime violations, and this remained true over the past 15 months. In addition, we identified an increase in the proportion of settlements that included allegations of minimum wage violations in 2014 and 2015 relative to prior years.

The number and amount of settlements also vary by industry. In 2014 and 2015, we found an increase in the proportion of settlement dollars spent in the food & food services industry relative to prior years.

We compared our sample of civil wage and hour settlements to concluded actions taken by the DOL's Wage and Hour Compliance division over the past nine years. Over that time period, the DOL reported thousands of investigations, of which 75% resulted in a determination of a violation. Comparing our wage and hour settlement data to the DOL data, we found that nearly 60% of the companies with a wage and hour settlement between 2007 and 2015 had also been investigated by the DOL's Wage and Hour Compliance division. Approximately 25% of the companies in our wage and hour settlement database were found by the DOL to have an FLSA violation, and back wages associated with these violations totaling $19.3 million were paid.[1]

Figure 1. **Over 600 Wage and Hour Cases Have Settled Since 2007**
Settled Wage and Hour Cases by Year
Data as of March 31, 2015



Figure 2. **Average Settlement Values Have Declined in 2014-15, Reversing the 2013 Increase**
Mean Wage and Hour Settlement Amount by Year
Data as of March 31, 2015



Figure 3. **Median Settlement Values Have Declined in 2014-15 Relative to 2013**
Median Wage and Hour Settlement Amount by Year
Data as of March 31, 2015



Figure 4. **More Than Half of Cases Settle for Under $2.5 Million**
Settled Wage and Hour Cases by Settlement Amount
January 2007 – March 2015



## Data and Methodology

Our updated data includes 613 settlements for wage and hour cases, obtained from articles published in *Law360* between 1 January 2007 and 31 March 2015, and a review of the Seyfarth Shaw annual litigation report for 2007 through 2014. When the information available from these sources was incomplete, additional case-specific details were obtained from Factiva. In addition to settlement value, the data extracted includes case-specific information such as industry, allegations, number of plaintiffs, length of class period, and jurisdiction. While this data collection methodology yielded a substantial number of wage and hour settlements, particularly those with large settlement amounts and/or large classes, it is not necessarily comprehensive.

The DOL's Wage and Hour Compliance Data was obtained from the website http://ogesdw.dol.gov/data_summary.php.[2]

## Average Wage and Hour Settlements – Trends per Plaintiff and per Class Period Year

- For approximately 75% of the cases in our database, we were able to determine the number of plaintiffs participating in the settlement; for about 66%, we could determine both the number of plaintiffs and the reported settlement amount.

  – The number of cases with over 10,000 plaintiffs had been decreasing between 2007 and 2013, but increased in 2014, as 16% of settlements were associated with such large classes. The percentage of large settlements remained above 2013 levels in the first three months of 2015.

- On average, the settlement per plaintiff for this subset of cases for which we have plaintiff counts was $5,742. A small proportion of cases—approximately 5%—had settlements averaging over $25,000 per plaintiff, which skews the average upward. The median settlement per plaintiff was lower, at $2,576.

- Cases with more plaintiffs tend to have higher total settlements but lower settlements per person.

- For about 40% of the settlements in our database, we identified the number of plaintiffs in the case, the number of years covered by the settlement, and the settlement amount.

- The median and average duration of a class period in our data were five years. Like cases with more plaintiffs, cases with longer class periods tend to have larger total settlements. However, these cases do not necessarily have higher settlements per class year.

- The vast majority of average settlements were less than $5,000 per plaintiff per class year. The few cases with average settlement amounts per plaintiff per class year above $5,000 were in either the telecommunications/utilities or the financial services/ insurance industries and included allegations of misclassification and overtime.

- More recently, the average per plaintiff per class year has dropped substantially, relative to the overall average.

Figure 5.  **More Than Half the Cases Have Fewer Than 1,000 Plaintiffs**
Settled Wage and Hour Cases by Number of Plaintiffs
January 2007 – March 2015



Figure 6.  **The Proportion of Cases Involving Large Classes Grew in 2014**
Annual Distribution of Settled Wage and Hour Cases by Number of Plaintiffs
Data as of March 31, 2015



Figure 7. **The Average Settlement Value Per Plaintiff Decreased Significantly in 2014, but Increased in the First 3 Months of 2015**
Average Settlement Value Per Plaintiff for Wage and Hour Cases by Settlement Year
Data as of March 31, 2015



Figure 8. **A Large Proportion of Cases Have an Average Settlement Value Per Plaintiff Between $1,000 and $4,999**
Settled Wage and Hour Cases by the Average Settlement Value Per Plaintiff
January 2007 – March 2015



Figure 9.  **Less Than 15% of Settled Cases Have a Class Period Greater Than 7 Years**
Settled Wage and Hour Cases by Number of Years in Class Period
January 2007 – March 2015



Figure 10.  **The Average Settlement Value Per Plaintiff Per Class Year Has Declined Considerably Since the Peak in 2011**
Average Settlement Value Per Plaintiff Per Class Year for Wage and Hour Cases by Settlement Year
Data as of March 31, 2015



Figure 11. **Few Cases Settle for More Than $5,000 Per Plaintiff Per Class Year**
Settled Wage and Hour Cases by the Average Settlement Value Per Plaintiff Per Class Year
January 2007 – March 2015



**Average Settlement Amount Per Plaintiff Per Class Year**

## Case Characteristics

- We identified all the allegations made in the cases in our settlement database and classified these allegations in the following categories:[3]

  - Overtime
  - Off-the-clock
  - Minimum wage violation
  - Donning and doffing
  - Missed meals and breaks
  - Misclassification
  - Tip Pooling

- Many of the cases in our database had multiple allegations—for example, workers frequently claim that alleged off-the-clock work caused them to have minimum wage violations. About 60% of the cases had at least two allegations. Approximately 16% of the cases in our data had an allegation of overtime only, while another 55% included an allegation of overtime in addition to one or more other allegations.

- This pattern of allegations has been relatively steady: as in prior years, overtime allegations dominated in 2014 and 2015. The share of misclassification and off-the-clock allegations were slightly down in 2014 and 2015 compared to earlier years, but the share of minimum wage violation allegations increased.

- We also identified the industries of the settling defendants and found that the most common industries in all years were financial services/insurance, retail, and food & food services. In 2014 and 2015, the most common industry of settling defendants was retail, followed closely by the financial services/insurance and food & food services industries.

- Three industries accounted for more than half of total spending overall in 2014 and 2015. Over the past 15 months, 21% of settlement dollars were paid to workers in the financial services/insurance sector, 19% of settlement dollars were paid to workers in the retail industry, and 17% were paid to workers in the food & food services industry—in total, 57% of spending. Over all years, these three industries comprised 54% of total spending.

- The majority of the cases in the financial services/insurance, retail, and food & food services industries included allegations of overtime.

- The second most frequent allegation in the financial services/insurance industry was misclassification.

- In the retail industry, we saw allegations of overtime violations, off-the-clock work, and missed meals and breaks, as well as misclassification.

- There were relatively few allegations of misclassification in the food & food services industry, but that industry had several other types of alleged violations, including donning and doffing, missed meals and breaks, and off-the-clock work.

- From 2007 – 2015, settlements with defendants in the technology industry were the highest, followed closely by settlements in the financial services/insurance and food & food services industries.

- In 2014 and 2015, as in prior years, the majority of settlement dollars have been paid out in New York and California.



Figure 12a. **Over 40 Percent of Allegations Relate to Overtime Violations**
Allegations in Settled Wage and Hour Cases
January 2007 – March 2015



Figure 12b. **In 2014 and 2015, Overtime Remained the Most Common Type of Allegation**
Allegations in Settled Wage and Hour Cases
January 2014 – March 2015

Figure 13. **The Financial Services/Insurance, Retail, and Food & Food Services Industries are the Most Common Industries for Settlements**
Settled Wage and Hour Cases by Industry of Employer
January 2007 – March 2015



Figure 14a. **Nearly Half of All Total Settlement Dollars Were Paid to Employees in the Retail and Financial Services/Insurance Industries**
Wage and Hour Settlement Dollars by Industry: January 2007 – March 2015



Figure 14b. **Over Half of All Total Settlement Dollars were Paid to Employees in the Retail, Financial Services/Insurance, and Food & Food Services Industries in 2014 & 2015**
Wage and Hour Settlement Dollars by Industry: January 2014 – March 2015



Figure 15. **The Average Settlement Value by Industry Ranged from $2.9 Million to $7.4 Million in 2014 & 2015**
Mean Settlement Values for Wage and Hour Cases by Industry of Employer
January 2014 – March 2015





Figure 16. **The Vast Majority of Settlement Dollars Have Been Paid in New York and California**
Distribution of Settlement Dollars Paid for Wage and Hour Cases by Year and State
Data as of March 31, 2015

## Notable Recent Settlements

Although no recent settlements were outside of the historical range observed in our database, a few notable cases had settlement values over $20 million in the last 15 months:

- Brinker Restaurant Corp. – $56.5 million. The case included 108,000 workers who alleged wage and hour violations. Because of the large class, the average settlement value per plaintiff was just $523.

- City of Los Angeles – $26 million. The case included 1,074 trash truck drivers who alleged meal and rest break violations. The average settlement value per plaintiff was $24,209.

- Walgreen Co. – $23 million. The case included 40,000 workers who alleged that they were denied overtime and meal and rest breaks. Because of the large class, the average settlement value per plaintiff was $575. Further, the class period lasted seven years, so the average settlement value per plaintiff per class year was just $82.

- Schneider Logistics Transloading and Distribution Inc. – $21 million. Plaintiffs asserted that they were denied overtime and minimum wage.

## DOL Public Wage and Hour Data

The data NERA compiled are public civil wage and hour cases. Another source of data on wage and hour activity comes from the U.S. Department of Labor, which reports statistics on their investigations, violations, and back wage payments related to wage and hour issues. The data spans all concluded actions since 2007 and includes variables such as indicators for whether violations were found, whether the violations were FLSA, and the amount of back wages, if any, agreed to be paid by the employer.

According to the DOL's public data, the DOL has completed over 150,000 investigations since 2007. Of these:

- Over 115,000 resulted in findings of violations.

- 56% of the investigations found violations that included back wage payments, while 8% found violations that included some kind of penalty.

- Over 60% of the investigations were found to have an FLSA violation, and nearly half of the investigations resulted in an FLSA violation that included back wage payments.

- 90% of back wage payments included an overtime violation.

- The states with the most DOL cases were Texas, California, Florida, and New York. These four states accounted for 35% of all investigations and violations since 2007.

- In the aggregate, back wages paid for cases with DOL wage and hour enforcement violations was $1.55 billion over the six years, with an additional $75 million assessed as civil money penalties.

Figure 17. **Approximately Half of All Investigations Resulted in FLSA Violations with Back Wages or Civil Money Penalties**
Distribution of All Concluded DOL Wage and Hour Compliance Investigations 2007 – 2015



Figure 18. **Nearly 90% of Cases Resulting in Back Wages Paid for FLSA Violations Included an Overtime Violation**
Distribution of Back Wages Agreed to Pay for FLSA Violations for Concluded DOL Wage and Hour Compliance Investigations



Figure 19. **California, Florida, New York, and Texas Accounted for Over One Third of the FLSA Violations Found**

Distribution of FLSA Violations Following DOL Wage and Hour Compliance Investigations Across Regions
2007 − 2015



Figure 20. **Average Back Wages Agreed to Under FLSA in California, New York, and Texas were Above the National Average**

Average Back Wages Agreed to Pay Under FLSA Following DOL Wage and Hour Compliance Investigations by Region
2007 − 2015



## Comparing DOL and NERA Wage and Hour Data

Many of the allegations related to FLSA violations are the same as those brought in state court wage and hour civil litigation. To see if there was overlap in the defendants settling civil cases with those found to have FLSA violations by the DOL, we matched our wage and hour settlement database to the DOL's violation list.

Given the available data, it is not possible to do a one-to-one map of each investigation to each settlement. However, we can identify and match the defendant companies in both databases. In other words, starting with our wage and hour settlement data companies, we looked to see if any of these companies were listed in the DOL data during the January 2007 – March 2015 period.[4]

We found that 59% of the defendants in our database with a settled wage and hour civil case during this time period also had a DOL investigation. Of those, 21% were found to have a non-FLSA related violation and 44% were found to have at least one FLSA violation. In total, 60% of the companies with wage and hour settlements either had no investigation or were found to have no violation.

For the defendants with an FLSA violation, 86% paid at least some back wages to employees. 53% of these were for overtime, 26% were for overtime and minimum wage, and 7% were for minimum wage only.

Figure 21.   **Two-Thirds of the Companies with a Wage and Hour Settlement Between 2007 and 2015 Had a DOL Investigation; Over 25 Percent Had an FLSA Violation**
Distribution of Concluded DOL Wage and Hour Compliance Investigations for Companies with Wage and Hour Settlement



Figure 22. **Approximately 80% of the Companies with a Wage and Hour Settlement Between 2007 and 2015 were Found by the DOL to Have an Overtime Violation**
Distribution of Back Wages Agreed to Pay for FLSA Violations for Concluded DOL Wage and Hour Compliance Investigation



**Endnotes**

[1] We thank Mary Elizabeth Stern for her peer review and Tanner Baker, Christopher Dederick, Matthew Fisher, Wendy Magaronga, Yingtian Yang, and Richelle Zheng for additional research assistance.

[2] Also, due to incomplete information, reported statistics exclude the *Wal-Mart Multi-District Litigation* settlement in 2008, which resolved 63 wage and hour class action cases for over $600 million.

[3] There are a handful of cases with "Other" allegations that were not captured by these categories.

[4] This restriction exists because a company may show up multiple times in either database, so there is no definitive way to tie an investigation to a specific settlement. Furthermore, no open or close dates exist in the DOL data, so there is no way to effectively approximate which DOL investigation is related to which settlement.



## About NERA

NERA Economic Consulting (**www.nera.com**) is a global firm of experts dedicated to applying economic, finance, and quantitative principles to complex business and legal challenges. For over half a century, NERA's economists have been creating strategies, studies, reports, expert testimony, and policy recommendations for government authorities and the world's leading law firms and corporations. We bring academic rigor, objectivity, and real world industry experience to bear on issues arising from competition, regulation, public policy, strategy, finance, and litigation.

NERA's clients value our ability to apply and communicate state-of-the-art approaches clearly and convincingly, our commitment to deliver unbiased findings, and our reputation for quality and independence. Our clients rely on the integrity and skills of our unparalleled team of economists and other experts backed by the resources and reliability of one of the world's largest economic consultancies. With its main office in New York City, NERA serves clients from more than 25 offices across North America, Europe, and Asia Pacific.

## Contact

For further information and questions, please contact the author:

**Dr. Stephanie Plancich**
Vice President
+1 212 345 7719
stephanie.plancich@nera.com

*The opinions expressed herein do not necessarily represent the views of NERA Economic Consulting or any other NERA consultant. Please do not cite without explicit permission from the author.*